LINDSAY L. LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
ANDREW COBI BURNETT
Deputy District Attorney
Nevada State Bar Number 16505
One South Sierra Street
Reno, NV 89501
lliddell@da.washoecounty.gov
cburnett@da.washoecounty.gov
(775) 337-5700

ATTORNEYS FOR WASHOE COUNTY DEFENDANTS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

DREW RIBAR,

    Plaintiff,

vs.

WASHOE COUNTY, NEVADA; WASHOE COUNTY LIBRARY SYSTEM; BUILD OUR CENTER, INC.; JEFF SCOTT; STACY MCKENZIE; JONNICA BOWEN; LIBRARY EMPLOYEE DOE #1; JENNIFER COLE; DEPUTY C. ROTHKIN (BADGE #5696); DEPUTY R. SAPIDA (BADGE #4663; SGT. GEORGE GOMEZ (BADGE #4066); AND JOHN/JANE DOES 1+10,

    Defendants.
_____/

Case No. 3:24-CV-00526-ART-CSD

**MOTION FOR PROTECTIVE ORDER RESTRICTING PUBLICATION OF DISCOVERY**

Washoe County, Washoe County Library System, Jeff Scott, Stacy McKenzie, Jonnica Bowen, Jennifer Cole, Deputy Rothkin, Deputy Sapida, and Sgt. Gomez ("Washoe County Defendants") through counsel, Lindsay L. Liddell, Deputy District Attorney, hereby file their Motion for Protective Order Restricting Publication of Discovery Materials. This

//

Motion is based on FRCP 26(c), the pleadings and papers on file, and the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff Drew Ribar is a *pro se* YouTuber who brought this case against several Washoe County Library employees and law enforcement officers after he was suspended from the library for one year. *See* (ECF No. 1). Mr. Ribar's YouTube channel features an abundance of edited videos regarding the County Defendants, the library, and this case. Mr. Ribar recently requested to hold video depositions of Defendant Scott, Defendant Bowen, and Defendant McKenzie, who are already conspicuously featured throughout his YouTube channel.

Good cause exists for a protective order indefinitely preventing Mr. Ribar from disseminating any compelled discovery for any purpose other than to litigate this case.[1] Mr. Ribar directly expressed his intent to publish deposition video on YouTube, and to try this case in the "court of public opinion." *See* Exs. 3–4. His YouTube videos are edited, contain misleading and antagonistic captions, and occasionally invite viewers to engage in unsolicited contact with Washoe County employees. As a result of Mr. Ribar's social media activity, County Defendants have already experienced substantial harassment, humiliation, and oppression, including receiving repugnant messages from his viewers. Discovery should not be used as a tool to vex opposing parties, and a protective order is necessary to address the unique circumstances of this case.

Additionally, this Court should issue an order prohibiting the recording of any contact between Mr. Ribar and counsel for Defendants. Such an order is necessary to protect counsel

---

[1] Due to the unique circumstance presented, the Court's general "motion regarding discovery dispute" format is ill-fitting and not clearly applicable. *See* (ECF No. 28). However, if the Court is inclined to deny the Motion based on format, County Defendants respectfully request leave to reformat and refile the instant Motion.

from exposure to harassment arising out of Mr. Ribar's social media posts, and more importantly, to facilitate informal resolution of issues between the parties.

## II. MEET AND CONFER

Undersigned counsel attempted to meet-and-confer in good faith with Mr. Ribar on March 11, 2025. *See* Ex. 1 at ¶2; Ex. 2; Ex. 3; Ex. 4. Undersigned counsel requested a telephonic meet and confer on the instant issue, providing Mr. Ribar with background on the need for a protective order, the applicable rule, and providing him copies of the harassing emails attached hereto as Exhibit 5. Ex. 1 at ¶2; Ex. 2 at pp. 2–3. Undersigned counsel and Mr. Ribar briefly spoke telephonically on March 11, 2025. Ex. 1 at ¶¶2–3; Ex. 2 at p. 1. Mr. Ribar would not telephonically confer unless he could record the conversation, and undersigned counsel did not consent to recording.[2] *Id.* Mr. Ribar's position on recording the conversation suggests an unwillingness to resolve issues in good faith, and suggests that generating content regarding this case for his YouTube channel is a priority.

Recording is inappropriate as it would likely be published on Mr. Ribar's social media, would amount to or incite harassment, would chill participation in frank discussion of the issues, and is an otherwise inappropriate unilateral condition on discovery that is neither supported by the Rules nor by law. *See Nissan Motor Co. v. Nissan Computer Corp.*, 180 F.Supp. 2d 1089, 1096–97 (C.D. Cal. 2002) ("Threatening to record conversations between counsel (or actual recordation of such conversations) is a troubling tactic."); *Ewing v. Aliera Healthcare*, No. 19CV845-CAB-LL, 2019 WL 3778746, at *3 (S.D. Cal. Aug. 12, 2019) (ordering *pro se* Plaintiff to "cease recording of conversations between Plaintiff and defense counsel…"); *Stebbins v. Google LLC*, No. 23-cv-00322-TLT, 2023 WL 6139454, at *3 (N.D. Cal. Aug. 31, 2023) (noting that recording impedes relations and exerts a chilling effect between the parties, and finding that *pro se* Plaintiff's recording and YouTube posting of a

---

[2] Nevada law prohibits recording telephonic communications without consent. NRS 179.430; *Lane v. Allstate Ins. Co.*, 114 Nev. 1176, 1178–79, 969 P.2d 938, 939–40 (1998).

meet and confer was "highly irregular and inappropriate," "indicative of bad faith," and "also appropriate for sanctions.").

Nonetheless, the parties communicated their positions on the instant motion via email and were unable to reach an agreement. Exs. 2–4. Going forward, this Court should issue an order prohibiting Mr. Ribar from recording or demanding to record communications with counsel so that the parties may work together to informally resolve issues as they arise.

## III. LEGAL ANALYSIS

### A. STANDARD FOR PROTECTIVE ORDER

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Pretrial compelled discovery, including depositions and interrogatories, "are not public components of a civil trial." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Under Rule 26, "[a] party or any person from whom discovery is sought may more for a protective order[.]" FRCP 26(c)(1). Protective orders can include, but are not limited to, forbidding discovery, specifying the terms of discovery, or requiring that depositions be sealed. *Id.* For good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id.*

The party seeking a protective order must show "a particular need for protected supported by particular facts." *Liu v. City of Reno*, case no. 3:22-cv-00551-CLB, 2023 WL 5304490, at *5 (D. Nev. Aud. 17, 2023). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient." *Id.* "Courts are more likely to prohibit the public dissemination of audiovisual recordings of depositions than written transcripts because 'videos can more easily be abused as they can be cut and spliced and used as soundbites…" *Katz v. Steyn*, case no. 2:18-cv-00997-JAD-GWF, 2019 WL 13211070, at *4 (D. Nev. Mar. 25, 2019) (citations omitted).

//

Regarding videotaped depositions, a "clear and specific threat that a party or person will use discovery materials in an abusive manner may also constitute good cause for a protective order." *Katz*, 2019 WL 13211070, at *6. However, "the mere possibility that the online posting of a videotaped will be misused is insufficient grounds for the issuance of a protective order." *Liu*, 2023 WL 5304490, at *6. "There is a stronger basis for the issuance of a protective order if a party or person seeks to use discovery materials for private commercial gain." *Katz*, 2019 WL 13211070, at *5.

The Northern District of California issued a protective order where defendants indicated that they "wish to use the videotaped depositions to make their case in the court of public opinion about the exaggerated nature of the claims against them and the paucity of the evidence so far amassed…" *Serv. Emps. Int'l Union v. Rosselli*, case no. C 09-00404- WHA (MEJ), 2009 WL 2581320, at *1 (N.D. Cal. Aug. 20, 2009). Thus, there was "good cause to limit the scope for which Defendants may use the videotapes." *Id.* The Court's protective order prohibited the defendants from using deposition videos "for any purpose outside of [that] lawsuit." *Id.*

In *Liu*, the District of Nevada issued a protective order against a YouTuber, which prohibited the parties from posting, sharing or otherwise disseminating materials produced or exchanged in discovery including deposition video. 2023 WL 5304490, at *1, *6. The *pro se* plaintiff was using the lawsuit "as content for his [YouTube] channel," including displaying videos of the defendants, discussing the lawsuit, and using documentation from the lawsuit in a video. *Id.* at *6. The plaintiff stated he intended to post deposition video to YouTube once the lawsuit was "finished." *Id.* The Court also inferred that the plaintiff was using the lawsuit to increase viewership and engagement on his channel to monetize it. *Id.* The Court found that plaintiff's use of body camera footage related to the lawsuit on his YouTube channel was more than the necessary "clear and specific threat" and "crosses the

//

line into *actual* use of the materials in an abusive manner." *Id.* (quotations and citations omitted).

### B. MR. RIBAR'S ACTIONS HAVE AND CONTINUE TO PRESENT ACTUAL THREATS OF LITIGATION MISUSE, HARASSMENT, EMBARRASSMENT, AND OPPRESSION, PROVIDING GOOD CAUSE FOR PROTECTION.

Mr. Ribar is a "YouTuber" who operates a channel called "Auditing Reno 911"[3] with over 25,000 subscribers. *See* Ex. 6 at pp. 1–2. On his YouTube channel, he regularly posts videos that he has personally filmed of government employees as well as videos of himself discussing his various interactions with government employees. *Id.* at pp. 3–17, 21–27. His channel has numerous videos regarding the Washoe County Library, the County Defendants in this case, and this case itself. *Id.* His channel's opening page contains "Cash App" and "Google Pay" links where viewers are invited to send money to Mr. Ribar. *Id.* pp. 1–2. Additionally, some comments reflect viewer payments directly to Mr. Ribar's account. *Id.* at p. 18. As set forth in detail below, there is an actual threat of abuse of discovery material, and actual threats of annoyance, embarrassment, and oppression warranting a protective order in this case.

#### i. Mr. Ribar's YouTube Activity

Mr. Ribar's YouTube channel hosts a large quantity of videos that Ribar has personally filmed and edited. *See* Ex. 6 at pp. 3–17, 21–27. In many of his "First Amendment Audit" videos, Ribar appears to antagonize government workers in attempts at evoking a reaction. *See id.* He then edits these videos to provide after-the-fact commentary further criticizing the workers' reactions, adding captions to invite reaction and response from viewers, and removes parts of the videos that would otherwise provide full context. *Id.*; *see also* Ex. 9 at ¶8 (describing Mr. Ribar filming his and his partner's belligerent behavior toward library staff, but not posting that footage to YouTube). Several videos on Mr. Ribar's

---

[3] https://www.youtube.com/@auditingreno911/featured

-6-

YouTube channel contain misleading or blatantly false click-bait titles. *See id.* at pp. 3–17. For example, in a video titled "Filming in Library? I Got Arrested!," Mr. Ribar did not actually get arrested. *Id.* at p. 17. In another video where Mr. Ribar attempted to film the criminal court diversion program held at the library with a well-respected municipal court judge called "community court," Mr. Ribar included bold colorful words over the video saying "CORRUPT JUDGE HAZLETT-STEVENS." *Id.* at p. 5.

Mr. Ribar posted numerous videos about the Washoe County Library, the defendants in this case, the facts of this case, and the ongoings of the instant litigation. *See* Ex. 6 at pp. 3–17, 21–27. He posted a video on August 24, 2024, of Defendant Bowen titled "Lying Crying Government Employee Caught," where he personally identifies Defendant Bowen and invites viewers to contact the County Manager. *Id.* at p. 3. In a video discussing drag story hour, Mr. Ribar claims that librarians locked children in libraries "with transsexuals," presumably using a blatantly inaccurate and inflammatory word to describe drag queens. *Id.* at p. 11. Mr. Ribar titled one video "Pompous Library Director Chastises Board of Trustees," and another video ""Is This Library Ageist? I'm Suing!" *Id.* at pp. 4, 12.

Mr. Ribar has posted multiple videos of the incidents alleged in the instant Complaint. *See* Ex. 6 at pp. 3–15. Many videos contain inflammatory titles regarding Defendant Scott including, "Library Director Assault: Justice Served?" "Accused Battery in Library: Jeff Scott Exposed!," "Sheriff, will Jeff Scott be investigated?" Each of these videos refer to the same alleged, but strongly disputed, "assault" set forth in the Complaint. *Id.*; (ECF No. 1 at pp. 3, 5).

Mr. Ribar posted footage of his library suspension appeal before the Library Board of Trustees in August of 2024. *See* Ex. 6 at pp. 3, 8–10. In this case, he attempts to state claims regarding the same suspension. (ECF No. 1 at pp. 3, 5, 7). One video features Defendant McKenzie and Defendant Bowen discussing their interactions with Mr. Ribar, with Mr. Ribar adding captions throughout the footage, including language such as "Truthful

1  librarian? Or Lying librarian??," "Doubling down on lies…," "POLICY above LAW and
2  screw your Constitutional Rights!!," "[as Defendant McKenzie presents] File an HR
3  complaint with [] Ass.t County Mgr [email]@washoecounty.gov." Ex. 6 at pp. 8–10.

4        Mr. Ribar posted the November 2024 incident alleged in his Complaint in a video
5  displaying bold colorful words, "LUNATIC LIBRARIANS & DEPUTIES." Ex. 6 at pp.
6  6–7; (ECF No. 1 at pp. 4, 6-7). Notably, in the video he explains to Defendant Cole that he
7  understood he was banned from the library. But, as he states, he wanted Defendant Cole to
8  "trespass" him so that he would "have more standing" for his federal lawsuit.[4] Ex. 6 at p. 7.
9  In another edited video of the same interaction, Mr. Ribar included a description starting
10 with "I have been restricted from the Washoe County Libraries because I record their
11 naughty deeds…," and included 911 audio of Defendant Cole. *Id.* at p.15. The videos
12 demonstrate that he provoked confrontation to both obtain content for his YouTube channel
13 and for the instant case.

14       Mr. Ribar also engages with viewers in video comments, which "help[s]" the
15 algorithm" of his YouTube channel. *See* Ex. 6 at p. 20. Mr. Ribar appears to facilitate "troll"
16 comments to help his channel grow. *Id.* In one comment, Mr. Ribar encourages the false and
17 salacious statement that "Washoe County [is] so invested in sexualizing children." *Id.* at p.
18 18. In another, Mr. Ribar encourages viewers to repost his video because he was "[g]etting
19 privacy strikes from youtube complaints. Spread the word!!" *Id.* at p. 19. In others, he
20 condescendingly claims he makes Defendant Scott "uncomfortable" because he is a "straight
21 toxic white male," and he provided a viewer with Defendant Scott's telephone number and
22 email address. *Id.* Notably, in a video regarding this case, **Mr. Ribar responded to a**
23 **YouTube viewer's comment stating Mr. Ribar was "[l]ooking forward to recording**
24 **depositions**…" *Id.* at p. 21 (emph. added).

---

[4] https://youtu.be/6lJhKaT6OJk?feature=shared&t=901

Since filing the Complaint in this case, Mr. Ribar has created and uploaded several videos regarding the instant litigation. Ex. 6 at pp. 21–27. In a video titled "Library Gets Sued for Discrimination,"[5] he displays the Complaint filed in this case. *Id.* He also displays and discusses correspondence with DDA Michael Large regarding the Rule 26(f) conference and displays and discusses the County Defendants' Answer.[6] Another video includes an edited caption stating "HOW MUCH $$$ WILL WASHOE COUNTY LIBRARY DIRECTOR SCOTT PAY FOR EXCLUDING PEOPLE??" *Id.* at p. 21. In a video titled, "5 Shocking Things I Learned Suing Government Employees," Mr. Ribar displays and discusses the incident report regarding his June 2024 library suspension and future amendments to his complaint in this case. *Id.* at pp. 22–23.

Mr. Ribar's videos show viewers how he uses Chat GPT to litigate. Ex. 6 at pp. 26–27. He specifically demonstrates how he used Chat GPT to draft his "Motion for Clarification Regarding Communications," (ECF No. 39) and his Opposition to Defendant Build Our Center, Inc.'s Motion to Dismiss (ECF No. 43). *Id.* It is clear that the instant litigation is being abused to create social media content, inviting publicity and commercial gain.

      **ii.**    **Reactive Harassment from Third Parties**

Defendant Bowen and Defendant McKenzie experienced several unwanted deplorable messages as a result of Mr. Ribar posting videos of them, including a video containing their work email address. Ex. 5; Ex. 7 at ¶¶5–17; Ex. 8; Ex. 9 at ¶¶5–10, ¶18. One message titled "ACTUAL free speech zone" states "…I do know you're a tyrant. I've donated to his 1983 lawsuit." Ex. 5 at p. 12. Based on the subject matter and timing, this appears to refer to Mr. Ribar's contentions with "free speech" and his then threats to sue the

//

---

[5] https://www.youtube.com/live/y0P6b_wBUdc?feature=shared&t=2141
[6] https://www.youtube.com/live/y0P6b_wBUdc?feature=shared&t=3003

library. Another video contained a link to a since-removed video on Ribar's page, saying "Your country is Idiocracy come to reality…" *Id.* at p. 19.

A person named "Russ Travis" both commented on Mr. Ribar's YouTube video (Ex. 6 at p. 20), and sent Defendant Bowen and Defendant McKenzie the following messages:

- "…[Defendant Bowen"], **you lying fucking pervert**…" Ex. 5 at p. 24 (emph. added).

- "You and your bubblehead girlfriend should both be fired. **You're both fucking ignorant perverts**." Ex. 5 at p. 25(emph. added).

- Subject line: "You grinning fucking clown" Ex. 8 at p. 1.

- Subject line: "**You'll pay cunt**" Ex. 8 at p. 2 (emph. added).

- Subject line: "**You're gonna pay bitch**" Body: "You don't get to allow somebody to have their rights you dumb fucking whote." Ex. 8 at p. 3 (emph. added).

- Subject line: "**Somebody should slap you in the fucking face** you pig." Ex. 8 at p. 4 (emph. added)

- Subject line: "Stupid fuck." Ex. 8 at p. 5.

- Subject line: "Violent lying whore." Ex. 8 at p. 6.

- Subject line: "Fuck you cunt." Ex. 8 at p. 7.

- "…**Watched you be a fat lying whore** of an americlown **on YouTube**…" Ex. 8 at p. 8 (emph. added).

- Subject line: "**Bye bye whore**." Ex. 8 at p. 9.

- Subject line: "We could fill five or 10 universes with the shit you don't know you fucking ignorant Cunt." Ex. 8 at p. 14.

Other messages Defendant Bowen or Defendant McKenzie received include the following:

- "…before you start lollygagging around and telling people they don't have free speech except for where you say they have free speech, **you silly silly pervert** [four middle finger emojis]." Ex. 5 p. 2 (emph. added).

//

//

//

- "…**you are a tyrant CUNT**. It's public property…We can criticize our government employee whenever we want. You are a fucking KAREN. **We will come and video you all we want you fucking NAZI BITCH**." Ex. at p. 3. "[discussing trespassing and constitutional rights] It is a shame that you are in the position that you hold. You should either educate yourself or resign immediately!" Ex. at p. 4 (emph. added).

- "…THE DISDAIN THIS WORTHLESS PUBLIC SERVANT HAS FOR THE PUBLIC IS DISGRACEFUL. Time for [Defendant Bowen] to go, the People have spoken." Ex. at p. 7.

- "all your feelings mean nothing… you idiots at libraries are fkn nazis…you would think you idiots with books and info you would know the first amendment. **pound sand you mutt**, grow up and learn the laws of this FREE country…" Ex. at p. 8 (emph. added).

- "How about you pull your head out of your ass **before you get the living shit beat out of you**. You trespassed a person for reasons hat fit your style**. You do the same to me and my group, and you'll be held to the whipping post and punished accordingly**. Resign ASAP you rotten lier [sic]. Or face public prosecution. You are a horrible person and you should leave our community." Ex. at p. 9 (emph. added).

- "I can see you are a disgrace to America…**grooming pedos**.. not sure about you being a pervert but democrats, trantifa, and this drag story time shit flys hand and hand… **STOP GRPOOMING** [sic] **KIDS YOU SICK FUCK**." Ex. at p. 15 (emph. added).

- "[discussing public space]…Your actions were reprehensible and I will be contacting the mayor to ensure you are disciplined and/or have you removed from your position…[discussing first amendment]… No such thing as a free speech zone!!!" Ex. at p. 16.

- "I have reviewed both YouTube videos.. Your librarian does not appear to be trustworthy… Rescind all the trespass presently in effect." Ex. at p. 17.

- "To: Tyrant Librarian… If you can't handle peoples' Right to Free Speech(which includes being redressed by members of the public)being called **a pervert, which you most certainly are**….you cant trespass them without them having broken a LAW. **Feckless, brainless, immoral trash people, like you**, is why this country/this world is falling apart." Ex. at p. 18 (emph. added).

- "You got busted **you fucking CUNT**. Typical tyrant employee." Ex. 5 at p. 20 (emph. added).

- "You are an uneducated **lying disgusting piece of shit** hopefully you get fired soon… You don't deserve to serve the community… You should be ashamed of yourself and quit…" Ex. 8 at p. 13 (emph. added).

- "YOU'RE JUST ANOTHER LYING OVERPAID LOSER!!! GROW UP YOU POS!!!" Ex. 8 at p. 12.

- "You are a fucking CUNT. The library belongs to the people, not you. You NAZI CUNT. **Please go home and unalive yourself please, you are a waste of space** in this Free America." Ex. 8 at p. 11 (emph. added).

Defendant Bowen and Defendant McKenzie also each received harassing voicemails in August 2024 following the Board meeting to uphold Ribar's trespass. Ex. 7 at ¶9; Ex. 9 at ¶11. The person stated Defendant Bowen was a member of the "fascist Nazis of America," that she had no choice, that she owed money, that she had to "pay up," that they would "put a lien on [Defendant Bowen's] property," that she joined the Nazis "the moment that [she] started pulling [her] BS with the library," that she would be on the front page of a newsletter for pedophiles looking to hire "groomers" "just in case they want to hire [her]… to groom their children," that they would be sending "randomly sending people in," that she could move to Russia, North Korea, or Cuba, and that caller assumed she was a "gay American female" and therefore those countries would "put [her] in jail and kill [Defendant Bowen]." Ex. 7 at ¶9. Similarly, to Defendant McKenzie the person invited her to join the "fascist nazis," because they "like to make [their] karenhood well-known" "from now on, [Defendant McKenzie is] a member of [their] fascist nazi group, [they] will be using [Defendant McKenzie's] picture, [they will] be doing everything [they can] to let everybody know what a fascist nazi [Defendant McKenzie is]," that their fees are $1,555 and they would put a lien on her property if she refused to pay. Ex. 9 at ¶11.

### iii. Impact on County Defendants

Mr. Ribar is currently seeking to depose and record Defendants Scott, Bowen, and McKenzie, who have each been targeted by Mr. Ribar and his YouTube channel. Those defendants and others involved with Mr. Ribar's videos have sustained substantial anguish as a result of Mr. Ribar's behavior, which demonstrates an actual threat of embarrassment and oppression if Mr. Ribar were permitted to publish compelled discovery material.

Defendant Bowen has already experienced substantial emotional harm as a result of Mr. Ribar's existing YouTube and social media posts. Ex. 7 at ¶7, ¶8. The email threatening

to beat and whip her made her fear for her personal safety, while others were immensely distressing. *Id.* at ¶8. She had difficulty with her work duties and had to take time off from work. *Id.* at ¶7. She had to seek mental health care and take medication to assist her with sleep. *Id.* at ¶10; ¶12; ¶14. She was humiliated having to discuss her interactions with Mr. Ribar and the ensuing harassing contacts with her husband and family. *Id.* at ¶12. She also expended personal funds on an "online deletion platform" to mitigate the harassing contacts from Mr. Ribar's videos. *Id.* at ¶13.

Similarly, Defendant McKenzie experienced stress and mental anguish as a result of Mr. Ribar's videos and ensuing harassment. Ex. 9 at ¶¶9–17. As Assistant Director, Mr. Ribar's behavior and the related harassment caused stress and interfered with staff's regular job duties, including addressing and advising staff on workplace protection and involving Washoe County's Workplace Violence Committee. *Id.* at ¶12. Defendant McKenzie expended personal time and money to install and maintain home security cameras, and to remove her personal information from the internet to avoid further attacks. *Id.* at ¶13. She was humiliated when disclosing the harassment to her family, and was unable to sleep due to the stress and fear it caused. *Id.* at ¶17. She still experiences substantial distress and hypervigilance when required to be near Mr. Ribar for public meetings. *Id.* at ¶14. To address her fear of retaliation or being verbally accosted by Mr. Ribar, Defendant McKenzie sits near an exit, and uses security staff to escort her to her vehicle when the meeting concludes. *Id.*

Defendant Bowen and Defendant McKenzie both continue to experience severe stress regarding the professional impacts of Mr. Ribar's videos and interactions with them. Ex. 7 at ¶11; Ex. 9 at ¶¶10, 15, 16. Mr. Ribar and others inaccurately labeling Defendant Bowen a "pervert" or "groomer" is especially distressing and damaging because her position involves servicing children in the library. Ex. 7 at ¶11. Defendant Bowen and Defendant McKenzie each avoid discussing their line of work with the general public, including unfamiliar neighbors, out of fear of harassment or humiliation in being connected to Mr.

Ribar's videos. Ex. 7 at ¶15; Ex. 9 at ¶16. Defendants Bowen, McKenzie, and Scott were required to attend the February 2025 Library Board meeting, during which Mr. Ribar provided public comment where he exclaimed, "FUCK OFF," stating that "I get to say whatever words I want… Freedom of Speech."[7] Ex. 7 at ¶7, ¶8; Ex. 9 at ¶19. He then addressed the Board and staff in the audience, including Defendant Bowen, Defendant McKenzie, and Defendant Scott referring to them as "liars," and that their inclusivity was "bullshit."[8] Ex. 9 at ¶19.

Defendant Scott continues to experience a negative work environment as a result of Mr. Ribar's videos and his misleading edits and video titles. Ex. 10 at ¶¶3, 4, 5, 6. The titles inappropriately depict Defendant Scott as a bully and as a violent person. *Id.* at ¶4. The videos mislead viewers, and as a result have disrupted Defendant Scott's relationships with the community as the Library Director and his relationship with the Library Board of Trustees. *Id.* at ¶5

### iv. Ribar's Actual Intent to Abuse Discovery in This Case.

Mr. Ribar expressly declared that he intends to publish discovery, including deposition video, on social media. Ex. 3; Ex. 4. He seemingly believes he is entitled to continue his scheme of harassment, and of inviting others to harass County Defendants. *See id.* He appears to be using the instant case to create content for his YouTube channel by displaying this litigation–in his words–in "**the court of public opinion**." Ex. 3 at p. 1 (emph. in original). He also appears to acknowledge the "embarrassment" that posting such videos "will bring." *Id.*

When discussing the instant issue, Mr. Ribar clarified that he "fully intend[s] to record and publicly disseminate the deposition videos of public officials testifying…" Ex. at p. 1. In the final section of a recent email titled "**My Intentions and Next Steps**," Mr. Ribar stated,

---

[7] https://youtu.be/C-sl1HHoG9I?feature=shared&t=5562
[8] https://youtu.be/C-sl1HHoG9I?feature=shared&t=9361

-14-

"**I will disseminate these deposition videos publicly**, including via YouTube…" Ex. at p. 2 (emph. in original). He expressed that he "will make sure that the **full details of this case are exposed to the public, the media, and most importantly, a jury.**" Ex. at p. 2 (emph. in original).

Mr. Ribar stated that if the County Defendants "truly stand by their actions, they should have no issue being held accountable in the **court of law and the court of public opinion**." Ex. at p. 1 (emph. in original).

### v.      Good Cause Exists for a Protective Order

Here, a protective order is appropriate to address an actual threat of abuse of discovery material, and actual threat of embarrassment, harassment, and oppression. Mr. Ribar's behavior with YouTube, third party harassment to County Defendants, County Defendants' mental impacts, and Mr. Ribar's expressed intent are specific facts that show a particular need for protection. *See Liu*, 2023 WL 5304490, at \*5.

The instant case presents a severe need for court intervention. In *Liu*, a similar protective order was warranted based on plaintiff posting edited footage of the underlying incident. Plaintiff was "using the instant lawsuit as content for his channel," and plaintiff intended to post deposition video *after the lawsuit concluded*. 2023 WL 5304490, at \*6. Here, like in *Liu*, Mr. Ribar has already posted numerous videos regarding the underlying incidences and several occasions where he uses the instant case for content on YouTube. Ex. 6 at pp. 3–17, 21–27. Even more alarming than the facts in *Liu* is that Mr. Ribar publicly posted County Defendants' contact information which invited doxing and reacting harassment. Ex. 5; Ex. 8. Moreover, Mr. Ribar directly expressed his intent to "disseminate these deposition videos publicly, including via Youtube…" Ex. 4 at pp. 1–2.

Additionally, like in *Serv. Emps. Int'l Union*, 2009 WL 2581320, at \*1, a protective order would be appropriate because Mr. Ribar intends to use compelled discovery to try this case in "the court of public opinion." Ex. 3 at p. 1. This fact alone demonstrates good cause

and demonstrates that Mr. Ribar is litigating this case for improper purposes, including to harass, humiliate, and attract viewers to his YouTube channel.

As set forth above, County Defendants' substantiated concerns warrant a protective order in this case. Mr. Ribar's YouTube activity is designed to humiliate the County Defendants and increase Mr. Ribar's commercial gain. *See* Ex. 6. A protection order is necessary to avoid misuse of this Court, and to protect the County Defendants from annoyance, embarrassment, and oppression.

### C. A PROTECTION ORDER SHOULD INDEFINITELY PROHIBIT ANY DISSEMINATION OF COMPELLED DISCOVERY.

The Court has "broad discretion… to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times*, 467 U.S. at 32. "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id.*

Here, a protective order preventing Mr. Ribar from disseminating any compelled discovery for any purpose other than litigating this case, including video of depositions and interrogatory responses, is appropriate. The order should prohibit any such sharing, posting, copying, and/or publication, unless it is strictly for the purposes of litigating this case—e.g., presented to this Court to determine an issue before it, or presented to a witness during a deposition. The protection order should be indefinite so as to address the actual threat presented here of abusing discovery materials and inviting reactive harassment onto the County Defendants.

### IV. COUNTY DEFENDANTS SHOULD RECEIVE ATTORNEY FEES.

Under Rules 26(c)(3) and 37(a)(5), if the instant motion is granted, the Court may order the nonmoving party to pay the moving parties' attorney fees. If it is granted in part, the Court may apportion reasonable expenses, including attorney fees incurred for the motion. FRCP 26(c)(3); FRCP 37(a)(5).

Here, County Defendants seek an award of their attorney fees incurred in having to file the instant motion. The need for a protective order exists only as a result of Mr. Ribar's conduct. Moreover, when presented with the applicable rule and examples of reactive harassment his videos have caused, Mr. Ribar still refused to consider any form of a protective order. Ex. 3; Ex. 4. Mr. Ribar's position is not justified and instead demonstrates bad faith in attempting to obtain discovery to use as YouTube content and try this case in the "court of public opinion." *See* Ex. 3. This Court should award County Defendants their reasonable attorneys' fees in an amount to be determined in subsequent briefing based on the *Brunzell* factors on subsequent order of this Court.

## V. CONCLUSION

The Court should issue a protective order in this case indefinitely prohibiting Mr. Ribar from disseminating any compelled discovery for any purpose other than litigating the instant case. Mr. Ribar has misused the instant litigation, and will abuse discovery materials by posting them to social media. Mr. Ribar's social media activity has already caused significant embarrassment, harassment, and oppression, and therefore an actual threat exists that the mental anguish will continue unless a protective order is entered. Additionally, the Court should prohibit recording meet and confer conversations or any other conversations with counsel. The Court should also award County Defendants their attorneys' fees incurred in having to bring the instant motion.

Dated this 19th day of March, 2025.

By    /s/ Lindsay L. Liddell
    LINDSAY L. LIDDELL
    Deputy District Attorney
    ANDREW COBI BURNETT
    Deputy District Attorney

    ATTORNEYS FOR WASHOE COUNTY DEFENDANTS

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, I deposited for mailing in the U.S. Mails, with postage fully prepaid, a true and correct copy of the foregoing document in an envelope addressed to the following:

DREW RIBAR
3480 PERSHING LANE
WASHOE VALLEY. NV 89704

I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

DREW RIBAR

ALISON R. KERTIS, ESQ.

Dated this 19th day of March, 2025.

                                        /s/ S. Haldeman
                                        S. Haldeman

## EXHIBIT INDEX

| | | |
|---|---|---|
| EXHIBIT 1 | Declaration of DDA Liddell | 1 page |
| EXHIBIT 2 | Email Re: Meet and Confer from DDA Liddell Dated March 11, 2025 | 3 pages |
| EXHIBIT 3 | Email Re: Meet and Confer from Mr. Ribar Dated March 12, 2025 | 6 pages |
| EXHIBIT 4 | Email from Mr. Ribar, dated March 13, 2025 | 11 pages |
| EXHIBIT 5 | Harassment emails sent to Ms. Bowen | 25 pages |
| EXHIBIT 6 | Auditing Reno 911 YouTube screenshots | 27 pages |
| EXHIBIT 7 | Declaration of Jonnica Bowen | 5 pages |
| EXHIBIT 8 | Harassment emails sent to Ms. McKenzie | 14 pages |
| EXHIBIT 9 | Declaration of Stacy McKenzie | 7 pages |
| EXHIBIT 10 | Declaration of Jeff Scott | 3 pages |

EXHIBIT INDEX