# EXHIBIT 9

# EXHIBIT 9

**<u>DECLARATION OF WASHOE COUNTY ASSISTANT LIBRARY DIRECTOR STACY McKENZIE</u>**
**<u>IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER</u>**

STATE OF NEVADA

COUNTY OF WASHOE

I, Stacy McKenzie do hereby declare, under penalty of perjury, the following:

1.  I am the Assistant Library Director of the Washoe County Library System based in Reno, Nevada. I am one of the named defendants in *Ribar v. Washoe County, NV*, District of Nevada case number 3:24-cv-0052-ART-CSD. I am being represented by the Washoe County District Attorney's Office.

2.  Plaintiff Drew Ribar ("Mr. Ribar") has filmed library staff, including myself, claiming to be a "First Amendment Auditor."

3.  On June 15, 2024, Mr. Ribar was suspended for one (1) year from all Washoe County library branches. Washoe County Library System had a three-level appeal procedure for suspensions: (1) to the Assistant Library Director; (2) to the Library Director, and (3) to the Library Board of Trustees. As the Assistant Library Director, I reviewed and denied Mr. Ribar's first appeal of this suspension on August 2, 2024, providing him with a copy of the decision via email and certified mail.

4.  Later, following the denial of Mr. Ribar's second appeal of this suspension to the Washoe County Library Director, Mr. Ribar validly appealed his one-year suspension to the Washoe County Library Board of Trustees for its third and final review.

5.  On August 21, 2024, I was present at the Washoe County Library Board of Trustees meeting where Mr. Ribar's third-level appeal would be heard. I was agendized to speak on Mr. Ribar's one-year library suspension at this meeting. My statements at this meeting addressed the circumstances surrounding Mr. Ribar's suspension and his subsequent conduct in attempting to defame and harass me online, mainly using his personal YouTube

//

1

1    channel, Auditing Reno 911. Mr. Ribar was present at this meeting and personally recorded
2    the meeting to later publish on his YouTube channel.

3    6.    Since July 25, 2024, my image has been featured as the thumbnail for five (5) of Mr.
4    Ribar's YouTube videos,[1] two of which have garnered over 5,000 views. Each of these
5    videos uses hostile and misleading language intended to harass or incite a response from
6    viewers, namely titles such as "Librarians lock children in keep parents out.;" "LGBTQ
7    lock child in Drag Queen Story hour, will not let out to see grandpa!!;" and "Public Library
8    Closed to public! Public funds for private event."

9    7.    On September 1, 2024, Mr. Ribar posted a compilation video to his YouTube
10   channel entitled "Violent 1A Audit at Library 365 Day Suspension on Trial."[2] This video is
11   one of those which feature me in the thumbnail and depict me in the video itself. The video
12   includes footage from the August 21, 2024, Washoe County Library Board of Trustees
13   meeting and instructs his viewers via text on-screen: "To file HR complaint against lying
14   government    employees    copy    and    paste    text    from    description    and    email    to
15   dsolaro@washoecounty.gov" [Assistant County Manager Dave Solaro]. The description of
16   this video contains the following script to be sent to Mr. Dave Solaro: "Mr. Solaro, This is
17   a human resources complaint against Washoe County Library Director Jeff Scott, Assistant
18   Library Director Stacy McKenzie and Library Manager Jonica Bowen, all named
19   individuals have violated the Washoe County Code of Conduct. The named individuals
20   have violated the "Honesty", "Respect", Duty to Serve the Public", Tolerance", Fairness"
21   //

22

23   [1] https://www.youtube.com/watch?v=tg4QUIlDReM ;
24   https://www.youtube.com/watch?v=pjAeOp2nzYk ;
     https://www.youtube.com/watch?v=5mzsBdDZcEk ;
25   https://www.youtube.com/watch?v=kbEBVpTBtOo ; and
     https://www.youtube.com/watch?v=AGCA332kXp4.
26
     [2] https://www.youtube.com/watch?v=AGCA332kXp4

1  and "Courtesy" sections of the written policy. The violations can be viewed in the following
2  videos. [Four linked videos from Mr. Ribar's Auditing Reno 911 YouTube channel]."

3     8.  Mr. Ribar has a history of recording, editing and disseminating videos to his
4  YouTube channel and followers which fail to accurately represent his entire interactions
5  with the public and public servants. He antagonizes staff and members of the public and
6  posts their reaction to his conduct. I have witnessed him filming his own hostile conduct,
7  but that footage does not appear on his YouTube channel. For example, following a
8  Washoe County Library Board of Trustees meeting, Mr. Ribar and his partner, Ursula
9  Burnett verbally accosted me and other library staff members in the hallway when he was
10 asked to leave. Mr. Ribar used hostile expletives towards staff. Ursula began raising her
11 voice in an expletive-filled rant, calling me a "bitch" amongst other derogatory terms. Mr.
12 Ribar filmed the interaction with a selfie stick to place his camera phone near staff's face.
13 However, the entirety of this interaction is noticeably missing from his YouTube channel.

14    9.  Following a now-removed YouTube video's call to action for Mr. Ribar's viewers to
15 "spot the government lies" for $100.00,[3] I arrived to work to discover my inbox flooded
16 with emails from the general public. The majority of these emails referred in some way to
17 Mr. Ribar's video content. These emails were emotionally painful to me and caused me
18 severe distress in attending to my daily work duties.

19    10. Contained in these emails were assertions that I was a Nazi, a pervert and a
20 groomer, among many other damaging terms, including but not limited to being called "a
21 uneducated lying disgusting piece of shit;" "a fucking CUNT;" "a NAZI CUNT;" asking
22 me to "go home and unalive myself;" "a stupid fuck;" "a fat lying whore;" "a violent lying
23 whore;" and stating someone "should slap you in the fucking face you pig," among many,
24 //

25
26
_____

[3] YouTube itself appears to have later removed this video.

1   many others. These allegations and assertions are damaging to me as a professional in my

2   specific line of work. Following receipt of these emails, I was emotionally distressed and

3   was advised to take some time off to process these attacks but was unable to do so given

4   my role as Assistant Director.

5       11. After Mr. Ribar posted videos of me speaking to the Library Board of Trustees

6   regarding his suspension, I received an unsolicited harassing voicemail.  The person invited

7   me to join the "fascist nazis," because they "like to make [their] karenhood well-known"

8   "from now on, [I would be] a member of [their] fascist nazi group, [they] will be using [my]

9   picture, [they will] be doing everything [they can] to let everybody know what a fascist nazi

10  [I am]," that their fees are $1,555 and they would put a lien on my property if I refused to

11  pay.

12      12. Mr. Ribar's behavior and the ensuing online harassment has consumed substantial

13  work-time resources, causing stress and interfering with regular job duties. As Assistant

14  Library Director, I oversee a large number of library employees and by taking time off,

15  even for a day, I would be unable to fulfill my job requirements. I was constantly worried

16  about my staff who had also been personally by Mr. Ribar and his followers, and was

17  forced to spend substantial time during work hours addressing and advising my staff on

18  these emerging issues in an attempt to ensure protection in the workplace, both for myself

19  and my staff. Our staff members visited the Workplace Violence Committee to address

20  concerns stemming from Mr. Ribar and his actions and many staff members received

21  support, either internally or externally.

22      13. Additionally, I have spent countless hours of my personal time and expended my

23  own personal funds in dealing with the emotional and physical fallout from these events. I

24  have installed security cameras within and around my home, I spent my personal time to

25  remove my personal information from the internet and paid for various security

26  subscriptions to obtain some semblance of privacy and feeling of protection.

14. At work, I am constantly concerned about being watched and followed. If I have to attend a meeting where Mr. Ribar will be present, I generally have security staff escort me to my car to better feel protected. I am always looking over my shoulder for fear of being retaliated against or getting verbally accosted by Mr. Ribar, forcing me to strategize to protect myself at Library Board meetings, such as sitting near exits.

15. I rely on my professional reputation to advance in my industry. Mr. Ribar's attempts to defame and harass me have caused me severe stress regarding my present career and job duties as well as the future of my professional career. Mr. Ribar's use of my name in a negative manner extends outside of library functions – he insists on naming me during speeches he gives at Washoe County Board of County Commissioners meetings.

16. I decline speaking about my job or where I work while in public, or when asked by friends and neighbors. I fear harassment or humiliation by revealing that I work for the Washoe County Library System. Due to the fear of retaliation by Mr. Ribar and his supporters, I believe Mr. Ribar will continue to target me in his online content with unwarranted accusations and misleading edited videos

17. I experienced personal shame when discussing these incidents, emails and harassment with my family. I was unable to sleep at night for fear of myself and my family's safety, as well as the overwhelming stress I was under due to the concerning, harassing, and threatening emails I was receiving.

18. Attached as an exhibit to Defendants' Motion for Protective Order, documents bates stamped WC0974 – WC0987, are true and correct copies of emails that I received between August 26, 2024, to September 2, 2024, following the Washoe County Library Board of Trustees' meeting held on August 21, 2024, in which Mr. Ribar's one-year library suspension was upheld on appeal. These emails were pulled directly from my personal Washoe County employee email account and constructed as a single document using PDF conversion.

19. Most recently, on February 19, 2025, I was required to attend the Library Board of Trustees Meeting where Mr. Ribar was present. During one public comment to the Board, Mr. Ribar began speaking to the audience in the room. I politely asked Mr. Ribar to address the Board when speaking during public comment, in conformance with the Board's policies and procedures, however Mr. Ribar exclaimed, "FUCK OFF," stating that "I get to say whatever words I want... Freedom of Speech."[4] In other public comment, Mr. Ribar raised his voice saying he was "pissed off," referring to staff and/or the Board as "liars," and that their inclusivity was "bullshit." [5]

20. My experience in dealing with Mr. Ribar and my depiction in his social media videos continues to be emotionally painful. I do not wish to be subjected to additional or prolonged harassment based on his publication of compelled discovery, including but not limited to potential deposition video of me.

//

//

//

//

//

//

//

//

//

//

//

------

[4] https://youtu.be/C-sl1HHoG9I?feature=shared&t=5562.

[5] https://youtu.be/C-sl1HHoG9I?feature=shared&t=9361.

6

21. I am attending a deposition in this case only because I must. I am fearful of being in the same room as Mr. Ribar. It takes significant mental preparation prior to seeing Mr. Ribar in meetings, causing severe emotional strain and an inability to focus on the most important thing to me, my work and staff. I am anxious about his unpredictable outbursts and fearful of being subjected to harassing questioning or yelling. I worry that he will antagonize me to get a reaction on video and then post video clips of the reaction on social media to embarrass me. I am also fearful of nonconsensual filming that results in misleading and oppressive videos of me and invites others to engage in unsolicited contact with me or about me.

I declare under penalty of perjury that the foregoing is true and correct.

STACY McKENZIE