1  LINDSAY LIDDELL
   Deputy District Attorney
2  Nevada State Bar Number 14079
   ANDREW COBI BURNETT
3  Deputy District Attorney
   Nevada State Bar Number 16505
4  One South Sierra Street
   Reno, NV 89501
5  lliddell@da.washoecounty.gov
   cburnett@da.washoecounty.gov
6  (775) 337-5700

7  ATTORNEYS FOR WASHOE COUNTY
   DEFENDANTS
8

9              UNITED STATES DISTRICT COURT

10                  DISTRICT OF NEVADA

11                        * * *

12  DREW RIBAR,

13          Plaintiff,                    Case No.  3:24-CV-00526-ART-CSD

14      vs.
                                          **REPLY IN SUPPORT OF MOTION
15  WASHOE COUNTY, NEVADA;                FOR PROTECTIVE ORDER
    WASHOE COUNTY LIBRARY                 RESTRICTING PUBLICATION OF
16  SYSTEM; BUILD OUR CENTER, INC.;       DISCOVERY**
    JEFF SCOTT; STACY MCKENZIE;
17  JONNICA BOWEN; LIBRARY                **(ECF No. 64)**
    EMPLOYEE DOE #1; JENNIFER COLE;
18  DEPUTY C. ROTHKIN (BADGE #5696);
    DEPUTY R. SAPIDA (BADGE #4663;
19  SGT. GEORGE GOMEZ (BADGE
    #4066); AND JOHN/JANE DOES 1+10,
20
            Defendants.\
21  _____/

22      Washoe County, Washoe County Library System, Jeff Scott, Stacy McKenzie,

23  Jonnica Bowen, Jennifer Cole, Deputy Rothkin, Deputy Sapida, and Sgt. Gomez ("Washoe

24  County Defendants") through counsel, Lindsay L. Liddell, Deputy District Attorney, hereby

25  file their Reply in Support of Motion for Protective Order Restricting Publication of

26  Discovery Materials.

                              -1-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

County Defendants seek a protective order indefinitely prohibiting Plaintiff Drew Ribar ("Ribar") from disseminating compelled pretrial discovery for any purpose other than for litigating this case. The Motion demonstrates that there is good cause for protection based on specific threats of discovery abuse arising from Ribar's intent to publish discovery on YouTube. It also demonstrates that there are specific threats of harm, embarrassment, harassment, and oppression resulting from Ribar's conduct on YouTube and the reactive harassment and doxxing from third parties that previously occurred against some County Defendants. Ribar claims there is no intent to misuse discovery, that publishing discovery material after case conclusion is permissible, that the previous harassment was unrelated, that his intent reflects transparency, and that this case is "legitimate public-interest litigation."

Ribar's Opposition contains troubling mischaracterizations of law, citing numerous real cases for fictitious legal propositions. On this basis alone, an award of attorney's fees would be warranted under the Court's inherent authority. Attorney fees are nonetheless warranted under Rule 37 based on County Defendants' effort in obtaining a protective order if it is granted, and lack of substantial justification for the opposition.

The Court should issue a protective order prohibiting Ribar from publishing compelled discovery, prohibiting Ribar from recording any meet and confers between himself and counsel and/or from recording any depositions between himself and County Defendants, and awarding County Defendants their attorney fees.

### II.    THE COURT SHOULD PROHIBIT RECORDING MEET AND CONFERS

As an initial matter, County Defendants seek to prohibit Ribar from recording meet and confers with counsel because it is inappropriate, impedes conferences, and could be published on Ribar's social media giving rise to harassment. County Defendants and Ribar

1    were unable to meaningfully meet and confer via telephone for this Motion because Ribar

2    refused to engage unless he could record the call. Ribar claims there is no good cause for an

3    order prohibiting him from recording such teleconferences. (ECF No. 72 at p. 4) He also

4    erroneously claims Nevada law permits such a recording. *Id.* On the contrary, it is a category

5    D felony to record wire communications, such as telephone calls, without the party's

6    consent. Nev. Rev. Stat. 200.620; Nev. Rev. Stat. 200.690.

7        The Court should issue an order prohibiting Ribar from recording meet and confers

8    so that the parties may meaningfully and in good faith participate in informal dispute

9    resolution conferences.

10   **III.    LEGAL ANALYSIS IN SUPPORT OF A PROTECTIVE ORDER**

11       **A.    THE COURT HAS SUBSTANTIAL LATITUDE AND BROAD DISCRETION TO
12           STRUCTURE PROTECTIVE ORDERS.**

13       "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallet v.*

14   *Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The Motion explains that courts have "broad

15   discretion" regarding discovery and "substantial latitude to fashion protective orders."

16   *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). For good cause, the court may "issue

17   an order to protect a party or person from annoyance, embarrassment, oppression, or undue

18   burden or expense[.]" FRCP 26(c).

19       Ribar inaccurately asserts to the Court that "[p]rotective orders must be narrowly

20   tailored…, balancing discovery's non-public status…with First Amendment Rights." (ECF

21   No. 72 at p. 2) This is not the law. Ribar cites *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470,

22   475 (9th Cir. 1992), for the proposition that "[p]rotective orders must be narrowly tailored."

23   *Id. Beckman* addressed a third-party intervenor's challenge to a protective order, and did not

24   in any way hold that protective orders must be narrowly tailored. *See* 966 F.2d 470. The

25   words "narrow" or "tailored" do not appear anywhere in that case. *Id.* Ribar cites *Seattle*

26   *Times* for the proposition that the Court must balance "discovery's non-public status." (ECF

No. 72 at p. 2) The word "balance" does not appear in *Seattle Times*, and instead *Seattle Times* emphasized that compelled discovery is not public, and restraints are not restrictions on public information. 467 U.S. at 33. Ribar cites *Public Citizen v. Liggett Group*, 858 F.2d 775, 789 (1st Cir. 1988) and *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) for the proposition that the Court must balance First Amendment rights when issuing protective orders in discovery. (ECF No. 72 at p. 2) *Public Citizen* addressed a third-party's post-judgment attempt to access discovery that was filed under seal pursuant to a protective order, and did not hold that a pre-trial protective order requires any First Amendment analysis. *Glik* does not address protective orders at all and instead discusses the general right to film officers in public. 655 F.3d at 84. Ribar's fictitious citations waste County Defendants time and judicial resources.

Next, Ribar groundlessly argues that an indefinite protective order "is an unconstitutional prior restraint." (ECF No. 72 at p. 4) For his contention that County Defendants' requested protective order is vague, he cites *Liu v. City of Reno*, case no. 3:22-cv-00551-CLB, 2023 WL 5304490, at *5 (D. Nev. Aug. 17, 2023), in which the court actually issued a blanket protection order for pre-trial compelled discovery. (ECF No. 72 at p. 4) He erroneously claims *Seattle Times* "demand(s) narrow tailoring," when in reality, as described above, *Seattle Times* explicitly rejected such an argument. *Id.*; 467 U.S. at 31. To support his "narrow tailoring" argument, he also cites *Near v. Minn.*, 283 U.S. 697, 713 (1931), which addressed a statute prohibiting a newspaper from publishing "scandalous and defamatory matter," and did not address pretrial discovery or protective orders. (ECF No. 72 at p. 4) The Court, with its broad discretion and substantial latitude, may issue a blanket protective order regarding compelled pretrial discovery, e.g. deposition videos, transcripts, and interrogatories, where there is good cause. *See Seattle Times*, 467 U.S. at 37.

According to the U.S. Supreme Court, "[a] litigant has no First Amendment right of access to information made available only for purposes of litigation." *Seattle Times*, 467 U.S. at 32. The U.S. Supreme Court unambiguously rejected the petitioner's argument that

protective orders may only be entered with a showing of "compelling government interest," and that such orders "must be narrowly drawn and precise." *Id.* at 31. In so doing, the Court explained that such a ruling "would impose an unwarranted restriction on the duty and discretion of a trial court to oversee the discovery process." *Id.* Instead, "prevention of abuse that can attend the coerced production of information under a… discovery rule is sufficient justification for the authorization of protective orders." *Id.* at pp. 35–36. Ribar's citations to *Seattle Times* are not only fictious, but are the opposite of the case's obvious holding.

The need for particularization comes not from contours of the protective order itself, but rather from the circumstances giving rise to the need for protection. *See Liu,* 2023 WL 5304490, at *5. The potential for harm, abuse, embarrassment, oppression, etc. must be supported by specific examples or particular facts. *Id.* Ribar asks the Court to make particularized findings regarding "harm, scope, and alternatives" to preserve review. (ECF No. 72 at p. 5) He cites *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 109 (2009) to support his request, but that case has no relation to protective orders and instead analyzes appealability of orders to compel disclosure under the "collateral order doctrine." (ECF No. 72 at p. 5) Nonetheless, this Court should find that County Defendants have presented good cause for protection based on particularized threats of harm. *See* FRCP 26(c); *Liu,* 2023 WL 5304490, at *5. As set forth below, the case at hand is not merely speculation based on exaggerated worries of a party—it involves a party who has stated his intent to misuse discovery, and defendants who have experienced appalling harassment, embarrassment, and oppression that is certain to worsen or reoccur without a protective order.

## B.    GOOD CAUSE EXISTS BASED ON PARTICULARIZED THREATS OF HARM.

The Motion presents good cause for a protective order based on specific examples of harassment, embarrassment, and oppression from Ribar's conduct and the reactive conduct from third parties. Additionally, it shows a specific threat based on Ribar's intent to publish pretrial discovery. Ribar claims discovery misuse does not exist and is not planned, that prior

1    harassment is not related, his intent to publish discovery after the case concludes is not abuse,

2    and that there is "public interest" in this case. (ECF No. 72 at pp. 2–4)

3        In the instant case, there is an actual threat of discovery abuse. Though Ribar claims

4    no misuse is "planned," he acknowledges his intent to publish discovery including deposition

5    video, now claiming he will do so when the case resolves. *See* (ECF No. 72 at pp. 2–3); (ECF

6    No. 64-3 at pp. 2, 4); (ECF No. 64-4 at p. 3). Ribar misstates the circumstances in *Liu*, 2023

7    WL 5304490, at *5, attempting to differentiate his position by claiming *Liu* involved a "mid-

8    case posting" of discovery materials. (ECF No. 72 at p. 3) In reality, *Liu* dealt with a pro se

9    YouTuber plaintiff who previously posted about the case, and then claimed he would not

10   use depositions on YouTube until after the case resolved—the court found that the use of

11   deposition videos for purposes other than litigation even *after case conclusion* demonstrated a

12   "clear and specific threat that a party will use discovery materials in an abusive manner."

13   2023 WL 5304490, at *6. Ribar's statements are nearly identical to the facts in *Liu*, and his

14   intent to publish compelled discovery for whatever purpose he claims is nonetheless a

15   purpose outside litigating the instant case. Moreover, like *Liu,* who on YouTube, posted a

16   summons issued in his case, Ribar has posted multiple videos containing and discussing

17   filings from this case. *Liu,* 2023 WL 5304490, at *6; (ECF No. 64-6 at pp. 26, 28). Thus, there

18   is a clear and specific threat that Ribar will misuse pretrial discovery material thereby

19   warranting a protective order.

20       More to the point, Ribar erroneously claims that his "intent reflects post-litigation

21   transparency, not abuse." (ECF No. 72 at p. 3). This is a distinction without a difference.

22   Information provided during discovery is not public, and posting such information even after

23   case conclusion is abusive where it presents actual threats of harm, embarrassment, undue

24   burden, or oppression. *See Liu,* 2023 WL 5304490, at *5–6. Ribar further misstates the

25   holding in *Liu*, claiming that "post-resolution transparency…[was] permissible"—the court

26   in *Liu* held no such thing. *Id.*; (ECF No. 72 at p.3). Ribar also erroneously claims there was

"no litigation goal" in *Serv. Emps. Int'l Union v. Rosselli*, case no. C 09-00404-WHA (MEJ), 2009 WL 2581320, at *1 (N.D. Cal. Aug. 20, 2009), when in reality, that case addressed a litigant in active litigation who wished to use deposition video for both litigation and to "make their case in the court of public opinion." Ribar does the same here, acknowledging his intent to try this case in the "court of public opinion," and threatening to "make sure full details of this case are exposed to the public, the media, and most importantly, a jury." (ECF No. 64-3 at pp. 2, 4) (emph. removed)

The harassment thus far has been substantial. *See* (ECF Nos. 65-5, 64-8); (ECF No. 65-7 at ¶¶5–18); (ECF No. 64-9 at ¶¶5–19); (ECF No. 64-10 at ¶¶4–6). Ribar claims the harassment is unrelated when in actuality it arose from his conduct regarding circumstances underlying the alleged facts of this case. *See id.*; (ECF No. 64-6 at pp. 1–17, 21). He argues "public filming [is] protected," but no such right lies to misuse discovery material. *See* (ECF No. 72 at p. 3); *Seattle Times*, 467 U.S. at 33 (finding that litigants have no First Amendment right of access to discovery material). To argue lack of specific harm, Ribar cites a case analyzing a constitutional challenge to a criminal law barring possession of virtually "morphed" child pornographic material where no children were involved in making the pornography. (ECF No. 72 at p. 3); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002). This is irrelevant to the Rule 26(c) analysis of particularized threats of harm warranting a protective order for civil discovery. Ribar does not dispute that he has posted videos regarding this case, regarding the facts underlying this case, that his videos are edited, that his videos contain misleading and antagonistic captions, that he posted some County Defendants' contact information on videos, that some County Defendants were doxxed, that some County Defendants have been harassed, some have been embarrassed by Ribar's and reactive third party conduct, that some experience significant stress, mental anguish and fear for personal safety, their work relationships have been oppressed, and that they generally feel unsafe in Ribar's physical presence. *See* (ECF No. 72)

While failing to acknowledge or rebut his own misconduct, Ribar erroneously claims County Defendants did not present evidence that he "directed or encouraged third-party actions." (ECF No. 72 at p. 3). However, County Defendants have presented evidence that: the third-party harassment began immediately following Ribar posting videos with their contact information; that Ribar indeed posted their contact information on his videos; that several harassing third-party emails indirectly reference Ribar, Ribar's contentions regarding his library suspension, directly reference his videos, and showed one harasser directly engaging with Ribar's YouTube channel. (ECF No. 64-5); (ECF No. 8); (ECF No. 64-6 at p. 20); (ECF No. 64-7 at ¶¶6–8, ¶¶15–16, ¶¶18–20); (ECF No. 64-9 at ¶9, ¶11, ¶¶19–20). This evidence shows that there are clear, particularized threats of harm if Ribar were otherwise permitted to publish compelled discovery material, further warranting a protective order.

County Defendants seek a protective order to address threats associated with Ribar's use of compelled discovery based on harassment and abuse that took place thus far resulting from Ribar's videos and conduct.[1] They do not currently seek a "gag" order preventing him from discussing this case. Like in *Seattle Times*, the protective order sought does not prevent a party from disseminating information "gained through means independent of the court's process." 467 U.S. at 33. Nonetheless, a protective order is necessary to prevent abuse of this court and to protect County Defendants from actual threats of embarrassment, harassment, and oppression arising out of Ribar's intent to publish pretrial discovery received in this case.

//

---

[1] To be clear, County Defendants do not generally oppose transparency in government. Any person is free to avail themselves of public records laws to gather information on their government's conduct. An informed citizenry is vital to democratic function, especially if officials behave in a way that threaten democracy. Notwithstanding, "transparency" is not furthered by antagonizing government employees with cameras, posting edited and one-sided videos, inviting harassment onto government employees by engaging in performative litigation, or by otherwise misusing the judiciary.

1   There is good cause to issue a protective order, and the protection should survive the

2   termination of this case.

3   **IV.    AN AWARD OF ATTORNEY FEES IS WARRANTED.**

4       Attorney fees are appropriate both under Rule 37 and under the Court's inherent

5   authority to sanction. The Court should award attorney fees in an amount to be determined

6   by subsequent briefing regarding the *Brunzell* factors.

7   **A.    Attorneys' Fees are Appropriate Under Rule 37.**

8       Attorneys' fees may be awarded to the prevailing party under Rule 37. However, fees

9   are inappropriate if the movant failed to meet and confer in good faith, the opposing party

10  was "substantially justified," or "other circumstances make an award of expenses unjust."

11  *Clare v. Clare*, No. 4:18-cv-05045-SAB, 2021 WL 6206977, at *3 (E.D. Wash. June 11, 2021).

12  Substantial justification looks at whether "reasonable minds could genuinely differ" on the

13  discovery rule. *Id.*

14      A party's *pro se* status does not protect him from sanctions or attorney fees as a result

15  of disobeying discovery rules. *See, e.g.*, *Garity v. Donahoe*, No. 2:11-cv-01805-MMD, 2014

16  WL 1168913, at *6 (D. Nev. Mar. 21, 2014); *Barren v. Robinson*, No. 2:11-cv-00650-RLH-

17  CWH, 2014 WL 12623012, at *1 (D. Nev. Apr. 24, 2014). Likewise, a *pro se* party may not

18  avoid Rule 37 attorney fees simply because the opponent is a government entity and the

19  opponent's attorney is employed as their in-house counsel.[2] *See Duensing v. Gilbert*, No. 2:11-

20  cv-01747-GMN, 2013 WL 2476810, at *5 (D. Nev. June 7, 2013) (ordering *pro se* plaintiff to

21

22  _____

23  [2] *See also Mezzano v. Second Jud. Dist. Ct. of the State of Nev.*, No. 3:23-cv-00324-RCJ-CSD, 2023
    WL 8111754, at *5 (D. Nev. Nov. 22, 2023) (awarding Washoe County Deputy District

24  Attorney's fees at the reasonable market rate); *Acosta v. Sw. Fuel Mgmt., Inc.*, Case No.
    CV164547FMOGRX, 2018 WL 1913772, at *10 (C.D. Cal. Mar. 28, 2018) (awarding

25  assistant California attorneys general fees at the reasonable market rate); *Ex.-Imp. Bank of the
    U.S. v. United California Disc. Corp.*, Case No. CV 09-2930 CASPLAX, 2011 WL 165312, at

26  *2 (C. D. Cal Jan. 12, 2011) (awarding a reasonable market rate to government attorneys,
    even though they were paid a salary and did not formally bill clients).

1    pay Las Vegas Metropolitan Police Department's reasonable attorney fees in preparing

2    motion and reply); *see also Shabazz v. Giurbino*, No. 1:11-cv-01558-DAD-SAB (PC), 2016 WL

3    4992684, at *2 (E.D. Cal. Sept. 19, 2016) (ordering attorneys' fees where *pro se* plaintiff's

4    opposition to government defendants' motion to compel was not justified).

5        Here, County Defendants attempted to meet and confer with Ribar prior to filing this

6    Motion. (ECF Nos. 64-1, 64-2). In his Opposition using fictitious case law as support, Ribar

7    argues his restraint in posting discovery material thus far shows good faith. (ECF No. 72 at

8    p. 5). Ribar cites to *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) in support of this

9    contention, a case which lacks any discussion of "restraint," "good faith," attorney fees, Rule

10   37, or protective orders. This argument alone shows an award of attorney fees is just, and

11   that Ribar's position is not substantially justified. Ribar further lacks substantial justification

12   for his position because it is not in any way supported by law, and he fails to dispute that he

13   intends to publish discovery or that his conduct caused substantial harassment to County

14   Defendants thus far.

15       Ribar, while *pro se*, is not *in forma pauperis* in this Court, receives money from his social

16   media activity, and apparently owns at least one business. (ECF No. 64-6 at p. 19); (ECF

17   No. 64-3 at pp. 2, 4). This is not a case of an impoverished inmate seeking redress for

18   perceived unconstitutional behavior, while making a few misguided steps along the way.

19   This is a plaintiff who is choosing to represent himself, has used this case for social media

20   content, who refuses to use discovery only for purposes of litigating this case, who has

21   subjected some County Defendants to significant harassment, and who should be sanctioned

22   with attorney's fees arising out of this Motion.

23   **B.    The Court May Also Award Fees Based on its Inherent Authority.**

24       As set forth above, Ribar's Opposition entirely relies on hallucinated fictitious

25   statements of law. Submitting a document with fictitious case law "to the court 'degrades or

26   impugns the integrity of the Court' and interferes with the administration of justice.'" *United*

*States v. Hayes*, No. 2:24-CR-0280-DJC, 2025 WL 235531, at *7 (E.D. Cal. Jan. 17, 2025). Attempts to persuade a court or opposing party by relying on "non-existent precedent generated by Chat GPT" is an "'abuse of the adversary system.'" *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023). Parties are obligated, at minimum, to "confirm the existence and validity of, the legal authorities on which they rely." *Park*, 91 F.4th at 615.

Here, Ribar understands his duty not to submit fictitious law to the Court. In a YouTube video,[3] he demonstrated to his viewers how he generates legal documents with Chat GPT's "Super Legal Writer," but advised viewers to "be careful if you're using any of this." Ex. 1 at pp. 1–2. He then demonstrated how he has an account with LexisNexis and uses it to verify cases in the Chat GPT draft, explaining he "go[es] through this before [he] submit[s] it to the court…and make sure what the courts have …matches what [he is] trying to achieve in [his] document." *Id.* at p. 3. Ribar apparently did not take his own advice in opposing this Motion. Instead, he filed a document flooded with Chat GPT-fabricated legal contentions. (ECF No. 72) In doing so, he frivolously expended County Defendants' and the Court's resources.

Sanctions imposed under the Court's inherent authority require a finding of bad faith. *See Lahiri v. Univ. Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010). Ribar's blind reliance, presumably on Chat GPT, despite understanding that he must verify legal citations before submitting them to this Court, was bad faith. This behavior is unacceptable and interferes with the administration of justice. Even if attorney fees were otherwise unavailable under Rule 37, an award of attorneys' fees based on the Court's inherent authority to sanction is appropriate based on Ribar's bad faith conduct in submitting fictitious case law to this Court.

---

[3] https://www.youtube.com/watch?v=CzNHw36-cas (last visited April 3, 2025).

**V.    CONCLUSION**

The Court should issue a protective order to indefinitely prohibit Ribar from disseminating any compelled discovery (including deposition video footage) for any purpose other than litigating the instant case, an order prohibiting Ribar from recording meet and confers with counsel, and award County Defendants their reasonable attorney's fees incurred in bringing this Motion.

Dated this 7th day of April, 2025.

By     /s/ Lindsay Liddell
LINDSAY LIDDELL
Deputy District Attorney
ANDREW COBI BURNETT
Deputy District Attorney

ATTORNEYS FOR WASHOE COUNTY
DEFENDANTS

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action.  I certify that on this date, I deposited for mailing in the U.S. Mails, with postage fully prepaid, a true and correct copy of the foregoing document in an envelope addressed to the following:

DREW RIBAR
3480 PERSHING LANE
WASHOE VALLEY, NV 89704

I certify that on this date, the foregoing was electronically filed with the United States District Court.  Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

DREW RIBAR

ALISON R. KERTIS, ESQ.

Dated this 7th day  of April, 2025.

　　　　　　　　　　　　　　/s/ S. Haldeman
　　　　　　　　　　　　　　S. Haldeman

.

<u>EXHIBIT INDEX</u>

EXHIBIT 1          Plaintiff's YouTube ChatGPT Demonstration          3 pages

<u>EXHIBIT INDEX</u>