# EXHIBIT 41

# EXHIBIT 41

## DECLARATION OF JENNIFER COLE

I, Jennifer Cole, do hereby declare, under penalty of perjury, the following:

1. I am a Librarian at the South Valleys Library, located at 15650-A Wedge Parkway in Reno, Nevada (the "Library").

2. On Tuesday November 12, 2024, I was managing the Library. Around approximately 10:45 a.m., I was informed that Drew Ribar was in the Library and asking to speak to someone "in charge." I was familiar with Ribar, including what he looked like, that he was suspended from the Library from one year a few months prior, and that he has previously harassed Library staff including by interrogating them while he filmed them for his YouTube videos. At that time, the Library had a general Story Time event for children and their parents occurring, and other guests using the Library. I was apprehensive of Ribar causing a disturbance to staff or Library visitors, knowing he was already suspended.

3. I approached Ribar and introduced myself. Ribar questioned me regarding another person who was restricted from the Library, with which I was not familiar. I told him that I knew Ribar was suspended from the Library and I asked him to take the conversation outside. Ribar did not leave and instead responded, "Well why would I do that?" I explained it was because he was suspended. Ribar stated, "Well, are you saying I'm trespassed, cause that's a legal thing," that he did not believe he was trespassed, and then began interrogating me on Library standards to trespass visitors. I felt that Ribar was being verbally combative and antagonistic so that he could get a reaction from me for his video.

4. Even though this put me under a lot of stress, I tried to appear calm when talking to Ribar. I decided to search for the records showing he was trespassed/suspended in hopes that he would peacefully leave the premises. While I searched for the records, Ribar continued to interrogate me about press rights, the definition of "the press," and his belief that he was not disrupting staff. I told Ribar that he was preventing me from carrying out my other job duties, and Ribar asked "isn't dealing with the public your job?"

1

5. I had to go to my desk/computer to continue searching. I asked Ribar to wait by the front door while I did this. Ribar refused, saying "Oh, I'm going to walk through the Library and look at everything." I felt like Ribar was escalating the situation. He was suspended, refusing to leave, and ignoring my requests to wait where he would not disturb members of the public visiting the Library.

6. In my office, I messaged Library Director Jeff Scott and Assistant Library Director Stacy McKenzie for guidance, and was instructed to call law enforcement. I then called 911 and reported that Ribar was trespassed and refusing to leave. I also provided the 911 operator with a physical description of Ribar. I opted to stay on the line with the 911 operator while I subsequently addressed Ribar because I was fearful that he would continue to escalate.

7. I then approached Ribar and told him I found his suspension paperwork. Ribar responded, "Yeah, I'm restricted from the Library for a year." When I informed Ribar that Sheriff's Deputies were enroute, Ribar responded, "so am I lawfully trespassed?" I told him yes.

8. Ribar explained to me that he "want[e]d" or "need[ed]" to be trespassed, "because [he's] going to file a federal lawsuit," and Ribar "just want[ed] to have more standing." He also said that he wanted Library staff to tell him he was trespassed from attending public meetings at the Library. I told him that I knew staff had not done that. Ribar continued to interrogate me regarding the trespass and who I was talking to on the phone. I told him I was on the phone with law enforcement, and that they asked me to disengage.

9. I attempted to walk away from Ribar. He then continued to ask me questions, saying "Can you define what action I took that was bad today? Or just my mere existence?" I explained, "You're violating a trespass. You're violating a–." Ribar cut me off, and said "So you did use the word trespass." I attempted to explain while Ribar talked over me. I again told Ribar that I was going to disengage. As I walked away, Ribar continued to loudly ask me questions.

2

10. I then walked into my office.

11. Inside the Library, I first spoke to Deputy Rothgeb, a Sheriff's Deputy who was responding to my call. I provided him a copy of an incident report involving Ribar at the North Valleys Library from June 2024 where Ribar caused an injury to another staff member. I informed Deputy Rothbeg that Ribar was suspended from the Library for one year, except that he may attend "public meetings." I explained that only the "board chair" for the public meetings may exclude him from those meetings, which is why Ribar was currently permitted to attend those meetings. I informed Deputy Rothbeg that there was no public meeting being held at that time. I further informed him that Ribar's suspension began in July 2024 and prohibits him from all Library services.

12. Sergeant Gomez later came into the Library and talked to me about whether Ribar was served with any notice regarding his suspension. I was not personally involved in the suspension or subsequent appeals, and was not intimately familiar with those details. I contacted Assistant Director McKenzie to get details, who offered to speak to Sergeant Gomez on the phone. Sergeant Gomez then spoke to her. During this time, I was able to locate the Library Board of Trustee meeting minutes that showed Ribar had notice of the suspension, appealed the suspension, and that in August 2024, the Library Board of Trustees upheld his suspension. I printed the minutes and provided them to Sergeant Gomez.

13. The 911 call identified in the WAV file titled "Non-Emergency Dispatch Call 11-12-2024" is true and correct copy of the 911 call I made on November 12, 2024, regarding Drew Ribar at South Valleys Library, except with redacted/muted audio for the personally identifying information for both me and Ribar that I provided during the call.

14. The PDF file titled "November 2024 Incident Report by Jennifer Cole" is a true and correct copy of the incident report that I created following the November 12, 2024 incident involving Drew Ribar.

3

_____
JENNIFER COLE