# EXHIBIT 44

# EXHIBIT 44

## DECLARATION OF DEPUTY SAPIDA

I, Deputy Sapida, do hereby declare, under penalty of perjury, the following:

1. I am a Washoe County Sheriff's Deputy, employee number 4663.

2. On Tuesday November 12, 2024, at approximately 10:58 a.m., I responded to a call for service at the South Valleys Library regarding a subject who was previously trespassed, causing a verbal disturbance, and refusing to leave. When I arrived, a white male, about 60 years old, wearing jeans and a jacket, and wearing a camera harness on his chest, was standing outside next to a small tripod holding another camera. The person stated to me, "My Name is Drew," and I responded, "Oh, you're Drew Ribar?" Based on this, I believed he was Drew Ribar ("Ribar"), the subject of the possible trespass at the Library. Deputy Rothgeb arrived and went inside the Library to investigate the trespass with Library staff.

3. I spoke with Ribar outside the Library to investigate the situation. Ribar explained he attended the "last Library Board meeting," and was at the Library to find out information regarding another individual who was trespassed from the Library. Ribar explained he was filming for YouTube, and claimed no one would "tell me" whether he was trespassed. Sergeant Gomez arrived while I was talking to Ribar outside.

4. I asked Ribar, "Do you have your ID on you sir?" Ribar responded, "Do you have a reasonable cause," and I stated, "'cause we're contacting you for a call for-about trespassing." Ribar spoke over me, and said "but- but- do you have a reasonable articulable suspicion that I committed a crime? I'm not trying to be difficult. There's just the law." I explained, "Right now they're saying you're trespassed from the building. That's what we're trying to investigate." Ribar spoke over me, and stated "if it's under threat of arrest, you've got cause, I will give it to you 'cause there's caselaw that says I've got to. If you don't have any reasonable suspicion I will not if I'm not going to be arrested." I attempted to re-articulate the basis for my request, stating "so, right now, 'cause they called us for a possible trespassing we do have the legal authority to be here and there's NRS that says you have to provide information–your identification–your information, like it applies."

1

1  Ribar did not immediately provide me his ID card, and instead stated "So is it under threat
2  of arrest? If I don't give you my ID I will be arrested." I explained it would "come down to
3  obstructing and resisting." Ribar cut me off, stating "I just need you to clarify" regarding a
4  "threat of arrest." Ribar then claimed he was never "given lawful notice" of a trespassing.
5  Ribar was verbally combative and was refusing to provide his ID.

6     5. Sergeant Gomez stepped in and told Ribar, "You have to provide your ID, please.
7  Under 171.123, we're doing a lawful investigation here, okay. We're trying to do right be
8  you and make sure you're lawfully trespassed…" Ribar then picked up his camera tripod
9  and held it towrd Sergeant Gomez. Sergeant Gomez again asked for Ribar's ID card, and
10 Ribar provided it to Sergeant Gomez who then handed it to me. I confirmed Ribar's
11 identity using the ID card.

12     6. When Sergeant Gomez questioned Ribar as to whether he has ever been in trouble
13 with the Library, Ribar responded, "Oh, I'm restricted. I was restricted for a year." Ribar
14 then claimed that Library Director Jeff Scott battered him, Ribar reported it, and "you guys
15 did nothing… you shit-canned it." Ribar also talked at Sergeant Gomez regarding the
16 "transexual story hour."

17     7. When Deputy Rothgeb returned outside, he explained to Ribar that Ribar was
18 trespassed from the Library except to attend public meetings. Ribar questioned the nature
19 of the trespass and questioned his "press rights." Ribar told us to read the Constitution, and
20 claimed he did not know whether he was restricted from entering a Washoe County
21 Library to "ask questions." Sergeant Gomez went into the Library to further his
22 investigation.

23     8. Deputy Rothgeb and I remained outside with Ribar, who continued to claim he
24 "was never trespassed" from the Library. Ribar also spoke to us about his YouTube
25 Channel, politics, videos he previously filmed, his perceived issues with the DMV, question
26 whether we had cause to request his ID, etc.
27

2

9. Sergeant Gomez returned outside with Library Board of Trustee meeting minutes where Ribar's Library suspension was upheld. Ribar acknowledged he was suspended, that he appealed, and that the suspension was upheld. Ribar also asked Sergeant Gomez, "so I can't go to the public meetings either?" Sergeant Gomez explained that Ribar could attend public meetings due to a "loophole," and that Ribar knows this. Ribar interrogated Sergeant Gomez regarding the Constitution and his status as "press."

10. Sergeant Gomez provided Ribar a trespass warning, and then I left the premises as Ribar was leaving.

11. The bodyworn camera footage identified in the .mp4 file titled "TRESPASS-INCIDENT Body Cam Footage 11-12-2024" is a true and correct copy of my bodyworn camera footage recorded on November 12, 2024, for the call for service regarding Drew Ribar at South Valleys Library.

_____
DEPUTY SAPIDA #4663

3