LINDSAY LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
COBI BURNETT
Deputy District Attorney
Nevada State Bar Number 16505
One South Sierra Street
Reno, NV  89501
lliddell@da.washoecounty.gov
cburnett@da.washoecounty.gov
(775) 337-5700
ATTORNEYS FOR WASHOE COUNTY
DEFENDANTS

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

**\* \* \***

DREW RIBAR,

        Plaintiff,

    vs.

WASHOE COUNTY, et al.

        Defendants.

_____/

Case No.  3:24-CV-00526-ART-CLB

**DEFENDANT COLE'S
MOTION TO DISMISS**

**(ECF No. 65-1)**

      Jennifer Cole ("Defendant Cole") and Washoe County hereby move to dismiss Plaintiff Drew Ribar's ("Ribar") First Amended Complaint ("FAC") (ECF No. 65-1).[1] This motion is based on FRCP 12(b)(6), the following Memorandum of Points and Authorities and all pleadings and papers on file.

//

//

//

//

//

//

---

[1] This Motion is filed on behalf of Defendant Cole. Washoe County joins as a moving party to the extent the claims against the County arise out of claims against Defendant Cole.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Ribar's claims against Defendant Cole are disconnected from both the law and fact. The only allegation in the FAC against Defendant Cole is that she was "involved in supervision failures" (ECF No. 65-1 at p. 5 ln. 1). Yet, Ribar alleges seven claims against her: a First Amendment claim, a Fourteenth Amendment Equal Protection claim, two conspiracy claims, a Nevada Constitution claim, an Intentional Infliction of Emotional Distress claim, and a Defamation Claim. Ribar also alleges a *Monell* claim and "Negligence/Negligent Supervision" claim against Washoe County, which appear to relate in part to Defendant Cole.

The Court should dismiss the FAC against Defendant Cole with prejudice. The FAC's video exhibit shows that Defendant Cole's only interaction with Ribar involves him appearing at a library after he was suspended, harassing Defendant Cole, refusing to leave despite being asked multiple times, and Defendant Cole resorting to law enforcement intervention based on Ribar's refusal to peacefully remove himself at her request. Defendant Cole's actions do not form the basis of any plausible federal constitutional or state law tort claim. This performative and baseless litigation is being used for content on Ribar's revenue-generating YouTube channel.[2] The claims against Defendant Cole should be dismissed with prejudice.

//

//

---

[2] *See e.g.,* Ribar's video of Defendant Cole titled "911 Call From Fearful Librarian," available at https://www.youtube.com/watch?v=tIudHCHBPwo and Ribar's videos regarding the instant case: "5 Shocking Things I Learned Suing Government Employees," available at https://www.youtube.com/watch?v=bGL1dfTPiWg (discussing several lawsuits including the instant case); "Library Gets Sued for Discrimination," available at https://www.youtube.com/watch?v=y0P6b_wBUdc; "How to sue the government yourself," available at https://www.youtube.com/watch?v=y8gqaNZELpg; "Bueno Lawsuit Updates," available at https://www.youtube.com/live/CzNHw36-cas?feature=shared&t=2384 (discussing the instant case and one other); "Caught on Camera: My Lawsuit Against Washoe County!," available at https://www.youtube.com/watch?v=rovZJTtgiUE.

## II. FACTUAL BACKGROUND

On June 15, 2024, Ribar attended the June 2024 RainbowFest event at North Valleys Library where he antagonized, interfered with, and interrupted staff, eventually injuring a staff member. *See* (ECF No. 70-8 at 0:13:29–14:34, 0:16:29–29:09, 0:51:02–12, 1:09:05–1:13:13). Defendant Cole was not involved in interactions with Ribar for this event. *See id.*

On June 20, 2024, Ribar appeared at the Downtown Library and was served with the Suspension packet, which contained a copy of a Notification of Suspension with details regarding Ribar's behavior at the 2024 North Valleys RainbowFest, a copy of the Library's Code of Conduct Policy, and a copy of the Library's Suspension Policy. (ECF No. 70-9 at 0:12:41–13:12, 0:25:30–26:23); (ECF No. 99-1); (ECF No. 99-29); (ECF No. 99-30). Defendant Cole was not personally involved in issuing the suspension. *See id.* When serving the suspension packet, staff verbally informed Ribar that he was suspended for one year due to his behavior at the 2024 RainbowFest event—"forcefully entering the library and injuring a staff person"—and explained, "… you will not be able to go into the library. If you do enter the library, we will have to trespass you." (ECF No. 70-9 at 0:12:41–13:12).

Pursuant to the Library's Suspension policy, Ribar appealed the suspension with a statement claiming his suspension was based on protected activity. (ECF No. 99-32). Defendant McKenzie reviewed the appeal and sent Ribar a letter via email upholding the suspending and explaining that he violated the Code of Conduct by harassing staff with repeated questions and/or accusatory comments, Ribar was disruptive and disturbing to staff and patrons, he interfered with staff's ability to do their job, and he engaged in unsafe and dangerous behavior that resulted in a staff injury. (ECF No. 99-33); (ECF No. 99-34). Ribar exercised his second appeal to Director Scott, who denied the appeal. (ECF No. 99-35); (ECF No. 99-36). Ribar validly exercised his third level appeal to the Library Board of Trustees ("LBOT") who upheld the suspension after a hearing where Ribar was present and had an opportunity to be heard on August 21, 2024. (ECF No. 71 at 2:22:06–53:31). In the words of the LBOT Chair, Ribar's "suspension remains for one year." *Id.* at 2:53:25–29.

Nevertheless, Defendant Cole was not involved in any of the appeals for Ribar's Library suspension. *See* (ECF No. 99-32); (ECF No. 99-33); (ECF No. 99-34); (ECF No. 99-35); (ECF No. 99-36); (ECF No. 71 at 2:22:06–53:31).

The suspension did not deter Ribar from continuing to harass Library staff. On November 12, 2024, Ribar entered the South Valleys Library, equipped with a body worn camera and a bulky "gimbal" [3] with an attached camera, and asked if the "library manager" was available. *See* Ex. 1 (reflecting a screenshot of Ribar from the FAC's video exhibit); (ECF No. 71-1 at 0:01:59–2:09). Defendant Cole was supervising that day and spoke to Ribar who questioned her regarding another person who was restricted from the Library. (ECF No. 71-1 at 0:04:08–0:05:00).

Ribar proceeded to antagonize Defendant Cole to trespass him. (ECF No. 71-1 at 0:05:00–06:26). Defendant Cole told Ribar she knew he was suspended from the Library and asked him to take the conversation outside. *Id.* Ribar did not leave and instead responded, "Well why would I do that?" *Id.* Defendant Cole explained it was because he was suspended, and "you are trespassed." *Id.* Ribar continued to antagonize her about a "legal trespass," that he did not believe he was trespassed, and regarding Library standards to trespass visitors. *Id.* While she searched for the suspension records, Ribar continued to interrogate her about press rights, the definition of "the press," and his belief that he was not disrupting staff. *See id.* at 0:07:17–08:51. She asked him to wait by the front door, but Ribar refused. *See id.* at 0:08:52–09:00.

//

---

[3] Ribar recently publicly and erroneously accused undersigned counsel of a "lie" in using the word "tripod" to describe his equipment. He creates a distinction without a difference but nonetheless undersigned hereby clarifies the record for the court. He asserts his equipment is a gimbal, which is a tool that usually includes features like an extension rod selfie-stick *and a built-in tripod base. See* Ex. 1. Yet, despite the known history of his viewers doxxing Library staff as a result of Ribar posting their contact information within his inflammatory videos (*see* ECF No. 64), Ribar writes on a recent video with thousands of views, "WHY LIE?? I HAD A HANDHELD GIMBLE!! ASK HER AT LLIDDELL@DA.WASHOECOUNTY.GOV."
*See* Ribar's YouTube video posted August 11, 2025, "Caught on Camera: My Lawsuit Against Washoe County!" available at: https://youtu.be/rovZJTgiUE?feature=shared&t=1978

When Defendant Cole found Ribar's suspension record, Ribar responded, "Yeah, I'm restricted from the Library for a year." *Id.* at 0:18:01–09. He antagonized her about being "lawfully trespassed" despite her attempts to disengage. *Id.* at 0:18:09–21:09. Ribar explained to Defendant Cole that he "want[e]d" or "need[ed]" to be trespassed, "because [he's] going to file a federal lawsuit," and he "just want[ed] to have more standing." *See* (ECF No. 71-1 at 0:18:20–28).

Defendant Cole called law enforcement to report that Ribar was trespassing and refusing to leave. *See* (ECF No. 71-1 at 0:18:00–19:35); (ECF No 99-43). Defendant Cole provided the 911 operator with Ribar's physical description. *See* (ECF No. 99-43). Ribar stated he would "wait for the Sheriffs." (ECF No. 71-1 at 0:21:05–09). On his way out, he loudly and sarcastically stated, "You guys are all so friendly," asked about "rainbows" and "gay shit," and asked, "Why did you guys get rid of the LGBTQ worship flags and stuff?" *Id.* at 0:21:09–32. He then waited outside for law enforcement's arrival. *See id.* As he has done in the past, Ribar's behavior prioritized provocation with a preference for spectacle over substance.

## III. ANALYSIS AND DISCUSSION

### A. Legal Standard.

To withstand Rule 12(b)(6), a complaint must contain enough facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must consist of "more than labels and conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009). When a complaint contains facts that are "merely consistent with" liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557. Further, when allegations do not establish "all material elements necessary to sustain recovery under some viable legal theory," dismissal is appropriate. *Stevo Design, Inc. v. SBR Marketing Ltd.*, 2013 WL 308996, at *4 (D. Nev. Jan. 25, 2013) (quoting *Twombly*, 550 U.S. at 562). The Court need not accept

as true allegations that contradict documents attached to the complaint or incorporated by reference. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Additionally, the Court may take judicial notice of documents filed in court. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1254 (9th Cir. 2013); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F. 3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of government documents as public records).

Defendant Cole specifically requests that the Court take judicial notice of the following filings: the Library's Code of Conduct Policy (ECF No. 99-1); the Library's Suspension Policy (ECF No. 99-29); the Notification of Suspension report for Ribar (ECF No. 99-30); Ribar's suspension appeal form (ECF No. 99-32); the email to Ribar attaching a PDF of the letter denying Ribar's first suspension appeal and the letter itself (ECF Nos. 99-33, 99-34); the email to Ribar attaching a PDF of the letter denying Ribar's second suspension appeal and the letter itself (ECF Nos. 99-35, 99-36); and the audio recording of Defendant Cole's 911 call (ECF No. 99-43). These records are both public records and are filed into this case. Notably, Ribar does not dispute these records. *See* (ECF no. 103). Therefore, the Court should take judicial notice and may do so without converting the instant Motion to Dismiss.

**B. The Section 1983 Claims Fail Because Ribar Fails to Allege Defendant Cole's Individual Involvement.**

As an initial matter, Ribar inappropriately states claims against "All Defendants." (ECF No. 65-1 at pp. 6–7). In a Section 1983 claim, a plaintiff cannot hold an employee liable because of their membership in a group without showing individual participation in unlawful conduct. *Chuman v. Wright*, 6 F.3d 292, 294 (9th Cir. 1996). Dismissal is appropriate where a claim is "based on conclusory allegations and generalities, without any allegation of the specific wrongdoing by each Defendant." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th

Cir. 2012); *see also Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022).

Ribar fails to include *any* allegations of specific wrongdoing by Defendant Cole. *See* (ECF No. 65-1). He merely includes one vague allegation that she was "involved in supervision failures" (ECF No. 65-1 at p. 5 ln. 1). This is grossly deficient to state any Section 1983 claim. Therefore, dismissal is appropriate for Counts I, IV, V, VI, and VII as to Defendant Cole and Washoe County for failure to allege any specific wrongdoing.

### C. To the Extent Ribar Attempts to Assert a Claim Against Defendant Cole for Her Conduct in Calling 911, This was Not a State Action. The Section 1983 Claims Thus Fail.

For any Section 1983 claim, the defendant must have been acting under color of law *and* deprived the plaintiff of his constitutional rights. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). "[R]eporting an actual or perceived crime to the police do[es] not meet the 'color of law' requirement." *Lucas v. Riggi*, No. 07-CV-6200L, 2008 WL 4758706, at *3 (W.D.N.Y. Oct. 29, 2008). A library director did not act under color of law in filing a police report against a visitor because her "authority to make the report arose from her status as a private citizen." *Noel v. Teller*, No. 1:21-cv-00024-LAG-TQL, 2021 WL 12300058, at *3 (M.D. Ga. Aug. 18, 2021), *report and rec. adopted*, 2022 WL 22867319 (Apr. 20, 2022). In Florida, a court dismissed a claim that a librarian "phoned in a false 9/11 call," because her "status as a private citizen gave her the ability to place the 911 call and not her position as a public librarian...." *Perkins v. State of Fla.*, No. 3:20-cv-6012-MCR-HTC, 2021 WL 2384563, at *5 (N.D. Fla. Apr. 22, 2021), *report and rec. adopted.*, 2021 WL 2384306 (June 10, 2021).

Additionally, "[t]here is no constitutional right to be free from threats of arrest; an actual civil rights violation must occur before a cause of action arises under § 1983." *Sharkey v. Duke*, No. 2:23-cv-00449-CDS-DJA, 2024 WL 5170821, at *5 (D. Nev. Dec. 19, 2024) (quot. and citations omitted), *appeal dismissed*, No. 24-7801, 2025 WL 947286 (9th Cir. Mar. 10, 2025). There is likewise "no constitutional right not to be investigated by law enforcement for suspected violations of law." *Spreadbury v. Bitterroot Pub. Libr.*, 862

//

1  F.Supp.2d 1054, 1057 (D. Mont. 2012); *see also United States v. Trayer*, 898 F.2d 805, 808 (D.C.

2  Cir. 1990) ("But, of course, there is no constitutional right to be free of investigation.").

3          Here, Defendant Cole was not acting under color of law in calling 911 for assistance

4  with Ribar's trespass. Her call was not based on false claims, as Ribar was not permitted to

5  be at the Library and was refusing to leave. *See* (ECF No. 70-9 at 0:12:41–13:12, 0:25:30–

6  26:23); (ECF 71 at 2:53:25–29); (ECF No. 71-1 at 0:05:00–06:26, 0:07:17–09:00); (ECF No.

7  99-43). She called law enforcement as a private citizen to request assistance. *See* (ECF No.

8  99-43). Moreover, there was no constitutional violation on which Ribar could base a claim.

9  As set forth in the WCSO Defendant's Motion to Dismiss (ECF No. 107), law enforcement's

10  interaction with Ribar was constitutionally sound, and Ribar was not arrested. To the extent

11  Ribar's claims can be broadly construed as claims based on Defendant Cole's call to law

12  enforcement, dismissal with prejudice is warranted because there was no government action

13  or constitutional violation.

14      **D. Ribar Fails to State First Amendment and Nevada Constitution Claims.**

15          In Count I, Ribar alleges that all defendants violated his First Amendment rights by

16  censoring his speech, blocking him from the Library's social media, and excluding him from

17  libraries. (ECF No. 65-1 at p. 7 lns. 14–19). In Count VIII, Ribar alleges "All Defendants"

18  "violated [his] speech and petition rights" under Article 1, Sections 9 and 10 of the Nevada

19  Constitution. *Id.* at p. 8 lns. 20–23.

20          To determine whether an exclusion violated the First Amendment, courts must look

21  to (1) whether the speech is "protected by the First Amendment;" (2) "the nature of the

22  forum;" and (3) whether the government's "justifications for exclusion from the relevant

23  forum satisfy the requisite standard." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473

24  U.S. 788, 797 (1985). The Nevada Constitutional claims are analyzed under the federal

25  constitutional standards. *See Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 597 fn. 5 (9th Cir. 2010);

26  Nev. Const. Art. 1, 9 & 10 (providing no greater protection to speech or assembly activity

27  than the First Amendment of the United States Constitution).

"Under Ninth Circuit law, the First Amendment is not a license to trespass." *Devi v. Sacramento Bhartiya Sabha*, 2:24-cv-00689-DJC-CKD, 2025 WL 1294944, at *6 (E.D. Cal. May 5, 2025). "[T]he Ninth Circuit has held that premises are not open to the public with regard to a particular individual when that person has previously been barred from the property." *James v. City of Long Beach*, 18 F.Supp.2d 1078, 1085 (C.D. Cal. 1998). The First Amendment is not implicated when an individual has been banned from public property and ignores the ban to enter the property for some purported free speech purpose. *See Virginia v. Hicks*, 123 S. Ct. 2191, 2198–99 (2003). The unexpressive conduct—entry onto property in violation of a suspension—not speech, serves the basis for law enforcement intervention. *See id.*

The First Amendment does not grant journalists, whether self-described or actual members of the objective reporting press, any additional or special right to access information or locations over the general public. *See Pell v. Procunier*, 417 U.S. 817, 833 (19874); *Branzburg v. Hayes*, 408 U.S. 665, 684–85 (1972). Though Ribar refers to his antagonistic behavior, ambush theater, and manufactured YouTube videos as "journalism," this label does not grant him a license to trespass. *See id.*

Here, Defendant Cole did not offend Ribar's First Amendment rights. Ribar did not have a First Amendment right to trespass onto property which he was previously barred from entering. His conduct in violating the suspension and appearing at a Library to "get standing" in anticipation of filing this case was not protected by the First Amendment. Defendant Cole's action in asking a previously suspended person to leave the Library and then calling 911 when he refused does not have "anything to do with the First Amendment." *See Virginia*, 123 S. Ct. at 2198–99. The FAC's video exhibit of the interaction with Defendant Cole further shows that any amendment would be futile. (ECF No. 71-1 at 0:04:07–21:07). The Court should dismiss the First Amendment claim with prejudice against Defendant Cole.

//

### E. Ribar Does Not State a Plausible Equal Protection Claim as to Defendant Cole.

Ribar's Equal Protection claim, Count IV, against Defendant Cole wholly fails. A class-of-one equal protection claim can only be stated if defendants intentionally treated a plaintiff differently than other similarly situated individuals and without a rational basis for doing so. *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011). A "class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).

Here, Ribar does not and cannot allege a viable Equal Protection claim against Defendant Cole. He fails to include any allegation that Defendant Cole treated Ribar differently than any other person. *See* (ECF No. 65-1). The video exhibit of Defendant Cole's interaction with Ribar shows he was not treated differently than a Library supervisor would when responding to a call regarding a person at the Library who was violating his suspension. *See* (ECF No. 71-1 at 0:04:07–21:07). The video likewise demonstrates there was no intent to treat Ribar any different. As Defendant Cole spoke to him, she remained professional, informed him that he was violating his suspension, and asked him to leave several times before engaging law enforcement for assistance. *See id.* The Equal Protection Claim against Defendant Cole should be dismissed with prejudice because he does not state a viable claim and amendment would be futile.

### F. The Conspiracy Claims Fail.

#### 1. The Section 1983 Conspiracy Claim Fails.

"Conspiracy itself is not a constitutional tort" under Section 1983. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). "It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Id.*

Ribar cannot state a viable Section 1983 Conspiracy claim against Defendant Cole because there are no underlying constitutional violations as set forth above. The Section 1983 conspiracy claim, Count VI, should be dismissed with prejudice.

## 2.  The Section 1985 (3) Conspiracy Claim Fails.

To state a claim under 42 U.S.C. Section 1985, plaintiff must allege "(1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Steshenko v. Gayrard*, 70 F. Supp. 3d 979, 998 (N.D. Cal. 2014). The second element also requires a showing that the deprivation was "motivated by some racial, or perhaps other class-based, invidiously discriminatory animus behind the conspirators' action." *Id.*

Ribar's Section 1985(3) Conspiracy claim, Count VII, against Defendant Cole fails. There is no plausible "conspiracy." *See* (ECF No. 71-1 at 0:04:07–21:07). There is likewise no animus based on a protected class—there is no mention or implication regarding race, his identification as male, his sexual orientation, or any other class with which Ribar may identify. *See id.* Moreover, there was no injury arising out of any conduct attributed to Defendant Cole. *See id*; *see also* (ECF No. 107). Ribar does not and cannot state a plausible Section 1985(3) conspiracy claim against Defendant Cole. Therefore, Count VII should be dismissed with prejudice as to Defendant Cole.

### G.  The *Monell* Claim Fails as to Defendant Cole's Actions.

Local governments may be liable under Section 1983 in limited circumstances, referred to as a *Monell* claim. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Hong v. Cnty. Of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). But a local government "cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under [Section 1983] under a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Ulrich v. City & Cnty. Of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002). Liability attaches only where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *Ulrich*, 308 F.3d

at 984. After proving a method of *Monell* liability, Plaintiff must also show that the local government was both the cause in fact and the proximate cause of the constitutional deprivation. *See Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Here, the *Monell* claim, Count X, should be dismissed with prejudice as to Defendant Cole's actions because Ribar does not and cannot plausibly allege that there was an underlying constitutional violation. Therefore, no *Monell* claim can arise from Defendant Cole's actions. Moreover, even he could plausibly allege a constitutional violation, Ribar's conclusory allegations do not establish a *Monell* claim regarding Defendant Cole's conduct. There is only one isolated incident involving Defendant Cole, and nothing about it demonstrates she possessed any policy making authority. *See* (ECF No. 71-1 at 0:04:07–21:07). The *Monell* claim against Washoe County based on Defendant Cole's actions should therefore be dismissed with prejudice.

### H.  Defendant Cole is Entitled to Qualified Immunity.

Section 1983 liability can attach only if Plaintiff provides that an officer (1) caused a deprivation of plaintiff's rights while acting under the color of state law, and (2) the officer is not entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects government officials so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989).

Qualified immunity protection is "ample." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It shields "all but the plainly incompetent or those who violate the law." *Id.* It applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted).

Courts can decide which of the two prongs for the qualified immunity test to analyze first. *Pearson*, 555 U.S. at 236. If the alleged facts do not show conduct in violation of a constitutional right, or if that right was not clearly established at the time the alleged events

occurred, the defendant is immune from suit. *Id*. at 243–45. A court can review the second prong without requiring discovery–whether the right was clearly established at the time of the violation. *See id*. at 238–39. "[C]learly established law should not be defined at a high level of generality;" instead, it "must be particularized to the facts of the case." *White v. Pauley*, 137 S. Ct. 548, 552 (2017).

Here, Defendant Cole is entitled to qualified immunity on the federal constitutional claims. No case addresses the particular circumstances of this case with respect to Ribar and Defendant Cole in a Section 1983 action. There is no clearly established law requiring a Library to allow a suspended patron to remain inside a Library, even if that person claims they are present as "press." There is no clearly established law precluding a librarian from calling 911 for assistance when that person refuses to leave, despite being asked several times. Defendant Cole performed a comprehensive search and could not locate any cases involving the Fourth Amendment, First Amendment, or Equal Protection Clause with facts similar to this case such that a reasonable librarian would be on notice that any conduct alleged or demonstrated in the FAC's video exhibit was unlawful. Therefore, qualified immunity is appropriate as a matter of law for the First Amendment claim (Count I), Fourth Amendment claim (Count II), the Equal Protection claim (Count IV), and the Conspiracy claims (Counts VI and VII). These claims should be dismissed with prejudice against Defendant Cole.

### I. Ribar's Intentional Infliction of Emotional Distress Claim Fails.

An intentional infliction of emotional distress ("IIED") claim cannot be based on "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Candalore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992). It instead requires "extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571 (Nev. 1998). Extreme or outrageous conduct is conduct "outside all possible bounds of

1  decency" and is deemed "utterly interoperable in a civilized community." *Maduike v. Agency*
2  *Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

3      Here, the FAC lacks any allegation that could plausibly state an IIED claim against
4  Defendant Cole—it only alleges she was "involved in supervision failures." *See* (ECF No.
5  65-1 at p. 5 ln. 1). More importantly, the FAC's video exhibit shows that no such allegations
6  can be made. *See* (ECF No. 71-1 at 0:04:07–21:07). Nothing about Ribar's interaction with
7  Defendant Cole was extreme or outrageous, she did not speak loudly, did not engage in
8  name-calling, attempted to answer Ribar's questions, and attempted to de-escalate the
9  situation by asking him to leave several times. *See id.* There is no conduct that could
10 plausibly form the basis of an IIED claim against Defendant Cole. Amendment would
11 therefore be futile. The IIED claim should be dismissed with prejudice as to Defendant Cole.

12    **J. The Defamation Claim Fails against Defendant Cole Because Her Statements**
13        **Were Truthful and are Protected.**

14     Defamation cannot be based on a statement that is true, substantially true, an
15 opinion, hyperbole, exaggeration, or generalization. *Pegasus v. Reno Newspapers, Inc.*, 118
16 Nev. 706, 715, 57 P.3d 82, 88 (2002). Defamation requires that there be "(1) a false and
17 defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged
18 publication to a third person; (3) fault…; and (4) actual or presumed damages." *Id.* 118 Nev.
19 at 706, 57 P.3d at 90. Publication involved communicating the defamatory matter to another
20 person other than the person claiming to be defamed. *Simpson v. Mars Inc.*, 929 P.2d 966,
21 967 (Nev. 1997). Communication between employees is not publication. *M & R Inv. Co.,*
22 *Inc. v. Mandarino*, 748 P.2d 488, 491 (Nev. 1987). Additionally, "communications with
23 police in aid of law enforcement" are protected by a qualified privilege. *Pope v. Motel 6*, 114
24 P.3d 277, 283 (Nev. 2005).

25     In Count XII, Ribar alleges a defamation claim against "All Defendants,"
26 specifically alleging that "Defendants falsely accused Plaintiff of misconduct (Exhibit 24),
27 harming his reputation." (ECF No. 65-1 at p. 9, lns. 6–7). There are no allegations of any

-14-

statements made by Defendant Cole in the FAC. *See* (ECF No. 65-1). The exhibit referenced within Ribar's defamation claim is an unofficial A.I.-generated "transcript" of the August 2024 Library Board of Trustees ("LBOT") meeting. *See* (ECF No. 70-3); *see also* (ECF No. 71) (video of the August 2024 LBOT meeting). Defendant Cole did not speak at that August 2024 meeting. *Id.* To the extent Ribar's Defamation claim against Defendant Cole is based on the August 2024 LBOT meeting, that claim fails because she did not make any statements, false or otherwise, at that meeting. *See id.*

To the extent Ribar's Defamation claim against Defendant Cole is based on the November 2024 South Valleys incident, that claim also fails. There were no false statements of fact made. *See* (ECF No. 71-1 at 0:04:07–21:07); (ECF No. 99-43). Additionally, all statements were either between Washoe County employees or were made to Ribar. *See id;* (ECF No. 71-1 at 019:08–13) (Defendant Cole explaining she was on the phone with the Washoe County Sheriff's Office and thus there was no publication). Moreover, Defendant Cole's statements to law enforcement, even if they were not to County employees, are privileged and do not form the basis for a defamation claim. The only known potentially defamatory statement involving Defendant Cole was *made by Ribar*, *not by Defendant Cole*— Ribar published an edited YouTube video of the November 2024 interaction, displaying the words "LUNATIC LIBRARIANS & DEPUTIES." (ECF No. 64-6 at p. 7). The November 2024 incident, which Ribar filmed and attached as an exhibit to the FAC does not form the basis for any plausible defamation claim against Defendant Cole. Therefore, the Court should dismiss the Defamation claim, Count XII, as to Defendant Cole with prejudice.

### K. Defendant Cole and Washoe County Are Entitled to Discretionary Act Immunity for the State Law Claims.

Under Nevada law, no action may be brought against a public employee or political subdivision "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty…whether or not the discretion involved is abused." NRS 41.032(2). There is "a two-part test for determining whether a discretionary-function

immunity under Nev. Rev. Stat. 41.032 applies to shield a defendant from liability, "which looks to whether "the decision (1) involves an 'element of individual judgment or choice,' and (2) is 'based on considerations of social, economic, or political policy.'" *Clark Cnty. Sch. Dist. v. Payo*, 403 P.3d 1270, 1276 (Nev. 2017) (citations omitted).

Additionally, discretionary act immunity specifically precludes actions for negligent hiring, training, and supervision. *Paulos*, 456 P.3d at 596; *Neal-Lomax v. Las Vegas Metro Police Dep't*, 574 F.Supp. 2d 1170, 1192 (D. Nev. 2008) ("Because Nevada looks to federal case law to determine the scope of discretionary immunity, and because federal case law consistently holds training and supervision are acts entitled to such immunity, [Defendant] is entitled to discretionary immunity…"). Nevada law precludes claims for negligent hiring, training, and supervision against government defendants. *Paulos*, 456 P.3d at 596.

Here, even if the claims did not otherwise fail, Defendant Cole is entitled to discretionary act immunity on the following claims arising under Nevada state law: Count VIII, the Nevada Constitution claim; Count XII, Defamation; and Count XIII, Negligence/Negligent Supervision. Defendant Cole's decisions regarding whether and how to interact with Ribar while he was violating his suspension, how to ask him to leave, how much to ask him to leave before calling law enforcement, whether to call law enforcement and what to report to law enforcement each involve an element of judgment or choice. These decisions also involve social policy considerations, including her own personal safety, her staff's safety, Library patron safety, the potential for disruption to ongoing library events, and balancing the potential for harassment to staff or patrons. Indeed, Defendant Cole mentioned to Ribar that the Library "had story time going on" while he was there harassing her and refusing to leave. (ECF No. 71-1 at 0:08:33–47). Even if Ribar could otherwise allege plausible claims against Defendant Cole or Washoe County under the Nevada Constitution, for defamation, or negligence, those claims would be barred under Nevada law.

//

Additionally, Ribar's Count XIII against Washoe County for negligent hiring, training, and supervision should be dismissed with prejudice because it is barred as a matter of law by discretionary act immunity. *Paulos*, 456 P.3d at 596. Ribar's negligence/negligent supervision claim is not cogent, but even if it was, it would fail as a matter of law as it relates to Defendant Cole and any other government defendant. The Court should dismiss with prejudice Count XIII against Defendant Cole and Washoe County based on discretionary act immunity.

To the extent the Court would otherwise permit Ribar to amend his claims against Defendant Cole for a second time, it should not. Discretionary act immunity precludes Ribar's state law claims against Defendant Cole and serves as an additional basis to dismiss the state law claims with prejudice.

## V. CONCLUSION

The Court should dismiss the Amended Complaint with prejudice as to Defendant Cole. This Court is not a stage for Ribar's manufactured disputes. Defendant Cole acted within the confines of federal and state law. The claims against Defendant Cole are all baseless, and Ribar's video exhibit to the FAC of the interaction demonstrates that amendment would be futile. Ribar does not and cannot state any plausible claim against Defendant Cole.

Dated this 18th day of August, 2025.

By /s/ Lindsay Liddell
LINDSAY LIDDELL
Deputy District Attorney
COBI BURNETT
Deputy District Attorney

ATTORNEYS FOR WASHOE COUNTY
DEFENDANTS

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action.  I certify that on this date, I deposited for mailing in the U.S. Mails, with postage fully prepaid, a true and correct copy of the foregoing document in an envelope addressed to the following:

DREW RIBAR
3480 PERSHING LANE
WASHOE VALLEY. NV 89704


I certify that on this date, the foregoing was electronically filed with the United States District Court.  Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

DREW RIBAR

ALISON R. KERTIS, ESQ.

Dated this 18th day of August, 2025.

/s/ S. Haldeman
S. Haldeman

-18-

**INDEX OF EXHIBITS**

Exhibit 1      Screenshot from the FAC's video Exhibit (ECF No. 71-1). ................  1 page