Alison R. Kertis, Esq. (NSB 13875)
akertis@sierracrestlaw.com
Jerry C. Carter, Esq. (NSB 5905)
jcarter@sierracrestlaw.com
SIERRA CREST BUSINESS LAW GROUP
6770 S. McCarran Blvd., Reno, Nevada 89519
(775) 448-6070, Facsimile: (775) 473-8292
*Counsel for Defendant BUILD OUR CENTER*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| DREW J. RIBAR,<br>        Plaintiff,<br>v.<br>WASHOE COUNTY; WASHOE COUNTY LIBRARY SYSTEM; JEFF SCOTT; THANH NGUYEN; JAMIE HEMINGWAY; BEATE WEINERT; STACY MCKENZIE; JONNICA BOWEN; BEN WEST; BUILD OUR CENTER, INC.; STACY SPAIN; ANGELINE PETERSON; CHRISTOPHER DANIELS; DEPUTIES ROTHKIN, SAPIDA, GOMEZ; JENNIFER COLE; and JOHN/JANE DOES 1-10;<br>        Defendants. | Case No. 3:24-cv-00526<br><br>**DEFENDANT<br>BUILD OUR CENTER'S<br>MOTION TO DISMISS<br>PLAINTIFF DREW RIBAR'S<br>FIRST AMENDED COMPLAINT** |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Build Our Center Inc., by and through its undersigned counsel, Alison R. Kertis, Esq. of the Sierra Crest Business Law Group, respectfully requests the Court dismiss Plaintiff Drew Ribar's ("Mr. Ribar") *First Amended Complaint* [ECF 65-1] for failure to state a claim upon which relief can be granted. Further, Build Our Center respectfully requests the Court dismiss Counts I, IV, VI, VII, XI, and XII of Mr. Ribar's First Amended Complaint, with prejudice, as to all allegations against Build Our Center.

This Motion is made and based upon all records and pleadings on file herein, the *Declaration of Jeromy Manke* ("Manke Declaration," attached hereto as **Exhibit 1**) together with every exhibit attached hereto (each of which is

/ / /

incorporated herein by this reference), as well as the points and authorities set forth directly below.

In support of this Motion, Build Our Center states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Mr. Ribar, a self-appointed "journalist" who earns his living by posting purposefully inflammatory (regardless of the veracity of the content itself) videos to YouTube, claims that a local Reno, Nevada nonprofit, Defendant Build Our Center ("BOC"), "censored [his] speech, blocked him from social media, assaulted him, detained him without suspicion, imposed baseless suspensions, and defamed him," [ECF 65-1 at p. 2.] These conclusory allegations, driven solely by Mr. Ribar's attempt to generate traffic to his YouTube channel through incendiary, cherry-picked content designed to provoke outrage—"rage bait"—form the basis of his baseless Complaint [ECF 2] and the instant frivolous FAC [ECF 65-1]. Although the Court afforded Mr. Ribar an opportunity to amend his original Complaint, the First Amended Complaint suffers from the same fundamental deficiencies as the original: the First Amended Complaint (the "FAC") does not contain any factual allegations setting forth a plausible claim for relief.

Simply because Mr. Ribar does not personally agree with Defendant Build Our Center's mission and values, he has improperly named Build Our Center as a defendant in his broader vendetta against Washoe County, the Washoe County Library, and their employees (collectively referred to herein as the "Washoe County Defendants." In doing so, the FAC seeks to bootstrap Build Our Center's nonprofit status and its lawful, limited coordination with public agencies into something that it is not: a government actor. Pursuant to Federal law, Mr. Ribar's FAC (and the attached exhibits) contains not one iota of fact that sets forth a plausible claim that overrides the presumption that BOC is a private entity. And

the reason the FAC does not contain these facts is because BOC is, and always has been, a nonprofit organization wholly separate and distinct from the government, with no delegated or appointed authority to perform governmental functions or act under color of state law.[1]

## II. LEGAL STANDARD

A court may dismiss a complaint if it fails to state a claim upon which relief can be granted. FRCP Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient facts which, if accepted as true, will state a claim of relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint must contain enough facts to "nudge" their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. It must consist of "more than labels and conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. "While all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Kelsey K. v. NFL Enterprises, LLC*, 254 F. Supp. 3d 1140, 1143 (N.D. Cal. 2017) (citing *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001)). Where allegations do not establish "all material elements necessary to sustain recovery under some viable legal theory," dismissal is appropriate. *Stevo Design, Inc. v. SBR Marketing Ltd.*, 2013 WL 308996, at *4 (D. Nev. Jan. 25, 2013) (quoting *Twombly*, 550 U.S. at 562). The Court does not have to take as true allegations that contradict documents attached to the complaint or incorporated

---

[1] BOC fully incorporates herein its first Motion to Dismiss [ECF 37] and Reply in Support of Motion to Dismiss [ECF 47], specifically directing the Court to the factual background, organization, and mission of Build Our Center.

by reference. The Court need not accept as true allegations that are contradicted by documents attached to, or incorporated by reference in, the complaint. *In re Giliad Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### A. Judicial Notice

A court may take judicial notice of documents filed in court. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1254 (9th Cir. 2013); *see also Reyn's Pasta Bella, LLC v. Vista USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of government documents as public records).

BOC respectfully requests that the Court take judicial notice of the exhibits filed by Mr. Ribar in support of his FAC, without converting this Motion to Dismiss into one for summary judgment. Judicial notice is appropriate here only to the extent that the exhibits, on that face and in substance, fail to establish a plausible claim for relief on any of the causes of action asserted against BOC.

## III. LEGAL ARGUMENT

### A. Mr. Ribar's FAC Contains a Host of Conclusory Statements Disconnected From His Causes of Action.

It is not BOC's or the Court's responsibility to interpret Mr. Ribar's FAC or connect his conclusory statements to the causes of action he asserts. The burden rests squarely on Mr. Ribar to plead specific facts establishing each element of his claim for relief.

Rule 8(d)(1) of the Federal Rules of Civil Procedure ("FRCP") explicitly requires that each allegation in a complaint be "simple, concise, and direct," and applies to all claims, whether meritorious or not, and serves as an independent basis for dismissal apart from FRCP 12(b)(6). *Flores v. EMC Mortg. Co.*, 997 F.Supp.2d 1088 (2014). A complaint that fails to perform its essential function –

which include "providing clarity as to whom plaintiffs are suing and for what wrongs" – "impose[s] unfair burdens on defendants," who are left to decipher vague or conclusory allegations without sufficient factual support. *Id; see also Vance v. County of Santa Clara*, 928 F.Supp. 993 (1996) (dismissing claims that were ambiguous and conclusory, noting that the complaint failed to spell out factual allegations against specific defendants and instead relied on generalized accusations)."

Mr. Ribar's section entitled "Factual Allegations" [ECF 65-1 at pp. 4-5] consists primarily of conclusory assertions and recitations of causes of action framed as "facts." The pleading provides no clarity as to whom he is suing or on what specific grounds, as he improperly attempts to bootstrap BOC into his claims against the Washoe County Defendants. As a result, it is impossible to discern what conduct, if any, Mr. Ribar attributes to BOC. These conclusory allegations should be rejected on their face and the FAC rejected in its entirety on this basis.

B. **Counts I and VI: Mr. Ribar's 42 U.S.C. § 1983 Action Fails as It Lacks Factual Allegations BOC Acted Under Color of State Law.**

Mr. Ribar claims ("Count I") that BOC, in violation of 42 U.S.C. § 1983, "censored Plaintiff's speech," "blocked him from WCLS social media," and "excluded him from libraries." [ECF 65-1 at p. 6.] As for "Count VI," Mr. Ribar alleges BOC "conspired to violate Plaintiff's rights through coordinated actions." [ECF 65-1 at p. 7.]

Rather than pleading specific facts to establish the elements of a claim for relief, Mr. Ribar instead makes conclusory allegations and cites a host of exhibits and expects the Court to infer both the causes of action and the supporting facts, without undertaking the necessary task of identifying and articulating those facts himself. The exhibits fail to set forth any of the factual elements necessary

to state a claim for relief. Mr. Ribar's exhibits, even when viewed objectively and in a light most favorable to him, do not set forth facts sufficient to establish BOC was a government actor, let alone violated Mr. Ribar's First Amendment rights. The FAC provides no clarity on how BOC allegedly conspired with the Washoe County Defendants, censored Mr. Ribar, blocked him from a social media account (over which BOC has no authority), or excluded him from the library—an action it likewise lacks the authority or means to carry out.

It is unclear what alleged conduct BOC engaged in that rises to the level of governmental action. For example, Mr. Ribar makes the conclusory allegation that BOC censored his speech and then cites Exhibits 3 [ECF 68-2], 27 [ECF 70-6], 28 [ECF 70-7], 29 [ECF 70-8] and 30 [ECF 70-9], expecting the Court to draw the necessary inferences and conclusions for him. But the FAC itself does not identify or articulate any such facts because they do not exist. He has not alleged a single act of speech censorship by BOC—under any of the four recognized Federal tests to overcome the private action presumption—and his claim cannot survive a motion to dismiss on that basis.

Further, it is unclear to whom Mr. Ribar directs his § 1983 allegations or what specific conduct he attributes to BOC. The FAC leaves unanswered whether BOC allegedly censored his speech, blocked him from social media, excluded him from the library, or some combination of these. Further, the FAC fails to set forth in any factual detail as to how BOC allegedly conspired with the Washoe County Defendants.

Dismissal of a complaint is appropriate where a claim is "based on conclusory allegations and generalities, without any allegation of the specific conduct by each Defendant." *Hydrick v. Hunter*, 669 937, 942 (9th Cir. 2012); *see also Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022). Counts I should be dismissed as to BOC because the FAC contains no factual allegations of state action or First Amendment violations by BOC.

      a. *Legal Standard Under 42 U.S.C. § 1983.*

To sustain an action under § 1983, Mr. Ribar must set forth "factual allegations that "(1) the conduct complained of was committed by a person acting under the color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1994).[2] "State action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002) (internal quotation marks and alterations omitted); *see also Lugar v. Edmonson Oil Co., Inc.*, 102 S. Ct. 2744, 2753-54 (1982) (To qualify as acting under the color of state law, "the deprivation must be caused by the exercise of some right or privilege created by the State … or by a person for whom the State is responsible," and the "party charged with the deprivation must be a person who may fairly be said to be a state actor.")

Courts have consistently denied claims under § 1983 where a plaintiff fails to articulate facts showing a sufficient nexus between the defendant's conduct and state authority. "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful. When addressing whether a private party acted under color of state law, therefore, we start with the presumption that private conduct does not constitute governmental action." *Pasadena Republican Club v. W. Justice Ctr.*, 424 F. Supp.

---

[2] To the extent that the Court first applies the "state policy" requirement prior to analyzing the "state actor" requirement (*see Children's Health Defense v. Meta Platforms, Inc*, 112 F.4th 742, 754 (9th Cir. 2024), cert. denied, 24-732, 2025 WL 1787729 (U.S. June 30, 2025)). BOC herein incorporates the Washoe County Defendants' *Motions to Dismiss* [ECF 105, 107, 109, and 111] and their *Replies* forthcoming. Should the Court grant the County Defendant's *Motions to Dismiss*, BOC respectfully requests it simultaneously dismiss Mr. Ribar's FAC as to BOC in that a dismissal of the governmental defendants is fatal to claims against BOC.

3d 861, 869 (C.D. Cal. 2019), aff'd, 985 F.3d 1161 (9th Cir. 2021) (internal quotations and citations omitted); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999).

While "there is … no specific formula for defining state action," a complaint must nevertheless satisfy one of four tests to overcome the presumption that conduct was private: "(1) the public function test; (2) the joint action or symbiotic relationship test; (3) the governmental compulsion or coercion test; and (4) the governmental nexus test." *Pasadena Republican*, 424 F. Supp. 3d at 869 (citing *Sutton*, 192 F.3d at 835-336; *Lugar*, 457 U.S. at 939; *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983)).

    b. *Mr. Ribar's FAC Does Not Allege Sufficient Facts to Meet the Public Function Test.*

Under the public function test, a private actor is considered to have acted under color of state law if the function they performed is one that has been "traditionally and exclusively reserved to the state," such as running elections and operating a town company. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) *citing Prager Univ. v. Google LLC*, 951 F.3d 991, 997-98 (9th Cir. 2020). The public function "test is 'difficult to meet,' and there is a lean list of 'very few' recognized public functions, including 'running elections,' 'operating a company town,' and not much else." *Id. citing Prager* at 997-98. Objectively, Mr. Ribar's exhibits do not suggest, and certainly do not permit a reasonable inference, that BOC's conduct was traditionally and exclusively reserved to the state. Hosting Drag Queen Story Hour [ECF 70-6, 70-7, 70-8, and 70-9] is not a traditional government function, nor is sending an email to a journalist [ECF 68-2]. If this is the basis of Mr. Ribar's theory, he has set forth

/ / /

no facts demonstrating that any of BOC's conduct was traditionally or exclusively governmental.

      c. *Mr. Ribar's FAC Does Not Allege Sufficient Facts to Meet the Joint Action Test.*

Under the joint action or symbiotic relationship test, a plaintiff must "plead facts that give rise to an inference that the private entity's particular actions are inextricably intertwined with those of the government." *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 755 (9th Cir. 2024), cert. denied, 24-732, 2025 WL 1787729 (U.S. June 30, 2025) (internal quotations omitted). Moreover,

> Crucially, it is not enough to show an agreement to do *something*; **the private party and the government must also have agreed on what the something is**. The generalized allegation of a wink and a nod understanding … does not amount to an agreement or a conspiracy to violate the plaintiff's rights in particular. **Thus, a plaintiff must show some specificity to the understanding between the private actor and the government**.

*Id.* at 755-56 (internal citations omitted; italicized emphasis in original and bolded emphasis added). For example, cases wherein such agreement was found include: (1) an agreement between litigants and a judge to issue an illegal injunction preventing production on an oil lease. (*Dennis v. Sparks*, 449 U.S. 24, 25–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980)); (2) an agreement between a store employee and a police officer to arrest the plaintiff (*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); (3) an agreement between a prison and a contractor to remove the petitioner's religious classification (*Swift v. Lewis*, 901 F.2d 730, 731–32 & n.2 (9th Cir. 1990)); and (4) an agreement between a landlord and a police officer to evict a plaintiff (*Howerton v. Gabica*, 708 F.2d 380, 384–85 (9th Cir. 1983)). Specifically, to sufficiently plead a conspiracy, the complaint must allege an "agreement or meeting of the minds," "to be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights." *Annan-Yartey v. Honolulu Police Dept.*, 475 F. Supp. 2d 1041, 1046 (D.

Haw. 2007). Further, and critically, "[c]onspiracy itself is not a constitutional tort" under § 1983. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). "It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Id.*

Here, there are no facts from which the Court could infer the existence of any agreement (or "conspiracy") between the government and BOC. Mr. Ribar has not alleged that BOC ever communicated to the government a statement such as: "Let's restrict Mr. Ribar from the library, prevent him from protesting at Drag Queen Story Hour, and block him from the library's social media account." The cited email exhibit [ECF 65-1 at p. 6] is simply correspondence between BOC and a journalist, and neither it nor the other referenced video exhibits contain any such directive. In short, there are no specific factual allegations of any purported agreement because no such agreement was discussed or consummated. Mr. Ribar has not set forth any facts that show specificity as to the substance of the agreement or understanding between BOC and the Washoe County Defendants.

Even if the Court were to consider Mr. Ribar's conclusory statements and exhibits [ECF 65-1 at pp.4-5], they do not establish any agreement to censor him, restrict his social media use, block his access to the library, or demonstrate that BOC "conspired" with the Washoe County Defendants. What, specifically, does Mr. Ribar claim the Washoe County Defendants and BOC agreed to do— other than host Drag Queen Story Hour at the library (which, in and of itself, is not a violation of any law, State or Federal)—and what was the substance of that supposed understanding? The FAC contains no substantive factual allegations to answer these questions.

It is entirely unclear what Mr. Ribar means by "prioritizing Build Our Center involvement," "plan[ning] security for DQSH, restricting public access," or other similar conclusory statements. For example, Exhibits 1 [ECF 68], 2

[ECF 68-1], 3 [ECF 68-2], 4 [ECF 68-3] and 5 [ECF 68-4] consist only of internal governmental emails discussing overtime pay, security at high-exposure events such as Drag Queen Story Hour, and correspondence with a local journalist. One email even appears unrelated to Mr. Ribar's claims and concerns a Proud Boys protest where a gunman appeared at a local park [ECF 68-3]. Exhibit 6 [ECF 68-05] objectively shows no agreement about restricting access (despite Mr. Ribar's FAC allegations to the contrary). In fact, it is simply an email from a lady to the library staff that she appreciated the library's openness toward the LGBTQ+ community. Certainly, this is not an agreement wherein BOC and the Washoe County Defendants discussed depriving (or conspired to specifically deprive) Mr. Ribar of his constitutional rights.

It is not BOC's responsibility to interpret Mr. Ribar's mind or infer what he intends the Court to conclude from these communications. In any event, these exhibits plainly do not establish facts sufficient to show an agreement or conspiracy to restrict Mr. Ribar's constitutional rights in any way.

    d. *Mr. Ribar's FAC Does Not Allege Sufficient Facts to Meet the Governmental Compulsion or Coercion Test.*

"Under the coercion test, the government must have exercised coercive power … provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. The government's mere approval of private initiatives, however, is not sufficient to justify holding the State responsible for those initiatives. Instead, the government must convey a threat of adverse government action, or otherwise impose incentives that overwhelm and essentially compel the party to comply with its requests." *Children's Health*, 112 F.4th at 759 (internal citations and quotations omitted).

Mr. Ribar's FAC contains no factual allegations that the Washoe County Defendants coerced BOC to censor his speech, block him from the county library's social media account, or restrict his access to the library. If that is the

theory underlying his claims, he has failed to allege any facts from which such conduct could reasonably be inferred from the FAC or the exhibits.

    e. *Mr. Ribar's FAC Does Not Allege Sufficient Facts to Meet the Governmental Nexus Test.*

Under the governmental nexus test, of which there are two, the first "asks whether there is 'pervasive entwinement of public institution and public officials in the private entity's composition and workings.'" *Kennedy v. Google LLC*, 688 F. Supp. 3d 951, 958 (N.D. Cal. 2023) (quoting *Brentwood Acad. V. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298, 121 S.Ct. 924, 148 L.Ed 807 (2001). "The second version of the nexus test asks whether public officials have 'exercised coercive power or has [*sic*] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)).

Like the joint action test, the first governmental nexus test focuses on the relationship between the government and private entity and whether the two are so intertwined they are indistinguishable. This portion of the test relies on "whether the public entity relies on public funding, is comprised mostly of mostly government institutions," or whether those "officials dominate the decision making of the entity." *Id. see also O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023); *Villegas v. Gilroy Garlic Festival Association,* 541 F.3d 950, 955 (9th Cir. 2008).

An objective review of Mr. Ribar's FAC shows that neither his exhibits nor his conclusory statements set forth any facts that BOC and the Washoe County Defendants' relationship meets this test–there are no factual allegations that BOC relies on public funding (it only receives public grant funds specifically earmarked for mental health and substance abuse treatment programs, which represent only a portion of its resources), that it is comprised of a government

institution (it is not), or that Washoe County or its employees dominate its decision making (they do not). [*Manke Declaration*, Ex. 1 at ¶¶ 5-8, 17-22, 34-36.]

Under the second version of the nexus test, the inquiry is whether the government's encouragement is so substantial that the private party's decision must legally be attributed to the State, such as, "when government officials threaten adverse action to coerce a private party into performing a particular act.'" *Kennedy*, F. Supp. 3d at 958 (quoting *O'Handley*, 62 F.4th at 1157). Here, however, Mr. Ribar's FAC alleges no facts suggesting that the Washoe County Defendants exercised coercive power or provided such significant encouragement (whether overt or covert) that BOC's actions could be deemed those of the State. Indeed, there are no factual allegations that the Washoe County Defendants exercised coercive power over BOC into performing any particular act.

If Mr. Ribar's theory is premised on the government nexus test, his FAC simply fails to put forth any facts to suggest this. As such, the Court should dismiss Count I and Count VI.

C. **Count IV: Mr. Ribar's Fourteenth Amendment Violation of Equal Protection Allegation Fails as It Lacks Factual Allegations BOC Acted Under Color of State Law.**

The Fourteenth Amendment's equal protection clause only applies to state action and not to private entities. Therefore, similar to a claim under § 1983, to adequately plead a Fourteenth Amendment violation of a private entity, the complaint must set forth specific facts alleging that the state or governmental entity is responsible for the private entity's actions. *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 747 (9th Cir. 2003); *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). The same test (as set forth above) applies: (1) the public function

test; (2) the joint action or symbiotic relationship test; (3) the governmental compulsion or coercion test; and (4) the governmental nexus test.

As stated above, Mr. Ribar's FAC contains no facts to overcome the presumption that BOC is a private entity. Nor does it allege any facts showing that the Washoe County Defendants caused or directed BOC to treat Mr. Ribar differently from any other individual. The attached exhibits and conclusory assertions likewise fail to suggest that the County Defendants sanctioned, authorized, or instructed BOC to treat Mr. Ribar differently than any other heckler or political extremist present that day. A class-of-one equal protection claim can only be stated if defendants intentionally treated a plaintiff differently than other similarly situated individuals and without a rational basis for doing so. *Gerhart v. Lake Cnty, Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011). As such, the Court should dismiss Count IV as to BOC.

### D. Count VII: Mr. Ribar's 42 USC § 1985(3) Conspiracy to Violate Civil Rights Allegation Fails as It Lacks Factual Allegations BOC Acted Under Color of State Law.

In addition to failing to allege that BOC's actions were motivated by some racial or other protected class-based animus (*See* Washoe County Defendant's Motion to Dismiss [ECF 107 at p. 10] and incorporated herein), Mr. Ribar's FAC fails as a matter of law because there are no facts alleging BOC is a government actor. A claim under 42 USC § 1985 also requires that a court start with the presumption that private conduct does not constitute governmental action. It is Mr. Ribar's burden to overcome this presumption. *Pasadena Republican Club v. W. Justice Ctr.*, 424 F. Supp. 3d 861, 869 (C.D. Cal. 2019), aff'd, 985 F.3d 1161 (9th Cir. 2021) (internal quotations and citations omitted); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Blum v. Yaretsky,* 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835 (9th Cir. 1999).

Merely asserting "Defendants conspired to deprive Plaintiff of rights due to his viewpoint" is an insufficient conclusory allegation that fails to show how BOC was a government actor. As such, the Court should dismiss Count VII as to BOC.

**E. Count VIII: Mr. Ribar's Nevada Constitution Art. 1 §§ 9, 10 Alleging a Violation of Speech and Petition Rights Fails as It Lacks Factual Allegations BOC Acted Under Color of State Law.**

Nevada constitutional claims are analyzed under federal constitutional standards. *See Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 597 n.5 (9th Cir. 2010) Nev. Const. Art. 1, 9&10 (providing no greater protection to speech or assembly activity than the First Amendment of the United States Constitution); *see also S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 23 P.3d 243 (2001) (declining to interpret Article 1, Section 9 more broadly than the First Amendment to the United States Constitution.) Under both Nevada and Federal law, and regardless of the alleged constitutional violation, a plaintiff must first allege sufficient facts to overcome the presumption that private conduct is not attributable to the government. *See S.O.C., Inc.*, 117 Nev. 403; *Cummings v. Charter Hosp. of Las Vegas Inc.*, 111 Nev. 639 (1995); *Mooney v. State*, 134 Nev. 529, 534, 429 P.3d 953, 959 (Nev. App. 2018).

As set forth above, Mr. Ribar's FAC is devoid of such facts and therefore, his cause of action under the Nevada Constitution (Count VIII) must fail.

**F. Count XI: Mr. Ribar's FAC Contains No Facts Setting Forth the Elements of Intentional Infliction of Emotional Distress.**

An intentional infliction of emotional distress ("IIED") claim cannot be based on "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Candalore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992). It instead requires "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard

for causing the emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571 (Nev. 1998). Extreme or outrageous conduct is conduct "outside all possible bounds of decency" and is deemed "utterly interoperable in a civilized community." *Maduike v. Agency Rent-A-Car,* 953, P.2d 24, 26 (Nev. 1998).

Mr. Ribar's FAC contains no allegations that could plausibly support an IIED claim against BOC. In fact, a review of Mr. Ribar's video exhibits show that he has little, if any, interactions with individuals connected to BOC. It is unclear what conclusions he expects BOC or the Court to draw from his lengthy video exhibits regarding "extreme and outrageous conduct," as the Complaint does not identify any specific conduct by BOC that could meet that standard.

Because Mr. Ribar has not set forth any facts to plausibly state a claim for IIED, the Court should dismiss Count XI.

### G. **Count XII: Mr. Ribar's FAC Does Not Allege Any Facts Required for a Defamation Claim Against BOC.**

Defamation cannot be based on a statement that is true, substantially true, an opinion, hyperbole, exaggeration, or generalization. *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 715, 57 P.3d 82, 88 (2002). Defamation requires that there be "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault...; and (4) actual or presumed damages." *Id.* 118 Nev. At 706, 57 P.3d at 90. Publication involves communicating the defamatory matter to another person other than the person claiming to be defamed. *Simpson v. Mars Inc.*, 929 P.2d 966, 967 (Nev. 1997).

Purportedly "all defendants" (including BOC) "falsely accused Plaintiff of misconduct (Exhibit 24), harming his reputation. [ECF 65-1 at p. 9.] What statements BOC allegedly made wherein it "falsely accused Plaintiff of misconduct" is unclear, and certainly is not stated in the FAC. The referenced

Exhibit 24 is an unofficial A.I.-generated "transcript" of an August 2024 Library Board of Trustees meeting wherein no one from BOC was present or spoke at the meeting. (Manke Declaration, Ex. 1 at ¶ 9.) *See* [ECF 70-3]; *see also* [ECF 71] (video of the August 2024 LBOT meeting). If Mr. Ribar's defamation claim is premised on this meeting, then it fails on its face because BOC did not make any statements, false or otherwise, at the meeting. (Manke Declaration, Ex. 1 at ¶ 9.)

Furthermore, to the extent Mr. Ribar's defamation claim is based on any of the Drag Queen Story Hour events, it fails because no false statements of fact were made by anyone from BOC about Mr. Ribar to a third party. *See* Exhibits 27 [ECF 70-6], 28 [ECF 70-7], 29 [ECF 70-8] and 30 [ECF 70-9]. It is Mr. Ribar's burden to identify specific portions of his lengthy video exhibits that actually show a false statement of fact made by BOC about him to a third party. He has not done so, either in his Complaint or in the exhibits. Accordingly, Count XII for defamation against Build Our Center should be dismissed.

## IV. CONCLUSION

Mr. Ribar's First Amended Complaint rests entirely on conclusory assertions, vague accusations, irrelevant emails, and lengthy video exhibits that do not establish any factual basis for liability against Build Our Center. The FAC fails to allege facts sufficient to overcome the presumption that BOC is a private nonprofit entity, separate and distinct from government action, and it does not plausibly state the elements of any cause of action asserted. Because the FAC relies on speculation, inferences, and unsupported allegations rather than concrete facts, it cannot survive scrutiny under FRCP Rule 12(b)(6).

/ / /

/ / /

/ / /

/ / /

/ / /

For these reasons, Defendant Build Our Center respectfully requests the Court dismiss "Counts I, IV, VI, VII, XI, and XII" of Mr. Ribar's First Amended Complaint, with prejudice, as to all allegations against Build Our Center.

DATED September 2, 2025.   SIERRA CREST BUSINESS LAW GROUP

By: _____
Alison R. Kertis, Esq. (NSB 38???)
akertis@sierracrestlaw.com
Jerry C. Carter, Esq. (NSB 5905)
jcarter@sierracrestlaw.com
6770 S. McCarran Blvd., Reno, NV 89509
(775) 448-6070, Fax: (775) 473-8292
*Counsel for Defendant BUILD OUR CENTER*

# CERTIFICATE OF SERVICE

I certify that I am an employee of the SIERRA CREST BUSINESS LAW GROUP who, on the below-written date, caused a true copy of the foregoing to be transmitted via email and also to be filed using the above-entitled Court's electronic filing (CM/ECF) system which will automatically e-serve the same) on the person(s) and/or entity(ies) set forth directly below:

**Drew Ribar**
480 Pershing Lane, Washoe Valley, NV 89704
(775) 223-7899
const2audit@gmail.com
*Plaintiff in propria persona*

**Lindsay L. Liddell** (SBN 14079)
**Andrew Cobi Burnett** (SBN 16505)
DEPUTY DISTRICT ATTORNEYS
One South Sierra Street Reno, NV 89501
lliddell@da.washoecounty.gov
cburnett@da.washoecounty.gov
(775) 337-5700
*Counsel for Plaintiffs Washoe County and its Library System, Jeff Scott, Stacy Mckenzie, Jonnica Bowen, Jennifer Cole; Deputy C. Rothkin, Deputy R. Sapida, and Sgt. George Gomez*

DATED: September 2, 2025.

_____
an employee of the
SIERRA CREST BUSINESS LAW GROUP

**INDEX OF EXHIBITS**

to

DEFENDANT BUILD OUR CENTER'S MOTION TO DISMISS
PLAINTIFF DREW RIBAR'S FIRST AMENDED COMPLAINT

re

*Ribar vs. Washoe County, et alia*
*(Case No. 3:24-cv-00526)*

| Exhibit No. | Exhibit Description | Pages (+ Cover) |
|---|---|---|
| 1. | Declaration of Jeromy Manke | 5 |
| 2. | Proposed Order | 2 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |