Alison R. Kertis, Esq. (NSB 13875)
akertis@sierracrestlaw.com
Jerry C. Carter, Esq. (NSB 5905)
jcarter@sierracrestlaw.com
SIERRA CREST BUSINESS LAW GROUP
6770 S. McCarran Blvd., Reno, Nevada 89519
(775) 448-6070, Facsimile: (775) 473-8292
*Counsel for Defendant BUILD OUR CENTER*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

DREW J. RIBAR,

Plaintiff,

v.

WASHOE COUNTY; WASHOE COUNTY LIBRARY SYSTEM; JEFF SCOTT; THANH NGUYEN; JAMIE HEMINGWAY; BEATE WEINERT; STACY MCKENZIE; JONNICA BOWEN; BEN WEST; BUILD OUR CENTER, INC.; STACY SPAIN; ANGELINE PETERSON; CHRISTOPHER DANIELS; DEPUTIES ROTHKIN, SAPIDA, GOMEZ; JENNIFER COLE; and JOHN/JANE DOES 1-10;

Defendants.

Case No. 3:24-cv-00526

**DEFENDANT**
**BUILD OUR CENTER'S**
**MOTION FOR CASE**
**MANAGEMENT CONFERENCE,**
**RESTRAINING ORDER, AND**
**SANCTIONS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Build Our Center Inc., by and through its undersigned counsel, Alison R. Kertis, Esq. of the Sierra Crest Business Law Group, respectfully requests the Court order a Case Management conference, enter a Restraining Order, and award plaintiff sanctions against plaintiff Drew Ribar.

This Motion is made and based upon all records and pleadings on file herein, together with every exhibit attached hereto (each of which is incorporated herein by this reference), as well as the points and authorities set forth directly below.

In support of this Motion, Build Our Center states as follows:

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

After careful consideration, BOC files this Motion for an emergency Case Management Conference, Restraining Order, and Sanctions against Plaintiff Drew Ribar ("Mr. Ribar"). BOC attempted to resolve these issues without Court intervention and in good faith with Mr. Ribar but, unfortunately, his crusade against BOC has spiraled out of control and requires the Court to intervene and sanction his vexatious conduct. On top of posting email correspondence between counsel and Mr. Ribar to his YouTube channel [Exhibit 1], Facebook [Exhibit 2], X (formerly Twitter) account [Exhibit 3], and posting defamatory content on counsel's Google Reviews [Exhibit 4], Mr. Ribar is also physically pursuing and harassing Build Our Center board members at their places of work [Exhibit 5], and has been witnessed twice loitering in front of the office building. [Declaration of Guadalupe Garcia ("Garcia Declaration") attached hereto as Exhibit 6, at ¶ 4, and Declaration of Jeri Scott ("Scott Declaration") attached hereto as Exhibit 7, at ¶ 4.] Under these circumstances, Mr. Ribar is putting BOC and counsel in an extremely stressful position. BOC Board Members and staff are fearful for their safety and Counsel Kertis (who has two young children at home) is likewise under extreme emotional duress because of Mr. Ribar's inappropriate conduct. [Declaration of Alison Kertis ("Kertis Declaration") attached hereto as Exhibit 8, at ¶ 11.] Because of Mr. Ribar's extreme and outrageous behavior, Counsel Kertis was forced to purchase an upgraded security system, warn her family members, and put her neighbors and children's daycare on notice. [Kertis Declaration, Ex. 8 at ¶ 8.] The Court must intervene immediately to put a stop to Mr. Ribar's extreme and outrageous behavior.

Under any other circumstances, if Mr. Ribar were a licensed attorney practicing before this Court, his conduct would not only be sanctionable, but subject to reprimand or disbarment. However, because Mr. Ribar is a *pro se*

litigant and because Courts often do treat such litigants with broad discretion, he believes that his inappropriate conduct is without consequence. That cannot be the case. Mr. Ribar is a sophisticated *pro se* litigant and currently has a host of other lawsuits against other government entities based on purported constitutional infringements. Because of Mr. Ribar's sophistication, he should be held to the same standard as any attorney. And because of his recent conduct, he should be sanctioned as follows:

**1.** Mr. Ribar should be enjoined, restrained and prohibited from physically approaching (not to come within six hundred feet (600')), speaking with, or sending any type of written communication (including on any social media platform), to any board members, employees, or volunteers of Build Our Center.

**2.** If Mr. Ribar wants to make a public records request, he is prohibited from making this request directly to any person from Build Our Center, its board members, employees, or volunteers. He must make his public records requests over the telephone or online;

**3.** Mr. Ribar should be enjoined, restrained, and prohibited from physically approaching (not to come within six hundred feet (600')), speaking with, or sending any type of electronic or telephonic communication (including on any social media platform) to, any employee of Sierra Crest Business Law Group. All communication with the law firm shall be through the U.S. Mail.

**4.** Mr. Ribar should be enjoined, restrained, and prohibited from continuing to post content from this litigation on any social media page, including but not limited to: YouTube, Facebook, Instagram, LinkedIn, Twitter, X, Truth Social, and TikTok. Any content as to this litigation currently on any of his social media pages shall be removed immediately.

**5.** Mr. Ribar shall remove any and all references to Alison R. Kertis, Esq. on his social media platforms, including but not limited to: Facebook, Instagram, LinkedIn, Twitter, X, Truth Social, and TikTok.

**6.** Mr. Ribar shall reimburse BOC's counsel for the cost of her purchase of a home security system to protect against his aggressive escalating behavior and harassment, the receipt for which is attached hereto as Exhibit 9.

**7.** Mr. Ribar shall be responsible for paying all attorneys' fees and costs incurred in defending against this most recent vendetta, including but not limited to:  attorneys' fees and costs beginning on September 26, 2025, through the present.  And,

**8.** For any and all other relief the Court deems appropriate under the circumstances.

## II.    LEGAL STANDARD

"The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *McKaskle v. Wiggins*, 104 S. Ct. 944, 954 (1984) (citing *Faretta v. California*, 95 S. Ct. 2525, 2541 (1975) n.46). Likewise, *pro se* litigants are also subject to Rule 11 sanctions. *See Business Guides v. Chromatic Communications, Enterprises*, 892 F.2d 802, 811 (9th Cir. 1989), *aff'd* 498 U.S. 533, 111 S. Ct. 922, 112 L.Ed.2d 1140 (1991) ("Pro se litigants are subject to Rule 11 sanctions and their filings, like those of attorneys, are judged by an objective standard of reasonableness.").

*Pro se* status does not exempt individuals from adhering to procedural rules, ethical obligations, or decorum requirements. *Pro se* litigants are also held to the same standard of decorum and ethical conduct expected of attorneys, both inside and outside the courtroom. *See Kulas v. Flores,* 255 F.3d 780, 787 (9th

Cir. 2001). "The court expects a high degree of professionalism and civility from attorneys." LR 1-1(c). This expectation applies to attorneys "when appearing before the court and when engaged outside of it, whether in discovery or any other phase of a case." *Id.* Additionally, courts are guided by Federal Rules of Civil Procedure 1 to ensure a "just, speedy, and inexpensive determination of every action and proceeding." "The Federal Rules of Civil Procedure were amended to highlight the need for attorneys to work cooperatively and to employ common sense practicability so that cases can be resolved fairly and expeditiously. *Searcy v. Esurance Ins. Co.*, No. 2:15-cv-00047-APG-NGK, 2016 WL 4149964, at *2 (D.Nev.Aug. 1, 2016).

Federal courts have inherent authority to sanction conduct abusive of the judicial process, including against *pro se* litigants for harassing and vexatious conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). For example, in *Missud v. Nevada*, 861 F. Supp. 2d 1044, 1060 (N.D. Cal. 2012), *aff'd*, 520 Fed. Appx. 534 (9th Cir. 2013), the court found that the *pro se* litigant's intent to harass opposing counsel and impose financial burdens through litigation warranted a designation as a vexatious litigant. In part, the court noted that plaintiff's conduct was frivolous and harassing because, instead of abandoning his claims after being sanctioned, the plaintiff "simply ratcheted up his litigious conduct in the aftermath" of the Court's ruling. *Id.* The plaintiff's communications, which included threats to make litigation "horrendously expensive" and publicize the case to embarrass the defendant, demonstrated improper motives under Rule 11(b)(1), which prohibits filings made for harassment or other improper purposes. *Id.; see also Eng v. Marcus & Millichamp Co.*, No. C 10–05050 CRB, 2011 WL 2175207, at *2 (N.D.Cal. June 3, 2011)(declaring plaintiff a vexatious litigant because he had sent threatening emails to defendants as probative of his "improper purpose of harassing Defendants"). Similarly, in *DeNardo v. Johnstone*, A90-001 CIV, 1991 WL 183814

(D. Alaska 1991), the court noted that a *pro se* litigant's pattern of using litigation to harass those he disliked, by forcing them to incur legal costs, justified awarding attorney fees under 42 U.S.C. § 1988 to the prevailing defendants; the *pro se* litigant's conduct was deemed an abuse of the judicial process.[1] *Pro se* litigants are also held to the same standard of decorum as attorneys

The court may, after notice and an opportunity to be heard, impose appropriate sanctions on a party who fails to comply with the Court's Local Rules. LR IA 11-8(c). Recklessness, when combined with an additional factor such as frivolity, harassment, or an improper purpose may support sanctions. *See in re Giardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see also In re Cashion Family Tr.*, 669 B.R. 341, 382 (Bankr. D. Nev. 2025) ("Federal courts have inherent power to fashion an appropriate sanction for conduct 'which abuses the judicial process.'" (citing *Barker v. U.S. Nat. Bank*, 2015 WL 1622098, at *5 (D. Or. Apr. 9, 2015)

In short, *pro se* status does not exempt individuals from adhering to procedural rules, ethical obligations, or decorum requirements. Further, a court may impose sanctions or restrictions to deter abusive conduct where *pro se* litigants have engaged in harassing or vexatious behavior, including conduct directed at opposing counsel.

Here, the court should hold a case management conference to address Mr. Ribar's inappropriate behavior and order him to conduct himself with civility and

---

[1] Of particular note, the Court awarded attorneys' fees and costs to the prevailing defendants and against the *pro se* litigant because the *pro se* litigant knew or should have known his case was without merit, and that "any lay person, having read all of the decisions rendered against [the *pro se* litigant] would have recognized that [the] lawsuit was groundless and that he would be subject to an adverse award of attorneys' fees under 42 U.S.C. § 1988. This would be true even if [the *pro se* litigant] was so invincibly ignorant that he was proceeding in good faith." *DeNardo*, A90-001 CIV, 1991 WL 183814 (D. Alaska 1991)

professionalism. The Court should impose sanctions on Mr. Ribar for his conduct and abuse of the judicial process. As set forth below, there has been an increasing pattern of conduct that is alarming, inappropriate, extreme, and outrageous and warrants immediate Court intervention.

### III.    BACKGROUND FACTS

Over the past two weeks, Mr. Ribar has engaged in an in-person and online intimidation and harassment campaign against BOC and BOC's counsel.

### a. September 2025 Private Pride Event and Baseless Email Barrage from Mr. Ribar

Starting on or about September 6, 2025, Mr. Ribar, in an effort to manufacture additional baseless causes of action against BOC[2], attempted to trespass on a private event hosted by BOC in Midtown Reno.[3] Mr. Ribar filmed this entire event and, throughout the course of the video, it is clear that he is intentionally provoking and vexing unassuming individuals into reacting so that he can claim that his First Amendment Rights were purportedly violated. *Id.* fn. 3, at time stamps 16:59-19:52 and 21:03-26:10.

On September 7, 2025, counsel for BOC received an email from Mr. Ribar wherein he claimed, without any basis, that he was going to request leave to amend his complaint a second time based on events from Pride 2025, events which are wholly unrelated to his current case against the Washoe County Defendants and BOC. In response, counsel emailed Mr. Ribar requesting he clarify his causes of action and damages – as the video shows no viable causes

---

[2] Mr. Ribar admits that he conducts himself in such a way to manufacture standing: "I just keep taking my camera, recording interactions, and I file lawsuits," and he "build[s] up the lawsuit by ... asking more questions". *See* https://www.youtube.com/watch?v=6lJhKaT6OJk&t=901s    This type of conduct is analogous to staged personal injury cases where plaintiffs jump in front of cars or fake pedestrian accidents to reap the insurance proceeds; i.e. fraud.

[3] https://www.youtube.com/watch?v=M7h8Fpo9TT0&t=664s

---

of action or damages – and cautioned Mr. Ribar against amending his complaint to include baseless claims and that BOC was entitled to recover attorneys' fees and costs should BOC prevail in its defense. [September 8, 2025, 10:29 a.m. email, a true and correct copy of which is attached hereto as Exhibit 10.]

In response, Mr. Ribar commenced with an email campaign wherein he not only doubled down on his baseless claims against BOC, but also refused to conduct a meet-and-confer if he could not record the same. [September 9, 2025, 7:44 a.m. email, a true and correct copy of which is attached hereto as Exhibit 11.] This campaign snowballed to include an email to the City of Reno attorney, Karl Hall, a true and correct copy of which is attached hereto as Exhibit 12; an email demanding BOC produce an alleged "banned list," a true and correct copy of which is attached hereto as Exhibit 13); an email to BOC board member, Alan Ratliff, threating suit against him, a true and correct copy of which is attached hereto as Exhibit 14; and an email to a private security company threatening to name them as a defendant, a true and correct copy of which is attached hereto as Exhibit 15.

On September 10, 2025, Mr. Ribar followed BOC Board Member Yvonne Allen to her place of work at Truckee Meadows Community College. He filmed his entire interaction with her, and it is patently clear that this "in your face" approach, coupled with his video camera made Ms. Allen uncomfortable.[4] Mr. Ribar followed Ms. Allen on the pretense that he was "seeking public records." However, it is quite clear that he had ulterior motives, including intimidation and harassment, as he has the sophistication and capability to seek public records online or over the telephone.

In response, Counsel Kertis emailed a cease-and-desist to Mr. Ribar, notifying him that his following and harassment of Ms. Allen was an

---

[4] https://www.youtube.com/watch?v=VRRFzhlEtvE&t=1313s

inappropriate attempt to circumvent the Court's discovery stay, and that his conduct was harassment and vexatious. [September 10, 2025, 10:17 a.m. email, a true and correct copy of which is attached hereto as Exhibit 16.] In response, Mr. Ribar (who copied journalists from the Reno Gazette Journal, News 4, and This Is Reno) claimed that his interaction with Ms. Allen was "in good faith" and that he was allegedly seeking her emails to conduct "preliminary fact-gathering" he claimed was related to the September 2025 Pride event. [September 10, 2025, 10:53 a.m. email, a true and correct copy of which is attached hereto as Exhibit 17.]

In reply, Counsel Kertis reemphasized the points in her initial cease-and-desist to not speak with anyone from BOC, that his intimidation and harassment were abuse of process, and again cautioned Mr. Ribar that, should he amend his complaint to include baseless claims, she would seek Rule 11 Sanctions and attorneys' fees and costs. [September 10, 2025, 4:26 p.m. email, a true and correct copy of which is attached hereto as Exhibit 18.)

Mr. Ribar, choosing to ignore this email, doubled down on his vendetta, including threatening BOC with certain Internal Revenue Code violations (despite not having standing to enforce the same codes). [September 10, 2025, 6:19 p.m. email, a true and correct copy of which is attached hereto as Exhibit 19.] He then sent an additional (two) emails reemphasizing his baseless allegations and claiming that an alleged "banned list" proves that BOC engaged in a conspiracy to exclude individuals based on political views. [September 10, 2025, 7:57 p.m. and 10:23 p.m. emails, true and correct copies of which are attached hereto as Exhibits 20 and 21, respectively.]

On September 11, 2025, Counsel Kertis responded to Mr. Ribar, declining to litigate these issues over email. [September 11, 2025, 7:48 a.m., a true and correct copy of which is attached hereto as Exhibit 22.]

/ / /

In response, Counsel Kertis received an email from Mr. Ribar wherein he claimed he was providing notice under Federal Rule of Civil Procedure 11 that he was seeking sanctions based on the foregoing email correspondence that he characterized as lacking "factual support." [September 11, 2025, 8:20 a.m. email, a true and correct copy of which is attached hereto as Exhibit 23.] Two minutes later, he sent another email threatening Counsel Kertis, accusing her of violating the rules of professional conduct and, again, attempted to litigate foregoing issues through email. [September 11, 2025, 8:22 a.m. email, a true and correct copy of which is attached hereto as Exhibit 24.)

On September 12, 2025, Mr. Ribar emailed Counsel Kertis now claiming that because he is allegedly a "candidate for public office," BOC excluding him from the private Pride September 2025 Parade constituted "political intervention" and violated election law. [September 12, 2025, 9:12 a.m. email, a true and correct copy of which is attached hereto as Exhibit 25.]

Later that day, Counsel Kertis received another email from Mr. Ribar wherein he claimed that he went to the University of Nevada Reno's School of Social Work to make a public records request and that he was "informed by officers that you [Counsel Kertis] had provided UNR Police with a TPO/cease-and-desist letter. [September 12, 2025 3:43 p.m. email, a true and correct copy of which is attached hereto as Exhibit 26.] Counsel Kertis responded that she was aware Mr. Ribar had been at UNR asking for Dr. Alan Ratliff's emails but had had no communication with anyone from UNR or its security/police. [September 12, 2025, 4:28 p.m. email, a true and correct copy of which is attached hereto as Exhibit 29.]

### b. Mr. Ribar's Social Media Vendetta Against BOC and Counsel Kertis

In response, and because Mr. Ribar apparently did not believe counsel

Kertis,[5] Mr. Ribar moved his harassment campaign to social media posting a barrage of YouTube videos and social media posts depicting his harassment of BOC board members, plus additional posts and videos disparaging Counsel Kertis and BOC:

### Mr. Ribar's "Live Streams"

- September 14, 2025, Mr. Ribar posts a live stream video claiming, among other things, that he is a "political candidate and they [BOC] are a non-profit by law and they are not permitted to interfere with me or my political campaign yet they denied me access to simply record and find out more about their festivities." *See* description of Video, "City of Reno Bans Me from Public Events."[6] In this same video, Mr. Ribar displays email correspondence between him and Counsel Kertis. (Cease-and-Desist communication, Ex. 18.) Of extreme concern are the comments to this video, which include among others:

  - "Everyone in this video is dancing on Charlie's [Kirk's] grave and they would on yours too, make no mistake. Prepare accordingly." User @kekistanirefugee.

  - "Some of these people might be part of a terrorist cell? Be careful." User @SuvyMoon864.

### Mr. Ribar's YouTube "Video Shorts"[7]

- September 16, 2025, Mr. Ribar posts a "video short" to his YouTube channel, Auditing Reno 911, discussing the Cease-and-Desist email (Ex. 20);[8]

- September 16, 2025, Mr. Ribar posts a "video short" to YouTube his YouTube channel, Auditing Reno 911, of approaching Ms.

---

[5] Mr. Ribar clearly assumed how UNR Police became aware of counsel Kertis' email to him; counsel Kertis has since confirmed that it was Dr. Allen Ratliff who transmitted the email to UNR Police. Kertis Declaration, Ex. 8 at ¶ 10. Mr. Ribar has published patently false information to third parties on multiple platforms about counsel Kertis' purported "lies," including on Google and Facebook reviews to damage counsel Kertis' reputation and standing in the community. This constitutes defamation.

[6] https://www.youtube.com/watch?v=NO-Gcto3LRU&t=23s

[7] Note, that every time one of Mr. Ribar's videos is clicked on or watched, he receives a commission from YouTube. BOC should not be responsible for paying Mr. Ribar's commission for being forced to watch these videos to defend against this lawsuit. The Court should include as a sanction against Mr. Ribar, to include reimbursement to BOC from these commissions.

[8] https://www.youtube.com/shorts/DWXnHIN9k6U

---

Allen at TMCC demanding an in person public records request;[9]

- On September 16, 2025, and September 17, 2025, Mr. Ribar posts various "video shorts" to his YouTube channel showing his interactions with the Dean of the UNR School of Social Work wherein he demands Dr. Alan Ratliff's emails, threatens "you will see what happens" if the Dean calls the police on him, and rants to the same Dean about BOC's alleged violation of IRS code. This Dean is clearly uncomfortable and fearful for her safety, which causes her to call campus police;[10]

### Mr. Ribar's Social Media

- On September 15, 2025, Mr. Ribar posted to his Facebook page, Auditing Reno 911, the contents of his Rule 11 sanctions letter, and published to third parties, "Sierra Crest Business Law Group attorney Alison Kertis lied about me. Read the letter." [Exhibit 2.]

- On or around September 15, 2025, Mr. Ribar posted one of his YouTube videos to his Facebook page, Auditing Reno 911, with the headline, "Sierra Crest Business Law Group attorney Alison Kertis lied about me. Here's the video." [Exhibit 2.]

- Mr. Ribar has posted all of the above YouTube "video shorts" to his TikTok account, Auditing Reno 911.[11]

### c. Mr. Ribar Loitering and Trespassing on Private Property Around Sierra Crest Business Law Group

Mr. Ribar has also recently loitered and trespassed on private property outside of the law office of Sierra Crest Business Law Group two days in a row: September 15, 2025 and September 16, 2025. [Garcia Declaration, Ex. 6 at ¶ 4; Scott Declaration, Ex. 7 at ¶ 4.] Mr. Ribar was witnessed by staff late Monday afternoon after close of business standing against the wall speaking on his phone. [Scott Declaration, Ex. 7 at ¶ 4.] Based on the time of day and the manner of Mr. Ribar, the staff member found his behavior peculiar, which made her uncomfortable. [Scott Declaration, Ex. 7 at ¶ 4.] Mr. Ribar had no lawful

[9] https://www.youtube.com/shorts/Sv1FRKVFvKA

[10] https://www.youtube.com/shorts/iHlWcDxulGo
https://www.youtube.com/shorts/hekqQwvk_Nc
https://www.youtube.com/shorts/xjmtGU2yeF8

[11] https://www.tiktok.com/t/ZP8SumF4s/

business to conduct at Sierra Crest on Monday September 15, 2025. [Kertis Declaration, Ex. 8 at ¶ 7.] The next day, another staff member witnessed Mr. Ribar driving slowly by the office looking menacingly in the windows. [Garcia Declaration, Ex. 6 at ¶ 4.] This behavior struck her as odd, and upon review of Mr. Ribar's photo, matched Mr. Ribar as the driver of the vehicle. [Garcia Declaration, Ex. 6 at ¶ 4.] This staff member has since reported feeling unsafe because of Mr. Ribar's behavior. [Garcia Declaration, Ex. 6 at ¶ 4.] Mr. Ribar had no lawful business to conduct on the afternoon of September 16, 2025 at Sierra Crest. [Kertis Declaration, Ex. 8 at ¶ 7.] One can only presume the reasons why he was loitering on private property, but it certainly made staff at Sierra Crest Business Law Group fearful and uncomfortable; this is certainly not the first time he has trespassed on property.[12] Counsel Kertis is likewise extremely wary to go to the office as she is fearful of an unexpected encounter with Mr. Ribar, and the potential aggressive and harassing comments he may lodge at her in an attempt to provoke a reaction or intimidate her.

After staff reported Mr. Ribar's loitering around the private parking lot of Sierra Crest, and based on these very reasonable concerns and fears, Counsel Kertis was forced to purchase an upgraded security system for her personal home. [Kertis Declaration, Ex. 8 at ¶ 8.] Further, Counsel Kertis was forced to warn family members, her young children's daycare, and neighbors of the very real and present danger of Mr. Ribar's aggressive behavior. [Kertis Declaration, Ex. 8 at ¶ 8.] Moreover, because of Mr. Ribar's very real and present aggressive escalation, Counsel Kertis has been forced to take an extraordinary amount of personal time to defend against his actions, research options for BOC, Sierra Crest, and herself—time away from paying cases.[13]

---

[12] https://www.youtube.com/watch?v=6lJhKaT6OJk&t=901s
https://www.youtube.com/watch?v=M7h8Fpo9TT0

[13] Counsel Kertis represents BOC on a *pro bono* basis.

Further, to take more precautions, Sierra Crest Business Law Group has sent Mr. Ribar a formal letter demanding that he refrain from trespassing on the property, or from communicating with staff or attorneys by electronic communication or over the telephone; Sierra Crest will communicate only with him through the U.S. postal service. [Kertis Declaration, Ex. 8 at ¶ 9.]

## IV.    LEGAL ARGUMENT

While Sierra Crest Business Law Group and Counsel Kertis have taken steps to mitigate Mr. Ribar's aggressive and harassing conduct, the Court still needs to intervene in this case to protect the interests and safety of the parties to this lawsuit. Mr. Ribar's recent escalation of email rampages, social media posts, and pursuing BOC members and volunteers at their places of work is alarming and should shock the Court's conscience.

There is good cause to hold a Case Management Conference and sanction Mr. Ribar for his extremely disturbing conduct. Not only should the Court admonish Mr. Ribar to proceed with civility and refrain from speaking to, harassing, or threatening members of BOC, Sierra Crest staff, and Counsel Kertis, but the Court should also sanction Mr. Ribar with monetary sanctions (attorneys' fees and costs) and enjoin him from continuing to post his aggressive and defamatory content to his social media pages. Counsel Kertis has needlessly been exposed to Mr. Ribar's anger, threats of baseless Rule 11 sanctions, personal attacks on social media, and based on his prior repeated course of conduct at her office, stalking.[14] This conduct is impeding the parties' ability to

---

[14] NRS 200.575(1) provides, in relevant part, "A person who, without lawful authority, willfully or maliciously engages in a course of conduct directed towards a victim that would cause a reasonable person under similar circumstances to feel terrorized, frightened, intimidated, harassed or fearful for his or her immediate safety or the immediate safety of a family or household member, and that actually causes the victim to feel terrorized, frightened, intimidated, harassed or fearful for his or her immediate safety or the immediate safety of a family or household member, commits the crime of stalking." A course of conduct "means a pattern of conduct which consists of two or more acts over a period of time that evidences a continuity of purpose

resolve the issues in this case.

Despite attempts to deescalate or ignore Mr. Ribar's behavior, his has spiraled out of control. There is a demonstrated threat of continued verbal abuse and intimidation of individuals he perceives as adverse. Court intervention is now appropriate. At this point, Counsel Kertis needs the Court's assistance to protect her staff and clients. Additionally, Counsel Kertis should not be forced to endure this behavior from Mr. Ribar, let alone a *pro se* who acts as though professional civility and the law does not apply to him.[15]

Absent Court intervention, Counsel Kertis is concerned that Mr. Ribar's conduct will only continue to escalate. There is a real and present danger that he could bring physical harm upon BOC (its board members, employees, volunteers), Sierra Crest Business Law Group staff, or even Counsel Kertis. There is also a very real and present danger that as a result of Mr. Ribar's toxic online content, he could fuel the fire of his followers, which could lead to physical harm to BOC (its board members, employees, volunteers), Sierra Crest Business Law Group staff, or Counsel Kertis and her family. An Order from this Court is necessary so that the parties can litigate this case in a safe, civil, and professional manner.

BOC respectfully requests that this Court hold an emergency case management conference and not only admonish Mr. Ribar to proceed with civility and professionalism, but also sanction him as follows:

---

directed at a specific person." NRS 200.575(11)(a).

[15] Mr. Ribar claims to be professional and civil, yet his conduct clearly shows otherwise. Professional and civil individuals do not bombard individuals on the street aggressively with a video camera putting them on the spot about the Constitution, professional and civil individuals do not stalk opposing counsel or loiter around an opposing party's office for no good reason, nor do civil and professional individuals post intentionally provocative online content to get a rise out of followers which inevitably leads to a spiral of outrage and aggressive behavior.

**1.** Mr. Ribar should be enjoined, restrained, and prohibited from physically approaching (not to come within 600 feet), speaking to, sending any type of written communication (including on any social media platform), member or volunteer of Build Our Center;

**2.** If Mr. Ribar wants to make a public records request, he is prohibited from making this request directly from any person from Build Our Center, its board members, employees, or volunteers; he must make his public records requests over the telephone or online;

**3.** Mr. Ribar should be enjoined, restrained, and prohibited from physically approaching (not to come within 600 feet), speaking to, and sending any type of electronic or telephonic communication (including on any social media platform), with any employee of Sierra Crest Business Law Group. All communication with the law firm shall be through the U.S. Mail;

**4.** Mr. Ribar should be enjoined, restrained, and prohibited from continuing to post content from this litigation on any social media page, including but not limited to, YouTube, Facebook, Instagram, LinkedIn, Twitter, X, Truth Social, and TikTok. Any content as to this litigation currently on any of his social media pages shall be removed immediately;

**5.** Mr. Ribar shall remove any and all references to Alison R. Kertis, Esq. on his social media platforms, including but not limited to, Facebook, Instagram, LinkedIn, Twitter, X, Truth Social, and TikTok;

**6.** Mr. Ribar shall reimburse counsel for BOC the cost of her purchase of a home security system to protect against his stalking and harassment (the receipt of which is attached hereto as Exhibit 9); and

**7.** Mr. Ribar shall be responsible for paying all attorneys' fees and costs incurred in defending against this most recent vendetta, including but not limited to, attorneys' fees and costs beginning on September 26, 2025, through the present.

**8.** For any and all other relief the Court deems appropriate under the circumstances.

DATED: September 18, 2025.

SIERRA CREST BUSINESS LAW GROUP


By: _____
Jerry C. Carter, Esq. (NSB 5905)
jcarter@sierracrestlaw.com
Alison R. Kertis, Esq. (NSB 38???)
akertis@sierracrestlaw.com
6770 S. McCarran Blvd., Reno, NV 89509
(775) 448-6070, Fax: (775) 473-8292
*Counsel for Defendant BUILD OUR CENTER*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the SIERRA CREST BUSINESS LAW GROUP who, on the below-written date, caused a true copy of the foregoing to be transmitted via email and also to be filed using the above-entitled Court's electronic filing (CM/ECF) system which will automatically e-serve the same) on the person(s) and/or entity(ies) set forth directly below:

**Drew Ribar**
480 Pershing Lane, Washoe Valley, NV 89704
(775) 223-7899
const2audit@gmail.com
*Plaintiff in propria persona*

**Lindsay L. Liddell** (SBN 14079)
**Andrew Cobi Burnett** (SBN 16505)
DEPUTY DISTRICT ATTORNEYS
One South Sierra Street Reno, NV 89501
lliddell@da.washoecounty.gov
cburnett@da.washoecounty.gov
(775) 337-5700
*Counsel for Plaintiffs Washoe County and its Library*
*System, Jeff Scott, Stacy Mckenzie, Jonnica Bowen,*
*Jennifer Cole; Deputy C. Rothkin, Deputy R. Sapida,*
*and Sgt. George Gomez*

DATED: September 18, 2025.

_____
an employee of the
SIERRA CREST BUSINESS LAW GROUP

# INDEX OF EXHIBITS

to

DEFENDANT BUILD OUR CENTER'S
MOTION FOR CMC, RESTRAINING ORDER, AND SANCTIONS

re

*Ribar vs. Washoe County, et alia*
*(Case No. 3:24-cv-00526)*

| Exhibit No. | Exhibit Description | Pages (+ Cover) |
|---|---|---|
| 1. | Counsel Kertis Email published on YouTube | |
| 2. | Counsel Kertis Email published on Facebook | |
| 3. | Counsel Kertis Email published on Twitter | |
| 4. | Ribar Defamatory Post on Google Review | |
| 5. | September 12, 2025, 11:44 a.m. Email | |
| 6. | Declaration of Guadalupe Garcia | |
| 7. | Declaration of Jeri Scott | |
| 8. | Declaration of Alison Kertis, Esq. | |
| 9. | Counsel Kertis Receipt for Home Security System | |
| 10. | September  8, 2025, 10:29 a.m. Email | |
| 11. | September  9, 2025,  7:44 a.m. Email | |
| 12. | September  9, 2025,  8:11 a.m. Email | |
| 13. | September  9, 2025,  2:27 p.m. Email | |
| 14. | September 10, 2025,  6:55 a.m. Email | |
| 15. | September 10, 2025,  9:33 a.m. Email | |
| 16. | September 10, 2025, 10:17 a.m. Email | |
| 17. | September 10, 2025, 10:53 a.m. Email | |
| 18. | September 10, 2025,  4:26 p.m. Email | |
| 19. | September 10, 2025,  6:19 p.m. Email | |
| 20. | September 10, 2025,  7:57 p.m. Email | |
| 21. | September 10, 2025, 10:23 a.m. Email | |
| 22. | September 11, 2025,  7:48 a.m. Email | |
| 23. | September 11, 2025,  8:20 a.m. Email | |
| 24. | September 11, 2025,  8:22 a.m. Email | |
| 25. | September 12, 2025,  9:12 a.m. Email | |
| 26. | September 12, 2025,  3:43 p.m. Email | |
| 27. | September 12, 2025,  4:28 p.m. Email | |
| | | |
| | | |
| | | |