LINDSAY LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
COBI BURNETT
Deputy District Attorney
Nevada State Bar Number 16505
One South Sierra Street
Reno, NV 89501
lliddell@da.washoecounty.gov
cburnett@da.washoecounty.gov
(775) 337-5700
ATTORNEYS FOR WASHOE COUNTY DEFENDANTS

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

DREW RIBAR,

Plaintiff,

vs.

WASHOE COUNTY, et al.

Defendants.

______________________________________/

Case No. 3:24-CV-00526-ART-CSD

**COUNTY DEFENDANTS' MOTION FOR RESTRAINING ORDER; SUBSTANTIVE JOINDER TO DEFENDANT BUILD OURCENTER'S MOTION FOR CASE MANAGEMENT CONFERENCE, RESTRAINING ORDER, AND SANCTIONS**

Defendants Washoe County, Washoe County Library System ("Library"), Jeff Scott ("Director Scott"), Stacy McKenzie, Jonnica Bowen, Jennifer Cole, Deputy "Rothkin" (Rothgeb), Deputy Sapida, and Sgt. Gomez (the original "County Defendants") by and through counsel, hereby move this Court for a restraining order and join Defendant Build Our Center's Motion for Case Management Conference, Restraining Order, and Sanctions (ECF No. 130). This motion is based upon the following Memorandum of Points and Authorities and all pleadings and papers on file.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Drew Ribar ("Ribar") has exhibited an escalating pattern of harassment, intimidation, and oppressive behavior toward defense counsel, clients, and witnesses. He

has gone on a social media campaign to attack the credibility of defense counsels. He recently used obscene language to a Library Board of Trustees ("LBOT") Trustee to incite her and later attempted to follow members of the public to their vehicle and record their license plate in the parking lot of a Washoe County Library branch. He has gone uninvited to the workplaces of some Build Our Center representatives, and witnesses believe he was present at their counsel's office. Disturbingly, he posted details on YouTube regarding the name and workplace of the fiancé for one of those individuals. His tactics deter the fair administration of this case, oppresses Library operations, and harasses the individuals involved.

Additionally, Ribar has recently expressed alarming beliefs that County Defendants' fear Ribar will use to justify continued escalating harassment, stalking, and possibly physical violence. He has referred to a "political hit list," which he believes he is on. County Defendants have no knowledge of or involvement with any creation of such a list, yet Ribar continues to communicate with defense counsel and the LBOT about it. Last week, he informed the LBOT that he believes there are people "killing some conservatives" and "it's happening in our community…" Commenters on one of Ribar's recent YouTube posts refer to (presumably the firearms provision of) the Second Amendment, one as a "fix" for Ribar's grievances, and another encouraging use for "self protection." There is serious concern for the safety and well-being of the individuals involved in this case, and concern that Ribar's behavior will continue to escalate without Court intervention.

County Defendants request that the Court use its inherent power to enjoin the harassment and intimidation that has developed in this case. In addition to the relief that Build Our Center requests, County Defendants respectfully request the following restraining order to address County Defendants and its counsels:

//

//

//

1. Ribar should be enjoined, restrained and prohibited from physically approaching (not to come within six hundred feet (600')), speaking with, or sending any type of written communication (including on any social media platform) to the Library or any Library employee except if attending a publicly noticed open meeting pursuant to NRS Chapter 241, or if present at a Library branch for purposes of an emergency evacuation.

2. Ribar should be enjoined, restrained and prohibited from physically approaching (not to come within six hundred feet (600')) County Defendants' counsel or any employee of the Washoe County District Attorney's Office except for attending a hearing in this case.

3. Ribar should be enjoined, restrained and prohibited from physically entering the Washoe County District Attorney's Office (1 S. Sierra Street, 4th Floor, Reno, NV 89501), and from physically entering the staff parking lot, which has a secure entrance gate but lacks a secure gated perimeter (located at or about 76 Court Street, Reno, NV 89501, Assessor Parcel Numbers 011-165-01, 011-165-02, 011-165-03, 011-165-04, 011-165-18, 011-165-23, 011-165-21).

4. While attending a Library Board of Trustees meeting, whether before, during, or after, Ribar shall not harass, threaten, intimidate, or follow any person, including the appointed Trustees, Library staff, and members of the public. If during an LBOT meeting, a Trustee ejects Ribar for behavior that disrupts the forum, Ribar shall be required to immediately remove himself from the premises.

5. Ribar shall not direct any public records requests to County Defendants' counsel and instead must use the Washoe County online public records portal.

6. Ribar should be enjoined, restrained, and prohibited from continuing to post content from or regarding this case, any defendant, or any witness on any social media page, including but not limited to: YouTube, Facebook, Instagram, LinkedIn, Twitter/X, Truth Social, and TikTok. Any content as to this litigation currently on any of his social media pages shall be removed immediately.

7. Mr. Ribar shall remove any and all references to Lindsay Liddell, "Liddell," "DDA Liddell," etc., on any social media account that he operates, including YouTube, Facebook, Instagram, Twitter/X, and TikTok.

8. The restraining order should remain in effect during the pendency of this case, including through any appeals Ribar may file.

//

## II. PLAINTIFF DREW RIBAR'S ESCALATING HARASSMENT

Ribar operates a YouTube Channel with now over 30,000 subscribers on which he primarily posts videos of his activities filming and antagonizing government employees for their click-bait reactions.[1] In the past, Ribar's harassing videos led to doxxing and direct harassment of County Defendants. *See* (ECF No. 64). Ribar is aware of this, because it was directly litigated in the instant case and gave rise to a protective order and an order prohibiting the recording of depositions. *See id.*; (ECF Nos. 89, 98). Despite this information, Ribar has continued to post about the Defendants, defense counsel, individuals associated with Defendants, and the instant litigation.

In August 2025, Ribar posted a video attacking County Defendants' counsel, Deputy District Attorney Lindsay Liddell.[2] *See* Ex. 1. He asks his viewers, "WANT TO SEE ATTORNEY LIDDELL LIE IN A COURT DOCUMENT??" *Id.* at p. 1. He then provides an excerpt from a filing in this case, saying "WHY LIE??,"[3] and inviting his viewers to "ASK HER AT LLIDDELL@DA.WASHOECOUNTY.GOV." *Id.* at p. 2. Ribar posted another video of a campaign event for Washoe County District Attorney Christopher Hicks, which Ribar attended and attempted to antagonize DA Hicks.[4] *See* Ex. 2. In the video, he asks DA Hicks in front of several attendees, "…one of your attorneys, Lindsay Liddell in one of her documents lied to the Court…" *Id.*

//

---

[1] *See* https://www.youtube.com/@auditingreno911 (last visited Sept. 22, 2025).

[2] The video appears to have since been removed from Ribar's channel, presumably for violating the YouTube terms of service, but County Defendants are unaware of the specific circumstances that lead to its removal.

[3] The "lie" of which Ribar accuses undersigned counsel is based on County Defendants' description of his camera equipment as a "bulky tripod." Apparently, Ribar's camera attachment is technically termed a "gimbal," which has many features including a built-in tripod. It is a distinction without a difference.

[4] *See* https://www.youtube.com/watch?v=pLQw685lphg (last visited Sept. 22, 2025).

As Defendant Build Our Center's Motion describes, on September 6, 2025, Ribar attempted to attend a private Pride festival event, but apparently was not permitted to do so. Since then, Ribar's harassment and inappropriate conduct substantially escalated. Build Our Center's Motion describes the many emails to defense counsels and others, the baseless demands, and inappropriate behavior. (ECF No. 130 at pp. 7–14). Ribar's behavior continues to escalate.

On September 10, 2025, presumably using Nevada public records laws as a weapon, Ribar submitted a frivolous public records request to undersigned counsel and Reno City Attorney Karl Hall. Ex. 3. Ribar is well aware of this law, including that it requires any public employee recipient to respond within five business days regardless of whether they have control or custody of the requested records. *See* NRS 239.0107(1). In submitting this request for records, which he presumably knows are not in undersigned counsel's custody, he inappropriately consumed undersigned counsel's time and resources in requiring her to respond and inform him of what he presumably already knew. *See* Ex. 3. This frivolous public records request is another example of Ribar harassing and oppressing counsel in this case.

On September 16, 2025, Ribar posted a video of his harassing contact with a Build Our Center volunteer, YeVonne Allen, at her workplace Truckee Meadows Community College.[5] *See* Ex. 4. Despite history of his harassment and victims experiencing doxxing, Ribar posted live feed video to his YouTube channel displaying Ms. Allen's personal FaceBook page. *Id.* at p. 1. Even more alarming, Ribar then guided his viewers to the "relationship" section of Ms. Allen's personal account, and then to Ms. Allen's fiancé's personal FaceBook account, a private person who has no relation to Ribar or the instant case. *Id.* at pp. 1–2. He then announced and displayed the full name and workplace of Ms.

//

[5] *See* https://www.youtube.com/watch?v=VRRFzhlEtvE (last visited September 19, 2025).

Allen's fiancé. *Id.* at p. 2. Ribar's harassment and oppression of Ms. Allen and her fiancé demonstrates dangerous escalation into the private lives of his targets, and is very unsettling.

Around midnight, early into September 17, 2025, Ribar emailed undersigned counsel and the employer of Build Our Center's counsel, with a subject line "Do not lie to me." and containing a video link. Ex. 5 at pp. 2–3. Undersigned counsel responded, stating it appeared to be another false accusation of lying, and that it was unclear what connection exists between Washoe County or the Library and the September 2025 private Pride event. *Id.* at p. 2. In response, Ribar continued to accuse defense counsel of lying. *Id.* at p. 1.

In the evening of September 17, 2025, Ribar attended a Library Board of Trustees ("LBOT") meeting where he displayed grossly inappropriate behavior.[6] *See* Ex. 6; Ex. 7; Ex. 8. Before the meeting started, he handed photocopies of the purported Pride event "banned list," to the LBOT Trustees. Ex. 6 at ¶3. When handing it to one of the appointed LBOT Trustees, he aggressively called her a "fucking communist."[7] *Id.*; Ex. 7 at p. 1. Shortly after, Ribar sarcastically announced, "I might be a little angry." Ex. 7 at p. 2. During the initial public comment period, Ribar refused to comply with the LBOT's rules of decorum and forced the meeting to briefly recess while Ribar was verbally combative with the LBOT. Ex. 6 at ¶4. In the last public comment period, Ribar claimed to be on a "political hit list," and discussed "killing some conservatives." *Id.* at ¶5; Ex. 7 at p. 3. On Ribar's corresponding YouTube video, one of his viewers commented that it was "nothing 2A [the second amendment] cant fix…" Ex. 7 at p. 6. Another comment on the same video states "The left are extremely violent. I would recommend all persons not democrat extremists to excersize [sic] their 2nd ammendment [sic] for self protection." *Id.* These comments are alarming and

---

[6] *See also*, Ribar's version of the events posted to his YouTube Channel at https://www.youtube.com/watch?v=lUxGnnouOrc (last visited Sept. 22, 2025).

[7] *See* note 5 *supra* at timestamp 4:49–4:53. (Ribar setting a paper in front of LBOT Trustee Rodriguez, and saying "I'm sure you like that you fucking communist.").

appear to encourage Ribar or others to deploy physical violence in addition to the harassment toward those involved in this case or visiting the Library.

Also during the September 17, 2025, LBOT meeting, Ribar harassed members of the public. *See* Ex. 7 at pp. 4–6. Two young people who are, to Defendants' knowledge, unaffiliated with any defendant in this case, were in the crowd filming the meeting and Ribar for a "movie." They spoke with thick German accents, were comical characters in theatrical wardrobe, and nonetheless have the right to be present for the LBOT meeting no different than Ribar. At the end of the meeting, Ribar followed these young adults outside, and attempted to follow them to their vehicle.[8] *See* Ex. 7 at pp. 4–6. One of them told Ribar, "I feel threatened by you right now, sir." *Id.* at 4. Ribar continued to follow them and told the young man, "I'm just going to get your license plate." *Id.* at p. 5. Ribar's behavior demonstrated escalating aggression toward members of the public at the Library.

On September 19, 2025, Ribar posted a video of his visit to the workplace (University of Nevada, Reno) of Dr. Allen Ratliff, a Build Our Center board member. *See* Ex. 9. In the video, the school Dean, presumably Dr. Ratliff's boss, explained to Ribar that Dr. Ratliff's conduct on his own time "has nothing to do with the school of social work." *Id.* Ribar argued with the Dean, claiming that because Dr. Ratliff earns his wages from a tax-payer-funded employer, what he does in his free time is subject to inquiry. *See id.* This is concerning and demonstrates Ribar's escalation and incorrect belief that he is entitled to interfere with individuals' private lives simply because they are government employees. *See id.*

Furthering his unsettling behavior, despite Build Our Center's Motion filed Thursday September 18, 2025, outlining the safety concerns and harassment from Ribar, Ribar has continued to post defamatory content regarding their counsel. *See* Ex. 10. On or about September 20, 2025, Ribar posted another YouTube video centered on attacking Ms. Kertis titled "LYING ATTORNEY CAUGHT RED HANDED." *Id.* at p. 1. Thereafter,

---

[8] *See* note 5 *supra* at timestamp 34:52–39:28.

Ribar posted the video to "X"/Twitter and engaged in a dispute with a Nevada journalist stating "Check out LYING attorney Alison Kertis" with a link to his video. *Id.* at p. 2.

Like counsel for Build Our Center, Ribar's recent behavior has caused significant stress and unnecessarily consumed her time. *See* Ex. 3; Ex. 11 at ¶¶2–6. Undersigned counsel has taken precautions to avoid Ribar's harassment, including not attending events or visiting Library branches where Ribar may be present, and recently working from home out of an abundance of caution. *Id.* at ¶3, ¶5, ¶6. Ribar has shown no regard for the professional setting that litigation mandates, no regard for personal boundaries, and continues to harass, oppress, and engage in threatening behavior evoking fear from those involved.

## III. LEGAL ARGUMENT

### A. The Court Should Enter a Restraining Order to Protect County Defendants and Their Counsel.

"Courts may issue an injunction over conduct that is directly related to the lawsuit." *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828- MWF-MAAX, 2019 WL 6917918, at *5 (C.D. Cal. Oct. 17, 2019). "[T]here is a strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). "[A] district court has the inherent power to issue an injunction against litigants who harass their opponents." *Yates v. Belli Deli*, No. C07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007).

Whatever right a litigant may have to "publicly criticize Defendants' counsel and the court is subordinate to the public's interest in the judiciary's ability to make decisions without fear of harassing and defamatory reprisal, as well as Defendants' interest in preserving their counsel from [plaintiff's] harassment." *Fredin v. Middlecamp*, No. 17-cv-03058 (SRN/HB), 2020 WL 6867424, at *7 (D. Minn. Nov. 23, 2020), *aff'd*, 855 F. App'x 314 (8th Cir. 2021). "[H]arassing speech is not protected speech." *Doe v. Fitzgerald*, No. 2:20-cv-10713-MWF-ROA, 2022 WL 423495, at *4 (C.D. Cal. Feb. 2, 2022).

Ribar has engaged in inappropriate conduct designed to harass counsel and defendants, and a restraining order is appropriate to protect the parties, counsel, and witnesses. There is a documented continuous and escalating pattern of Ribar's litigation-adjacent harassment and intimidation. Exs. 1–10. Ribar has turned to personalized attacks of counsel, possibly stalking Build Our Center's counsel at her workplace and amplifying his social media campaigns attempting to discredit defense counsels. *See* (ECF No. 130); Exs. 1, 2, 10. In addition, he has engaged in in-person intimidation, going to the workplaces of witnesses, and using obscenities in telling a LBOT Trustee she is a "fucking communist." Exs. 4, 6, 9. His behavior at the recent LBOT meeting disrupted the course of business and made attendees feel threatened when he tried to follow them to their vehicle. Exs. 6, 7 at p. 4. This behavior is entirely inappropriate and interferes with the Library's ability to conduct its business and for the public to safely and securely participate in LBOT's public meetings. *See id.* Ribar continues to use the instant case as a launchpad for his monetized YouTube channel as well as to further his harassment and antagonism to individuals he believes have any relation to the case or the defendants. *See* (ECF No. 130); Exs. 1, 2, 4, 7, 9, 10.

Any interest Ribar may have in his disruptive, harassing, and threatening behavior is heavily outweighed by the defendants' and counsels' interest in avoiding harassment, defamation, intimidation, and disruption. Likewise, there is a public interest in the Library's ability to carry out its services to the community at large. *See Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992). Contrary to Ribar's belief, an individual's status as a public employee does not grant any person the right to stalk, harass, intimidate, dox or expose them or their families, or otherwise interfere with their private lives. *See* Ex. 9. Ribar exhibits a pattern of abuse to gain power and control over his victims, including testing boundaries with physical confrontations, using his platforms and followers as a force multiplier, engaging in reputational coercion to disenchant counsel and pressure a favorable outcome, asserting dominance through public displays and antagonism, reversing the victim/offender role to justify his own escalation, and using public processes

not to resolve disputes or gain records but to extract leverage over his victims. This behavior should not be tolerated.

Defendants should not have to wait until Ribar's behavior escalates into more unwanted confrontations, more personal attacks or invasions of privacy, doxxing from his followers, or even physical violence from him or his followers. Ribar already has a documented history of violating boundaries, such as when he pulled open a door to a closed building that caused injury to a Library staff member. *See* (ECF Nos. 99-22 at 1:09:09–12; 99-26 at ¶8; 99-27; 99-28.). He has a history of verbal aggression, and inciting confrontations with government employees. *Id.*; *see also* (ECF Nos. 99-2; 99-3; 99-8; 99-12 at 0:27:27–36., 0:32:41–37:00, 0:52:11–53:18, 0:57:33–59:11, 1:15:00–16:21, 1:21:29–22:49; 99-22 at 0:13:29–14:34, 0:16:29–29:09, 0:51:02–12, 1:09:05–1:13:13; 99-23; 99-24 at pp. 8–12; 99-25; 99-40 at 0:01:38, 0:18:01–21:09; 99-41). Now, Ribar is going to involved parties' workplaces looking for confrontation, displaying information regarding an unrelated fiancé's name and workplace, using obscenity to trigger an LBOT Trustee, and aggressively asserting he is "a little angry." Exs. 4, 6, 7, 9. Moreover, Ribar's newly expressed beliefs are alarming, including the potentially paranoid delusion that he is on some kind of "hit list" (Ex. 8), and that people are "killing some conservatives" (Ex. 7 at p. 3), stating he "think[s] that's happening in our community too."[9] There is a real and articulable risk that Ribar will use this persecution narrative as justification, in his mind, for increased stalking, unwanted contacts, and possibly physical violence.

The Court should enter a carefully tailored protected order to address the specific threats posed by Ribar. He should be restrained from physically approaching or sending any communication to the Library or any of its employees unless it is for a public open meeting or he is required to use the Library for emergency evacuation purposes. He should be restrained from physically approaching defense counsel, or any employee of the Washoe

[9] *See* https://www.youtube.com/live/MyMqsOlJXRo?feature=shared&t=5857.

County District Attorney's Office except when attending in-person hearings for this case. He should be restrained from physically entering County Defendants' counsel's staff parking lot, which has an entrance gate but does not have a secure perimeter. If Ribar attends any LBOT meeting, he should not be permitted to harass, threaten, intimidate, or follow any person before, during, or after the meeting. This avoids further oppression with the Library's ability to conduct its business. Likewise, if during a meeting, a Trustee ejects Ribar for behavior that disrupts the forum, Ribar shall be required to immediately remove himself from the premises. Ribar should be restrained from submitting public records requests to County Defendants' counsel, and should be required to use Washoe County's online request portal. He should be restrained from posting content on social media about this case, any defendant, or any witness because he has shown that his posts are used to harass specific individuals associated with this case or with defendants. He should likewise be required to remove any reference to DDA Lindsay Liddell, and any iteration thereof, from any social media account that he controls. To ensure the fair administration of justice in this case, any restraining order should remain in effect during the pendency of this case, including through any appeals Ribar may file.

//

//

//

//

//

//

//

//

//

//

//

## IV. CONCLUSION

This case is not a platform for Ribar's power-and-control tactics against the Defendants, witnesses, and defense counsel. A restraining order is necessary to safeguard the orderly administration of this case. County Defendants seek a carefully tailored restraining order to address Ribar's threatening, harassing, defamatory, intimidating, stalking, and oppressing behavior. Ribar's actions demonstrate irreparable harm which tips the equities toward protecting the safety and order of the individuals involved in this case.

Dated this 23rd day of September, 2025.

By /s/ Lindsay Liddell
LINDSAY LIDDELL
Deputy District Attorney
COBI BURNETT
Deputy District Attorney

ATTORNEYS FOR WASHOE COUNTY DEFENDANTS

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, I deposited for mailing in the U.S. Mails, with postage fully prepaid, a true and correct copy of the foregoing document in an envelope addressed to the following:

DREW RIBAR
3480 PERSHING LANE
WASHOE VALLEY. NV 89704

I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

ALISON R. KERTIS, ESQ.

Dated this 23rd day of September, 2025.

/s/ S. Haldeman
S. Haldeman

**INDEX OF EXHIBITS**


Exhibit 1 Screenshots of YouTube Video Harassing DDA Liddell ....................2 pages

Exhibit 2 Screenshot of YouTube Video Harassing DA Hicks 1 page

Exhibit 3 Public Records Request.............................................................3 pages

Exhibit 4 Youtube Screenshot of BOC Volunteer Fiancé .................................2 pages

Exhibit 5 Email to DDA Liddell, dated September 17, 2025 ............................3 pages

Exhibit 6 Declaration of Trustee Marie Rodriguez 1 page

Exhibit 7 Screenshots of YouTube Video of LBOT Meeting ............................6 pages

Exhibit 8 Screenshot of YouTube Video discussing “political hit list” 1 page

Exhibit 9 Screenshot of YouTube Video discussing “salary” 1 page

Exhibit 10 Screenshots of YouTube Video discussing Ms. Kertis 5 pages

Exhibit 11 Declaration of DDA Liddell 2 pages