Alison R. Kertis, Esq. (NSB 13875)
akertis@sierracrestlaw.com
Jerry C. Carter, Esq. (NSB 5905)
jcarter@sierracrestlaw.com
SIERRA CREST BUSINESS LAW GROUP
6770 S. McCarran Blvd., Reno, Nevada 89509
(775) 448-6070, Facsimile: (775) 473-8292
*Counsel for Defendant BUILD OUR CENTER*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| DREW RIBAR,<br><br>        Plaintiff,<br><br>   v.<br><br>WASHOE COUNTY; WASHOE COUNTY LIBRARY SYSTEM; JEFF SCOTT; THANH NGUYEN; JAMIE HEMINGWAY; BEATE WEINERT; STACY MCKENZIE; JONNICA BOWEN; BEN WEST; BUILD OUR CENTER, INC.; STACEY SPAIN; ANGELINE PETERSON; CHRISTOPHER DANIELS; DEPUTIES ROTHKIN, SAPIDA, GOMEZ; KRISTEN RYAN, JENNIFER COLE; and JOHN/JANE DOES 1-10;<br><br>        Defendants. | Case No. 3:24-cv-00526<br><br>**DEFENDANT BUILD OUR CENTER'S REPLY IN SUPPORT OF MOTION FOR CASE MANAGEMENT CONFERENCE, RESTRAINING ORDER, AND SANCTIONS** |

Defendant BUILD OUR CENTER INC., by and through its undersigned counsel, respectfully files *Defendant Build Our Center's Reply in Support of Motion for Case Management Conference, Restraining Order, and Sanctions* (the "Reply").

By filing this Reply, Build Our Center ("BOC") hereby submits *Defendant Build Our Center's Motion for Case Management Conference, Restraining Order, and Sanctions* (the "Motion")[1] [ECF 130] together with *Plaintiff's Opposition to Defendant Build Our Center, Inc.'s Motion for Restraining Order and Sanctions* (the "Opposition") [ECF 135] to the Court for decision.

This *Reply* is made and based upon all records and pleadings on file herein, together with every exhibit attached hereto (each of which is incorporated

---

[1] The Motion is incorporated herein in its entirety.

herein by reference), as well as the points and authorities set forth directly below.

In support of this Reply, BOC states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

In the Opposition [ECF 135], Drew Ribar ("Mr. Ribar") either minimizes or entirely fails to address the central issues raised in BOC's Motion [ECF 130]. His response is troubling and underscores his disregard for both accepted standards of conduct and the norms expected (and required) of parties in litigation. Mr. Ribar's conduct continues to escalate. Despite BOC's Motion, he has persisted in posting online content about BOC and this litigation, vexatious filings, and frivolous threats of Rule 11 sanctions against counsel.

BOC did not bring this Motion lightly. Indeed, BOC expressly warned Mr. Ribar that if his inappropriate conduct continued, it would be compelled to seek Court intervention. Rather than desist from his harassment and vexatious behavior, Mr. Ribar intensified it, including flooding counsel's inbox and publishing online content targeting BOC volunteers and counsel. His actions reflect not only a disregard for professional boundaries but also a pattern of deliberately manufacturing conflict.

Mr. Ribar's status as a *pro se* litigant does not exempt him from the standards of decorum required of all parties before the Court. Accordingly, BOC respectfully requests that the Court convene a case management conference and impose the requested sanctions on Mr. Ribar.

### II. MR. RIBAR'S CONTINUED CAMPAIGN OF HARASSMENT

Instead of deescalating his behavior, or acknowledging that his conduct is out of control, Mr. Ribar has ratcheted up his litigious conduct since BOC filed its Motion on September 18, 2025. The following illustrates his escalations:

- After counsel requested that he limit communications to U.S. Mail, he instead filed a "Motion to Compel Electronic Service" [ECF 131].

- He continues to post inflammatory statements about this litigation on social media, including accusing BOC and government officials of "corruption" and conspiring to interfere with his political campaign. *See* **Exhibit 1** – Facebook Post Scott Hoen. *See* **Exhibit 2** – Facebook Post re political "banned list"
- He has filed multiple unnecessary and vexatious pleadings, including a "Motion to Strike," a "Supplemental Opposition" requesting an irrelevant and unnecessary evidentiary hearing, and a "Supplemental Notice of Evidence" alleging coordinated misconduct by defense counsel and Washoe County.
- Ignoring BOC's directive, he emailed counsel directly on September 22, 2025, demanding evidence preservation concerning an event in which BOC had no involvement. A true and correct copy of that September 22, 2025, 8:23 p.m. email is attached hereto as **Exhibit 3**.
- On social media, he continues to accuse BOC of violating IRS regulations, despite lacking standing to assert such claims, and encourages hostile commentary. *See* **Exhibit 4** – Greater Reno Facebook Post. *See* **Exhibit 5** – Facebook Post Comments re "Banned List." *See* concerning comments to this post, attached hereto as **Exhibit 6** ("If I ever go back to Reno maybe I'll look them up. I don't like them much.").
- He further circulates posts and videos accusing BOC and other government officials of "banning" political candidates from events. *See* **Exhibit 7** – Facebook post with link to UNR police video.
- Mr. Ribar published a video concerning this litigation—titled "Lawyer Lies to Judge,"[2] directly targeting Counsel Kertis and the owner of

---

[2] https://www.youtube.com/watch?v=o7m04Gzn-yo&t=1615s

- Sierra Crest Business Law Group, Jerry Carter, Esq.—and urges his followers to preserve copies of his video in anticipation of a potential court order requiring its removal. This video has a host of alarming comments.

- Mr. Ribar published a video entitled "Banned & Running for Office"[3] claiming BOC put together a "banned list" to preclude him from running from office and "used the Reno Police Department" to ban him from Pride 2025. This also includes posted information about BOC board member, Alan Ratliff, and BOC volunteer YeVonne Allen.

### III. LEGAL ARGUMENT

#### a. BOC Did Not Bring its Motion Under FRCP Rule 11

As a preliminary matter, BOC did not bring its Motion under FRCP Rule 11. Mr. Ribar claims "Rule 11 requires a motion for sanctions to be served at least 21 days before filing, to allow withdrawal or correction." [ECF 135 at p. 2.] BOC brought its Motion based on this Court's inherent authority, Mr. Ribar's bad faith conduct, and Local Rule IA 11-8(c).

"The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *McKaskle v. Wiggins*, 104 S. Ct. 944, 954 (1984) (citing *Faretta v. California*, 95 S. Ct. 2525, 2541 (1975) n.46). Likewise, *pro se* litigants are also subject to Rule 11 sanctions. *See Business Guides v. Chromatic Communications, Enterprises*, 892 F.2d 802, 811 (9th Cir. 1989), *aff'd* 498 U.S. 533, 111 S. Ct. 922, 112 L.Ed.2d 1140 (1991) ("Pro se litigants are subject to Rule 11 sanctions and their filings, like those of attorneys, are judged by an objective standard of reasonableness.").

/ / /

---

[3] https://www.youtube.com/watch?v=Pdurb2VG0-E

*Pro se* status does not exempt individuals from adhering to procedural rules, ethical obligations, or decorum requirements. *Pro se* litigants are also held to the same standard of decorum and ethical conduct expected of attorneys, both inside and outside the courtroom. *See Kulas v. Flores,* 255 F.3d 780, 787 (9th Cir. 2001). "The court expects a high degree of professionalism and civility from attorneys." LR 1-1(c). This expectation applies to attorneys "when appearing before the court and when engaged outside of it, whether in discovery or any other phase of a case." *Id.* Additionally, courts are guided by Federal Rules of Civil Procedure 1 to ensure a "just, speedy, and inexpensive determination of every action and proceeding." "The Federal Rules of Civil Procedure were amended to highlight the need for attorneys to work cooperatively and to employ common sense practicability so that cases can be resolved fairly and expeditiously. *Searcy v. Esurance Ins. Co.,* No. 2:15-cv-00047-APG-NGK, 2016 WL 4149964, at *2 (D.Nev.Aug. 1, 2016).

Federal courts have inherent authority to sanction conduct abusive of the judicial process, including against *pro se* litigants for harassing and vexatious conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). For example, in *Missud v. Nevada,* 861 F. Supp. 2d 1044, 1060 (N.D. Cal. 2012), *aff'd*, 520 Fed. Appx. 534 (9th Cir. 2013), the court found that the *pro se* litigant's intent to harass opposing counsel and impose financial burdens through litigation warranted a designation as a vexatious litigant. In part, the court noted that plaintiff's conduct was frivolous and harassing because, instead of abandoning his claims after being sanctioned, the plaintiff "simply ratcheted up his litigious conduct in the aftermath" of the Court's ruling. *Id.* The plaintiff's communications, which included threats to make litigation "horrendously expensive" and publicize the case to embarrass the defendant, demonstrated improper motives under Rule 11(b)(1), which prohibits filings made for harassment or other improper purposes. *Id.; see also Eng v. Marcus & Millichamp*

*Co.*, No. C 10–05050 CRB, 2011 WL 2175207, at *2 (N.D.Cal. June 3, 2011) (declaring plaintiff a vexatious litigant because he had sent threatening emails to defendants as probative of his "improper purpose of harassing Defendants"). Similarly, in *DeNardo v. Johnstone*, A90-001 CIV, 1991 WL 183814 (D. Alaska 1991), the court noted that a *pro se* litigant's pattern of using litigation to harass those he disliked, by forcing them to incur legal costs, justified awarding attorney fees under 42 U.S.C. § 1988 to the prevailing defendants; the *pro se* litigant's conduct was deemed an abuse of the judicial process.[4] *Pro se* litigants are also held to the same standard of decorum as attorneys

The court may, after notice and an opportunity to be heard, impose appropriate sanctions on a party who fails to comply with the Court's Local Rules. LR IA 11-8(c). Recklessness, when combined with an additional factor such as frivolity, harassment, or an improper purpose may support sanctions. *See in re Giardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see also In re Cashion Family Tr.*, 669 B.R. 341, 382 (Bankr. D. Nev. 2025) ("Federal courts have inherent power to fashion an appropriate sanction for conduct 'which abuses the judicial process.'" (citing *Barker v. U.S. Nat. Bank*, 2015 WL 1622098, at *5 (D. Or. Apr. 9, 2015).

### b. Mr. Ribar Minimizes Serious and Inappropriate Conduct

Mr. Ribar ignores the core issues raised in BOC's Motion, including his escalating and alarming conduct during the weeks of September 8 to 15, 2025.

---

[4] Of particular note, the Court awarded attorneys' fees and costs to the prevailing defendants and against the *pro se* litigant because the *pro se* litigant knew or should have known his case was without merit, and that "any lay person, having read all of the decisions rendered against [the *pro se* litigant] would have recognized that [the] lawsuit was groundless and that he would be subject to an adverse award of attorneys' fees under 42 U.S.C. § 1988. This would be true even if [the *pro se* litigant] was so invincibly ignorant that he was proceeding in good faith." *DeNardo*, A90-001 CIV, 1991 WL 183814 (D. Alaska 1991)

During those weeks, he unleashed a barrage of emails and videos falsely accusing BOC of excluding him from its private September 6 event, disregarded BOC's request that he cease contact with its employees, board members, and volunteers and compounded his behavior with baseless threats of Rule 11 sanctions and meritless allegations of IRS violations—claims he has no authority to pursue or enforce. [*See* ECF 130 at pp. 7-10.] Counsel for BOC declined to litigate these issues with Mr. Ribar over email [*see* ECF 130-22] and cautioned him that if he continued to engage in harassment and vexatious behavior, BOC would file the instant Motion. [ECF 130-16; ECF 130-18.] Mr. Ribar, driven (and deluded) by unfounded conspiracy theories, launched into more baseless attacks, accusing Counsel Kertis of being a "liar" based on alleged communications with UNR police. [*See* Doc. 130 at pp. 10-12]. During these two weeks of alarming escalation, Sierra Crest Business Law Group employees observed a man loitering in the firm's private parking lot on two consecutive days—behavior unusual and concerning enough to prompt reports to management. [*See* ECF 130-6 and 130-7.] Mr. Ribar's recent escalation, including confronting Dr. Alan Ratliff and YeVonne Allen at their workplaces, coupled with the sightings of Mr. Ribar loitering at Sierra Crest Business Law Group, caused the same to fear for the safety of its staff and counsel. [See ECF 130 at pp. 12-13.] This was a real and immediate threat, not imagined or exaggerated. So much so, that Counsel Kertis was forced to alert her neighbors, family, and young children's daycare of the immediate danger. [*See* ECF 130-8.] In response, Sierra Crest Business Law Group sent Mr. Ribar a formal letter demanding that he refrain from trespassing on the property, or from communicating with staff or attorneys by electronic communication or over the telephone. [*See* ECF 130-8.] Mr. Ribar's conduct was so alarming that Sierra Crest Business Law Group was compelled to implement security measures to protect its staff and counsel. The fear and concerns his actions caused were real

and palpable, not imagined, and demanded a serious, proactive response.

Mr. Ribar ignores both the objective facts and the serious danger he has created through his vexatious litigation and toxic online content. Rather than address his escalation, he disputes and attempts to gaslight, Sierra Crest's employees' observations of him loitering on the property, claiming Google Maps places him elsewhere on September 15-16, 2025. This so-called evidence is highly unreliable: such types of location applications/platforms can be altered, deleted, or controlled by another person, contains no raw geolocation data, lacks authentication, and is often inaccurate. In short, it does not refute what Sierra Crest employees witnessed or experienced.

BOC brought its Motion for precisely the reasons reflected in Mr. Ribar's own Objection: he continues to ignore that his escalating conduct created a very real and present fear for BOC and Sierra Crest. He also disregards that his online content is toxic, fuels escalating harmful behavior in others, and actively encourages further hostility.

Under any other circumstances, were Mr. Ribar an attorney, his conduct would warrant sanctions, reprimand or even disbarment.

## CONCLUSION

Based on BOC's Motion [ECF 130] and the above Reply, BOC respectfully requests that this Court hold an emergency case management conference and not only admonish Mr. Ribar to proceed with civility and professionalism, but also sanction him as follows:

> **1.** Mr. Ribar should be enjoined, restrained, and prohibited from physically approaching (not to come within 600 feet), speaking to, and sending any type of written communication (including on any social media platform) to any member or volunteer of Build Our Center;

/ / /

**2.** If Mr. Ribar wants to make a public records request, he is prohibited from making this request directly to any person from Build Our Center, its board members, employees, or volunteers; he must make his public records requests over the telephone or online;

**3.** Mr. Ribar should be enjoined, restrained, and prohibited from physically approaching (not to come within 600 feet), speaking to, and sending any type of electronic or telephonic communication (including on any social media platform) to any employee of Sierra Crest Business Law Group. All communication with the law firm shall be through the U.S. Mail;

**4.** Mr. Ribar should be enjoined, restrained, and prohibited from continuing to post content from this litigation on any social media page, including but not limited to: YouTube, Facebook, Instagram, LinkedIn, Twitter, X, Truth Social, and TikTok. Any content as to this litigation currently on any of his social media pages shall be removed immediately;

**5.** Mr. Ribar shall remove any and all references to Alison R. Kertis, Esq. on his social media platforms, including but not limited to: Facebook, Instagram, LinkedIn, Twitter, X, Truth Social, and TikTok;

**6.** Mr. Ribar shall reimburse counsel for BOC the cost of her purchase of a home security system to protect against his stalking and harassment (the receipt for which is attached to the Motion as Exhibit 9 [ECF 130-9]; and

**7.** Mr. Ribar shall be responsible for paying all attorneys' fees and costs incurred in defending against this most recent vendetta, including but not limited to, attorneys' fees and costs beginning on September 26, 2025, through the present.

**8.** For any and all other relief the Court deems appropriate under the circumstances.

DATED September 30, 2025.     SIERRA CREST BUSINESS LAW GROUP

By: */s/ Alison R. Kertis, Esq.*
Jerry C. Carter, Esq. (NSB 5905)
jcarter@sierracrestlaw.com
Alison R. Kertis, Esq. (NSB 13875)
akertis@sierracrestlaw.com
6770 S. McCarran Blvd., Reno, NV 89509
(775) 448-6070, Fax: (775) 473-8292
*Counsel for Defendant Build Our Center*

# **CERTIFICATE OF SERVICE**

I certify that I am an employee of the SIERRA CREST BUSINESS LAW GROUP who, on the below-written date, caused a true copy of the foregoing to be transmitted via email and also to be filed using the above-entitled Court's electronic filing (CM/ECF) system which will automatically e-serve the same) on the person(s) and/or entity(ies) set forth directly below:

**Drew Ribar**
480 Pershing Lane, Washoe Valley, NV 89704
(775) 223-7899
const2audit@gmail.com
*Plaintiff in propria persona*

**Lindsay L. Liddell** (SBN 14079)
**Andrew Cobi Burnett** (SBN 16505)
DEPUTY DISTRICT ATTORNEYS
One South Sierra Street Reno, NV 89501
lliddell@da.washoecounty.gov
cburnett@da.washoecounty.gov
(775) 337-5700
*Counsel for Plaintiffs Washoe County and its Library System, Jeff Scott, Stacy Mckenzie, Jonnica Bowen, Jennifer Cole; Deputy C. Rothkin, Deputy R. Sapida, and Sgt. George Gomez*

DATED: September 30, 2025.

/s/ *Monica R. Leazer*
_____
an employee of the
SIERRA CREST BUSINESS LAW GROUP

# INDEX OF EXHIBITS

to

DEFENDANT BUILD OUR CENTER'S
REPLY IN SUPPORT OF MOTION FOR
CASE MANAGEMENT CONFERENCE,
RESTRAINING ORDER, AND SANCTIONS

re

*Ribar vs. Washoe County, et alia*
*(Case No. 3:24-cv-00526)*

| Exhibit No. | Exhibit Description | Pages (+ Cover) |
|---|---|---|
| 1. | Facebook Post re Scott Hoen | 2 |
| 2. | Facebook Post re Political "Banned List" | 2 |
| 3. | 09/22/2025 8:23 pm Email re Evidence Preservation | 3 |
| 4. | Facebook Post re Greater Reno | 2 |
| 5. | Comments to Facebook Post re "Banned List" | 2 |
| 6. | Concerning Comments to Facebook Post re "Banned List" | 2 |
| 7. | Facebook Post with Link to UNR Police Video | |
| | | |
| | | |