LINDSAY L. LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
COBI BURNETT
Deputy District Attorney
Nevada State Bar Number 16505
One South Sierra Street
Reno, NV  89501
lliddell@da.washoecounty.gov
cburnett@da.washoecounty.gov
(775) 337-5700
ATTORNEYS FOR WASHOE COUNTY
DEFENDANTS

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

DREW RIBAR,

       Plaintiff,

   vs.

WASHOE COUNTY, et al.

       Defendants.

_____/

Case No.  3:24-CV-00526-ART-CSD

**EMERGENCY MOTION FOR
RESTRAINING ORDER AGAINST
PLAINTIFF'S HARASSMENT**

    Defendants Washoe County, Washoe County Library System ("Library"), Jeff Scott ("Director Scott"), Stacy McKenzie, Jonnica Bowen, Jennifer Cole, Deputy "Rothkin" (Rothgeb), Deputy Sapida, and Sgt. Gomez (the original "County Defendants") by and through counsel, hereby move this Court for a restraining order on an emergency basis to protect defense counsels. This Motion is based upon the following Memorandum of Points and Authorities and all pleadings and papers on file.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

    County Defendants and counsel files the instant Motion for Temporary Restraining Order, renewing its existing motion (ECF No. 140) on an emergency basis based on Plaintiff Drew Ribar ("Ribar")'s continued and escalating harassment, intimidation, menacing, and

inappropriate behavior toward counsel that is causing substantial mental harm. *See* Ex. 1. Ribar is currently on a scorched-earth defamation campaign against counsel, publicly calling them liars, calling for undersigned counsel to be fired, calling for the State Bar to investigate counsels, and calling for the Attorney General and acting U.S. Attorney for the District of Nevada to investigate their conduct. He recently filed a Bar complaint against counsels. *See* (ECF No. 171). More frightening, he shouted at counsel on the courthouse walkway after a hearing in this case on October 15, 2025. His conduct has caused counsel to experience an increase in anxiety, panic attacks, and fear for her personal safety. The behavior is completely inappropriate for the instant civil case.

Ribar has also directed inappropriate behavior toward the Defendants and representatives or employees of some of the Defendants. He used obscene language to a Library Board of Trustees ("LBOT") Trustee to incite her and later attempted to follow members of the public to their vehicle with the express stated purpose of recording their license plate in the parking lot of a Washoe County Library branch. It is unclear whether Ribar's vehicle towing company provides him access to any databases that would provide him home addresses of individuals associated with a license plate, giving rise to additional anxiety and fear. Ribar has gone uninvited to the workplaces of some Build Our Center representatives, and witnesses believe he was present at their counsel's office. Disturbingly, he posted details on YouTube regarding the name and workplace of the fiancé for one of those individuals. His tactics deter the fair administration of this case, oppress Library operations, and harass the individuals involved.

Additionally, Ribar has expressed alarming beliefs that County Defendants fear he will use to justify continued escalating harassment, stalking, and possible physical violence. He recently posted a social media comment asking another individual if they believe in the Second Amendment. He has referred to a "political hit list," which he believes he is on. County Defendants have no knowledge of or involvement with any creation of such a list, yet Ribar continues to communicate with defense counsel and the LBOT about it. Last

week, he informed the LBOT that he believes there are people "killing some conservatives" and "it's happening in our community…" Commenters on one of Ribar's recent YouTube posts refer to (presumably the firearms provision of) the Second Amendment, as a "fix" for Ribar's grievances, and another encouraging use for "self protection." Further displaying escalation, Ribar recently replied to a social media comment, asking another person, "do you believe in the 2nd Amendment." There is serious concern for the safety and well-being of the individuals involved in this case, including counsel.

This Court's intervention is necessary for the fair administration of justice. Ribar's behavior indeed continues to escalate, despite the current pending motions for a restraining order (which were not filed on an emergency basis). Now, because of Ribar's escalation, an emergency filing is necessary. Counsel and parties should not be forced to experience the fear, harassment, and anguish that comes with Ribar's alarming behavior simply because they are involuntarily involved in the instant case.

County Defendants request that the Court use its inherent power as set forth below to enjoin the harassment and intimidation that has developed in this case toward counsel and parties. In addition to the relief that Build Our Center requests, County Defendants respectfully request the following restraining order to address County Defendants and its counsels:

1. Ribar should be enjoined, restrained and prohibited from physically approaching (not to come within six hundred feet (600')), speaking with, or sending any type of written communication (including on any social media platform) to the Library or any Library employee except if attending a publicly noticed open meeting pursuant to NRS Chapter 241, or if present at a Library branch for purposes of an emergency evacuation.

2. Ribar should be enjoined, restrained and prohibited from physically approaching (not to come within six hundred feet (600')) County Defendants' counsel or any employee of the Washoe County District Attorney's Office except for attending a hearing in this case.

3. Ribar should be enjoined, restrained and prohibited from physically entering the Washoe County District Attorney's Office (1 S. Sierra Street, 4th Floor, Reno, NV 89501), and

from physically entering the staff parking lot, which has a secure entrance gate but lacks a secure gated perimeter (located at or about 76 Court Street, Reno, NV 89501, Assessor Parcel Numbers 011-165-01, 011-165-02, 011-165-03, 011-165-04, 011-165-18, 011-165-23, 011-165-21).

4.  While attending a Library Board of Trustees meeting, whether before, during, or after, Ribar shall not harass, threaten, intimidate, or follow any person, including the appointed Trustees, Library staff, and members of the public. If during an LBOT meeting, a Trustee ejects Ribar for behavior that disrupts the forum, Ribar shall be required to immediately remove himself from the premises.

5.  Ribar shall not direct any public records requests to County Defendants' counsel and instead must use the Washoe County online public records portal.

6.  Ribar should be enjoined, restrained, and prohibited from continuing to post content from or regarding this case, any defendant, or any witness on any social media page, including but not limited to: YouTube, Facebook, Instagram, LinkedIn, Twitter/X, Truth Social, and TikTok. Any content as to this litigation currently on any of his social media pages shall be removed immediately.

7.  Ribar shall remove any and all direct or indirect references to Lindsay Liddell, "Liddell," "DDA Liddell," etc., on any social media account that he operates, including but not limited to YouTube, Facebook, Instagram, Twitter/X, and TikTok, and including but not limited to his usernames of "Auditing Reno 911," "auditreno911," "Ribar for Nevada," "Ribar4Nevada," and "Equal Justice."

8.  Any hearings in this case should be held remotely, unless the Court deems in-person hearings necessary.

9.  The restraining order should remain in effect during the pendency of this case, including through any appeals Ribar may file.

## II.    MEET AND CONFER

Pursuant to LR 7-4, counsel attempted to meet and confer with Ribar. *See* (ECF No. 168 at pp. 5–6); Ex. 1 at ¶3. The Court previously entered a Minute Order prohibiting Ribar from recording meet and confers with defense counsel in this case. (ECF No. 89 at p. 2, lns. 9–10). The Order followed concerns that Ribar is using this case for social media content. (ECF No. 64 pp. 3–4). Ribar indicated his intent to violate the Court's Order and record

any call to meet and confer with County Defendants' counsel. Despite being provided with a copy of the Court's order, and being reminded that he was prohibited from recording, Ribar demanded that he record any meet and confer. *See* (ECF No. 168 at pp. 8, 12, 16, 19). As such, counsel was unable to complete a meet and confer via telephone with Ribar.

Defendant Build Our Center was notified of the instant Motion and does not object to its filing. (ECF No. 168 at p. 13); Ex. 1 at ¶3.

## III.  PLAINTIFF DREW RIBAR'S ESCALATING HARASSMENT

Ribar operates a YouTube Channel with over 30,000 subscribers on which he primarily posts videos of his activities filming and antagonizing government employees for their click-bait reactions.[1] In the past, Ribar's harassing videos led to doxxing and direct harassment of County Defendants. *See* (ECF No. 64). Ribar is aware of this, because it was directly litigated in the instant case and gave rise to a protective order and an order prohibiting the recording of depositions. *See id.*; (ECF Nos. 89, 98). Despite this information, Ribar has continued to post about the Defendants, defense counsel, individuals associated with Defendants, and the instant litigation.

In August 2025, Ribar posted a video attacking County Defendants' counsel, Deputy District Attorney Lindsay Liddell.[2] *See* Ex. 2. He asks his viewers, "WANT TO SEE ATTORNEY LIDDELL LIE IN A COURT DOCUMENT??" *Id.* at p. 1. He then provides an excerpt from a filing in this case, saying "WHY LIE??,"[3] and inviting his viewers to

---

[1] *See* https://www.youtube.com/@auditingreno911 (last visited Oct. 27, 2025).

[2] The video appears to have since been removed from Ribar's channel, presumably for violating the YouTube terms of service, but County Defendants are unaware of the specific circumstances that led to its removal.

[3] The "lie" of which Ribar accuses undersigned counsel is based on County Defendants' description of his camera equipment as a "bulky tripod." Apparently, Ribar's camera attachment is technically termed a "gimbal," which has many features including a built-in tripod. It is a distinction without a difference.

"ASK HER AT LLIDDELL@DA.WASHOECOUNTY.GOV." *Id.* at p. 2. Ribar posted another video of a campaign event for Washoe County District Attorney Christopher Hicks, which Ribar attended and attempted to antagonize DA Hicks.[4] *See* Ex. 3. In the video, he asks DA Hicks in front of several attendees, "…one of your attorneys, Lindsay Liddell in one of her documents lied to the Court…" *Id.*

As Defendant Build Our Center's Motion describes, on September 6, 2025, Ribar attempted to attend a private Pride festival event, but apparently was not permitted to do so. Since then, Ribar's harassment and inappropriate conduct substantially escalated. Build Our Center's Motion describes the many emails to defense counsels and others, the baseless demands, and inappropriate behavior. (ECF No. 130 at pp. 7–14). Ribar's behavior continues to escalate.

On September 10, 2025, presumably using Nevada public records laws as a weapon, Ribar submitted a frivolous public records request to undersigned counsel and Reno City Attorney Karl Hall. Ex. 4. Ribar is well aware of the laws governing public records requests, including that it requires any public employee recipient to respond within five business days regardless of whether they have control or custody of the requested records. *See* NRS 239.0107(1). In submitting this request for records, which he presumably knows are not in undersigned counsel's custody, he inappropriately consumed undersigned counsel's time and resources in requiring her to respond and inform him of what he presumably already knew. *See* Ex. 4. This frivolous public records request is another example of Ribar harassing and oppressing counsel in this case.

On September 16, 2025, Ribar posted a video of his harassing contact with a Build Our Center volunteer, YeVonne Allen, at her workplace, Truckee Meadows Community College.[5] *See* Ex. 5. Despite history of his harassment and victims experiencing doxxing,

---

[4] *See* https://www.youtube.com/watch?v=pLQw685lphg (last visited Sept. 22, 2025).

[5] *See* https://www.youtube.com/watch?v=VRRFzhlEtvE (last visited September 19, 2025).

Ribar posted live feed video to his YouTube channel displaying Ms. Allen's personal FaceBook page. *Id.* at p. 1. Even more alarming, Ribar then guided his viewers to the "relationship" section of Ms. Allen's personal account, and then to Ms. Allen's fiancé's personal FaceBook account, a private person who has no relation to Ribar or the instant case. *Id.* at pp. 1–2. He then announced and displayed the full name and workplace of Ms. Allen's fiancé. *Id.* at p. 2. Ribar's harassment and oppression of Ms. Allen and her fiancé demonstrates dangerous escalation into the private lives of his targets and is very unsettling.

Around midnight, early into September 17, 2025, Ribar emailed undersigned counsel and the employer of Build Our Center's counsel, with the subject line "Do not lie to me." and containing a video link. Ex. 6 at pp. 2–3. Undersigned counsel responded, stating it appeared to be another false accusation of lying, and that it was unclear what connection exists between Washoe County or the Library and the September 2025 private Pride event. *Id.* at p. 2. In response, Ribar continued to accuse defense counsel of lying. *Id.* at p. 1.

In the evening of September 17, 2025, Ribar attended a Library Board of Trustees ("LBOT") meeting where he displayed grossly inappropriate behavior.[6] *See* Ex. 7; Ex. 8; Ex. 9. Before the meeting started, he handed photocopies of the purported Pride event "banned list," to the LBOT Trustees. Ex. 7 at ¶3. When handing it to one of the appointed LBOT Trustees, he aggressively called her a "fucking communist."[7] *Id.*; Ex. 8 at p. 1. Shortly after, Ribar sarcastically announced, "I might be a little angry." Ex. 8 at p. 2. During the initial public comment period, Ribar refused to comply with the LBOT's rules of decorum and forced the meeting to briefly recess while Ribar was verbally combative with the LBOT. Ex. 7 at ¶4. In the last public comment period, Ribar claimed to be on a "political hit list,"

---

[6] *See also*, Ribar's version of the events posted to his YouTube Channel at https://www.youtube.com/watch?v=lUxGnnouOrc (last visited Sept. 22, 2025).

[7] *See* note 5 *supra* at timestamp 4:49–4:53. (Ribar setting a paper in front of LBOT Trustee Rodriguez, and saying "I'm sure you like that you fucking communist.").

and discussed "killing some conservatives." *Id.* at ¶5; Ex. 8 at p. 3; Ex. 9. On Ribar's corresponding YouTube video, one of his viewers commented that it was "nothing 2A [the second amendment] cant fix…" Ex. 8 at p. 6. Another comment on the same video states "The left are extremely violent. I would recommend all persons not democrat extremists to excersize [sic] their 2nd ammendment [sic] for self protection." *Id.* These comments are alarming and appear to encourage Ribar or others to deploy physical violence in addition to the harassment toward those involved in this case or visiting the Library.

Also during the September 17, 2025, LBOT meeting, Ribar harassed members of the public. *See* Ex. 8 at pp. 4–6. Two young people who are, to Defendants' knowledge, unaffiliated with any defendant in this case, were in the crowd filming the meeting and Ribar for a "movie." They spoke with thick German accents, were comical characters in theatrical wardrobe, and nonetheless have just as much right to be present for the LBOT meeting as Ribar does. At the end of the meeting, Ribar followed these young adults outside, and attempted to follow them to their vehicle.[8] *See* Ex. 8 at pp. 4–6. One of them told Ribar, "I feel threatened by you right now, sir." *Id.* at 4. Ribar continued to follow them and told the young man, "I'm just going to get your license plate." *Id.* at p. 5. Ribar's behavior demonstrated escalating aggression toward members of the public at the Library.

On September 19, 2025, Ribar posted a video of his visit to the workplace (University of Nevada, Reno) of Dr. Allen Ratliff, a Build Our Center board member. *See* Ex. 10. In the video, the school Dean explained to Ribar that Dr. Ratliff's conduct on Dr. Ratliff's own time "has nothing to do with the school of social work." *Id.* Ribar argued with her, claiming that because Dr. Ratliff earns his wages from a tax-payer-funded employer, what he does in his free time is subject to inquiry. *See id.* This is concerning and demonstrates Ribar's escalation and incorrect belief that he is entitled to interfere with individuals' private lives simply because they are government employees. *See id.*

---

[8] *See* note 5 *supra* at timestamp 34:52–39:28.

Furthering his unsettling behavior, despite Build Our Center's Motion filed Thursday September 18, 2025, outlining the safety concerns and harassment from Ribar, Ribar has continued to post defamatory content regarding their counsel. *See* Ex. 11. On or about September 20, 2025, Ribar posted another YouTube video centered on attacking Ms. Kertis titled "LYING ATTORNEY CAUGHT RED HANDED." *Id.* at p. 1. Thereafter, Ribar posted the video to "X"/Twitter and engaged in a dispute with a Nevada journalist stating "Check out LYING attorney Alison Kertis" with a link to his video. *Id.* at p. 2. That same day, he also posted a video along with words stating, "Attn. Lindsey Liddell, Washoe County's attorney, is accused of interfering with a political candidate." Ex. 12 at p. 1.

Despite defense counsels filing respective motions for restraining orders to address Ribar's behavior, it only continues to escalate. *See* (ECF Nos. 130, 140). Ex. 1; Ex. 12; Ex. 13; Ex. 14. Ribar did not remove defamatory content, or content that could lead to potential doxxing of Defendant Build Our Center's representatives. After Ribar posted identifying contact information, Dr. Ratliff received an alarming voicemail from an individual claiming to be an attorney named "Peter Truman," stating he specializes in suing "public idiots, of which you are now one," and threatening to "take everything you have- your position at uh college, your retirement, your real estate, your vehicles. So sir, be prepared to lose that all…We will be there this coming Wednesday of the week. We will hunt you down. We have a subpoena for you…You have the night you deserve, Mr. Ratliff." (ECF Nos. 161-1, 162)

On October 15, 2025, the parties attended a hearing in this case. Ex. 1 at ¶8. Given Ribar's recent harassment, when the hearing concluded, defense counsels raced to the women's restroom hoping to allow Ribar sufficient time to exit and avoid unwanted confrontation. *Id.* When counsels attempted to exit a few minutes later, Ribar was on this Court's pavement next to the rotunda filming himself. *Id.* As counsels exited, Build Our Center's counsel Ms. Kertis walked past Ribar who immediately began shouting at her, stating something to the effect of "ALLISON! DO YOU ALWAYS LIE TO JUDGES IN

COURT?" *Id.* Undersigned counsel panicked and swiftly walked away, hiding behind a utility box at the crosswalk to avoid Ribar's line of sight and avoid harassment toward her. *Id.* The interaction caused substantial distress and disrupted her ability to work on other matters. *Id.*

Ribar also obtained, without authority, an attorney-client privileged email sent by undersigned counsel to her clients regarding his harassment. Ex. 1 at ¶9. He refused to disclose how he obtained the email and continues to use it to perpetuate harassment of defense counsel. *See* (ECF No. 141 at p. 63, 142 at p. 63, 143 at p. 63) (reflecting an email from undersigned counsel with the subject line "*confidential attorney-client privileged* Ribar lawsuit."); (ECF No. 160 at pp. 5–8); (ECF No. 166 at pp. 5–6); Ex. 12 at p. 2; Ex. 13 at pp. 1–4, 5–6, 10; He sent the attorney-client privileged email to a local political gossip blog, Picon Press, which published a story about it, amplifying his harassing tactics.[9] Ex. 13 at p. 10.

Ribar continues to post defamatory content about defense counsels and about this case on social media. *See* Exs. 12, 13, 14. On October 22, 2025, he posted a video in front of undersigned counsel's office building in which he proclaims, "…never trust the district attorney because they might send out emails where they lie to you. And then the guy dealing with it might get copies of it."[10] Ex. 14 at pp. 1–5. Ribar appears to be taunting undersigned counsel and displaying his perceived power in obtaining her confidential and privileged email.

That same day, Wednesday, October 22, 2025, Ribar attended a State Court hearing in a criminal case where he pestered the prosecutor. *See* Ex. 1 at ¶10. Ribar attempted to ask the prosecutor (undersigned counsel's coworker) several questions, despite the prosecutor

---

[9] "When Power Can't Take Pushback," https://www.piconpress.com/documents/when-power-cant-take-pushback (last visited Oct. 28, 2025).

[10] *See also* https://www.youtube.com/watch?v=jWRHmCZ9b0o (last visited Oct. 29, 2025).

stating he did not wish to speak with him. *Id.* Ribar asked the prosecutor something like, "Are you trying to silence the First Amendment like Lindsay Liddell?" *Id.* Undersigned counsel learned that Ribar was outside her office building. *Id.* Unfortunately, undersigned counsel was present working in the office that day. *Id.* Ribar's lingering presence outside the office caused substantial distress and panic. *Id.* She was unable to complete any substantive work due to the high levels of anxiety it caused and was instead forced to engage in coping mechanisms to avoid a panic attack. *Id.* Undersigned counsel did not feel safe leaving the building to get to her vehicle until another staff member went outside to confirm that Ribar had left the premises. *Id.*

On October 25, 2025, Ribar posted an alarming video regarding defense counsels in this case and the above-mentioned prosecutor, using a photograph of undersigned counsel he appears to have found online.[11] Ex. 14 at pp. 6–15. In it, Ribar displays the photograph, stating undersigned counsel's name, stating "she's got quite a history actually on her." *Id.* at p. 8. Talking to his audience, Ribar states, "…So what I found on Miss Liddell is she likes to make stuff up…"[12] *Id.* at p. 9. He continued to taunt undersigned counsel, using an aggressive tone to state "If I'm libeling, sue me. Lindsay Liddell, you have lied. I'm proving it."[13] *Id.* at p. 11. He proclaimed that undersigned counsel is "the epitome of government corruption." *Id.* at p. 13. He then taunted Defendant Build Our Center's counsel, again in an aggressive tone, stating, "Hey, Allison, if I'm libeling you, sue me."[14] *Id.* at p. 14. Ribar

---

[11] "Lying Lawyers??? No!! Can it be True??," https://www.youtube.com/watch?v=av3IXzhzhCuw (Oct. 28, 2025).

[12] *See* note 11 *supra* at timestamp 5:44; *see also id.* at timestamp 34:45 (Ribar stating, "you fucking liars, you lied to the court, you perjured yourself, you fucked up").

[13] *See* note 11 *supra* at timestamp 23:42; *see also id.* at timestamp 28:30 (Ribar claiming "Lindsay Liddell wants to take away my ability to communicate with people… If I'm lying, sue me for libel… [Liddell] insists on an undocumented meeting… but she's afraid of me"). .

[14] *See* note 11 *supra* at timestamp 38:18.

also explained that in following people to their vehicles while filming, he "want[s] to get your license plate so [he] can know who you are."[15] *Id.* at p. 10.

Ribar is also currently on a defamatory social media campaign against undersigned counsel, including posting the following:[16]

- On a District Attorney's Office Facebook post about a dog training video, Ribar commented, "Was the dog searching for Lindsay Liddell's lies to her clients about me [pondering emoji] [pondering emoji]." Ex. 13 at p. 1;

- On District Attorney's Office Facebook post about Domestic Violence Awareness Month, Ribar commented asking District Attorney Christopher Hicks ("DA Hicks") "why did your Deputy DA Lindsay Liddell lie about me to her clients??," then tagging Washoe County Commissioner Chair Alexis Hill to put "this issue" on a board agenda, "Or do you support corrupt government [emoji]." *Id.* at p. 2;

- On District Attorney's Office Facebook post, Ribar commented with a photo of undersigned counsel's attorney-client privileged email, stating "…Check out this email that was sent to their clients LYING about me!!..." *Id.* at p. 3;

- On District Attorney's Office Facebook post, Ribar commented that DA Hicks "allows (perhaps encourages [pondering emoji]) his Deputy DA Lindsay Liddell to LIE about me to his clients and to mislead the court…" and included a copy of the attorney-client privileged email. *Id.* at p. 4;

- On a March 2024 post from the District Attorney's Office's X/Twitter about undersigned counsel, Ribar on or about October 25, 2025, replied asking if it was a pattern and practice for its "attorneys to lie to clients and misrepresent

---

[15] *See* note 11 *supra* at timestamp 10:32.

[16] It has been difficult to keep up with the volume of Ribar's defamatory social media posts and comments, and those identified here reflect those that undersigned counsel's has seen online.

non factual things to the courts [pondering emoji]," and including a link to his recent YouTube video defaming counsels. *Id.* at p. 5;

- On Washoe County Commissioner Alexis Hill's FaceBook post, Ribar commented to her, "…Do you believe lying Washoe County District Attorney's Office Deputy DA Lindsay Liddell should be fired [pondering emoji] Why would she lie to Washoe County Nevada- Government employees about me in this email??," and included a copy of the attorney-client privileged email from undersigned counsel to clients. *Id.* at p. 6;

- On one of Washoe County Commissioner Alexis Hill's FaceBook posts, Ribar responded to another person asking if they saw the email undersigned counsel wrote "to her clients where she lied about me?? Should lawyers lie [pondering emoji] Should our elected servants allow corruption [pondering emoji]." *Id.* at p. 7;

- Responding to the State Bar of Nevada's X/Twitter post about bar exam results, Ribar replied, "Will these new attorneys follow in their predecessors footsteps and be lying Nevada Bar Attorneys like Lindsay Liddell and Allison Kertis?? … stay tuned bar complaints and videos comping soon." *Id.* at p. 9;

- Commenting on a local news blog, Picon Press, FaceBook post, Ribar including a copy of undersigned counsel's attorney-client privileged email and stated, "would you believe… Deputy DA lied about me in an email to her clients? Would you believe the DA office appears to be working hand in glove with Our Center attorney Alison Gansert Kertis…" *Id.* at p. 10;

- On the Nevada Attorney General Aaron Ford's X/Twitter post, Ribar replied with a video mentioning undersigned counsel and asked, "Will you prosecute attorneys that lie/commit perjury [pondering emoji] or do you support corrupt government [pondering emoji]" *Id.* at p. 11;

//

- Reply to a Las Vegas reporter's X/Twitter post, Ribar included a YouTube link stating "…Check out LYING attorney Alison Kertis" *Id.* at p. 13;
- On acting U.S. Attorney for the District of Nevada, Sigal Chattah's X/Twitter post, Ribar replied asking when she would investigate City of Reno and Defendant Build Our Center. *Id.* at p. 14.

On October 29, 2025, Ribar filed a bar complaint against defense counsels and filed the same in this case. (ECF No. 171). Ribar also emailed a copy of the baseless complaint to undersigned counsel's employer, DA Hicks. *See id.* at p. 10.

Like counsel for Build Our Center, undersigned counsel has suffered significant mental anguish resulting from Ribar's recent behavior. *See* Ex. 1 at ¶¶4–8, ¶¶10–12. Undersigned counsel has taken precautions to avoid Ribar's harassment, including not attending events or visiting Library branches where Ribar may be present, as well as precautionarily working from home, and carrying protection devices. *Id.* Undersigned counsel has recently been reluctant to leave home and is on high alert when in public. *Id.* at ¶11. Ribar's escalating, obsessive and alarming behavior has caused undersigned counsel to experience several panic attacks, which has disrupted her work and home life. *Id.* ¶¶12–13. Undersigned counsel has also experienced substantial disruption and inability to sleep, which only exacerbates the anxiety Ribar continues to cause daily. *Id.* at ¶12. Undersigned counsel was required to seek mental healthcare, now has high blood pressure, and received prescription medication as a result of the mental harm Ribar's behavior has caused her thus far. *Id.*

Ribar has shown no regard for the professional decorum that litigation mandates, no regard for personal boundaries, and continues to harass, oppress, and engage in threatening behavior, evoking fear from those involved. He has attempted to follow people to their vehicles and admits that it was an attempt to get a license plate so he can "know who [they] are." Ex. 14 at p. 10. Of note, on information and belief, Ribar owns a vehicle towing company that may give him access to a number of vehicles at any given time and access to

1  Department of Motor Vehicle databases. It is unclear whether Ribar has access to a database
2  that could provide the physical address of a person based on their license plate. This gives
3  rise to additional fear and distress that somehow Ribar may be able to locate home
4  addresses, even if they are confidential. Ex. 1 at ¶13.

5  **IV.  LEGAL ARGUMENT**

6  **A. The Court Should Enter a Restraining Order to Protect County Defendants
    and Their Counsel.**
7

8       "Courts may issue an injunction over conduct that is directly related to the lawsuit."
9  *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828- MWF-MAAX, 2019 WL
10 6917918, at *5 (C.D. Cal. Oct. 17, 2019) (enjoying party from "directly or indirectly making
11 any harassing or threatening communications to anyone connected with this lawsuit.").
12 "[T]here is a strong precedent establishing the inherent power of federal courts to regulate
13 the activities of abusive litigants by imposing carefully tailored restrictions under the
14 appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). "[A]
15 district court has the inherent power to issue an injunction against litigants who harass their
16 opponents." *Yates v. Belli Deli*, No. C07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal.
17 Aug. 13, 2007).

18      Whatever right a litigant may have to "publicly criticize Defendants' counsel and the
19 court is subordinate to the public's interest in the judiciary's ability to make decisions
20 without fear of harassing and defamatory reprisal, as well as Defendants' interest in
21 preserving their counsel from [plaintiff's] harassment." *Fredin v. Middlecamp*, No. 17-cv-
22 03058 (SRN/HB), 2020 WL 6867424, at *7 (D. Minn. Nov. 23, 2020), *aff'd*, 855 F. App'x
23 314 (8th Cir. 2021). "[H]arassing speech is not protected speech." *Doe v. Fitzgerald*, No. 2:20-
24 cv-10713-MWF-ROA, 2022 WL 423495, at *4 (C.D. Cal. Feb. 2, 2022). [C]ourts routinely
25 grant TROs restricting speech that is not merely false, but defamatory." *Recovery Hous. Acad.*
26 *LLC v. Candelario*, 562 F. Supp. 3d 333, 340 (D. Ariz. 2022).

27 //

One court issued a restraining order, which prohibited a party from (1) sending harassing or threatening emails to counsel, the opposing party, counsel's firm, and counsel's current or former colleagues, (2) posting threatening or harassing content about the opposing party's counsel or employees, (3) coming within 100 feet of the opposing party's officer or its counsel except when in court, coming within 100 feet of the opposing party's officer's residence or its counsel's office, and (4) directing others to do any of the foregoing acts on the party's behalf. *Beyond Blond Prods., LLC v. Heldman*, No. CV205581DSFGJSX, 2022 WL 2784404, at *8 (C.D. Cal. June 17, 2022). The Court also ordered the party to remove harassing content referencing the opposing party, its officer, its counsel, or its counsel's employees. *Id.* The Order followed a series of harassing emails to counsel, including that they need to be disbarred, using foul language with counsel, posting false and defamatory content about counsel online, and posting defamatory reviews of the opposing party's counsel. *See id.* at *1–3. The Court noted that the conduct caused counsel to "suffer anxiety and distress over his personal safety," and impacted his professional reputation." *Id.* at *5. In finding that the restraining order would be in the public interest to ensure the fair administration of justice, the Court found that it will ensure the opposing party and counsel "can fully participate in this lawsuit without the fear of receiving harassing communications from [the other party]." *Id.* at *6.

As the Court explained in *Beyond Blonds*, restraining orders of this nature look first to the "likelihood of success on the merits of showing harassment, rather than the merits of the underlying lawsuits." 2022 WL 2784404 at *5. The Court looks to relevant statute regarding harassment, including applicable state law. *See id.* The Court then looks at whether the moving party is likely to suffer irreparable harm from the harassment. *Id.* at *6. The Court then balances the hardships and public interest. *Id.*

In Nevada, a person is guilty of harassment where the person knowingly threatens to do any act intended to substantially harm the person threatened with respect to their mental health or safety. NRS 200.571 (1)(a)(4). A person is guilty of stalking who willfully or

maliciously engages in a course of conduct directed toward a victim that would cause a reasonable person under similar circumstances to feel terrorized, frightened, intimidated, harassed or fearful for their immediate safety and actually causes the victim to feel as such. NRS 200.575 (1). The crime of libel exists with malicious defamation "to impeach the honesty, integrity, virtue, or reputation [of a person], and thereby to expose them to public hatred, contempt or ridicule." NRS 200.510 (1). Under federal law, the crime of stalking exists when a person uses an interactive computer service with the intent to harass, or intimidate another person to cause, attempt to cause, or would be reasonably expected to cause substantial emotional distress to another person. 18 U.S.C.A. § 2261A (2).

Here, the Court should issue a restraining order on an emergency basis, ideally as soon as possible. Ribar's behavior has not resulted in the mere stress or annoyance that comes with normal litigation from time to time. As set forth above, Ribar is terrorizing counsel, and inhibiting counsel's ability to fully and fairly participate in the instant case. His behavior has and continues to irreparably harm and damage counsel's reputation, has caused substantial psychological harm, and resulting fear from Ribar's harassing and intimidating conduct. Ex. 1 at ¶¶4–13.

Ribar has continued to engage in inappropriate conduct designed to harass counsel and defendants, and a restraining order is appropriate to protect the parties, counsel, and witnesses. There is a documented continuous and escalating pattern of Ribar's litigation-adjacent harassment and intimidation. Exs. 1–14. Ribar has recently turned to personalized attacks of counsel, appearing at workplaces, at her workplace and amplifying his social media campaigns attempting to discredit, intimate, and defame defense counsels. *See* (ECF No. 130); Ex. 1 at ¶10; Ex. 3; Ex. 11; Ex. 12; Ex. 13; Ex. 14. Ribar's behavior has now made the courthouse feel unsafe to counsel after shouting at Ms. Kertis following a hearing in this case. *See* Ex. 1 at ¶8. In doing so, Ribar demonstrated an inability to control his emotions and behavior. *See id.* Undersigned counsel hid behind a utility box near the

//

crosswalk to avoid Ribar. *Id.* The Court should not permit a pro se litigant to harass attorneys in this District and make them fear for their personal safety.

In addition, Ribar has engaged in in-person intimidation, going to the workplaces of witnesses/Build Our Center representatives, lingering outside the building of undersigned counsel's office, and using profanity in telling a LBOT Trustee she is a "fucking communist." *See* (ECF No. 130); Ex. 1 at ¶10; Ex. 3; Ex. 11. His behavior at the recent LBOT meeting disrupted the course of business and made attendees feel threatened when he tried to follow them to their vehicle. Exs. 7, 8 at p. 4. This behavior is entirely inappropriate and interferes with the Library's ability to conduct its business and disrupts the public's ability to safely and securely participate in LBOT's public meetings. *See id.* Ribar continues to use the instant case as a launchpad for his monetized YouTube channel as well as to further his harassment and antagonism to individuals he believes have any relation to the case or the defendants. *See* (ECF No. 130); Exs. 1–14.

Undersigned counsel's only connection or involvement with Ribar is that she is representing the County Defendants in this case. Ex. 1 at ¶14. There is no reasonable basis for Ribar's abhorrent fear-inducing behavior toward counsel. The Court should not have any patience nor tolerance for patently harassing, vexatious, defamatory, and contumacious behavior by any litigant against another party or their counsel.

Any interest Ribar may have in his disruptive, harassing, defamatory, and threatening behavior is heavily outweighed by the defendants' and counsels' interest in avoiding harassment, defamation, intimidation, and disruption. Likewise, there is a public interest in the Library's ability to carry out its services to the community at large. *See Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992). Contrary to Ribar's belief, an individual's status as a public employee does not grant any person the right to stalk, harass, intimidate, dox or expose them or their families, or otherwise interfere with their private lives. *See* Ex. 10. Ribar exhibits a pattern of abuse to gain power and control over his victims, including testing boundaries with physical and self-instigated

confrontations, using his platforms and followers as a force multiplier, engaging in reputational coercion to disenchant counsel and pressure a favorable outcome, asserting dominance through public displays and antagonism, reversing the victim/offender role to justify his own escalation, and using public processes not to resolve disputes or gain records but to extract leverage over his victims. This behavior should not be tolerated.

Defendants should not have to wait until Ribar's behavior escalates into even more unwanted confrontations, more personal attacks or invasions of privacy, doxxing from his followers, or even physical violence from him or his followers. Ribar already has a documented history of violating boundaries, such as when he pulled open a door to a closed building that caused injury to a Library staff member. *See* (ECF Nos. 99-22 at 1:09:09–12; 99-26 at ¶8; 99-27; 99-28.). He has a history of verbal aggression, and inciting confrontations with government employees. *Id.*; *see also* (ECF Nos. 99-2; 99-3; 99-8; 99-12 at 0:27:27–36., 0:32:41–37:00, 0:52:11–53:18, 0:57:33–59:11, 1:15:00–16:21, 1:21:29–22:49; 99-22 at 0:13:29–14:34, 0:16:29–29:09, 0:51:02–12, 1:09:05–1:13:13; 99-23; 99-24 at pp. 8–12; 99-25; 99-40 at 0:01:38, 0:18:01–21:09; 99-41). Now, Ribar is going to involved parties' workplaces looking for confrontation, displaying information regarding an unrelated fiancé's name and workplace, using profanity to trigger an LBOT Trustee, and aggressively asserting he is "a little angry." Ex. 1 at ¶10; Exs. 5, 7, 8, 10. Moreover, Ribar's newly expressed beliefs are alarming, including the potentially paranoid delusion that he is on some kind of "hit list" (Ex. 8), and that people are "killing some conservatives" (Ex. 7 at p. 3), stating he "think[s] that's happening in our community too."[17] More recently, Ribar directly asked another person if they believe in the Second Amendment. Ex. 13 at p. 8. There is a real and articulable risk that Ribar will use this persecution narrative as justification, in his mind, for increased stalking, unwanted contacts, and possibly physical violence.

---

[17] *See* https://www.youtube.com/live/MyMqsOlJXRo?feature=shared&t=5857.

The Court should enter a carefully tailored protected order to address the specific threats posed by Ribar. Ribar should be restrained from physically approaching or sending any communication to the Library or any of its employees unless it is for a public open meeting or he is required to use the Library for emergency evacuation purposes. He should be restrained from physically approaching defense counsel, or any employee of the Washoe County District Attorney's Office except when attending in-person hearings for this instant case, and this case alone. Ribar should be restrained from physically entering County Defendants' counsel's staff parking lot, which has an entrance gate but does not have a secure perimeter. If Ribar attends any LBOT meeting, he should not be permitted to harass, threaten, intimidate, or follow any person before, during, or after the meeting. This avoids further oppression with the Library's ability to conduct its business. Likewise, if during a meeting, a Trustee ejects Ribar for behavior that disrupts the forum, Ribar shall be required to immediately remove himself from the premises. Ribar should be restrained from submitting public records requests to County Defendants' counsel and should instead be required to use Washoe County's online request portal. Ribar should be restrained from posting content on social media about this case, including information, photos or videos of any defendant, or any witness, because he has demonstrated that the purpose of his posts is to harass specific individuals associated with this case or with defendants. He should likewise be required to remove any reference to DDA Lindsay Liddell, and any iteration thereof, from any social media account that he controls. He should not be permitted to use any other person, directly or indirectly, to perform any of the conduct described above. To ensure the fair administration of justice in this case, any restraining order should remain in effect during the pendency of this case, including through any appeals Ribar may file.

Additionally, given Ribar's inappropriate behavior at the courthouse, the Court should hold future hearings remotely unless in-person hearings are deemed necessary by the Court. Counsel should not be subjected to Ribar shouting at any person, including them, while entering or exiting a hearing in this case. Because Ribar has demonstrated that he does

not respect the decorum of this courthouse and cannot control his behavior, in-person hearings should be avoided in this case to protect counsel and potential escalation toward court staff.

**V. CONCLUSION**

This case is not a platform for Ribar's power-and-control tactics against the Defendants, witnesses, and defense counsel. A restraining order is necessary to safeguard the orderly administration of this case, and to ensure that counsels can fully, safely, and fairly participate in this case. County Defendants seek a carefully tailored restraining order to address Ribar's obsessively threatening, harassing, defamatory, intimidating, stalking, and oppressing behavior. Ribar's actions demonstrate irreparable harm which tips the equities toward protecting the safety and order of all individuals involved in this case.

Dated this 29th day of October, 2025.

By ____/s/ Lindsay L. Liddell_____
LINDSAY L. LIDDELL
Deputy District Attorney
COBI BURNETT
Deputy District Attorney

ATTORNEYS FOR WASHOE COUNTY
DEFENDANTS

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, I deposited for mailing in the U.S. Mails, with postage fully prepaid, a true and correct copy of the foregoing document in an envelope addressed to the following:

DREW RIBAR
3480 PERSHING LANE
WASHOE VALLEY. NV 89704

I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

ALISON R. KERTIS, ESQ.

Dated this 29th day of October, 2025.

/s/ S. Haldeman
S. Haldeman

**INDEX OF EXHIBITS**

Exhibit 1    Declaration of DDA Lindsay Liddell ................................................ 6 pages

Exhibit 2    Screenshots of YouTube Video Harassing DDA Liddell ................... 2 pages

Exhibit 3    Screenshot of YouTube Video Harassing DA Hicks........................... 1 page

Exhibit 4    Public Records Request..................................................................... 3 pages

Exhibit 5    YouTube Screenshot of BOC Volunteer Fiancé ............................... 2 pages

Exhibit 6    Email to DDA Liddell, dated September 17, 2025 ........................... 3 pages

Exhibit 7    Declaration of Trustee Marie Rodriguez............................................ 1 page

Exhibit 8    Screenshots of YouTube Video of September LBOT Meeting ........... 6 pages

Exhibit 9    Screenshot of YouTube Video discussing "political hit list ................ 1 page

Exhibit 10   Screenshot of YouTube Video of Ribar at UNR................................. 1 page

Exhibit 11   Screenshots of YouTube Video discussing Ms. Kertis ...................... 5 pages

Exhibit 12   Ribar's Social Media Posts Regarding Counsel................................... 5 pages

Exhibit 13   Screenshots of Ribar's Social Media Comments............................... 13 pages

Exhibit 14   Screenshots of Ribar's Recent YouTube Videos................................ 15 pages

INDEX OF EXHIBITS