UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DREW J. RIBAR,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br>WASHOE COUNTY, et al.,<br><br>　　　　　　　　　　Defendants. | Case No. 3:24-cv-00526-ART-CSD<br><br>AMENDED<br>TEMPORARY RESTRAINING ORDER |

*Pro se* Plaintiff Drew Ribar sued Defendants Washoe County, Washoe County Library System ("Library"), Jeff Scott, Stacy McKenzie, Jonnica Bowen, Jennifer Cole, Deputy "Rothkin," Deputy Sagida, and Sgt. Gomez ("County Defendants"), as well as Reno's Build Our Center ("BOC") LGBTQ+ Center, alleging various constitutional and state law violations. (ECF No. 65-1.)

On September 18, 2025, BOC filed a non-emergency motion for a temporary restraining order ("TRO"). (ECF No. 130.) Mr. Ribar responded to the TRO (ECF No. 135), and BOC replied. (ECF No. 145.) In the days following BOC's TRO filing, Mr. Ribar filed a motion to compel service by email (ECF No. 131), and County Defendants filed a motion to stay discovery pending the outcome of their respective motions to dismiss. (ECF No. 132.) Magistrate Judge Denney held a hearing and denied Mr. Ribar's motion to compel service and granted County Defendants' motion to stay discovery. (ECF No. 165.)

On October 29, 2025, County Defendants filed a motion for an emergency TRO (ECF No. 172), which requested relief similar to BOC's prior motion for TRO. (ECF No. 130). Defendants alleged "escalating harassment, intimidation" and "menacing and inappropriate behavior" that is causing "substantial mental harm." (ECF No. 172.) The Court scheduled a hearing regarding this motion for Monday, November 3, 2025, at 10:00 a.m. (ECF No. 173), but granted interim

1

1    relief because of the serious threats to personal safety that Defendants alleged.
2    (ECF No. 176.) Mr. Ribar responded to the emergency TRO (ECF No. 179) and
3    filed additional motions to dissolve or modify the interim order. (ECF Nos. 180,
4    184.)

   The Court, in this order, extends some of the relief granted in the interim order, namely the directives prohibiting Mr. Ribar from physically approaching defense counsel and their workplaces, while declining to extend relief regarding social media posting at this juncture. The Court will reconsider relief concerning social media posting after briefing for a preliminary injunction is complete.

### I.     LEGAL STANDARD

   A party seeking a preliminary injunction must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if preliminary relief is not granted, (3) the balance of equities is in their favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. *Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

### II.    Discussion

   Defendants seek an order prohibiting Mr. Ribar from physically approaching Defendants and defense counsel, conducting in-person public records requests, and posting harassing and disparaging communications about Defendants and defense counsel on his social media channels. (ECF Nos. 130, 172.) Defendants also seek an order directing Mr. Ribar to remove prior harassing content referencing County Defendants, BOC, and defense counsel. (*Id.*)

**A. Background**

The instant litigation centers on a 2023 Drag Queen Story Hour for children that was planned by the Library in collaboration with BOC. (ECF No. 65-1.) Mr. Ribar, a self-described journalist, claims that the Library and BOC violated his constitutional rights by preventing him from entering the Drag Queen Story Hour while permitting another journalist to attend. (*Id.*) Mr. Ribar also claims that the Library suspended him from Library campuses without sufficient due process and that BOC conspired with the Library to violate Ribar's rights. (*See id.*) The following facts are drawn from allegations in County Defendants' emergency motion for TRO (ECF No. 172), BOC's non-emergency motion for a TRO (ECF No. 130), and the hearing held on November 3, 2025.

Since the commencement of this lawsuit, Mr. Ribar has targeted persons affiliated with County Defendants and BOC in a pattern of continued harassment, which has markedly escalated since the beginning of September. (ECF Nos. 130, 172.) Mr. Ribar first targeted a BOC volunteer by showing up at her workplace and disclosing on his YouTube channel personal information about her and her partner. (*Id.*) On September 10, 2025, Mr. Ribar showed up uninvited to the workplace of BOC volunteer Yvonne Allen, where he demanded, while filming, to conduct an in-person records request regarding a recent private BOC event. (ECF No. 130.) Footage of this interaction was then posted to Mr. Ribar's YouTube channel. (ECF No. 172.) Mr. Ribar also posted a live video to his YouTube channel wherein he displayed Ms. Allen's personal Facebook page, guided viewers to the relationship section of her account, and announced the full name and workplace of Ms. Allen's fiancé, a person unconnected to the instant litigation. (*Id.*)

Mr. Ribar then directed his antagonistic behavior toward County Defendants and uninvolved individuals, when he showed up at a Library Board of Trustees (LBOT) meeting. (ECF No. 172.) On September 17, 2025, Mr. Ribar attended and

3

filmed a LBOT meeting, where he was verbally combative and aggressively called a Trustee a "fucking communist." (*Id.*) After the meeting, Mr. Ribar followed two young people, who attended the LBOT meeting, to their vehicle. (*Id.*) Even after one of the individuals expressed that they felt threatened by Mr. Ribar, he continued to follow them, saying that he was going to film their vehicle's license plate. (*Id.*) On the YouTube video that Mr. Ribar posted of these interactions, one viewer commented that it was "nothing 2A [the Second Amendment] can't fix." (*Id.*)

Mr. Ribar then targeted another person involved with BOC under the pretense of conducting an in-person records request at their workplace. (ECF No. 172.) On September 19, 2025, Mr. Ribar showed up uninvited to the workplace of BOC Board Member Dr. Alan Ratliff at University of Nevada-Reno's School of Social Work. (ECF No. 172.) Mr. Ribar again, while filming, demanded to do an in-person public records request. (ECF No. 130.) As the interaction escalated, Mr. Ribar threatened the employee speaking with him by saying that "you will see what happens" if the employee called the police on Mr. Ribar. (ECF No. 130.) Mr. Ribar also refused to leave, saying that he would only exit the office if threatened with arrest by police. (*Id.*)

When one BOC employee attempted to attend a LBOT meeting, they were subjected to Mr. Ribar's profane verbal attacks and threats. Mot. Hr'g, Nov. 3, 2025. On October 15, 2025, Stacey Spain, Executive Director of BOC, attended a LBOT meeting where they experienced harassing conduct by Mr. Ribar. *Id.* After Spain made a statement at the meeting, Mr. Ribar followed Spain to their seat and called them a "fucking psycho." *Id.* Mr. Ribar sat directly behind Spain and read out loud from the BOC website during the meeting. *Id.* Spain attempted to move away from Mr. Ribar to de-escalate and disengage. *Id.* During the meeting, Mr. Ribar followed one attendee out to the parking lot. *Id.* Others at the meeting

4

were concerned for this attendee and followed the attendee and Mr. Ribar out to the parking lot where they heard Mr. Ribar telling the attendee to "fuck off." *Id.* When Mr. Ribar re-entered the meeting, he sat down behind Spain again and made comments at them about getting BOC's 501(c)(3) status revoked. (*Id.*)

Defendants' counsel have also felt targeted by Mr. Ribar's personal attacks in person and via video, and by uninvited visits to their workplaces. In September, Mr. Ribar showed up uninvited to the workplace of BOC's defense counsel, Attorney Allison Kertis, multiple times. (ECF No. 130.) After a recent in-person hearing for this instant litigation, Mr. Ribar shouted at Ms. Kertis outside of the courthouse, calling her a liar. (ECF No. 172.) Mr. Ribar shouted so loudly that Ms. Kertis's ride, who was waiting for her nearby, heard him inside the car. Mot. Hr'g, Nov. 3, 2025. Mr. Ribar has also repeatedly accused Ms. Kertis of lying in numerous social media comments, posts, and YouTube videos, displaying photos of her and naming her workplace. (*Id.*)

County Defendants' defense counsel, Deputy Assistant Attorney Lindsay Liddell, has felt similarly targeted by Mr. Ribar's frequent personal attacks. County Defendants specifically allege that Mr. Ribar submitted frivolous public records requests and commenced a social media campaign, consisting of numerous harassing comments and videos he has posted to his YouTube channel, repeatedly accusing Ms. Liddell of lying in this litigation. (*Id.*) Ms. Liddell was also present when Mr. Ribar shouted at Ms. Kertis following a recent hearing and was so fearful of his harassment that she hid behind a utility box to avoid any interaction with him. (*Id.*) After the emergency TRO was filed, Mr. Ribar published a live video wherein he read through Ms. Liddell's declaration and belittled her, said that she should resign from her job if she was fearful of him, laughed at her for seeking mental health treatment for the anxiety Mr. Ribar's conduct has caused her, and accused her of being drunk at work. Mot. Hr'g, Nov.

5

3, 2025. Mr. Ribar also addressed Ms. Liddell directly at one point in the video, telling her she should carry a gun and "make sure you are well-protected." *Id.*

**B. Temporary Restraining Order Analysis**

District courts have inherent power to "issue an injunction against litigants who harass their opponents." *Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 231892, at *3 (N.D. Cal. Aug. 13, 2007) (citing *DeLong v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir.1990)). Courts, particularly, have the power to issue an injunction over conduct directly related to a lawsuit. *Beyond Blond Prods., LLC v. Heldman*, No. CV205581DSFGJSX, 2022 WL 2784404, at *4 (C.D. Cal. June 17, 2022). *See also United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at *6 (C.D. Cal. Oct. 17, 2019); *Myart v. Taylor*, No. SA 5:16-CV-736-DAE, 2016 WL 5376227, at *4 (W.D. Tex. Sept. 26, 2016). Here, the conduct at issue in the emergency TRO is directly related to the lawsuit, as the allegedly harassing communications reference this litigation and the pleadings filed therein.[1] (ECF No. 172.)

The Court next considers whether Mr. Ribar can be restrained from future harassing conduct and communications. "The First Amendment generally prevents the government from proscribing speech," however, courts have "made a distinction between communication and harassment." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005). Courts "do have the power to enjoin harassing communication," and have rejected arguments that the First Amendment allows a person to make harassing or threatening communications. *Test Masters*, 428

---

[1] Regarding Defendants' argument that his actions amount to libel, Mr. Ribar filed a "Notice of Reservation of Anti-SLAPP Rights." (ECF No. 180.) Mr. Ribar argues that this legal reservation "changes the evidentiary burden" and protects his "[c]omplaints to public bodies, [b]ar complaints, [and] [i]nvestigative speech about public officials." (ECF No. 184.) In light of this Court's decision to defer any order restraining Mr. Ribar's speech, it need not address Nevada's anti-SLAPP procedures.

1   F.3d at 580; *see also United States v. Osinger,* 753 F.3d 939, 945 (9th Cir. 2014).

2   Because the Court has determined that it can restrain Mr. Ribar from harassing conduct and communications, it next considers whether County Defendants and BOC have met their burden on the four prongs required for a temporary restraining order. As this order is related to Plaintiff's harassing conduct, the four prongs refer to the likelihood of success on the merits of showing harassment, instead of the merits of the underlying lawsuit. *See Beyond Blond Prods.,* 2022 WL 2784404, at *5. Under Nevada law, a person is guilty of harassment if they "knowingly threaten[] to do any act intended to substantially harm the person threatened with respect to their mental health or safety, and the person by words or conduct places the person receiving the threat in reasonable fear that the threat will be carried out." NRS 200.571(1)(a)(4)–(1)(b).

Ms. Kertis and Ms. Liddell have shown a strong likelihood of proving harassment by Mr. Ribar. Against this documented pattern of intensifying personal attacks, in-person use of profanities and threats, refusing to de-escalate in-person confrontations, and doxing, Mr. Ribar's targeted attacks on defense counsel have caused them to feel extremely fearful of future confrontations with him. Intimidating litigants and defense counsel appears to be Mr. Ribar's goal, as evidenced by his unwillingness to de-escalate or end a confrontation, even when the other person expressed feeling threatened or attempted to disengage. Similarly, Mr. Ribar's use of profanities, threats, and shouting in his interactions with litigants and defense counsel have caused defense counsel to fear that his behavior may continue to escalate. In addition, given Mr. Ribar's history of publicizing personal details about litigant's family members to his social media followers and his follower's comments advocating the use of firearms to address perceived slights, Ms. Kertis is extremely fearful for the safety of her young children. *Id.*

7

1    Both Ms. Kertis and Ms. Liddell have also shown that they are "likely to suffer
2 irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20.
3 Plaintiff's harassing behavior has seemingly intensified as litigation has
4 progressed, and defense counsel have experienced resultant consequences. (ECF
5 No. 172.) In particular, Ms. Kertis has experienced high levels of emotional
6 distress, resulting in her warning family members and her children's daycare
7 about Plaintiff's conduct and purchasing an upgraded home security system.
8 (ECF No. 130.) Mr. Ribar's behavior has similarly interfered with Ms. Liddell's
9 work in this litigation, required her to seek mental health care, and resulted in
10 her experiencing high blood pressure and being prescribed medication to treat
11 anxiety. (ECF No. 172.)

12    The Court must also "balance the competing claims of injury and [] consider
13 the effect on each party of the granting or withholding of the requested relief."
14 *Winter*, 555 U.S. at 24. A narrowly tailored order prohibiting Mr. Ribar from
15 approaching Ms. Kertis and Ms. Liddell, from showing up to their workplaces
16 uninvited, and from submitting in-person public records requests will not impose
17 significant hardship on Mr. Ribar. It does not prevent the parties from litigating
18 the case, and does not prohibit Mr. Ribar from expressing his views or filing
19 public records requests, so long as he does so in a manner that does not
20 constitute personal harassment of defense counsel.

21    Finally, an injunction would be in the public interest because it will help
22 ensure the fair administration of justice, as defense counsel will be able to
23 participate in the lawsuit without harassment from Mr. Ribar. Thus, because
24 Defendants have made a showing on all four prongs required for a TRO,
25 Defendants' request for an order enjoining Mr. Ribar from harassing defense
26 counsel is granted. This temporary restraining order shall not exceed 30 days,

8

absent a new order lawfully extending it.[2]

At this current juncture, the Court declines to extend the interim relief prohibiting Mr. Ribar from posting content on social media about this case, or the parties involved. As noted above, the Court has the authority to enjoin harassing or threatening communications and takes allegations of such conduct by litigants extremely seriously. *Test Masters*, 428 F.3d at 580; *see also Osinger*, 753 F.3d at 945; *Beyond Blond Prods.*, 2022 WL 2784404, at *4–5. To further evaluate whether Mr. Ribar's social media content constitutes harassment of Ms. Kertis and Ms. Liddell, the Court directs Mr. Ribar to submit a log of all videos created by him that have been posted on any of his social media channels from September 1, 2025, to November 13, 2025, referencing Ms. Kertis or Ms. Liddell. The Court will address this issue more fully after briefing regarding a preliminary injunction has been completed.

### C. Plaintiff's Emergency Motion for Clarification and Specific Findings

Mr. Ribar argues that because Defendants allegedly sought sanctions-like relief in their emergency TRO, they were required to provide a mandatory safe harbor period of 21 days before filing the motion with the Court. (ECF No. 184.) Rule 11 provides for the imposition of sanctions when a pleading is frivolous, legally unreasonable, or presented for an improper purpose. *See* Fed. R. Civ. P. 11(b); *Sec. Farms v. Int'l Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1016 (9th Cir. 1997); *see* Fed. R. Civ. P. 11(c)(4)(describing sanctions tailored to deter similar filings). Here, Defendants are not alleging violations of Rule 11,[3] nor are they seeking sanctions, and therefore were not

---

[2] "When a temporary restraining order is issued with notice and after a hearing," the "14-day limit for [temporary restraining] orders issued without notice does not apply." *Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, n.1 (D. Or. 2016).

[3] Though BOC's motion for a temporary restraining order included a request for sanctions the Court construes it as one seeking a case management conference

9

required to satisfy Rule 11's safe harbor provision. (ECF No. 172.)

### III. CONCLUSION

It is therefore ordered that County Defendants' TRO (ECF No. 172) and BOC's TRO (ECF No. 130), are granted in part, and denied in part. Mr. Ribar therefore is temporarily restrained from:

1. Physically approaching Ms. Kertis and Ms. Liddell, except when attending in-person hearings for this instant case, and this case alone;
2. Physically entering the gated parking lot designated for employees of Washoe County District Attorney's Office;
3. Showing up uninvited to the Washoe County District Attorney's Office, which is located on the fourth floor and above at 1 South Sierra Street in Reno, Nevada;
4. Showing up uninvited to the offices of Sierra Crest Business Law Group, located at 6770 S McCarran Blvd in Reno, Nevada;
5. Submitting any in-person public records request to County Defendants and Ms. Liddell; such requests must be made using Washoe County's online public records request portal.

It is further ordered that Mr. Ribar compile a log of all videos, created by Mr. Ribar, directly referencing Ms. Kertis and Ms. Liddell, that were posted on any of Mr. Ribar's social media channels, including any saved "live" feed videos,[4] between September 1, 2025, and November 13, 2025. The log must be in a list or table format indicating for each video the date of publication and social media platform on which it was shared and include a link to the video. Mr. Ribar shall submit this video log to the Court by November 13, 2025. Prior to submitting, Mr.

---

and temporary restraining order. (ECF No. 130.) BOC may refile a motion for sanctions.

[4] A live feed or live stream video is a broadcast video "streamed over the Internet for live viewing." *Live stream*, Merrian-Webster.com, merriam-webster.com/dictionary/live%20stream.

10

1  Ribar shall send the completed video log to Ms. Kertis and Ms. Liddell for their
2  review by November 10, 2025. The filed log must identify any videos that were
3  not on the version shared with defense counsel.

4      Mr. Ribar is further ordered to preserve all live videos that he broadcasts
5  on any of his social media channels, referencing this instant litigation, from
6  November 5, 2025, until December 3, 2025.

7      It is further ordered that Mr. Ribar shall not use any other person, directly
8  or indirectly, to perform any of the conduct described above.

9      It is further ordered that Defendants shall have until November 17, 2025,
10 to file a motion for preliminary injunction. Mr. Ribar's response will be due by
11 November 26, 2025, and Defendants' reply will be due by December 1, 2025.

12     It is further ordered that Defendants shall have until November 17, 2025,
13 to submit responses to Mr. Ribar's Motion for Leave to File First Amended
14 Complaint (ECF No. 167), Motion for Court Intervention in Meet-and-Confer
15 Process (ECF No. 169), and Motion for Maximum Sanctions. (ECF No. 170.)

17     DATED: November 5, 2025

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

11