UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

**DREW J. RIBAR,**

Plaintiff,

v.

**STATE OF NEVADA; NEVADA LEGISLATIVE COUNSEL BUREAU; KEVIN C. POWERS, in his official and individual capacity; LOBBYIST REGISTRAR, in their official and individual capacity; ROGER WILKERSON, in his official capacity as Acting Director of the Nevada Legislative Counsel Bureau; and DOE DEFENDANTS 1–10,**

Defendants.

Case No. 3:25-cv-00090-ART-CSD

# NOTICE OF SUPPLEMENTAL AUTHORITY

PLEADING TITLE - 1

PLEADING TITLE - 2


IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (ECF No. 40)

*(Pursuant to LR 7-2(d))*

Plaintiff **Drew J. Ribar**, pro se, respectfully submits this Notice of Supplemental Authority pursuant to Local Rule 7-2(d) in further support of his Motion for Leave to File Second Amended Complaint (ECF No. 40). This Notice addresses controlling and persuasive authority bearing on (1) the futility arguments under Rule 12(b)(6) and (2) asserted immunity defenses raised in Defendants' Opposition (ECF No. 44). It also provides relevant historical-context authorities supporting the First Amendment claims and clarifies Nevada-law context as parallel support.

# I. THE SAC PLAUSIBLY ALLEGES AN UNCONSTITUTIONAL CONDITION AND THEREFORE IS NOT FUTILE

The proposed Second Amended Complaint ("SAC") alleges a continuing First Amendment injury: a **categorical, status-based prohibition** under NRS ch. 218H and Joint Standing Rule 25 that forces Plaintiff to **surrender one enumerated right (Petition)** in order to exercise another **(Press)** in the "people's house." That is the classic **unconstitutional-conditions** problem:

"Even though a person has no 'right' to a valuable governmental benefit, that benefit may not be denied on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

See also *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) (striking compelled-speech funding condition). On a Rule 12(b)(6) standard, Plaintiff's well-pled allegations easily clear the plausibility bar. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave should be "freely given" absent clear futility). And because First Amendment harms are uniquely time-sensitive, even a brief loss is irreparable: *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

This status-based ban is constitutionally indistinguishable from conditioning the exercise of one enumerated right upon surrender of another—e.g., forbidding a citizen from speaking **while** exercising a separate constitutional right. The Supreme Court has rejected any hierarchy that relegates enumerated rights to "second-class" status. See *District of Columbia v. Heller*, 554 U.S. 570, 634–35 (2008) (the Second Amendment is not a "second-class right"); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022) (rejecting tiered balancing untethered to text, history, and tradition). If government may force the surrender of one right as the condition of another, the Bill of Rights becomes a menu of mutually exclusive options—contrary to its text and structure.

PLEADING TITLE - 3

# II. ABSOLUTE LEGISLATIVE IMMUNITY DOES NOT BAR PROSPECTIVE RELIEF AGAINST ADMINISTRATIVE ENFORCEMENT

Defendants' reliance on absolute legislative immunity (including out-of-circuit decisions such as *Reeder v. Madigan*, 780 F.3d 799 (7th Cir. 2015)) misapprehends the **functional** nature of immunity. The Supreme Court draws a clear line: **core legislative acts** (e.g., debating, voting, or rulemaking) are privileged; **administrative or enforcement actions** are not.

- *Supreme Court of Virginia v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 734–37 (1980) (legislative immunity shields rulemaking, but not enforcement; prospective relief may issue against enforcement officials).
- *Forrester v. White*, 484 U.S. 219, 224–28 (1988) (immunity turns on function, not title; administrative acts are not cloaked).
- *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220–22 (9th Cir. 2003) (permit/credential decisions are administrative, not legislative).
- *Sherrill v. Knight*, 569 F.2d 124, 129–31 (D.C. Cir. 1977) (press-credential denials require "narrow and specific" standards and procedural safeguards; categorical exclusion is invalid).

Here, the SAC targets **the Lobbyist Registrar and the Acting Director** in their **official capacities** for **prospective** relief because they **apply and enforce** the categorical dual-role

PLEADING TITLE - 4

prohibition to Plaintiff. That is classic **administrative enforcement**, not core legislating. As such, **absolute legislative immunity does not apply**.

Nor does any qualified-immunity concept bar this suit, because the SAC seeks **equitable, official-capacity relief** only. See *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (reaffirming *Ex parte Young*, 209 U.S. 123 (1908), for prospective relief against state officers who enforce unconstitutional laws). The SAC is **narrowly tailored to Young**—no damages, no personal-capacity claims.

# III. TEXT, HISTORY, AND TRADITION: NO HISTORICAL ANALOGUE SUPPORTS THIS CATEGORICAL DUAL-ROLE BAN

Modern First Amendment analysis increasingly looks to **text, history, and tradition**—especially where broad, categorical restraints on speech or press are at issue. See, e.g., *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397–2401 (2024) (remanding and emphasizing careful First Amendment analysis; concurrences canvassing history); *303 Creative LLC v. Elenis*, 600 U.S. 570, 593–95 (2023) (text-and-history method in compelled-speech context). And while *Bruen* articulated the test in the Second Amendment setting, its **methodological insight** is instructive here: the government must justify restrictions by pointing to a **relevantly similar historical tradition**. *Bruen*, 597 U.S. at 24–29.

PLEADING TITLE - 5

There is **no founding-era analogue** for a rule that **conditions petitioning the legislature upon renouncing press activity** (or vice versa). To the contrary:

- **Petition**: From Magna Carta (1215) ch. 61 and the English Bill of Rights (1689), through the American founding, the right to **remonstrate** and **petition** the legislature was core.
- **Press**: The founding generation repudiated licensing regimes and prior restraints; the press's watchdog role over government was axiomatic.
- **Madison's 1789 proposals** emphasized that the people "shall not be restrained from applying to the Legislature" for redress.

A **status-based** ban forcing a citizen to forsake one enumerated freedom to exercise another has **no historical pedigree**. It is, therefore, inconsistent with the original public meaning of the First Amendment's Press and Petition Clauses.

# IV. NEVADA LAW CONTEXT: SELF-EXECUTING RIGHTS AND A PRO-PRESS TRAJECTORY

Nevada's Constitution independently protects robust speech, press, and petition rights. The Nevada Supreme Court has confirmed that state constitutional guarantees can be **self-executing** and support direct actions for relief without importing federal qualified immunity:

PLEADING TITLE - 6

- *Mack v. Williams*, 138 Nev. 427, 522 P.3d 434, 439–45 (2022) (recognizing an implied cause of action for damages under the Nevada Constitution; rejecting qualified immunity).
- *Falconi v. Eighth Judicial Dist. Court*, 540 P.3d 1218, 1225–30 (Nev. 2024) (strengthening press/public access principles; disfavoring categorical closures without case-specific findings).

While **Pennhurst** limits federal courts from ordering compliance with state law, see *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), these Nevada authorities underscore the **public importance** of adjudicating press/petition claims on the merits and provide a **parallel, state-court avenue** should it become necessary. Importantly, Nevada's discretionary-function statute (NRS 41.032) constrains **tort damages**; it does not bar **equitable relief** against unconstitutional enforcement.

# V. CONCLUSION AND REQUEST

The SAC alleges a **live constitutional controversy**, seeks **only prospective, official-capacity relief**, and targets **administrative enforcement** rather than core legislative acts. The authorities above confirm that amendment is not futile and that asserted immunities do not foreclose an adjudication on the merits. Delay risks **irreparable harm** during the upcoming special session. See *Elrod*, 427 U.S. at 373.

**Plaintiff respectfully requests that the Court:**

PLEADING TITLE - 7

1. **GRANT** the Motion for Leave to File the Second Amended Complaint (ECF No. 40); and

2. **RULE EXPEDITIOUSLY** so that Plaintiff's First Amendment rights are preserved during the special legislative session.

DATED: November 9, 2025

Respectfully submitted,

/s/ Drew J. Ribar

**Drew J. Ribar, Pro Se**

3480 Pershing Ln.

Washoe Valley, NV 89704

Const2Audit@gmail.com

(775) 221-7899

PLEADING TITLE - 8

# CERTIFICATE OF SERVICE

I hereby certify that on **November 9, 2025**, I electronically filed the foregoing **Notice of Supplemental Authority in Support of Motion for Leave to File Second Amended Complaint (ECF No. 40)** with the Clerk of the United States District Court for the District of Nevada via . reno_public_docketing@nvd.uscourts.gov

Additionally, I served a true and correct copy by electronic mail upon:

- **Kevin C. Powers**, kpowers@lcb.state.nv.us
- **Jaime K. Black**, jaime.black@lcb.state.nv.us
- **Tara C. Zimmerman**, tara.zimmerman@lcb.state.nv.us

    Nevada Legislative Counsel Bureau, Legal Division

    401 S. Carson St., Carson City, NV 89701

I declare under penalty of perjury that the foregoing is true and correct.

DATED: November 9, 2025

/s/ Drew J. Ribar

**Drew J. Ribar, Pro Se**

PLEADING TITLE - 9