CRAIG J. MARIAM
Nevada Bar No. 10926
RACHEL L. WISE
Nevada Bar No. 12303
**GORDON REES SCULLY MANSUKHANI, LLP**
300 South Fourth Street, Suite 1550
Las Vegas, Nevada  89101
Telephone: (702) 577-9300
Facsimile: (702) 255-2858
Email: cmariam@grsm.com
          rwise@grsm.com

*Attorneys for Defendant Build Our Center Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DREW RIBAR,<br><br>                    Plaintiff,<br><br>        v.<br><br>WASHOE COUNTY, et al. ,<br><br>                    Defendants. | Case No. 3:24-cv-00526-ART-CSD<br><br>**BUILD OUR CENTER, INC.'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR RECONSIDERATION OF AMENDED TEMPORARY RESTRAINING ORDER [DOC. NO. 186] AND MOTION TO STAY ENFORCEMENT PENDING APPEAL [DOC. NO. 188]** |

Defendant Build Our Center Inc. ("BOC"), by and through its undersigned counsel, respectfully, pursuant to Fed. R. Civ. P. 60 and Local Rule ("LR") 59-1 hereby file its Response to Plaintiff's Emergency Motion for Reconsideration of Amended Temporary Restraining Order [Doc. No. 186] and Motion for Stay [of] Enforcement Pending Appeal filed as Doc. No. 188 ("Joinder").

This Response is based on the pleadings and papers filed in this action, the attached Memorandum of Points and Authorities, and any oral argument the Honorable Court may require.

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

## Table of Contents

Page

I.    INTRODUCTION ........................................................................................ 2

II.    RELEVANT FACTS ................................................................................... 2

    A.    Plaintiff had Notice of BOC's Motion for Temporary Restraining Order............ 2

    B.    The Court Amended its TRO After a Hearing Attended by All Parties on November 5, 2025 [Doc. No. 186] ........................................................... 3

III.    LEGAL STANDARD ................................................................................. 4

IV.    LEGAL ANALYSIS ................................................................................... 5

    A.    Plaintiff's Speech is Not Protected by the First Amendment ............................. 5

    B.    This Court Properly Issued a Temporary Restraining Order [ECF No. 186] Against Plaintiff ........................................................................................ 7

        1.    Plaintiff had Notice and an Opportunity to Be Heard............................... 7

        2.    The Court Compiled and Adequate Record for Review........................... 8

        3.    The Court Entered Findings About the Frivolous or Harassing Nature of Plaintiff's Conduct .............................................................................. 8

        4.    The Court Narrowly Tailored the Amended TRO to Address Plaintiff's Course of Conduct .......................................................................... 10

    C.    Plaintiff's Motion Does Not Establish any Reasons Justifying Relief ............... 10

        1.    Plaintiff's Restraint Argument Does Not Warrant Reconsideration........ 11

        2.    The Discovery Requirements Arise from Rule 26 and Are Not Punitive in Nature ............................................................................................ 13

        3.    The Court is Not Bound by the Safe Harbor Requirements in Rule 11, and the TRO Was not Issued Under Rule 11 ........................................... 14

        4.    Plaintiff Misapplies Nevada's Anti-SLAPP Provisions, Which are Not Binding on the Federal Court Under the Erie Doctrine ........................... 14

        5.    Judge Traum Was and Is an Impartial Judicial Officer ........................... 15

        6.    Plaintiff's Stay or Injunction Request is Not Warranted ........................ 16

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

D.     Sanctions in the Form of Attorney's Fees are Appropriate ................................. 16

V.     CONCLUSION ................................................................................................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1

**Table of Authorities**

2

**Cases**

3    *Big City Dynasty Corp. v. FP Holdings, L.P.,* 2021 WL 3550301, at *1 (D. Nev. July 21, 2021)

4    ............................................................................................................................. 16

5    *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 64–65, 103 S. Ct. 2875, 2879 (1983) ... 6, 7

6    *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969)................................................. 11, 12, 13

7    *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991).............................4

8    *Cheney v. U.S. Dist. Court for D.C.,* 541 U.S. 913, 914, 124 S. Ct. 1391, 1392, 158 L. Ed. 2d

9    225 (2004) ............................................................................................................ 15

10    *Counterman v. Colorado,* 143 S. Ct. 2106, 2113-14 (2023) ............................................5

11    *De Long v. Hennessey,* 912 F.2d 1144, 1148 (9th Cir. 1990)..........................................9

12    *Doe v. Gangland Prods., Inc.,* 730 F.3d 946, 959 (9th Cir. 2013). ...............................6, 7

13    *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817 (1938) .......................................... 15

14    *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1071, 111 S. Ct. 2720, 2743 (1991)............9, 10

15    *Hernandez v. Nye Cnty. Sch. Dist.,* 2:10-CV-00749-KJD, 2011 WL 2938274, at *1 (D. Nev.

16    July 19, 2011).........................................................................................................9

17    *Hoffman v. Screen Actors Guild-Producers Pension Plan,* 851 Fed. Appx. 693, 696 (9th Cir.

18    2021) ................................................................................................................... 13

19    *In re Martin-Trigona,* 573 F. Supp. 1237, 1243 (D. Conn. 1983)................................. 16

20    *Katz v. Steyn*, 218CV00997JADGWF, 2019 WL 13211070, at *2 (D. Nev. Mar. 25, 2019) . 9, 10

21    *Mayorga v. Ronaldo,* 656 F. Supp. 3d 1218, 1226 (D. Nev. 2023).............................. 16

22    *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir. 2001) ......................... 15

23    *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1057 (9th Cir. 2007).............5, 7, 8, 10

24    *Near v. Minnesota,* 283 U.S. 697, 731 (1931) ............................................... 11, 12

25    *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1970) ............................. 11, 13

26    *Obsidian Fin. Grp., LLC v. Cox,* 740 F.3d 1284, 1290 (9th Cir. 2014) ..........................6

27    *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.,* 210 F.3d 1112, 1118 (9th Cir.2000) ........7

28    *Pacquiao v. Mayweather, 803* F. Supp. 2d 1208, 1213 (D. Nev. 2011)..........................6

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

*Panik v. TMM, Inc.,* 139 Nev. 526, 530, 538 P.3d 1149, 1153 (2023) ........................................ 15

*Planned Parenthood Fed'n of Am., Inc. v. Newman,* 51 F.4th 1125, 1134 (9th Cir. 2022) .... 5, 10

*Radcliffe v. Rainbow Const. Co.,* 254 F.3d 772, 788 (9th Cir. 2001) .......................................... 14

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) ................. 9

*Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835 (9th Cir. 1999) .......................... 11

*Thunder Studios, Inc. v. Kazal,* 13 F.4th 736, 746 (9th Cir. 2021) ............................................... 5

*U.S. E.E.O.C. v. Caesars Entm't, Inc.,* 237 F.R.D. 428, 432 (D. Nev. 2006) ........................... 14

*United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) ..................................................... 4

*United States v. Osinger,* 753 F.3d 939, 944 (9th Cir. 2014) ...................................................... 10

*Wilcox v. Portfolio Recovery Associates, LLC,* 220CV01545JADNJK, 2023 WL 4025899, at *2
   (D. Nev. June 15, 2023) ......................................................................................................... 14

*Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ......................................................................... 13

**Statutes**

18 U.S.C. § 119 ............................................................................................................................ 5

FRCP 56 ...................................................................................................................................... 15

FRCP 56(f) .................................................................................................................................. 15

NRS 200.571 ................................................................................................................................. 5

NRS 200.575 ................................................................................................................................. 5

NRS 41.660 .............................................................................................................................. 2, 15

Rule 11 ........................................................................................................................................ 14

Rule 26 ............................................................................................................................... 2, 13, 14

Rule 60 ................................................................................................................................. 2, 4, 10

Rule 62 ........................................................................................................................................ 16

**Other Authorities**

LR 59-1(b) .................................................................................................................................. 16

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

## MEMORANDUM OF POINTS AND AUTHORITIES
### I.    INTRODUCTION

Plaintiff's Motion seeks relief not only from the Amended TRO, but also a protective order under Rule 26(c), a stay of proceedings, and recusal of Judge Traum. [Doc. No. 188]. Not only are Plaintiff's unwarranted, the improper inclusion of multiple motions into one is a violation of the local rules of practice.

Plaintiff has not shown that his claims warrant reconsideration under Rule 60 and cannot do so, as he does not base any of his contentions on relevant law or facts. Although Plaintiff contends that the Amended TRO was unsupported by affidavits, his own words on his YouTube videos betray this contention. Plaintiff's purported speech is not protected by the First Amendment, and his journalistic activities do not grant him a license to violate the law in pursuit of a headline. Further, the Court was well within its rights under well-settled law to restrain Plaintiff's harassing, threatening, and vexatious speech.

### II.    RELEVANT FACTS

**A.    Plaintiff had Notice of BOC's Motion for Temporary Restraining Order**

BOC filed its Motion for Temporary Restraining Order supported by 27 exhibits and three declarations from BOC and its counsel on September 18, 2025. [Doc. No. 130]. Plaintiff filed a response without any supporting declaration on September 23, 2025. [Doc. No. 135]. Plaintiff also filed a motion to strike BOC's motion for a restraining order under NRS 41.660 (anti-SLAPP). [Doc. No. 141]. Plaintiff also filed his own motions for temporary restraining order [Doc. No. 151] and preliminary injunction [Doc. No. 152] arguing, in part, that the Court strike BOC's motion for temporary restraining order.

Soon after, Washoe County Defendants filed their Emergency Motion for Temporary Restraining Order supported by 14 exhibits and two declarations from Washoe County Defendants and their counsel on October 29, 2025 [Doc. No. 172]. Plaintiff filed a response to Washoe County Defendants' motion for temporary restraining order on October 31, 2025. [Doc. No. 179]. He also filed another motion under Nevada's anti-SLAPP provisions requesting the Court dissolve the TRO on the same day. [Doc. No. 180]. On November 3, 2025, Plaintiff filed

an emergency motion to modify or lift the temporary restraining order [Doc. No. 182] and

supplemented his brief on the same day. [Doc. No. 183].

**B.     The Court Amended its TRO After a Hearing Attended by All Parties on November 5, 2025 [Doc. No. 186]**

On November 3, 2025, all parties appeared before the Court for a hearing on Washoe County and BOC's TROs. [Doc. No. 185]. After all parties were granted the opportunity to be heard, the Court entered an Amended the TRO to restrain Plaintiff from approaching counsel or showing up uninvited at BOC's offices. [Doc. No. 186]. Three days after the Court entered its Amended TRO, Plaintiff uploaded a video entitled "Obeying Judge Anne Traum." [Doc. No. 203-32]. The transcript, autogenerated by YouTube, includes the following statements from Plaintiff:

> 12:00
> **In the last 28 days, my my channels, my social media has had 73 million views.**
>
> . . .
>
> 13:17
> don't want to do it anymore. Um, ***so got a towing business,*** got a certificate of public convenience with the government
>
> . . .
>
> ***and uh it's for sale***. I don't want to do it. I'd rather try to fix some of these problems that I see. Said I've uh raised
>
> . . .
>
> 15:24
> ***uh got what 118,000 people that are watching this thing now.***
>
> . . .
>
> 23:05
> media site that I've got and I've got basically I ***pay I use an AI system to***
> 23:11
> ***automatically post all this stuff.*** I make one one video, chunk it all down in an AI and then it posts automatically.
>
> . . .
>
> 31:58
> Allison Curtis here. Curtis. Okay. Oops. There we go. Sierra Crest Business Law Group. ***Allison Curtis***
> 32:04
> ***lied about me. So, yeah, I posted on my page.***
>
> . . .

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

-3-

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

33:49
public to show what **Hi Allison,**
33:55
welcome to the internet. Be a lion sack of crap.
34:02
*I cussed at you. Does that make you afraid again? Go pop some
pills*. Not my Not my

. . .

51:16
It's a good old girl's network. ***It's a criminal network***.

. . .

1:25:37
***Sierra Crest Business Law Group that Allison Curtis is an
employee of. They they lied in their affidavit***

. . .

1:28:15
See, I've got no no fear, no nerves about any of this because I've
done nothing wrong. ***They, on the other hand,***
1:28:21
***are very, very afraid of me.*** So afraid of me that they won't
document their meetings with me

. . .

1:28:34
judge. ***But the judge is easily manipulated because she's part of
this social justice*** [ __ ]

[Doc. No. 203-32] (emphasis added). Notably, each of these statements were included in a single
YouTube video.

### III.    LEGAL STANDARD

A district court has the authority to modify, alter, or revoke a prior order. Rule 60; *United
States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). However, "[m]options seeking
reconsideration are disfavored." LR 59-1(a).

Under 28 U.S.C. § 1651, the Court may issue any restraining order, injunction, or other
ruling as "necessary or appropriate in aid of their respective jurisdictions and agreeable to the
usages and principles of law." This Court also has the inherent authority to sanction abusive or
harassing conduct. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991).
"This power reaches both conduct before the court and that beyond the court's confines . . ."
*Chambers,* 501 U.S. at 44, 111 S. Ct. at 2132. To that end, "[f]lagrant abuse of the judicial

process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1057 (9th Cir. 2007).

When restraining a litigant's harassing or vexatious abuses, the federal courts address four factors: (1) the litigant must be given notice and a chance to be heard before the order is entered, (2) the district court must compile an adequate record for review, (3) the district court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation, and (4) the vexatious litigant order must be narrowly tailored to closely fit the specific vice encountered. *Molski,* 500 F.3d at 1057. The Court satisfied all four standards when it issued a temporary restraining order against Plaintiff. [Doc. No. 186].

## IV.   LEGAL ANALYSIS

### A.   Plaintiff's Speech is Not Protected by the First Amendment

Despite Plaintiff's contention that he is engaged in journalistic activities, his videos make clear that he is engaging in true threats, defamation, and commercial speech. [Doc. No. 203-32]; [Doc. Nos. 130, 172]. None of these categories constitute protected speech or activities under the First Amendment.

Journalists do not have a "special license to break laws of general applicability in pursuit of a headline." *Planned Parenthood Fed'n of Am., Inc. v. Newman,* 51 F.4th 1125, 1134 (9th Cir. 2022) (journalist's decision to videos released on the internet was not protected by the First Amendment); *see e.g.,* NRS 200.575 (stalking); NRS 200.571 (harassment); 18 U.S.C. § 119 (protection of federal civil servants).

"True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado,* 143 S. Ct. 2106, 2113-14 (2023); *Thunder Studios, Inc. v. Kazal,* 13 F.4th 736, 746 (9th Cir. 2021) (true threats are not protected speech). The existence of a threat depends not on "the mental state of the author," but on "what the statement conveys" to the person on the other end. *Counterman,* 143 S. Ct. at 2113-14 ("When the statement is understood as a true threat, all the harms that have long made threats unprotected naturally follow."). Plaintiff's course of conduct includes true threats against counsel and BOC,

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1    which he recognizes have conveyed actual threats against BOC and counsel. [Doc. Nos. 130,

2    172], [Doc. No. 203-32].

3         "[I]n the context of defamation law, the rights of the institutional media are no greater

4    and no less than those enjoyed by other individuals engaged in the same activities." *Obsidian*

5    *Fin. Grp., LLC v. Cox,* 740 F.3d 1284, 1290 (9th Cir. 2014) (there is no distinction under

6    defamation between the press and other speakers) (The standard for defamation against a private

7    party is negligence.). "Any statement which presupposes defamatory facts unknown to the

8    interpreter is defamatory." *Pacquiao v. Mayweather, 803* F. Supp. 2d 1208, 1213 (D. Nev. 2011)

9    (communication imputing a person's lack of fitness for a trade or profession is defamation *per*

10   *se*). A review of just one video shows that Plaintiff is attacking counsel's "trade, business, or

11   profession," which could constitute defamation *per se*. Such attacks are not protected by the First

12   Amendment.

13        "[T]he Constitution accords less protection to commercial speech than to other

14   constitutionally safeguarded forms of expression." *Bolger v. Youngs Drug Products Corp.,* 463

15   U.S. 60, 64–65, 103 S. Ct. 2875, 2879 (1983) ("our decisions have recognized the

16   'commonsense' distinction between speech proposing a commercial transaction, which occurs in

17   an area traditionally subject to government regulation, and other varieties of speech.") (internal

18   quotation marks omitted). As held in *Bolger*, Plaintiff's YouTube videos can constitute

19   commercial speech notwithstanding the fact that it discusses other public issues. *Id.* To

20   determine whether the newsworthy exception applies, courts look to (1) the social value of the

21   facts published, (2) the depth of the publication's intrusion into ostensibly private affairs, and (3)

22   the extent to which the party voluntarily assumed a position of public notoriety." *Doe v.*

23   *Gangland Prods., Inc.,* 730 F.3d 946, 959 (9th Cir. 2013).

24        Mr. Ribar is trying to sell his towing business. [Doc. No. 203-32]. He is using publicity

25   gained from his harassment and threats against BOC and its counsel to engage in these

26   commercial activities. There is no social value to Plaintiff's repeated assertions that BOC's

27   counsel should be fired [Doc. No. 203-32] or that counsel should ensure they are well protected.

28   [Doc. No. 172]. Plaintiff's intrusion into private affairs includes stalking BOC employees and

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

showing up to counsel's offices without a legitimate reason. [Doc. Nos. 130, 172]. Finally, neither BOC nor its counsel voluntarily assumed positions of public notoriety: They were elevated to this position by Plaintiff. Under the *Bolger* and *Doe* considerations, Plaintiff is engaged in commercial speech that is not newsworthy, and thus, falls outside of the First Amendment protections.

**B.    This Court Properly Issued a Temporary Restraining Order [ECF No. 186] Against Plaintiff**

Plaintiff does not address any of the relevant law in his Motion. Instead, he relies on unrelated case references without explaining *how* those cases relate to his Motion or *what* in those authorities warrant reconsideration. This is because he cannot do so. Under *Molski*, this Court properly entered an order restraining Plaintiff's harassing and abusive conduct.

**1.    <u>Plaintiff had Notice and an Opportunity to Be Heard</u>**

Plaintiff had sufficient notice and an opportunity to be heard before the TRO issued. Notably, an opportunity to be heard does not "require an oral or evidentiary hearing on the issue" but instead that "[t]he opportunity to brief the issue fully satisfies due process requirements." *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.,* 210 F.3d 1112, 1118 (9th Cir.2000).[1]

The Court entered its first TRO after Plaintiff received notice of BOC's motion [Doc. No. 30] and filed at least five responses or motions related to BOC's request. The initial TRO was proper. [Doc. No. 178]. As was the subsequent TRO. [Doc. No. 186]. Plaintiff was aware that the Court may enter an order against him restraining his speech and an opportunity to oppose such an order: He submitted at least seven different motions or responses directly tied to this request.[2] Moreover, the Court allowed Plaintiff to present argument mere days after entering the initial TRO. [Doc. No. 185]. Thus, the first *Molski* prong is satisfied because Plaintiff had reasonable notice and opportunity to be heard.

---

[1] Plaintiff also contends that his general due process rights were violated. Nothing in his citations or argument support this position.

[2] This does not reference the numerous other motions, such as those for sanctions and clarification Plaintiff filed between September 23, 2025, and the current day regarding the TRO.

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**Gordon Rees Scully Mansukhani LLP**
300 S. 4ᵗʰ Street, Suite 1550
Las Vegas, Nevada 89101

## 2.     The Court Compiled and Adequate Record for Review

The next *Molski* requirement is that the Court compile an adequate record for review. The purpose of this requirement is define "[a] specific method or course of action . . ." *Molski*, 500 F.3d at 1057. In *Molski*, the Ninth Circuit explained that a record is adequate if it contains a complete list of the harassing or vexatious items. *Id.,* 500 F.3d at 1059. The Amended TRO sufficiently outlines many of Plaintiff's harassing and threating conduct warranting a restraining order.

Among other things, the Amended TRO references how BOC submitted declarations detailing Plaintiff's uninvited appearances at the workplaces of BOC volunteers and broadcasting their personal social media on his YouTube channel. [Doc. Nos. 130, 172]. Even after uninvolved individuals expressed that they felt threatened by Plaintiff, he continued his abusive behavior by saying he would film their license plate. [Doc. No. 172]. When a BOC employee expressed a need to call the policy, Plaintiff threatened that said employee "will see what happens" if the police are called. [Doc. No. 130]. Plaintiff has thrown unwarranted insults at BOC employees and stalk them to their cars. [Doc. No. 130].

Plaintiff has also targeted counsel at their workplaces and elected to scream at them outside of the courthouse. [Doc. No. 172]. Despite saying he has no knowledge of declarations supporting the TROs, Plaintiff read one on his YouTube channel while insulting counsel's mental health. [Doc. No. 172]. Plaintiff also made a point to tell counsel to make sure they are well protected, implying he intended to harm them. [Doc. No. 172].

Moreover, Plaintiff's eight motions and responses directed to the motions for TRO, when under the rules, two would suffice, support a showing that Plaintiff is engaging in harassing and abusive litigation tactics. Based on the Amended TRO, the record is adequate for review.

## 3.     The Court Entered Findings About the Frivolous or Harassing Nature of Plaintiff's Conduct

The third *Molski* factor requires substantive findings as to the harassing nature of Plaintiff's conduct. This factor requires the Court to make "substantive findings as to the frivolous or harassing nature of the litigant's actions." *De Long v. Hennessey,* 912 F.2d 1144,

Gordon Rees Scully Mansukhani LLP
300 S. 4ᵗʰ Street, Suite 1550
Las Vegas, Nevada 89101

1148 (9th Cir. 1990). Typically, when addressing the rights of litigants, the United States

Supreme Court has found that:

> It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to "free speech" an attorney has is extremely circumscribed.

*Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1071, 111 S. Ct. 2720, 2743 (1991) (". . . the

speech of *those participating before the courts* could be limited") (emphasis in original);

*Hernandez v. Nye Cnty. Sch. Dist.,* 2:10-CV-00749-KJD, 2011 WL 2938274, at *1 (D. Nev. July

19, 2011) ("*[p]ro se* litigants must follow the same rules of procedure that govern other

litigants.") (bracket in original). The *Gentile* court further explained that the Court may restrict a

litigant's speech outside of the courtroom as well. *Id.* The *Gentile* case was extended under

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) where the

United States Supreme Court held that a newspaper, which was a defendant to the action, "could

be restrained from publishing material about the plaintiffs and their supporters . . ." *Id.,* 467 U.S.

at 32, 104 S. Ct. at 2207 ("an order prohibiting dissemination of discovered information before

trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny.").

In *Katz v. Steyn*, 218CV00997JADGWF, 2019 WL 13211070, at *2 (D. Nev. Mar. 25,

2019), which is analogous to this matter, the court enjoined the defendant from using audiovisual

recording during discovery, including any case materials on his online blogs, and restricting the

public dissemination "on the internet or otherwise" of the ongoing action, among other

restrictions. *Id*. Unlike the current case, however, the *Katz* defendant was not involved in

systematic harassment and threats of violence against the litigants and their counsel.

Nonetheless, the court recognized that numerous courts prohibit the creation of videos or online

content regarding the court proceedings, applying the restriction to *pro se* litigant. *Id*. (collecting

cases). The *Katz* court recognized that "[t]here is a stronger basis for the issuance of a protective

order if a party or person seeks to use discovery materials for private commercial gain." *Id*., 2019

WL 13211070, at *5. Similar to *Katz*, Plaintiff is using his platforms to harass and threaten

litigants and their counsel for commercial gain.

The Court entered substantial findings regarding Plaintiff's harassing and threatening conduct toward BOC and its counsel, warranting protection. Under well-established Supreme Court case-law, this Court may restrict Plaintiff's dissemination of private and discovery information. Moreover, it is well established this Court may enjoin Plaintiff from engaging in criminal acts, such as harassing and threatening conduct, against the litigants and their counsel. The Amended TRO does just that: It prevents Plaintiff from continuing to engage in criminal, harassing, and threatening acts against the litigants. As explained in *Gentile*, *Planned Parenthood*, and *Katz*, Plaintiff may be restrained by this Court for engaging in the abusive and vexatious litigation tactics outlined by the Court in the Amended TRO.

**4.   The Court Narrowly Tailored the Amended TRO to Address Plaintiff's Course of Conduct**

The final *Molski* prong requires that the order be narrowly tailored to Plaintiff's wrongful behavior. *Id.* 500 F.3d at 1061. The Amended TRO prohibits Plaintiff from engaging in a "course of conduct" such as threatening and harassing litigants and their counsel based on Plaintiff's prior conduct. *United States v. Osinger,* 753 F.3d 939, 944 (9th Cir. 2014) ("Thus, the proscribed acts are tethered to the underlying criminal conduct and not to speech"). The Amended TRO has boundaries and is closely fit to the specific vice encountered. Thus, the Amended TRO is narrowly tailored and satisfies the final *Molski* standard.

**C.   Plaintiff's Motion Does Not Establish any Reasons Justifying Relief**

Plaintiff contends that enforcement of TRO [Doc. No. 186] should be dissolved or stayed because (1) it constitutes prior restraint without evidentiary support, (2) the discovery requirements constitute  a punishment, (3) the Court ignored a procedural protection relating to a different rule that only applies to the litigants (referencing FRCP 11(c)(2)), (4) denial of due process at a hearing despite notice and an opportunity to be heard (addressed *supra*), and (5) the baseless and inflammatory accusation that Judge Traum violated her judicial canons under 28 U.S.C. § 455. Thus, it appears that Plaintiff is proceeding under Rule 60(b)(1) and (6).

/ / /

/ / /

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**Gordon Rees Scully Mansukhani LLP**
300 S. 4ᵗʰ Street, Suite 1550
Las Vegas, Nevada 89101

### 1.    Plaintiff's Restraint Argument Does Not Warrant Reconsideration

To begin, none of the authorities cited by Plaintiff apply to BOC because BOC is not a state actor. *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835 (9th Cir. 1999) ("When addressing whether a private party acted under color of law, we therefore start with the presumption that private conduct does not constitute governmental action."). For this reason alone, Plaintiff's Motion should be denied.

Furthermore, Plaintiff has not addressed any of the cases directly related to the Amended TRO, such as *Gentile*, *Planned Parenthood*, *Katz*, and *Osinger* (*supra*), but instead continues to address issues that have no bearing on the issue. Specifically, Plaintiff contends that the TRO constitutes prior restraint without any evidentiary support. [Doc. No. 188, at 2]. But this is an argument that Plaintiff could have raised at any time prior to the issuance of the TRO. Plaintiff does not contend that there is new evidence or a change in the legal standards that would support his position. Instead, he contends that an Amended TRO prohibiting him from harassing and threatening BOC or its legal counsel violates three cases: (a) *Near v. Minnesota*, 283 U.S. 697, 731 (1931); (b) *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969) (*per curiam*); and (c) *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1970). [Doc. No. 188, at 2]. Plaintiff also alleges, without any legal support, that the Amended TRO is somehow unconstitutional because it was entered "without sworn affidavits or live testimony proving any imminent threat."[3] [Doc. No. 188, at 2]. None of these arguments are supported by law or the facts in this matter.

Plaintiff misunderstands and therefore misapplies the holding in *Near,* which could not be farther from the facts and issues in this case. Plaintiff contends that *Near* broadly stands for the proposition that he may abuse the liberty of the press without any restraint from the Court. [Doc. No. 188, at 2]. This is not what *Near* is about and issuing a TRO is not a "prior restraint" under the *Near* analysis. In *Near*, Minnesota governor, Floyd Olson, filed a complaint against Near under Minnesota's public nuisance law, which allowed the issuance of a permanent injunction of newspapers that were determined to be malicious, scandalous, or defamatory. *Id,*

---

[3] This contention was previously addressed in Sections II(A) and III(A).

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1   283 U.S. at 723. The TRO in this matter is not a permanent injunction, does not extend to entire

2   periodicals, and does not arise out of Minnesota's public nuisance laws. [Doc. No. 186].

3       Plaintiff's reliance on *Near* is further mislaid for two reasons, both derived from the very

4   language upon which Plaintiff relies, which states "The fact that the liberty of the press **may be**

5   abused…does not make any less necessary the immunity from previous restraints." [Doc. No.

6   188, at 2:18-20] (emphasis added).

7       First, Plaintiff does not provide a full and accurate quote from *Near*, which, in its

8   entirety, states as follows:

9           The fact that the liberty of the press may be abused by miscreant
            purveyors of scandal does not make any the less necessary the
10          immunity of the press from previous restraint in dealing with
            official [*sic*] misconduct. ***Subsequent punishment for such abuses***
11          ***as may exist is the appropriate remedy, consistent with***
            ***constitutional privilege.***
12

13  *Id.*, 283 U.S. at 720 (emphasis added). The language in *Near* shows that the Court may, as it has

14  done here, issue protections against those whom the press targets and abuses. More, as

15  previously discussed, the Court's Amended TRO is balanced with constitutional privileges and

16  narrowly tailored to address Plaintiff's course and conduct rather than restricting all speech or

17  press-related-activities. Thus, *Near* supports the Court's Amended TRO.

18      Second, Plaintiff is not targeted by a statutory provision effectuating future restraint on

19  possible actions: Plaintiff is being restrained as a direct result from the harmful and egregious

20  acts he has committed, and continues to commit, against BOC and its legal counsel. [Doc. No.

21  203-32].

22      Plaintiff envisions himself to be on equal footing as the klu klux klan leader addressed by

23  the *Brandenburg* court who almost, but not quite, "directed his speech to incite or produce

24  imminent lawless action that is likely to incite or produce such action." *Brandenburg,* 395 U.S.

25  at 447. *Brandenburg*, like *Near*, addresses enacted law that was overly broad to the point that it

26  restrained prior speech before a word was spoken. In *Brandenburg*, a klu klux klan leader was

27  criminally prosecuted under Ohio's criminal syndicalism statute for his participation in a hate-

28  rally and a speech he made while there. As clearly stated by the *Brandenburg* court, its ruling

applies to State-enacted provisions restricting speech. *Id.*, 395 U.S. at 448 ("A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments."). The TRO in this matter is not a criminal statute enacted by the State of Nevada, does not extend to all speech, and does not result in a criminal conviction.

Plaintiff is not on trial for criminal activity, thus, the holdings under *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1970) are inapplicable. In that case, the trial court entered an order restraining news media from publishing or broadcasting accounts of confessions or admissions made by the defendant. *Id.*, 427 U.S. at 543. The *Stuart* court was tasked with balancing the defendant's constitutional rights to a fair trial and previous holdings from the United States Supreme Court. In reaching this balance, the United States Supreme Court found that the trial court had not explored alternatives, such as postponement of trial or a change of venue, before restraining the press. *Id.*, 427 U.S. at 563. Nothing in *Stuart* allows a party to use their platform to render threats or harass opposing parties and their counsel. In short, nothing in the cases addressed by Plaintiff support reconsideration of the Amended TRO.

### 2. The Discovery Requirements Arise from Rule 26 and Are Not Punitive in Nature

Plaintiff contends that the Court entered a punitive discovery order against him by requiring him to compile of log of videos referencing counsel between September 1, 2025, and November 13, 2025. [Doc. No. 186]. To support this position, Plaintiff cites to *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) and Rule 26. Nothing in *Wooley* addresses punitive discovery or contempt orders.

As to Rule 26, the Court has broad latitude to "to control discovery matters." *Am. Fed'n of Gov't Employees, AFL-CIO v. Trump,* 155 F.4th 1082, 1093 (9th Cir. 2025). Similarly, the Court is entitled to control its own docket and adherence to the orders that it issues. *Hoffman v. Screen Actors Guild-Producers Pension Plan,* 851 Fed. Appx. 693, 696 (9th Cir. 2021) ("the district court has broad latitude to control its docket").

Plaintiff is required to compile the information within his possession, custody, and control because he is the one who created and uploaded this information. Plaintiff has not

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1    demonstrated how it is an undue burden for him to search his own records for documents

2    relevant to a lawsuit that he filed. *Wilcox v. Portfolio Recovery Associates, LLC,*

3    220CV01545JADNJK, 2023 WL 4025899, at *2 (D. Nev. June 15, 2023) ("Plaintiffs initiated

4    this case and, consequently, exposed themselves to the discovery process.").[4] At most, Plaintiff

5    claims "mere showing that the discovery may involve some inconvenience or expense" which

6    "does not suffice to establish good cause" for a protective order from complying with the

7    discovery requirements. *U.S. E.E.O.C. v. Caesars Entm't, Inc.,* 237 F.R.D. 428, 432 (D. Nev.

8    2006). In sum, Plaintiff has not supported his "disproportionate" argument with any facts or law

9    that would support waiving the Court's nominal discovery requirement. At most, he has alleged

10    that the discovery requirements are a "mere inconvenience." Thus, reconsideration of the

11    Amended TRO is not warranted.

12        **3.**    <u>**The Court is Not Bound by the Safe Harbor Requirements in Rule 11, and**</u>
13    <u>**the TRO Was not Issued Under Rule 11**</u>

14          This Court may, on its own initiative, order a litigant to show cause as to why his conduct

15    does not violate Rule 11(b). Rule 11(c)(3). None of these provisions require the Court to provide

16    Plaintiff with a twenty-one day safe-harbor before issuing a sanction. *Compare* Rule 11(c)(2)

17    *with* Rule 11(c)(3). Even the case Plaintiff cites, *Radcliffe v. Rainbow Const. Co.,* 254 F.3d 772,

18    788 (9th Cir. 2001), references only ***the parties*** and not the court. *Id.* ("Rule 11(c)(1)(A)

19    provides strict procedural requirements ***for parties to follow*** when they move for sanctions under

20    Rule 11.") (emphasis added). Thus, Plaintiff's contention that the Court violated a provision that

21    does not bind it is without merit and reconsideration is not warranted.

22        **4.**    <u>**Plaintiff Misapplies Nevada's Anti-SLAPP Provisions, Which are Not**</u>
23    <u>**Binding on the Federal Court Under the *Erie* Doctrine**</u>

24          Plaintiff contends BOC was required to overcome his anti-SLAPP motion by clear and

25    convincing evidence and an automatic stay is warranted. [Doc. No. 188]. Even if Nevada's anti-

26

27    _____

28    [4] Alternatively, if the Court orders BOC to mirror Plaintiff's hard drive and conduct parallel
discovery efforts on his behalf, then Plaintiff should be required to pay the cost and fees related
to this effort. Rule 26(b)(1)(B).

SLAPP provisions applied to motions (which they do not),[5] neither of Plaintiff's positions are supported by relevant law: Nevada does not require clear and convincing evidence under any of the anti-SLAPP prongs, and federal courts have repeatedly found that the automatic stay under Nevada's discovery provisions directly conflict with federal procedural statutes, and thus, are inapplicable.  ]." *Panik v. TMM, Inc.,* 139 Nev. 526, 530, 538 P.3d 1149, 1153 (2023) (anti-SLAPP requires a prima facie showing of evidence of probability). The Court is not required to reconsider its previous order to apply incorrect legal standards.

The federal courts have consistently rejected anti-SLAPP provisions that conflict with federal procedural statutes. In *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001), the Ninth Circuit held that California's statute which allowed an anti-SLAPP motion to stay discovery "directly collide[s]" with FRCP 56(f), and thus, the "discovery-limiting aspects" of State anti-SLAPP statutes do not apply in federal court. *Id.*; *see e.g., Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817 (1938) (federal courts are to apply state substantive law and federal procedural law).

The Ninth Circuit of Appeals recently held that orders denying a special motion to strike under State's anti-SLAPP statute are not immediately appealable. *Gopher Media LLC v. Melone,* 154 F.4th 696, 704 (9th Cir. 2025). Despite State laws requiring immediate interlocutory appeal, *Gopher Media* court held that "It remains that the collateral order doctrine does not extend to denials of anti-SLAPP motions under the California statute. . . ." *Gopher Media,* 154 F.4th at 704; NRS 41.670(4). Thus, as held in *Gopher Media*, Plaintiff does not have an immediate right to an interlocutory appeal for the denial of an anti-SLAPP motion.

**5.    <u>Judge Traum Was and Is an Impartial Judicial Officer</u>**

An objective observer would not be compelled to conclude that Judge Traum's impartiality can be questions. *Cheney v. U.S. Dist. Court for D.C.,* 541 U.S. 913, 914, 124 S. Ct. 1391, 1392, 158 L. Ed. 2d 225 (2004) ("The decision whether a judge's impartiality can

---

[5] Under NRS 41.660, anti-SLAPP applies only to pleadings, such as complaints, which are defined as an "action brought against a person" and include, "without limitation, a counterclaim or cross-claim." NRS 41.660(7)(a).

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported."). And Plaintiff's "intemperate and scurrilous attack on a presiding judge" is not grounds for recusal. *In re Martin-Trigona,* 573 F. Supp. 1237, 1243 (D. Conn. 1983). The totality of the circumstances represent nothing less than a fair and impartial order issued by Judge Traum and her purported remarks would not be grounds for disqualification (even if they were supported by any transcript or minutes in the record).

### 6.    Plaintiff's Stay or Injunction Request is Not Warranted

Plaintiff requests a stay under Rule 62, which is actually a request for an injunction. [Doc. No. 188]. Neither request is warranted. As addressed above, Plaintiff does not have a likelihood of success on his claims and he is not irreparably harmed because he is restrained from engaging in a harassing, vexatious, or threatening course of conduct. Plaintiff's reference to evidence in his YouTube video belies his contention that BOC did not produce any evidence of harm or danger. *Compare* [Doc. No. 203-32 *with* Doc No. 188]. There is no public interest in allowing Plaintiff to engage in a harassing, vexatious, or threatening course of conduct. Finally, Plaintiff has not filed an appeal. And, even if he did, Plaintiff has not justified why an appeal is required under the law. *Big City Dynasty Corp. v. FP Holdings, L.P.,* 2021 WL 3550301, at *1 (D. Nev. July 21, 2021) (outlining a three-part test under which Plaintiff bears the burden of proof). In short, neither an appeal nor an injunction is warranted and Plaintiff's Motion should be denied.

### D.    Sanctions in the Form of Attorney's Fees are Appropriate

Under LR 59-1(b), the Court may issue sanctions against Plaintiff for repeating arguments and failing to explain controlling intervening law or arguing new facts. *Id.*; 28 U.S.C. § 1927 (allowing sanctions for unreasonable and vexatious multiplication of proceedings); *Mayorga v. Ronaldo,* 656 F. Supp. 3d 1218, 1226 (D. Nev. 2023) (granting sanctions as to the bad faith conduct of unreasonably multiplying proceedings). Nothing in Plaintiff's Motion meets the federal standards for motion practice or reconsideration. Sanctions in the amount of BOC's attorney's fees in responding to the Motion are appropriate.

/ / /

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

# V.    CONCLUSION

For these reasons, Plaintiff's Motion [Doc. No. 188] and Plaintiff should be sanctioned in the amount of attorney's fees  BOC expended in responding to his meritless Motion.

Dated: November 26, 2025                             Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By:  /s/ *Rachel L. Wise*
CRAIG J. MARIAM, ESQ.
Nevada Bar No. 10926
RACHEL L. WISE, ESQ.
Nevada Bar No. 12303
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

***Attorneys for Defendant Build Our Center Inc.***

-17-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to FRCP 5(b), I certify that on this date, I deposited for mailing in the U.S.

Postal Service, with postage fully prepaid, a true and correct copy of the foregoing document in

an envelope addressed to the following:

DREW RIBAR
3480 PERSHING LANE
WASHOE VALLEY, NV 89704

I also certify that on this date, the foregoing was electronically filed with the United

States District Court.  Electronic service of the foregoing document shall be made in accordance

with the Master Service List.

Dated: November 26, 2025

*/s/ Angel Christian*
Angel Christian

-18-