UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DREW J. RIBAR,

                              Plaintiff,

        v.

WASHOE COUNTY, et al.,

                              Defendants.

Case No. 3:24-cv-00526-ART-CSD

ORDER

*Pro se* Plaintiff Drew Ribar sued Defendants Washoe County, Washoe County Library System ("WCLS"), Deputy "Rothkin" (Rothgeb), Deputy Sagida, and Sergeant Gomez, Jeff Scott, Stacy McKenzie, Jonnica Bowen, Jennifer Cole ("County Defendants"), as well as Reno's Build Our Center ("BOC") LGBTQ+ Center, alleging various constitutional and state law violations. (ECF No. 65-1.) Before the Court are County Defendants' Motions to Dismiss (ECF Nos. 105, 107, 109, 111), BOC's Motion to Dismiss (ECF No 126), and Mr. Ribar's Motion for Leave to File Second Amended Complaint. (ECF No. 167.) As detailed below, the Court dismisses all causes of action, both granting and denying leave to amend, and denies the motion for leave to file an amended complaint detailing additional events.

I.    **BACKGROUND**

The following allegations are adapted from Mr. Ribar's First Amended Complaint ("FAC"), which contains only sparse and vague factual allegations. (ECF No. 65-1.)

Mr. Ribar, a self-described journalist, operates the YouTube channel "Auditing Reno 911." (*Id.* at 3.) In June 2023, Mr. Ribar attempted to attend and film a Drag Queen Story Hour ("DQSH") for parents and their children held at the Downtown Reno Library, a branch of WCLS. (*Id.* at 6.) According to Mr. Ribar,

BOC and Jeff Scott, WCLS Library Director, prevented him from attending and filming this event. (ECF No. 65-1 at 6.)

One month later, Mr. Ribar attended RainbowFest at the Sparks Library, where he alleges that Mr. Scott assaulted and trespassed him. (*Id.*) A year later, Mr. Ribar again attended RainbowFest, this time at the North Valleys Library. (*Id.*) He was also allegedly trespassed from this event. (*Id.*)

These events led to WCLS imposing a year-long suspension from all WCLS branches on June 20, 2024. (ECF No. 65-1 at 7.) Mr. Ribar twice appealed his suspension from WCLS branches. (*Id.*) His second appeal was denied at a Library Board of Trustees ("LBOT") meeting. (*Id.*)

After his suspension, Mr. Ribar entered the South Valleys Library, a branch of WCLS. (*Id.*) While there, Mr. Ribar alleges that Deputies "Rothkin" (Rothgeb), Deputy Sapida, and Sgt. Gomez ("WCSO Defendants") "detained him without suspicion, enforcing a baseless trespass claim." (*Id.*)

Mr. Ribar alleges fourteen causes of action: (1) violation of the First Amendment; (2) violation of the Fourth Amendment; (3) violation of the Fourteenth Amendment's Due Process Clause; (4) violation of the Fourteenth Amendment's Equal Protection Clause; (5) *Monell* liability under 42 U.S.C. § 1983; (6) 42 U.S.C. § 1983 conspiracy; (7) conspiracy to violate civil rights under 42 U.S.C § 1985(3); (8) violation of Article 1, §§ 9, 10 of the Nevada Constitution; (9) denial of public library access under NRS 379.040; (10) assault and battery; (11) intentional infliction of emotional distress; (12) defamation; (13) negligent supervision; and (14) violation of NRS 241.035, Nevada's Open Meeting law.

## II.    DISCUSSION

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fᴇᴅ. R. Cɪᴠ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require "detailed factual allegations," it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To sufficiently allege a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Similarly, "bare assertions" in a complaint amounting "to nothing more than a 'formulaic recitation of the elements'" of a claim are not entitled to an assumption of truth. *Iqbal,* 556 U.S. at 680–81 (quoting *Twombly*, 550 U.S. at 555). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal,* 556 U.S. at 678).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). In accordance with Rule 15(a), the court should freely give leave to

amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**A. The Court will not rely on exhibits in lieu of factual allegations.**

The FAC alleges fourteen claims, typically containing only one sentence per claim,[1] and cites extensively to 32 exhibits attached to his FAC. Although Defendants object to artificial intelligence (AI) generated transcripts, they do not otherwise contest the authenticity of the exhibits, which they cite at length. (*See* ECF Nos. 107, 109, 111, 126.) Defendants request that the Court judicially notice the exhibits attached to the FAC, as well as WCLS policies and communications with Mr. Ribar, without converting the motion to dismiss to a motion for summary judgment. (*See id.*) Although the Court judicially notices the exhibits (except the AI generated transcripts), it declines to rely on them in lieu of allegations or make any findings at this stage.

A court may take judicial notice of documents attached to or incorporated into a complaint without converting a motion to dismiss into a motion for summary judgment. *U.S. v. Ritchie,* 342 F.3d 903, 907–08 (9th Cir. 2003). Similarly, a court may "consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Judicial notice may be taken of facts "not subject to reasonable dispute"

---

[1] For example, the FAC's Equal Protection claim alleges in its entirety that "Defendants selectively enforced policies against Plaintiff while favoring DQSH supporters (Exhibits 1-14, 27-30), violating Village of Willowbrook v. Olech, 528 U.S. 562 (2000)."

because the facts are either (1) "generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While a court may take judicial notice of matters of public record, a court "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

The Court thus judicially notices all exhibits, except the AI-generated transcripts, but declines to take judicial notice of all exhibits from Defendants' previous summary judgment motion. Facts are subject to judicial notice only if they are "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). While the WCLS and Washoe County policies are widely available and verifiably accurate,[2] Defendants have not affirmatively demonstrated that the emails and other internal records (ECF Nos. 109 at 6, 111 at 3) contain information that can be readily confirmed by indisputably accurate sources. Thus, the Court judicially notices only the WCLS policies, and not the other exhibits from Defendants' prior summary judgment motion.

The Court, though judicially noticing the exhibits, will not sift through exhibits to identify factual support for Plaintiff's allegations. *See Woods v. Health Care Specialty Servs.*, No. 22-CV-1055-MMA (AGS), 2022 WL 17419360, at *6 (S.D. Cal. Dec. 5, 2022) ("Plaintiff is cautioned not to simply attach and reference exhibits as a substitute for presenting factual allegations in the body of the amended complaint."); *Stewart v. Nevada*, No. 2:09-cv-1063, 2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011) ("The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the

---

[2] These include WCLS's Code of Conduct Policy, WCLS's Adult Use of Youth Patron Areas Policy, WCLS's Suspension Policy, and Washoe County and WCLS's social media policies. (*See* ECF Nos. 109 at 6, 111 at 3.)

pleading itself does not state a claim. In short, [Plaintiff] must state a claim, not merely attach exhibits."). In any amended complaint, Mr. Ribar must include factual allegations in the body of the complaint, clearly identifying what each individual defendant did that violated his rights, and refrain from simply attaching voluminous exhibits.

### A. Dismissal of the Library and Claim XIV

WCLS filed a separate motion to dismiss, arguing that it should be dismissed with prejudice because WCLS is "not a political subdivision of the State of Nevada subject to suit." (ECF No. 105 at 2.) WCLS also argues that Mr. Ribar's Open Meeting Law claim under NRS 241.037(3)(a) is time-barred. (ECF No. 105 at 3.) Mr. Ribar does not oppose dismissal of WCLS or his Open Meeting Law claim, and so the Court grants WCLS's motion to dismiss with prejudice.

In his response to WCLS's Motion to Dismiss, Mr. Ribar requests that the Court construe all claims against WCLS as claims against Washoe County. (ECF No. 113 at 2–3.) Mr. Ribar may not amend the complaint in this manner. To add claims against Washoe County, Mr. Ribar must file a motion to amend in conformity with Rule 15 of the Federal Rules of Civil Procedure and submit a proposed amended complaint. *See* FED. R. CIV. P. 15.

### B. Federal Law Claims

#### A. State Actor

The FAC alleges that BOC can be sued for constitutional violations because it is a "private entity acting under color of law with WCLS." (ECF No. 65-1 at 4.) BOC argues that the FAC's conclusory allegations do not establish that BOC is a state actor for purposes of the 42 U.S.C. § 1983 claims. (ECF No. 126.)

Generally, private parties do not act under color of state law. *See O'Handley v. Weber*, 62 F.4th 1145, 1155–56 (9th Cir. 2023) (stating that only in "exceptional cases" will a private entity be treated as a state actor for

constitutional purposes), *cert. denied*, 144 S. Ct. 2715 (2024). In analyzing state action, courts apply the two-step framework developed in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), asking, first, "whether the alleged constitutional violation was caused by the 'exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,'" and second, "whether 'the party charged with the deprivation [is] a person who may fairly be said to be a state actor.'" *O'Handley*, 62 F.4th at 1156 (quoting *Lugar*, 457 U.S. at 937).

To satisfy the state actor requirement, a private party must meet one of four tests: "(1) the public function test, (2) the state compulsion test, (3) the nexus test and (4) the joint action test." *O'Handley*, 62 F.4th at 1157. "These tests are interrelated, and they are designed to answer the same key question: whether the conduct of a private actor is fairly attributable to the State." *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1109 (9th Cir. 2022).

As an initial matter, the FAC fails to meet the "public function" test because it does not allege that BOC performed a function that is "traditionally and exclusively reserved to the state," such as running elections or operating a company town. *Prager Univ. v. Google LLC*, 951 F.3d 991, 997–98 (9th Cir. 2020). "This test is difficult to meet." *Id.* at 998. "It is 'not enough' that the relevant function is something that a government has "exercised . . . in the past, or still does' or 'that the function serves the public good or the public interest in some way.'" *Id.* (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019)).

The FAC fails to meet the "state compulsion" test. "Under the coercion test, the government must have exercised coercive power or . . . provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Children's Health Def. v. Meta Platforms, Inc.*, 112

7

1  F.4th 742, 759 (9th Cir. 2024) (citations and internal quotations omitted), *cert.*
2  *denied*, 145 S. Ct. 2846 (2025). The FAC alleges no facts that Washoe County
3  threatened or imposed incentives that "'essentially compel[led]'" BOC to "comply
4  with its requests," so it also fails to meet the "state compulsion" test. *Id.* (quoting
5  *O'Handley*, 62 F.4th at 1158).

6      The FAC also fails to meet the close nexus test. In determining whether
7  "there is a such a close nexus between the State and the challenged action that
8  the seemingly private behavior may be fairly treated as that of the State itself,"
9  the Court looks at whether "(1) the organization is mostly comprised of state
10  institutions; (2) state officials dominate decision making of the organization; (3)
11  the organization's funds are largely generated by the state institutions; and (4)
12  the organization is acting in lieu of a traditional state actor." *Villegas v. Gilroy*
13  *Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008). The FAC fails to allege
14  that BOC possesses any of these attributes. (*See* ECF No. 65-1.)

15      To allege joint action, a plaintiff must allege that the private entity's
16  particular actions are "inextricably linked with those of the government" because
17  the government "has so far insinuated itself into a position of interdependence
18  with the private entity." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d
19  1161, 1167 (9th Cir. 2021) (citations and internal quotations omitted). Plaintiff
20  must allege facts reflecting there was an understanding between the private entity
21  and the government. *Children's Health*, 112 F.4th at 755–56. "The generalized
22  allegation of a wink and nod understanding . . . does not amount to an agreement
23  or conspiracy to violate [the plaintiff's] rights in particular." *Id.* (citations omitted).

24      The FAC fails to allege joint action between BOC and County Defendants.
25  The FAC contains a few conclusory allegations regarding BOC's role as a state
26  actor. (ECF No. 65-1 at 5–6.) These vague allegations seem to derive from BOC's
27  participation in WCLS Pride events, but do not give rise to a plausible inference

28

that County Defendants and BOC were heavily entwined. *See O'Handley,* 62 F.4th at 1160–61 (finding that the joint action test is "intentionally demanding and required a high degree of cooperation between private parties and state officials"). Furthermore, none of the FAC's allegations evidence any agreement or conspiracy to specifically violate Mr. Ribar's rights, as required by the joint action test. The Court therefore concludes that the FAC has not satisfied the joint action test.

Because the FAC has not adequately alleged that BOC is a state actor, the Court dismisses all federal constitutional claims against BOC without prejudice. As a result, the Court only discusses whether BOC is a state actor and declines to analyze whether the FAC has adequately stated Section 1983 claims against BOC.

### B. Claim I: First Amendment

The FAC alleges that all defendants "blocked him from WCLS social media," "excluded him from libraries," and "censored Plaintiff's speech" in violation of his First Amendment rights.  (ECF No. 65-1 at 7.) These First Amendment allegations are barebones and conclusory.

To succeed on its First Amendment claims, the FAC must allege that Defendants (1) acted under color of state law and (2) violated Mr. Ribar's First Amendment rights. 42 U.S.C. § 1983. The FAC must also allege facts from which it may reasonably be inferred that each defendant performed an affirmative act, participated in another's affirmative acts, or failed to perform an act that they were legally required to do, and that such conduct caused a constitutional violation. *See Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988) (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

To state a claim based upon a First Amendment violation, the FAC must allege that: (1) the plaintiff was "engaged in a constitutionally protected activity,

(2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendants' conduct." *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 398 (N.D. Cal. 2021) (citing *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817, 827 (9th Cir. 2020) *and Pinard v. Clatskanie Sch. Dist.,* 467 F.3d 755, 770 (9th Cir. 2006)).

As an initial matter, Defendants do not dispute that they acted under color of state law. (*See* ECF No. 107, 111.) The FAC, however, does not adequately allege causation as to each individual defendant for any of the First Amendment claims. Specifically, the FAC fails to identify the specific actions that each defendant took against Mr. Ribar that form the basis of his First Amendment claims. (*See* ECF No. 65-1.)

Furthermore, although the FAC contains a number of vague factual allegations, it does not connect those factual allegations to each asserted constitutional violation. (*See* ECF No. 65-1.) Any amended complaint must set forth the specific factual circumstances underlying each First Amendment claim so that the Court may reasonably infer that each individual defendant's actions would chill a person of ordinary firmness from engaging in the protected First Amendment activity, and that the protected activity was a motivating factor in that defendant's conduct.

Because Claim I fails to specifically link any of the individual defendant's actions to the First Amendment claims based on social media blocking, library exclusion, or censorship, it fails to state a cognizable claim. Accordingly, Claim I is dismissed without prejudice, and with leave to amend.

### C. Claim II: Fourth Amendment

The FAC next brings a Fourth Amendment claim, alleging only that Mr. Scott and the WCSO Defendants "assaulted Plaintiff" and "detained him without suspicion." (ECF No. 65-1 at 7.) Such allegations are conclusory.

The Court construes these barebones allegations as a Fourth Amendment claim for unlawful seizure and excessive force. *Terry v. Ohio*, 392 U.S. 1, 8–10 (1968). "For purposes of the Fourth Amendment, a seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen" such that "a reasonable person would have believed that he was not free to leave." *U.S. v. Summers*, 268 F.3d 683, 686 (9th Cir. 2001) (citation omitted).

To state a Fourth Amendment excessive force claim, a plaintiff must allege (1) that a seizure occurred, and (2) that excessive force was used to seize the plaintiff. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989). "[W]hether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations and internal quotations omitted.)

The FAC fails to set forth the factual circumstances surrounding the alleged unlawful seizure or use of excessive force. The FAC merely asserts that WCSO Defendants "detained Plaintiff without suspicion" and does not state any facts regarding the circumstances of the detainment, including how each WCSO Defendant was individually involved. (*See* ECF No. 65-1.) The FAC also fails to allege why WCSO Defendants lacked suspicion to detain Mr. Ribar, or why he did not feel free to leave. *See e.g., Smith v. Cnty. of Santa Cruz,* No. 13-CV-00595 LHK, 2014 WL 3615492, at *7 (N.D. Cal. July 22, 2014) ("Plaintiff is required to plead

facts sufficient for the Court to conclude that it is plausible, as opposed to merely possible, that there was no probable cause or reasonable suspicion [for the arresting officers] to detain Plaintiff . . . .") (citation and internal quotations omitted). The FAC also does not allege that WCSO Defendants used any force, let alone excessive force. (ECF No. 65-1.)

While Claim II additionally alleges that Mr. Scott "assaulted Plaintiff" and "detained him without suspicion," it does not describe the factual circumstances surrounding any unlawful seizure or use of excessive force by Mr. Scott. (ECF No. 65-1 at 7.) The FAC does not explain what led to any incident with Mr. Scott, such as what conduct Mr. Ribar was engaged in prior to any unlawful seizure or use of excessive force. *See e.g., Mayberry v. Los Angeles Sheriff's Dep't*, No. 220-CV-00224-JLS-JDE, 2021 WL 5236170, at * 8–9 (C.D. Cal. Oct. 8, 2021) (dismissing claims where plaintiff did not allege sufficient facts and circumstances regarding alleged use of excessive force), *report and recommendation adopted*, No. 220-CV-00224-JLS-JDE, 2021 WL 5234400 (C.D. Cal. Nov. 10, 2021).

Because these conclusory allegations do not put WCSO Defendants or Mr. Scott on notice of their alleged individual conduct, the Court dismisses the Fourth Amendment claims without prejudice, and with leave to amend.

### D. Claim III: Procedural Due Process

Claim III alleges violations of procedural due process, namely that Mr. Scott, Ms. Mckenzie, Assistant Library Director, and Ms. Bowen, North Valleys Library Branch Manager, ("WCLS Defendants") "imposed suspensions [from WCLS libraries] without notice or hearing" and "falsified records." (ECF No. 65-1 at 7–8.) This claim is wholly conclusory.

To state a procedural due process claim, a plaintiff must allege facts to plausibly show both (1) deprivation of a constitutionally protected interest, and

(2) a denial of adequate procedural protections. *Brewster v. Bd. Of Educ. Of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998.) If afforded due process, a person may be constitutionally deprived of a liberty interest. *Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 716 (9th Cir. 2011).

As it relates to the first element, some courts have recognized a protected liberty interest in accessing public libraries, particularly if that suspension lasts more than a week. *See Heuvel v. Dorothy*, No. 2:21-cv-2176-TLN-CKD PS, 2022 WL 4055512, at *4 (E.D. Cal. Sept. 2, 2022) (finding plaintiff's claim based on month-long suspension from all libraries within county was sufficient for screening purposes); *Wayfield v. Town of Tisbury*, 925 F. Supp. 880, 885 (D. Mass. 1996) (finding that plaintiff "state[d] a sufficient claim to support a finding that the [four-month] suspension of his access to the library was a deprivation of a 'liberty or property right.'")

To determine what amount of process is due before a government actor may deprive a citizen of liberty or property, courts balance three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Here, Mr. Ribar was banned from all WCLS branches for one year. (ECF No. 65-1 at 7.) This ban may implicate a protected liberty interest, but the Court does not need to decide the matter at this time, because the FAC has not sufficiently alleged that Mr. Scott, Ms. Bowen, or Ms. McKenzie were involved in any denial of adequate procedural protections.

In order to proceed with a procedural due process claim against any of the three named defendants, the FAC will need to clarify how each defendant personally contributed to the constitutional violated asserted. The FAC advances entirely conclusive allegations against Mr. Scott, Ms. McKenzie, and Ms. Bowen, stating only that Mr. Scott was "involved in [] suspensions, Ms. McKenzie "enforced unlawful restrictions," and Ms. Bowen "issued trespass orders." (ECF No. 65-1 at 4–5.)

Mr. Ribar also asserts a violation of procedural due process, alleging "Defendants . . . falsified records." (ECF No. 65-1 at 8.) He does not allege who allegedly falsified the LBOT meeting minutes, which are a summary of public comments at a LBOT meeting, nor does he allege how falsification implicates his procedural due process rights. (*See* ECF Nos. 65-1.)

Thus, because Claim III has not alleged how the three named defendants were involved in any denial of adequate due process, the Court dismisses this claim without prejudice, and with leave to amend.

### E. Claim IV: Equal Protection

The FAC brings an equal protection claim against all defendants, alleging that Defendants "selectively enforced policies against Plaintiff while favoring DQSH supporters." (ECF No. 65-1 at 8.) Defendants argue that the FAC has not adequately alleged that Mr. Ribar was treated differently from any other person. (ECF Nos. 107 at 9–10, 109 at 10, 111 at 18.)

Because the equal protection claim is premised on unique treatment, rather than on a suspect classification, the FAC brings a "class of one" claim. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). To claim a violation of equal protection in a class of one case, the FAC must establish that each state actor intentionally treated the plaintiff "differently from others similarly situated and

that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564. A class of one plaintiff "must be similarly situated to the proposed comparator in all material aspects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).

Claim IV, which is a single sentence long, does not allege how Mr. Ribar was treated differently from DQSH supporters, nor does it allege that DQSH supporters were similarly situated. (ECF No. 65-1 at 8.) Claim IV also does not allege that any differential treatment was without a rational basis. (*Id.*) Simply put, the FAC's allegations are too vague and conclusory to sufficiently plead a violation of the Fourteenth Amendment's Equal Protection clause under a "class of one" theory. Claim IV cites 18 voluminous exhibits in support, however, the Court will not comb through his exhibits to find factual allegations for his claims. *See, e.g., Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 n.1 (9th Cir. 2008) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

The Court therefore finds that the FAC has failed to adequately allege an equal protection claim but grants Mr. Ribar leave to amend his complaint.

### F. Claim V: *Monell* Liability

The FAC also alleges that Washoe County is liable under *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978), for maintaining "policies of censorship and exclusion." (ECF No. 65-1 at 8.) To state a *Monell* claim, a plaintiff must allege a constitutional violation caused by a municipal policy, custom, or practice. *Monell*, 436 U.S. at 690–91; *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Defendants argue that the FAC is both too conclusory and fails to state a constitutional violation or municipal policy, custom, or practice. (ECF Nos. 107 at 11–12, 109 at 11–12, 111 at 19–20.) Having

1  found that the FAC fails to state a constitutional violation, the Court addresses

2  the municipal policy requirement.

3      Under *Monell,* a government entity may not be held liable under 42 U.S.C.

4  § 1983, "unless a policy, practice, or custom of the entity can be shown to be a

5  moving force behind a violation of constitutional rights." *Dougherty v. City of*

6  *Covina,* 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). In

7  particular, a municipal entity "may be liable under § 1983 for constitutional

8  injuries pursuant to (1) an official policy; (2) a pervasive policy or custom; (3) a

9  failure to train, supervise, or discipline; or (4) a decision or act by a final

10  policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th

11  Cir. 2019).

12      Claim V, which simply states that "Defendants maintained policies of

13  censorship and exclusion," is too conclusory to adequately state a custom or

14  policy for *Monell* liability. (ECF No. 65-1 at 8.) To satisfy the requirements of

15  *Monell*, the FAC must "identify the policy, connect the policy to the municipality

16  and show that [the] injury was incurred because of the execution of the policy."

17  *Gonzalez v. Las Vegas Metro. Police Dep't*, No. 2:12-CV-01247-LDG, 2014 WL

18  1091012, at *4 (D. Nev. Mar. 18, 2014) (citing *Garner v. Memphis Police Dep't.*, 8

19  F.3d 358, 364 (6th Cir. 1993)). The FAC includes no factual support showing that

20  any injury resulted from the execution of a Washoe County policy or custom, nor

21  does it describe the alleged policy or custom with any specificity. Though the FAC

22  cites all 32 exhibits to support this claim, the Court will not search through

23  exhibits to compile support for his claims.

24      The Court therefore dismisses the *Monell* claim with leave to amend.

25

26

27

28

16

1

### G. Claim VI: Conspiracy

Claim VI alleges that all "[d]efendants conspired to violate Plaintiff's rights through coordinated actions." (ECF No. 65-1 at 8.) Defendants argue that the FAC has not adequately alleged an underlying constitutional violation, as is required for a Section 1983 conspiracy claim. (ECF Nos. 107 at 10, 109 at 10, 111 at 18.)

"Conspiracy itself is not a constitutional tort under § 1983;" instead, there "must always be an underlying constitutional violation." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). To allege conspiracy in a § 1983 case, a plaintiff must plead specific facts to support the existence of an agreement or meeting of the minds to violate constitutional rights. *Id.*; *see also Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999). "[E]ach participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Lacey,* 693 F.3d at 935 (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999), *as amended on denial of reh'g* (July 15, 1999)). "A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." *Id.*

The bare-bones conspiracy claim in the FAC does not adequately state a plausible claim for relief under Section 1983. While Claim VI alleges that Defendants "conspired to violate Plaintiff's rights through coordinated actions," it does not provide any facts supporting the existence of any agreement or meeting of the minds to violate Mr. Ribar's constitutional rights. (ECF No. 65-1 at 8.) The FAC, similarly, does not identify any coordinated actions or circumstantial evidence that may assist the Court in inferring any defendant's knowledge of or participation in a conspiracy. *See e.g., Solomon v. Las Vegas Metro. Police Dep't,* 441 F. Supp. 3d 1090, 1100 (D. Nev. 2020) (dismissing conspiracy claim because

plaintiff did not plead specific facts showing that an agreement existed, "what it entailed, [and] what was each defendant's objective in the alleged conspiracy").

As a result, the conspiracy claim suffers from two deficiencies: the FAC fails to allege a violation of Mr. Ribar's constitutional rights, which is required to state a claim for Section 1983 conspiracy, and fails to adequately allege a conspiracy. Accordingly, the Court dismisses this claim without prejudice, and with leave to amend.

### H. Claim VII: Conspiracy to Violate Civil Rights

The FAC also alleges a 42 U.S.C. § 1985(3) claim, arguing that all Defendants "conspired to deprive Plaintiff of rights due to his viewpoint." (ECF No. 65-1 at 8.) Defendants argue that the FAC's § 1985(3) claim fails because there was no deprivation of rights, and because the FAC does not allege that any Defendants' actions were motivated by "racial or other protected class-based animus." (ECF Nos. 107 at 10–11, 109 at 11, 111 at 19.)

42 U.S.C. § 1985(3) "provides a cause of action if two or more persons," including at least one state actor, "conspire to deprive an individual of his constitutional rights." *Pasadena Republican Club,* 985 F.3d at 1171. "To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)); *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

"The language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously

18

1    discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102;

2    *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).

3    The Ninth Circuit has extended § 1985(3) "beyond race only when the class in

4    question can show that there has been a governmental determination that its

5    members require and warrant special federal assistance in protecting their civil

6    rights." *Sever*, 978 F.2d at 1536 (citations and internal quotations omitted).

7         Claim VII fails to adequately allege facts that support the allegation that

8    Defendants conspired together. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d

9    621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual

10   specificity is insufficient."). The FAC similarly fails to allege that any defendant

11   acted with any racial or other protected class-based animus, nor does it allege

12   the rights of which Mr. Ribar was deprived. Because Claim VII consists of a wholly

13   conclusory and vague allegation, the Court dismisses Claim VII with leave to

14   amend.

15           **I. Qualified Immunity**

16        Individual Defendants also argue in their motions to dismiss that they are

17   entitled to qualified immunity. (ECF Nos. 107 at 12–13, 109 at 12–13, 111 at 7,

18   11, 14, 17.) These include WCLS employees who are alleged to have violated Mr.

19   Ribar's First Amendment, Fourth Amendment, and Fourteenth Amendment Due

20   Process rights and law enforcement officers (WCSO Defendants) alleged to have

21   violated Mr. Ribar's First Amendment, Fourth Amendment, and Fourteenth

22   Amendment Equal Protection rights (Claims I, II, IV). (*Id.*) These Defendants are

23   also alleged to have violated Mr. Ribar's rights through participation in a

24   conspiracy (Claims VI and VII). (*Id.*)

25        To dismiss a complaint for failure to state a claim based on a qualified

26   immunity defense, the Court considers whether the FAC alleges sufficient facts,

27   taken as true, to support the claim that "Defendants' conduct (1) violated a

28

1  constitutional right that (2) was clearly established at the time of the violation."

2  *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2519

3  (2024), *and cert. denied*, 144 S. Ct. 2520 (2024) (citing *Ballou v. McElvain,* 29

4  F.4th 413, 421 (9th Cir. 2022)). At the motion to dismiss stage, "dismissal is not

5  appropriate unless" the Court can determine, "based on the complaint itself, that

6  qualified immunity applies." *Id.*

7      Because the Court is dismissing the complaint on other grounds, it is

8  premature to consider Defendants' qualified immunity defense. Defendants may

9  renew such a defense at an appropriate time. Accordingly, the motion to dismiss

10  on grounds of qualified immunity is denied without prejudice.

11  **C. State Law Claims**

12      **A. Discretionary Act Immunity**

13      Defendants argue that they are entitled to discretionary act immunity for

14  all of the FAC's state law claims. (ECF Nos. 107 at 15–17, 109 at 15–17, 111 at

15  23–24.) As "discretionary-act immunity does not apply to intentional torts," the

16  Court only considers whether the FAC's negligent supervision claim is barred by

17  the doctrine. *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 139 (Nev. 2014),

18  *vacated and remanded on other grounds by Franchise Tax Bd. of Cal. v. Hyatt,*

19  578 U.S. 171 (2016).

20      NRS 41.032 grants the State and its political subdivision sovereign

21  immunity from civil liability when a challenged act was discretionary in nature,

22  even if that discretion was abused. *Ransdell v. Clark Cnty.*, 192 P.3d 756, 761

23  (Nev. 2008); NRS 41.032(2). Nevada has adopted the Supreme Court's *Berkovitz-*

24  *Gaubert* two-part test for determining whether discretionary-act immunity

25  applies. *Martinez v. Maruszczak*, 168 P.3d 720, 728–29 (Nev. 2007); *Butler ex rel.*

26  *Biller v. Bayer*, 168 P.3d 1055, 1066–67 (Nev. 2007). A defendant is not liable for

27  an allegedly negligent decision if the decision (1) involves an "element of individual

28

judgment or choice," and (2) is "based on considerations of social, economic, or political policy." *Martinez,* 168 P.2d at 729. The purpose of this exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.*

"[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. U.S.,* 228 F.3d 944, 950 (9th Cir. 2000); *see also Paulos v. FCH1, LLC,* 456 P.3d 589, 595 (Nev. 2020). "[T]he challenged decision need not actually be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis." *Id.*; *see also U.S. v. Gaubert*, 499 U.S. 315, 325 (1991) ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.")

The FAC brings negligent supervision claims against Washoe County, based on Mr. Ribar's interaction with police officers after leaving the South Valleys Library. (ECF No. 65-1 at 9.) The decisions of which police officers to hire, and how to train and supervise them, involve a sufficient element of choice that courts consistently find discretionary, and "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers,* 228 F.3d at 950 (citations omitted); see also *Neal-Lomax v. Las Vegas Metro. Police Dep't,* 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) ("Nevada looks to federal case law to determine the scope of discretionary immunity, and . . . federal case law consistently holds training and supervision are acts entitled to such immunity . . . .."). Discretionary-act immunity, therefore, applies to Washoe County with

1  respect to the negligent supervision claims.

2      Additionally, the FAC also brings a negligent supervision claim against Ms.

3  Cole, but the Court cannot evaluate whether Ms. Cole is entitled to discretionary-

4  act immunity without more specific factual allegations. (*See* ECF No. 65-1.)

5      While discretionary-act immunity may not bar actions taken in bad faith,

6  the FAC has not alleged any facts to support such a finding here. *See Clark Cnty.*

7  *v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark,* 570 P.3d 135, 147 (Nev. 1991);

8  *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007). The Court

9  therefore finds that Washoe County is entitled to discretionary-act immunity as

10 to the FAC's negligent supervision claim and dismisses the claim against Washoe

11 County with prejudice.

12 **B. Claim VIII: Nevada Constitution, Art. 1, §§ 9, 10**

13     The FAC alleges that all Defendants "violated [Mr. Ribar's] speech and

14 petition rights" under Art. 1, §§ 9, 10 of the Nevada Constitution, which provide:

15     Every citizen may freely speak, write and publish his sentiments on all
16     subjects being responsible for the abuse of that right; and no law shall be
       passed to restrain or abridge the liberty of speech or of the press," and that
17     "people shall have the right freely to assemble together to consult for the
       common good, to instruct their representatives and to petition the
18     Legislature for redress of Grievances.

19

20 Nev. Const. art 1, §§ 9, 10. The Nevada Constitution "affords no greater

21 protection to speech activity than does the First Amendment to the United States

22 Constitution," therefore, the appropriate analysis on speech restrictions is

23 identical to that under the First Amendment. *Univ. & Cmty. Coll. Sys. of Nev. v.*

24 *Nevadans for Sound Gov't,* 100 P.3d 179, 187 (Nev. 2004) (citations omitted).

25     As to BOC, the FAC does not set forth any facts to show how BOC,

26 specifically, violated Mr. Ribar's speech and petition rights under Art. 1, §§ 9, 10.

27 (*See* 65-1.)

28     Regarding the County Defendants, the Court dismissed the FAC's First

22

Amendment claims with leave to amend and will therefore do the same for the claim under Art. 1, §§ 9, 10.

Accordingly, the Court dismisses all claims under Art. 1, §§ 9, 10 of the Nevada Constitution without prejudice, and with leave to amend.

### C. Claim IX: Public Library Access under NRS 379.040

The FAC alleges that Mr. Ribar's rights under NRS 379.040 were violated when Mr. Scott, Ms. Mckenzie, and Ms. Bowen denied him access to the library. (ECF No. 65-1 at 8.) NRS 379.040 directs that libraries "must forever be and remain free and accessible to the public, subject to such reasonable regulations as the trustees of the library may adopt." Defendants, however, argue that NRS 379.040 does not create a private right of action, and that any regulations were reasonable. (ECF No. 111 at 22.)

Defendants are correct that NRS 379.040 does not create a private right of action. "[T]he absence of an express provision providing for a private cause of action to enforce a statutory right strong suggests that the Legislature did not create a privately enforceable judicial remedy." *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 101 (Nev. 2008). The law also grants library trustees the power to adopt reasonable regulations limiting library accessibility. NRS 379.040. The FAC cites no case law and makes no argument that suggests that NRS 379.040 was designed to create a private right of action. (ECF No. 65-1.) The FAC also fails to allege that any exclusion was unreasonable. (ECF No. 65-1.) Because NRS 379.040 does not provide a private right of action, amendment would be futile, and the Court dismisses this claim with prejudice and without leave to amend.

### D. Claim X: Assault and Battery

The FAC alleges state law claims of assault and battery against Mr. Scott, related to the July 2023 DQSH event at the Sparks Library. (ECF No. 65-1 at 6, 9.) Claim X contains a single sentence alleging only that "Defendants assaulted

Plaintiff," without identifying any of the circumstances surrounding the alleged assault and battery. (ECF No. 65-1 at 9.)

To state a claim for assault, a plaintiff must allege that the defendant (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact. Restatement (Second) of Torts, § 21 (1965); *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001). Similarly, to state a battery claim, a plaintiff must allege that the defendant (1) intended to cause harmful or offensive contact, and (2) such contact did occur. Restatement (Second) of Torts, §§ 13, 18 (1965); *Burns*, 175 F. Supp. 2d at 1269. For common law battery or assault, "either intent to cause harm or offense, or the substantial certainty that it will result," is required. *Roeder v. Atl. Richfield Co.*, No. 3:11-CV-00105-RCJ, 2011 WL 4048515, at *6–7 (D. Nev. Sept. 8, 2011).

The FAC's allegations are too vague and conclusory to state a cognizable claim for assault or battery. The FAC does not provide any factual details regarding the alleged assault and battery. (*See* 65-1.) The FAC, similarly, does not allege that Mr. Scott "intended to cause harmful or offensive physical contact" or that Mr. Ribar was "put in apprehension of such contact." *Burns*, 175 F. Supp. 2d at 1269. Though the FAC brings claims for both assault and battery, it does not allege that any "harmful or offensive contact" occurred, as required to state a battery claim. *Id.* Thus, because the FAC does not provide sufficient factual details to support the inference that Mr. Scott assaulted or battered Mr. Ribar, the Court dismisses the assault and battery claims without prejudice, and with leave to amend.

### E. Claim XI: Intentional Infliction of Emotional Distress

The FAC next asserts an intentional infliction of emotional distress (IIED) claim, alleging only that all Defendants' "extreme conduct" caused Mr. Ribar "severe emotional distress." (ECF No. 65-1 at 9.) All Defendants, including Mr.

Scott, Ms. McKenzie, Ms. Bowen, Ms. Cole, WCSO Defendants, and BOC argue that this claim is insufficiently pled, as it identifies no extreme or outrageous conduct. (ECF Nos. 107 at 14, 109 at 13–14, 111 at 21, 126 at 16.)

To state an IIED claim, a plaintiff must allege (1) extreme and outrageous conduct by defendant; (2) defendant's intent to cause emotional distress or reckless disregard as to the probability of emotional distress; (3) plaintiff's severe emotional distress; (4) and actual and proximate causation between defendant's conduct and plaintiff's emotional distress. *Branda v. Sanford*, 637 P.2d 1223, 1227 (Nev. 1981); *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981). Extreme and outrageous conduct is that which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized society." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation omitted).

Claim XI does not identify any specific conduct by Defendants that is alleged to be "extreme and outrageous." (*See* ECF No. 65-1.) Additionally, the FAC does not allege that any Defendant intended to cause Mr. Ribar emotional distress or recklessly disregarded the probability of causing him emotional distress. (*Id.*) Claim XI, which merely alleges that Defendants' "extreme conduct" caused Mr. Ribar "severe emotional distress" is entirely conclusory and does not set forth sufficient facts, connected to any argument, to state a claim for IIED. (ECF No. 65-1 at 9.) The Court thus dismisses Claim XI against Mr. Scott, Ms. McKenzie, Ms. Bowen, Ms. Cole, WCSO Defendants, and BOC with leave to amend.

### F. Claim XII: Defamation

Claim XII alleges, in totality, that all Defendants "falsely accused Plaintiff of misconduct," thus "harming his reputation." (ECF No. 65-1 at 9.) Defendants argue that the FAC has not specifically alleged any false and defamatory statements. (ECF Nos. 109 at 14–15, 107 at 14–15, 111 at 21–22, 126 at 16–17.)

To state a claim for defamation, a plaintiff must prove: "(1) a false and

defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002).

Without more details, the FAC has not alleged any facts to establish that any false and defamatory statement was made, or by whom. See *Cunningham-Dirks v. Nevada*, No. 2:12-CV-00590-PMP, 2013 WL 77470, at *15 (D. Nev. Jan. 3, 2013) ("To state a claim for defamation, Plaintiffs must allege facts identifying who made the allegedly defamatory statements, what the actual statements were, and to whom they were made."). For these reasons, Claim XII fails to state a claim upon which relief may be granted. The Court dismisses this claim without prejudice and with leave to amend.

### G. Claim XIII: Negligent Supervision

Claim XIII, titled "Negligence/Negligent Supervision" alleges only that "Defendants negligently supervised staff, leading to false reporting," so the Court construes it as a negligent supervision claim. (ECF No. 65-1 at 9.) The Court previously found that Washoe County is entitled to discretionary-act immunity, so solely evaluates whether the FAC adequately alleges a negligent supervision against Ms. Cole.

To state a negligent supervision claim in Nevada, "'a plaintiff must show (1) a duty of care owed the plaintiff; (2) breach of that duty' by failing to train or supervise an employee 'even though defendant knew or should have known of the employee's dangerous propensities; (3) the breach was the cause of the plaintiff's injuries; and (4) damages.'" *Evans v. Hawes*, 718 F. Supp. 3d 1351, 1376 (D. Nev. 2024) (quoting *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 520 P.3d 803, 811 (2022)), *reconsideration denied*, No. 2:22-CV-02171-JAD-DJA, 2024 WL 3330248 (D. Nev. July 8, 2024). Because the FAC fails to

allege, at baseline, who Ms. Cole allegedly supervised or failed to supervise, it does not state a negligent supervision claim. The Court thus dismisses Claim XIII without prejudice, and with leave to amend.

### III.    Leave to Amend

By his Motion for Leave to File Second Amended Complaint, Mr. Ribar seeks to amend his complaint to assert claims against new and current defendants, arising from recent events. (ECF No. 167.)

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless the deficiencies of the complaint cannot be cured by amendment. *Yellow Freight Sys., Inc.*, 957 F.2d at 658. "A district court does not err in denying leave to amend where the amendment would be futile . . . or where the amended complaint would be subject to dismissal." *Saul v. U.S.*, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted). An amended complaint can be subject to dismissal because it does not comply with the Federal Rules of Civil Procedure. A plaintiff may add multiple claims to a lawsuit when those claims are against the same defendant and may add multiple parties to a lawsuit when the right to relief arises out of the "same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 18(a); FED. R. CIV. P. 20(a)(2)(A).

Plaintiffs may generally not amend their pleadings, however, to add unrelated claims or new claims that occurred after the original complaint. *See e.g., Hill v. Marciano*, No. 20-cv-01717-JAD-DJA, 2021 WL 8016909, at *5 (D. Nev. July 30, 2021) ("Hill may not amend the complaint to add unrelated claims against other defendants or new claims or events that took place after the original complaint was filed."); *Langford v. Dzurenda*, No. 19-cv-00010-RCJ-WGC, 2020 WL 1815824, at *1 (D. Nev. Apr. 9, 2020) ("Plaintiff does not have leave to include in the amended complaint any unrelated claims against other defendants, and an amended complaint may not include any allegations concerning events that

1    have transpired since he filed his original complaint.") (emphasis omitted); *Wilcox*

2    *v. Portfolio Recovery Assocs.*, LLC, No. 20-cv-01545-JAD-NJK, 2022 WL 1908863,

3    at *3 (D. Nev. June 3, 2022) ("The Wilcoxes may not amend the complaint to add

4    unrelated claims against other defendants, replead claims that were previously

5    dismissed with prejudice, or include new claims based on events that have taken

6    place since the original complaint was filed.").

7        Mr. Ribar attempts to add new allegations and claims regarding completely

8    unrelated events that occurred after the FAC was filed. (ECF No. 167.) These

9    recent events include a September 17, 2025, LBOT meeting and a September 6,

10    2025, Pride event. (167 at 2.) New defendants include the City of Reno, Officers

11    Jenkins and Pleich, Dr. Allan Ratliff, Lea Moser, and Ann Silver. (ECF No. 167-1

12    at 4.)

13        Here, Mr. Ribar's new allegations and claims regarding the LBOT meeting

14    and the Pride event do not manifestly arise out of, or relate to the "same

15    transaction, occurrence, or series of occurrences" of his prior complaint. The

16    Court, therefore, denies Mr. Ribar's Motion for Leave to File a Second Amended

17    Complaint. If Mr. Ribar wishes to pursue these new allegations and claims, he

18    must file a separate complaint under a new case number.

19        Mr. Ribar is, however, given leave to file a Second Amended Complaint

20    addressing the deficiencies of his FAC, provided those amendments do not

21    include claims and allegations from recent events such as the LBOT meeting and

22    September Pride event.

23

24

25

26

27

28

1

### D. CONCLUSION

2    IT IS THEREFORE ORDERED that County Defendants and BOC's Motions

3    to Dismiss (ECF Nos. 105, 107, 109, 111, 126) are granted.

4    IT IS FURTHER ORDERED that Claims I, II, III, IV, V, VI, VII, VIII, X, XI,

5    and XII are dismissed without prejudice and with leave to amend.

6    IT IS FURTHER ORDERED that Claims IX and XIV are dismissed with

7    prejudice.

8    IT IS FURTHER ORDERED that Claim XIII is dismissed with prejudice as

9    to Washoe County, and is dismissed without prejudice, and with leave to amend

10    as to Ms. Cole.

11    IT IS FURTHER ORDERED that all federal constitutional claims against

12    BOC are dismissed without prejudice. All claims against WCLS are dismissed

13    with prejudice.

14    IT IS FURTHER ORDERED that Mr. Ribar's Motion to File Second Amended

15    Complaint (ECF No. 167) is denied to the extent that he wishes to add new

16    defendants and new events. Mr. Ribar may amend to add Washoe County to

17    claims that were originally asserted against WCLS.

18    IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Defendant Build

19    Our Center's Exhibits 6 and 7 (ECF No. 136), Motion for Court Intervention in

20    Meet and Confer Process (ECF No. 169), Motion to Dissolve or Modify Order (ECF

21    No. 180), and Emergency Motion for Clarification (ECF No. 184) are DENIED AS

22    MOOT.

23

24    DATED: December 29, 2025

25

26

27    ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

28