CRAIG J. MARIAM
Nevada Bar No. 10926
RACHEL L. WISE
Nevada Bar No. 12303
PAULYNA T. GARCIA
Nevada Bar No. 17196
**GORDON REES SCULLY MANSUKHANI, LLP**
300 South Fourth Street, Suite 1550
Las Vegas, Nevada  89101
Telephone: (702) 577-9300
Facsimile: (702) 255-2858
Email: cmariam@grsm.com
        rwise@grsm.com
        ptgarcia@grsm.com

*Attorneys for Defendant Build Our Center Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DREW RIBAR, | Case No. 3:24-cv-00526-ART-CSD |
| Plaintiff, | **BUILD OR CENTER INC.'S *EMERGENCY* MOTION FOR SANCTIONS AND AN ORDER PROHIBITING PLAINTIFF'S ONGOING HARASSING AND THREATENING CONDUCT** |
| v. | |
| WASHOE COUNTY, et al. , | |
| Defendants. | |

Build Our Center Inc. ("BOC"), by and through its undersigned counsel, respectfully requests the Court enter an order prohibiting Plaintiff from harassing, threatening, and doxing attorneys and officers of the court during the pendency of this litigation and issue sanctions against Plaintiff to deter his ongoing abusive course of conduct ("Motion"). This Motion is made and based upon all records and pleadings on file here, together with the exhibits and declarations attached hereto, and the memorandum of points and authorities here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

<u>**Table of Contents**</u>

I.    INTRODUCTION ........................................................................................................ 1

II.   PLAINTIFF'S IMPROPER COMMUNICATIONS AND EXTRAJUDICIAL
HARASSMENT OF COUNSEL ..................................................................................... 3

A.    Plaintiff's Improper Communications to Counsel ................................................ 3

B.    Plaintiff's Extrajudicial Harassment of Counsel ................................................. 4

C.    The Court's Prior Restraining Orders ................................................................... 8

D.    Plaintiff's Bar Complaints are Intended to Influence Litigation Strategy ........... 8

III.   LEGAL STANDARDS ............................................................................................. 9

IV.    THE COURT MAY ORDER PLAINTIFF TO STOP HIS REPEATED ABUSIVE
CONDUCT OUTSIDE THE MECHANISMS OF THE FED. R. CIV. P. ("RULE") ................. 11

V.    THE FIRST AMENDMENT DOES NOT PROTECT PLAINTIFF'S ACTIONS ............. 17

VI.    ALTERNATIVELY, THE COURT MAY ISSUE A TRO ............................................. 20

VII.    ANY ORDER SHOULD REQUIRE COMPLIANCE FROM THE SOCIAL MEDIA
PLATFORMS ................................................................................................................. 22

VIII.    MONETARY CIVIL SANCTIONS ARE APPROPRIATE ........................................... 22

IX.    CONCLUSION ........................................................................................................ 23

**Table of Authorities**

**Cases**

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1089 (9th Cir. 2021).................................. 22, 23

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)............. 14

*Barnhill v. United States,* 11 F.3d 1360, 1368 (7th Cir. 1993)........................................ 19

*Beauharnais v. People of State of Ill.*, 343 U.S. 250, 255–56 (1952)................................ 17

*Bernard v. Air Line Pilots Ass'n, Int'l, AFL-CIO,* 873 F.2d 213, 215 (9th Cir. 1989)................ 22

*Business Guides v. Chromatic Communications, Enterprises*, 892 F.2d 802, 811 (9th Cir. 1989) *aff'd* 498 U.S. 533 (1991) ........................................................................ 10

*Caputo v. Tungsten Heavy Powder, Inc.,* 96 F.4th 1111, 1162 (9th Cir. 2024) ...................... 11

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)............................................... 9, 11, 13

*De Long v. Hennessey,* 912 F.2d 1144, 1147 (9th Cir.1990)............................................ 11

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1070 (9th Cir. 2000)................... 22

*Eggum v. Holbrook,* 2024 WL 4100238, at *1 (9th Cir. Sept. 6, 2024)............................... 19

*Farr v. Pitchess,* 522 F.2d 464, 468–69 (9th Cir.1975)................................................ 18

*Fredin v. Middlecamp,* 2020 WL 6867424, at *6 (D. Minn. Nov. 23, 2020), *aff'd, Fredin v. Middlecamp,* 855 Fed. Appx. 314 (8th Cir. 2021) ....................................... 11, 12, 13

*Gen. Atomic Co. v. Felter,* 436 U.S. 493, 496 (1978).................................................. 9

*Golden v. Pac. Mar. Ass'n,* 786 F.2d 1425, 1427 (9th Cir. 1986)...................................... 19

*Humphries v. Button,* 2025 WL 509254, at *3 (D. Nev. Feb. 14, 2025) ......................... 11, 14, 15

*In re Andrus, 189 B.R. 413* (N.D. Ill. 1995) .......................................................... 18

*In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ......................................................................................... 21

*Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1353-54 (D. Utah 2009)................................ 20

*Leon v. IDX Systems Corp.*, 464 F.3d 951, 968 (9th Cir. 2006) ....................................... 14

*Levine v. U.S. Dist. Court for Cent. Dist. of California,* 764 F.2d 590, 595 (9th Cir. 1985) ....... 18

*Lewis v. S. S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) ....................................... 12, 17

*Martin v. Pizza,* 222CV00784GMNDJA, 2022 WL 4000640, at *2 (D. Nev. Aug. 31, 2022)...... 9

*McKaskle v. Wiggins,* 104 S. Ct. 944, 954 (1984) ..................................................... 9

*Myart v. Taylor,* 2016 WL 5376227, at *4-5 (W.D. Tex. Sept. 26, 2016) ........................... 19, 21

*R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992)......................................... 18

*Ringgold-Lockhart v. Cnty. of Los Angeles,* 761 F.3d 1057, 1061 (9th Cir. 2014) .................... 11

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) ................................................ 10

*Salman v. Jameson*, 1997 WL 416340, at *1 (D. Nev. Apr. 14, 1997) ...................................... 11

*Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020) ............................................. 12

*Stars' Desert Inn Hotel & Country Club Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997) ....... 14

*Stewart v. Mikkelsen,* 2024 WL 4252755, at *1 (W.D. Wis. Sept. 20, 2024) ............................. 20

*Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc*., 240 F.3d 832, 839 n.7 (9th Cir. 2001) ................................................................................................... 21

*Teledyne Technologies, Inc. v. Shekar*, 2015 WL 5438648, at *2-3 (N.D. Ill. June 17, 2015) .... 20

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) .............................. 19

*United Artists Corp. v. United Artist Studios LLC*, 2019 WL 6917918, at *10-12 (C.D. Cal. Oct. 17, 2019) ................................................................................................. 19

*United States v. Fulbright,* 105 F.3d 443, 452 (9th Cir.1997) ............................................. 18

*United States v. Waggy,* 936 F.3d 1014, 1019 (9th Cir. 2019) ............................................ 19

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) ............................. 21

*Zal v. Steppe,* 968 F.2d 924, 927–29 (9th Cir.1992) ......................................................... 18

**Statutes**

18 U.S.C. § 1503 ................................................................................................ 16

18 U.S.C. § 1512 ................................................................................................ 15

18 U.S.C. 2261A(2) .............................................................................................. 15

28 U.S.C. § 1292(a)(1) .......................................................................................... 22

28 U.S.C. § 1927 ............................................................................................ 9, 10

NRS 199.230 ...................................................................................................... 16

NRS 199.240 ...................................................................................................... 16

NRS 199.300 ...................................................................................................... 16

NRS 200.571 ...................................................................................................... 16

NRS 200.575 ...................................................................................................... 16

NRS 207.190 ...................................................................................................... 16

Rule 11 ....................................................................................................... 9, 10

Rule 38 ........................................................................................................... 15

**Other Authorities**

LR 1-1(a) & (b) ................................................................................................. 10

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

LR 1-1(c) ..................................................................................................................... 10

LR 11-8 ........................................................................................................................... 9

LR 7-4 ............................................................................................................................. 9

LR IA 11-8 ..................................................................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

BOC respectfully moves for the issuance of an emergency order regulating Plaintiff's threatening, harassing, and coercive conduct in connection with this case. Rather than litigating claims through lawful filings and motion practice, Plaintiff, proceeding *pro se*, has engaged in repeated, unsolicited, near-daily communications directed at defense counsel, including the publication of extrajudicial online videos and other social media platforms targeting and doxxing BOC's counsel from Gordon Rees Scully Mansukhani, LLP ("GRSM"). As of January 2, 2026, in the past 50 days, Plaintiff has engaged in extensive extrajudicial harassment or other threatening conduct targeting BOC's counsel, *at least* 33 separate times. Plaintiff's intimidation tactics have led to severe protective measures by GRSM and counsel in this matter, including, but not limited to, contacting the relevant police departments in Reno and Las Vegas, filing an IC3 complaint with the FBI, and alerting GRSM building security.

Plaintiff knows that his conduct is not only improper, but that it serves no legitimate litigation purpose because this Court issued two orders restraining him from engaging in the exact same conduct before. The expiration of those temporary restraining orders ("TRO") does not provide Plaintiff a free pass to harass, threaten, dox, and intimidate BOC and its counsel. Plaintiff's conduct constitutes bad-faith abuse of the judicial process, warrants sanctions, and requires immediate intervention by the Court to deter further harassment, threats, intimidation, and to protect the integrity of these proceedings.

BOC seeks narrowly tailored relief to address and prevent harassment of and threats to counsel, parties, witnesses, and the Court, and to ensure the orderly administration of this action consistent with the Court's inherent authority and the rules of civil procedure. Thus, and as further outlined below, BOC requests an order from the Court:

1.    Prohibiting Plaintiff from communicating directly with counsel or their firms and employees outside of filings made with the Court;

2.    Plaintiff be prohibited from physically approaching any party, witness, their counsel or employees involved in this matter and is restrained from coming within six hundred feet of any party, witness, their counsel or employees involved in this matter; including, but not limited to the home, school, or place of employment of any party, witness, their counsel or employees involved in this matter;

3.    Requiring that all communications relating to this case be made through formal court filings in accordance with the applicable rules;

4.    Directing Plaintiff to refrain from using extrajudicial communications, including online videos or social media posts, to harass, intimidate, or expert pressure on counsel in connection with this litigation;

5.    Advise plaintiff that failure to comply with the Court's order will result in appropriate an additional sanctions, including, but not limited to, criminal contempt and/or case-terminating sanctions;

6.    Advise Plaintiff that continued use of extrajudicial communications, including online videos or social media posts, addressing counsel will be considered circumvention of the Order;

7.    Address social media platforms, including YouTube, Instagram, Facebook, X, Google, etc. by explaining Plaintiff is enjoined from posting extrajudicial communications, including online videos or social media posts, addressing counsel and direct that such platforms comply with the Court's order by removing any offending posts;

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

8.      Plaintiff shall not use any other person, direct or indirectly, to circumvent the Court's Order;

9.      Plaintiff will not use any device, such as artificial intelligence, to circumvent the Court's Order; and

10.      Sanction Plaintiff in the amount of GRSM's reasonable attorney's fees in drafting and prosecuting this Motion.

Sanctions and an order from the Court are necessary for the protection of litigations, their counsel, and any potential witnesses from harassment and intimidation, the preservation of orderly adjudication of this matter, and deterrence of social-media-driven harassment used as a litigation tactic to circumvent the Court's powers and authority. If left unchecked, Plaintiff's coercive conduct will continue and undermine the rule of law.

## II.      PLAINTIFF'S IMPROPER COMMUNICATIONS AND EXTRAJUDICIAL HARASSMENT OF COUNSEL

### A.      Plaintiff's Improper Communications to Counsel

Since the filing of this action, Plaintiff has sent repeated coercive and harassing emails directly to defense counsel and unrelated employees in the law firms representing BOC notwithstanding written request that Plaintiff adhere to the required decorum of this Court.

Plaintiff has sent emails to unrelated partners and attorneys alleging that Gordon Ress Scully Mansukhani, LLP ("GRSM")'s counsel is litigating in bad faith and threatening (a) a bar complaint and (b) a lawsuit against GRSM counsel. **Exhibit A** (Wise Decl.), ¶ 11; **Exhibit B** (Jan. 1, 2026, email to GRSM). Plaintiff has also sent at least three emails regarding a December 18, 2025, cease and desist letter BOC sent to Plaintiff. **Exhibit C** (Dec. 18, 2025, cease and desist letter); **Exhibit D** (December 18 to 22, 2025, Email String from Ribar to Counsel Re: Cease and Desist Demand).

Either Plaintiff himself or a result of his doxxing has led to a harassing email sent to counsel on January 2, 2026, that included personal threats and intimidation tactics stating that the writer knows counsel's home address ("Threatening Email"). **Ex**. **A** (Wise Decl.), ¶ 12; **Exhibit E** (Jan. 2, 2026, email). Based on Plaintiff's course of conduct and the Threatening Email, counsel, among other things, alerted the Reno and Las Vegas police departments, submitted an IC3 complaint to the FBI, and warned her family that they are in danger. **Ex**. **A** (Wise Decl.), ¶¶ 16, 19. GRSM has, among other things, alerted its offices and security, as well as implemented security protocols to protect their attorneys and staff. **Ex**. **A** (Wise Decl.), ¶¶ 17-19.

Plaintiff is intentionally interfering with counsel's ability to practice by doxxing them online or otherwise requesting that counsel be removed from this case. **Ex**. **A** (Wise Decl.), ¶¶ 11-12, 7-10, 20-22, 30-38, 41-46; **Ex. B & E**; **Exhibits F-L** (Plaintiff's YouTube Videos).[1] Despite BOC's December 18, 2025, cease and desist letter, Plaintiff has continued to threaten, harass, and dox counsel through communication and videos online or other social media platforms. **Ex**. **A** (Wise Decl.), *generally*; **Ex. B, E, F-L**. These communications are intended to influence counsel's approach to the litigation and intimidate counsel so that they withdraw from the case.

**B.    Plaintiff's Extrajudicial Harassment of Counsel**

In parallel, Plaintiff has published multiple publicly accessible online videos and other social media posts referencing this case and identifying defense counsel by name and residence. These extrajudicial communications do not advance the merits of Plaintiff's claims and appear designed to exert pressure on counsel outside of the judicial process.

///

---

[1] The videos will be provided to the Court through manual filing. A transcript generated by YouTube is also included with the manual filing.

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

### 1.    <u>Plaintiff's Threats, Doxxing, and Intimidation of Officers of the Court</u>

GRSM joined this litigation on November 17, 2025. [Doc. No. 199]. Yet, even before the notice of appearance wise filed, Plaintiff has engaged in a pattern of intimidation and threat tactics to harass counsel, including making statements in YouTube videos and sending communications threatening litigation or bar complaints against counsel. **Ex. A** (Wise Decl.), ¶ 11-14, 24-29, 39-40. By January 2, 2026, Plaintiff had engaged in extrajudicial harassment or other threatening conduct against GRSM at least 33 separate times. **Ex. A** (Wise Decl.), ¶¶ 4, 11-14, 24-29, 39-40, **Ex. B, E, F-L**. Plaintiff has posted at least 28 videos and sent five communications either sent by Plaintiff or caused by his doxxing efforts in an effort to harass, intimidate me or cause me psychological or bodily harm. **Ex. A** (Wise Decl.), ¶¶ 11-14, 24-29, 39-40; **Ex. F-L**. For each video Plaintiff made that is discussed herein, he posted them four times: Twice on each of his YouTube Channels entitled "Auditing Reno 911" and "Drew Ribar for Nevada Assembly 40" YouTube Channels.

On November 13, 2025, Plaintiff posted a video entitled "Lying and Attacking Corrupt District Attorneys", where he accuses counsel of corruption through membership to the Southern Nevada Disciplinary Committee and accuses them of forging fake affidavits and lying to the court ("Corrupt Attorney Video"). **Ex**. **A** (Wise Decl.), ¶¶ 20-22; **Ex. L**.[2]

Plaintiff's conduct escalated on December 20, 2025, when he posted a video entitled "CEASE & DESIST FREE SPEECH!!" ("Dec. 20 Video") that again calls Ms. Kertis and her employees a liar, refers to the cease and desist letter as fake, and admitted that all the offending videos are also posted on Facebook, Instagram, and Tik Tok. **Ex. A** (Wise Decl.), ¶¶ 30-32; **Ex. K**.

---

[2] The transcripts are generated by YouTube. The only change to these items is in the header and footer of the exhibit.

Gordon Rees Scully Mansukhani LLP
300 S. 4ᵗʰ Street, Suite 1550
Las Vegas, Nevada 89101

On December 21, 2025, Plaintiff posted another video titled "Pro Se vs 6 Attorneys," where he again says Ms. Kertis falsified evidence and said the lawyers in this mater "make up a bunch of fake issues ("Pro Se Video"). **Ex**. **A** (Wise Decl.), ¶¶ 33-35; **Ex. J**.

The next day, on December 22, 2025, Plaintiff uploaded a video entitled "Attorneys Try to take down my videos" disparaging GRSM, telling viewers they should think about not using GRSM's services, and calling GRSM "pieces of shit" ("Take Down Video"). **Ex**. **A** (Wise Decl.), ¶¶ 36-38; **Ex. I**.

On Christmas Eve, Plaintiff uploaded two videos. The first video is titled, "Attorneys Fight Against the Constitution", where he accuses Ms. Kertis of lying to the court and contends that counsel is not upholding the constitution ("Constitution Video"). **Ex**. **A** (Wise Decl.), ¶¶ 41-43; **Ex. G**.

The second Christmas Eve video is titled, "Unaccountable Attorneys" and involves Plaintiff's accusation that the Nevada State Bar will not respond to any bar complaints and, again, accuses Ms. Liddel and Ms. Kertis of lying to the Court ("Attorney Video"). **Ex**. **A** (Wise Decl.), ¶¶ 44-46; **Ex. H**.

On New Year's Day, Plaintiff uploaded a video entitled, "Lawyers Tried to Silence Me — Here's the Complaint The Filed" claiming he lodged a complaint against counsel with the Nevada Secretary of State, refers to counsel and law firms as "corrupt" and threatens that attorneys need to stop screwing with him ("Silence Video"). **Ex**. **A** (Wise Decl.), ¶¶ 7-10; **Ex. F**.

Plaintiff's videos include threats and abusive language toward counsel, as well as meritless accusations that counsel acted unethically or committed fraud on the Court. The intent of these videos is to discourage counsel from continuing their representation in this case or suffer the consequences of immediate emotional, psychological, or physical harm.

///

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

### 2. <u>Plaintiff's Repeated False Statements of Fact</u>

Plaintiff goes beyond expressing disagreement with counsel's legal positions and instead makes assertions presented as fact regarding counsel's conduct in the case, including allegations of wrongdoing and misconduct unconnected to any ruling or finding by this Court. Among other things, Plaintiff claims:

- That Ms. Kertis or her clients lied about Plaintiff. **Ex. L**, timestamp 14:24 (Corrupt Attorney Video); **Ex. J**, timestamp 1:42, 7:25 (Pro Se Video); **Ex. H**, timestamp 1:10 (Attorneys Video)
- That counsel is unethical and somehow ensured his bar complaints were rejected by the Nevada State Bar. **Ex. K**, timestamp 30:52-31:52 (Dec. 20 Video); **Ex. H**, timestamp 1:10-9:51 (Attorney Video)
- That the cease and desist letter is fake. **Ex. K**, timestamp 30:20 (Dec. 20 Video)
- Says counsel made up "a bunch of other fake issues." **Ex. J**, timestamp 7:25-7:36 (Pro Se Video)
- Says counsel is not upholding the constitution **Ex. G**, timestamp 7:17-7:49 (Constitution Video)

In sum, Plaintiff has leveled accusations that counsel lied, acted unethically, and fabricated issues, but none of these assertions is supported by any court ruling or judicial finding in this matter, and Plaintiff has instead attempted to advance such claims through extrajudicial channels, including videos, mass emails, and communications to uninvolved third parties.

### 3. <u>Plaintiff's Attempts to Intimidate Witnesses, Influence Potential Jurors, and Impugn the Court's Integrity</u>

The Plaintiff's improper conduct extends beyond the parties involved in the case, affecting witnesses and potential jurors. **Exhibits B, E**. Plaintiff's actions demonstrate a deliberate pattern of intimidation that threatens the integrity of the proceedings and could interfere with the administration of justice

On September 14, 2025, the Plaintiff posted a video entitled "City of Reno Bans Me from Public Events," which included clips from a pride event and a visit to the UNR School of Social Work ("Bans Video"). [Doc. No. 207-4]. In that video, the Plaintiff aggressively targeted witness

Dr. Allen Ratliff, identifying him and commenting on his work related to LGBTQ+ issues at the University, which led to Dr. Ratliff receiving a threatening voicemail. [Doc. No. 207-4, 11:15, 22:17, 24:42].

The Plaintiff also displayed BOC volunteer and witness YeVonne Allen's private Facebook page and employment details. [Doc. No. 207-4, at 24:42].

The Plaintiff targeted the Dean of the School of Social Work, who is also a witness, by emphasizing her last name, speculating on her heritage, and sharing her contact information, resulting in her receiving abusive emails. [Doc. No. 207-4, at 1:14:21, 1:14:21-30].

On October 15, 2025, at a Washoe County Library Board Meeting, the Plaintiff followed and verbally harassed, threatened, and intimidated witness Stacey Spain. [Doc. No. 207-27 at ¶¶ 6-12].

When another library patron and Ms. Spain left the same meeting, Plaintiff followed, yelling curse words and claiming he was going to have BOC's non-profit status revoked. [Doc. No. 207-12].

**C.    The Court's Prior Restraining Orders**

The Court already issued two separate Temporary Restraining Orders ("TRO") addressing Plaintiff's similar course of conduct and harassment and restraining Plaintiff from engaging in harassing actions akin to the conduct addressed in this Motion. [Doc. No. 176, 5:8-24, Doc. No. 186, 10:2-11:15].

**D.    Plaintiff's Bar Complaints are Intended to Influence Litigation Strategy**

On October 29, 2025, Plaintiff filed bar complaints against defense counsel and filed the same in this matter. (Doc. No. 171). The bar complaints accuse Ms. Kertis and Ms. Liddel of (1) knowingly submitting false affidavits to the Court, (2) maintaining and defending falsehoods, (3)

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

participation in extrajudicial retaliation, and (4) misuse of prosecutorial authority. [Doc. No. 171:4-5].

### III.    LEGAL STANDARDS

**A.    *Pro Se* Standard**

*Pro se* litigants are not only required to "follow the same rules of procedure that govern other litigants, but they must also conduct themselves with the same civility, decorum, and professionalism that is expected of attorneys." *Martin v. Pizza,* 222CV00784GMNDJA, 2022 WL 4000640, at *2 (D. Nev. Aug. 31, 2022). "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *McKaskle v. Wiggins,* 104 S. Ct. 944, 954 (1984).

**B.    Emergency Relief Standard**

An emergency motion must be accompanied by a declaration setting forth (1) the nature of the emergency, (2) the office addresses and telephone numbers of movant and all affected parties, and (3) a statement that the emergency precludes a meet and confer. LR 7-4.

**C.    Relevant Sanction Standards**

Previous orders from this Court have not constrained Plaintiff's abusive course of conduct. As such, the Court may issue sanctions to enforce compliance. "Federal courts are fully capable of preventing their misuse for purposes of harassment." *Gen. Atomic Co. v. Felter,* 436 U.S. 493, 496 (1978). To deter Plaintiff's future abuses, the Court may issue sanctions under its inherent powers, Rule 11, 28 U.S.C. § 1927, and LR 11-8.

**The Court's Inherent Sanction Powers:** The "primary aspect" of every federal court's inherent power is "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Hernandez v. City of El Monte,* 138 F.3d 393, 398–99 (9th Cir. 1998) citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991) ; *see also Roadway Exp., Inc. v. Piper*, 447

**Gordon Rees Scully Mansukhani LLP**
300 S. 4ᵗʰ Street, Suite 1550
Las Vegas, Nevada 89101

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

U.S. 752, 765 (1980) (recognizing "the "well-acknowledged inherent power of a court to levy sanctions in response to abusive litigation practices") (internal quotations omitted)

**Rule 11 Sanctions**: As to extrajudicial harassment, the Rule Advisory Committee Notes indicate that "Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions" and "does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules." Rule 11; *Business Guides v. Chromatic Communications, Enterprises*, 892 F.2d 802, 811 (9th Cir. 1989) *aff'd* 498 U.S. 533 (1991) (Pro se litigants are subject to Rule 11 sanctions and their filings, like those of attorneys, are judged by an objective standard of reasonableness).

**28 U.S.C. § 1927 Sanctions**: If case proceedings are unreasonably or vexatiously multiplied, the offending party may be required to satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**Local Rule 11-8 Sanctions**: After notice and an opportunity to be heard, the Court may impose appropriate sanctions on an attorney or party who (c) Fails to comply with these Local Rules or (e) Fails to comply with any order of this court. LR IA 11-8. Under LR 1-1(c), attorneys and *pro se* litigants are required to engage in a high degree of professionalism and civility. Further, the local rules note that "there should be no difference" between professional conduct "when appearing before the court and when engaged outside of it . . ." LR 1-1(a) & (b) also require litigants to minimize litigation expenses. Moreover, the Court's two previous TROs have not deterred Plaintiff's course of conduct. [Doc. No. 176, 186].  Nor have the two motions for preliminary injunction filed by defendants in this matter. [Doc. Nos. 207, 203].

/ / /

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**IV.    THE COURT MAY ORDER PLAINTIFF TO STOP HIS REPEATED ABUSIVE CONDUCT OUTSIDE THE MECHANISMS OF THE FED. R. CIV. P. ("RULE")**

Litigants "have the right to access the courts, but not for purposes of intimidation and harassment of current litigants, their counsel, or witnesses." *Humphries v. Button,* 2025 WL 509254, at *3 (D. Nev. Feb. 14, 2025) (issuing case-terminating sanctions). Courts may stop conduct that interferes with the orderly administration of justice, including repetitive, harassing, or improper communications directed at opposing counsel. *Ringgold-Lockhart v. Cnty. of Los Angeles,* 761 F.3d 1057, 1061 (9th Cir. 2014) (Federal courts can "regulate the activities of abusive litigants by imposing carefully tailored restrictions under ... appropriate circumstances.") quoting *De Long v. Hennessey,* 912 F.2d 1144, 1147 (9th Cir.1990) (quotation marks omitted). "[T]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *Salman v. Jameson*, 1997 WL 416340, at *1 (D. Nev. Apr. 14, 1997) citing *De Long,* 912 F.2d at 1147.

The Court may use its inherent power to address abusive, extrajudicial communications intended to harass or intimidate opposing parties, their counsel, or the Court. *Caputo v. Tungsten Heavy Powder, Inc.,* 96 F.4th 1111, 1162 (9th Cir. 2024) ("The inherent power is potent, extending not only to conduct occurring before the court but also to actions beyond the court's confines, regardless of whether that conduct interfered with courtroom proceedings.") (internal quotations omitted); *Chambers*, 501 U.S. at 43 ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.").

And it may do so by crafting an order outside the Rules, thus preventing any order from expiring. *Fredin v. Middlecamp,* 2020 WL 6867424, at *6 (D. Minn. Nov. 23, 2020)*, aff'd,*

*Fredin v. Middlecamp,* 855 Fed. Appx. 314 (8th Cir. 2021) ("Because Fredin's misconduct occurred largely outside of court filings or the discovery process, the Court finds that the sanctions mechanisms available under the Federal Rules of Civil Procedure are inadequate, and the Court may therefore rely on its inherent power."); *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020) (Although "a court ordinarily should rely on the [Federal] Rules rather than [its] inherent power when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, a court may safely rely on its inherent power if in its informed discretion ... the Rules are [not] up to the task.") (internal quotation marks omitted, brackets in original); *Lewis v. S. S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) (the inherent "power of courts to enjoin harassment ... is recognized," such that, for example, "[t]here is no reason the recurrent harassing conduct of a party in pursuit of a settlement may not be enjoined.").

In *Fredin*, for example, the District Court for the District of Minnesota found that the *pro se* litigant's "online assault on the reputations of opposing counsel, judges, and court staff in order to bully Defendants into favorable settlement terms and influence this Court's rulings is precisely the type of 'bad faith, vexatious,' and 'oppressive' conduct the Court's inherent powers exist to prevent." *Id*., 2020 WL 6867424, at *6 ("Courts have not only the power, but the duty to sanction such misconduct."). In that case, the *pro se* litigant created over 25 websites and YouTube videos disparaging opposing counsel and the Magistrate Judge. The videos included titles such as "Anne M. Lockner – Minneapolis' Sexiest Attorney," "Anne M. Lockner - Racist Attorney?," "Charlie C. Gokey - Minneapolis's Most Crooked Attorney," and "Judge Hildy Bowbeer – Doesn't Protect Men." After the defendants filed a sanctions motion, *pro se* plaintiff escalated his conduct by posting even more disturbing videos. One video falsely stated that an attorney was the "2X champion of the Minnesota Bar Association wet t-shirt contest," while

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

another was "even more sexually explicit, featuring pictures of Kreil's counsel and a very graphic voiceover describing gay sex."

The *Fredin* court imposed comprehensive sanctions including: (1) immediate removal of all identified websites and videos; (2) prospective injunctive relief prohibiting reposting or posting substantially similar content **for five years**; (3) prohibition against posting content that constitutes harassment under Minnesota law; (4) designation of *pro se* as a vexatious litigant requiring attorney representation or chief judge approval for new filings; and (5) attorney's fees for defendants' counsel. In reaching this ruling, the *Fredin* court relied not on the Rules, but its inherent sanction authority. *Id.*, 2020 WL 6867424, at *5 ("The Court finds that [*pro se*'s] conduct is a sanctionable abuse of the judicial process.").

Similar to the *Fredin pro se* litigant, Plaintiff here has posted 28 videos disparaging opposing counsel and the judge. The videos include titles such as "Lying and Attacking Corrupt District Attorneys," "Attorneys Try to take down my videos," "Attorneys Fight Against the Constitution," and "Unaccountable Attorneys." Further, after this Court issued *two* TROs, Plaintiff escalated his conduct to sending threats directly to counsel or providing enough personal information about counsel online so that his followers can send threats to counsel. Plaintiff's videos are replete with false statements presented as fact with the intent to intimidate counsel or interfere with the orderly process of this litigation. And, like the *Fredin pro se*, Plaintiff has escalated his attacks on the judicial officers of this Court, specifically targeting Judge Traum. This is precisely the type of conduct the United States Supreme Court intended the courts to stop with their inherent powers. *Chambers*, 501 U.S. at 44 ("[The Court's inherent power to punish contempts] reaches both conduct before the court and that beyond the court's confines ...."). Thus, BOC respectfully requests the Court sanction Plaintiff and issue an Order

curtailing his egregious course of conduct. Such sanction need not be in the form of a TRO or injunction but may be issued outside the mechanisms of the rules.

## A.    Harassment of and Undue Pressure on Officers of the Court

Plaintiff's use of direct communications as well as extrajudicial online harassment, such as videos posted on public platforms, to target counsel in connection with this case exacerbates the burden on counsel and risks undermining the orderly resolution of this matter. GRSM does not ask the Court to prohibit speech generally, but to prevent the use of extrajudicial direct and indirect extrajudicial communications of harassment or pressure in an ongoing litigation.

The Court's inherent power to sanction includes the authority to dismiss a case when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" or "has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Humphries,* 2025 WL 509254, at *2 citing *Leon v. IDX Systems Corp.*, 464 F.3d 951, 968 (9th Cir. 2006) and *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith or fault warranting default." *Humphries,* 2025 WL 509254, at *2 citing *Stars' Desert Inn Hotel & Country Club Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997).

In *Humphries*, Magistrate Judge Youchah recommended case-terminating sanctions against a *pro se* litigant who engaged in heinous conduct similar to Plaintiff's actions here. The *Humphries pro se* engaged in "on-line harassment of Plaintiffs, criminal intimidation of witnesses, burdening the Court with frivolous motions, and disrespecting the undersigned and Plaintiffs' counsel." *Id.,* 2025 WL 509254, at *2. And while the *Humphries* court found that the YouTube videos were grossly inappropriate, this was not enough to warrant case-terminating sanctions (the videos did warrant severe sanctions). What led to the case-terminating sanctions

were the *pro se*'s bar complaints against counsel and his lawsuits against opposing counsel, witnesses, and their family members.

Like the *Humphries pro se*, Plaintiff has directed his harassment to counsel by naming and placing their photographs on his YouTube channels, disparaging their reputations and their conduct before this Court, attempting to use threats of bar complaints and future litigation as leverage to negotiate settlement or resolution of this matter, or otherwise intimidating counsel into withdrawing from this case. Severe sanctions are warranted.

### *B.*   *Plaintiff's Course of Conduct is Intended to Intimidate Witnesses, Influence Potential Jurors, and Impugn the Integrity of the Judiciary*

Plaintiff's pattern of conduct—targeting witnesses, jurors, counsel, and the Court—violates laws designed to protect the administration of justice. Plaintiff's conduct was not informational, but instead, (a) identified and targeted witnesses and counsel, (b) encouraged, whether explicitly or implicitly, contact, relation and exposure, and (c) were followed by foreseeable harassment.[3] Plaintiff's intent was to intimidate witnesses and counsel and influence any potential jurors by disparaging and degrading the integrity of the Court. In doing so, Plaintiff intended to chill participation in litigation and either force settlement or withdraw.

Plaintiff's actions extend beyond what is lawful and each trigger criminal codes that are intended to protect parties, witnesses, counsel, and the courts. If permitted to continue, Plaintiff should be subject to criminal sanctions, not only for violating any order issued by the Court, but also because such conduct violates a multitude of criminal statutes, including, but not limited to:

- **18 U.S.C. 2261A(2)**: Prohibits the use of a computer to harass or intimidate a person when such harassment or intimidation is intended to cause fear or distress

- **18 U.S.C. § 1512**: Federal crime to threaten or corruptly persuade a witness

---

[3] A jury demand is not yet due. Rule 38.

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Gordon Rees Scully Mansukhani LLP
300 S. 4ᵗʰ Street, Suite 1550
Las Vegas, Nevada 89101

- **NRS 199.240 & NRS 199.230**: Prohibits using threats or deceit to influence witness testimony

- **NRS 207.190**: Prohibits coercion through intimidation or threats

- **18 U.S.C. § 1503 & NRS 199.300**: Prohibits intimidation of judicial personnel or jurors.

- **NRS 200.571 & NRS 200.575**: Prohibits stalking and harassment.

To date, Plaintiff has violated each of these statutes. As to Ms. Spain, Dr. Ratliff, YeVonne the UNR Dean of the School of Social Work, Plaintiff is using threats and intimidation, as well as deceitful rhetoric to influence witness testimony. Plaintiff's YouTube videos, disparagement of trial counsel, and belittling of the Court's authority are intended to prevent witness testimony and communicate to the jury that if they rule against Plaintiff, they are next. If Plaintiff cannot respect the officers of this Court or the witnesses in the case, jurors who fear his tactics will certainly be swayed by his intimidation and threats. Finally, Plaintiff's actions qualify as coercion, stalking, and harassment against counsel. BOC respectfully requests that the Court take action to halt and remedy Plaintiff's ongoing misconduct.

## C.    Plaintiff's Course of Conduct is Prejudicial

Plaintiff's communications and social-media posts are not benign; they were disturbing, disruptive, designed to intimidate, and are prejudicial not only to the parties, counsel, and the witnesses, but also to the orderly administration of this litigation. Further, the videos and posts are not isolated or spontaneous. They reflect a continuing course of conduct that escalated over time despite Plaintiff's awareness that doing so is improper.

The repeated publication of these statements has required counsel to expend additional time and resources to monitor, preserve, and respond to conduct occurring wholly outside the litigation. The people targeted by Plaintiff are scared and have concrete safety concerns

regarding retaliation by Plaintiff or as a result of Plaintiff's targeted coercion. Plaintiff's acts are intended to chill the parties' rightful participation in this matter and force a favorable outcome for Plaintiff outside the boundaries of this litigation.

The parties, witnesses, counsel, and the court have a right to be free from criminal acts, stalking and harassment. At no point in litigation should counsel need to move personal residences due to a party's hostile extrajudicial behavior. And, if Plaintiff's actions toward counsel are so combative, it is no wonder that his intimidation has led to fear in the parties and witnesses.

Plaintiff's conduct is improper and prejudicial. Plaintiff's conduct is not advocacy; rather, it interferes with the ability of the parties, witnesses, and counsel to participate freely in the proceedings, chills truthful testimony, and diverts counsel and the Court from the merits of this case. Courts have repeatedly recognized that intimidation and harassment outside of the courtroom threaten the integrity of judicial proceedings and warrant corrective action to prevent prejudice, ensure fairness, and preserve respect for the judicial process.

## V.    THE FIRST AMENDMENT DOES NOT PROTECT PLAINTIFF'S ACTIONS

The First Amendment does not entitle a litigant to publish baseless, inflammatory remarks disparaging opposing counsel or judicial officers in an effort to harass them into conceding favorable settlement terms or judicial decisions. *Beauharnais v. People of State of Ill.*, 343 U.S. 250, 255–56 (1952) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words ...."); *Lewis*, 534 F.2d at 1122 ("Parties certainly do not have a right to obtain a settlement through duress, harassment, or overbearing conduct.... There is no reason the recurrent harassing conduct of a party in pursuit of a settlement may not be enjoined.").

-17-

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

And the First Amendment does not shield improper tactics used by litigants to advance their interests, even if those tactics involve the communication of a message. *United States v. Fulbright,* 105 F.3d 443, 452 (9th Cir.1997) (rejecting First Amendment challenge to obstruction of justice statute where litigant seeking bankruptcy protection mailed a "notice" to judge charging him with crimes and filed a "citizens' arrest warrant" with the bankruptcy court); *cf. Zal v. Steppe,* 968 F.2d 924, 927–29 (9th Cir.1992) (upholding, against First Amendment challenge, contempt citation against attorney defending abortion protestors who used inflammatory language during court proceedings to refer to abortion providers, though prohibited from doing so by an order in limine) *overruled as to deliberate ignorance instructions as stated in United States v. Heredia,* 483 F.3d 913 (9th Cir. 2007). Where the court has entered an injunction to protect a party from harassment and interference with the exercise of his rights, the First Amendment will not operate as an excuse for harassing behavior. *Cf., e.g., In re Andrus, 189 B.R. 413* (N.D. Ill. 1995) (rejecting First Amendment challenge to contempt citation against creditor who violated injunction against debt collection efforts by harassing debtor with signs accusing him of being a "deadbeat" and by verbally haranguing and threatening him concerning the debt).

While attorneys and other trial participants do not lose their constitutional rights at the courthouse door, the Supreme Court has suggested that it is appropriate to impose greater restrictions on the free speech rights of trial participants than on the rights of nonparticipants. *Levine v. U.S. Dist. Court for Cent. Dist. of California,* 764 F.2d 590, 595 (9th Cir. 1985). Further, "[i]n dictum," the Ninth Circuit has "encouraged the use of such orders." *Id.*, 764 F.2d at 596 citing *Farr v. Pitchess,* 522 F.2d 464, 468–69 (9th Cir.1975).

Further, courts have made a distinction between communication and harassment *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992) and have rejected arguments that the First

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Amendment allows a person to make harassing or threatening communications. *United States v. Waggy,* 936 F.3d 1014, 1019 (9th Cir. 2019) ("We rejected the defendant's First Amendment challenge because the statute in question 'proscribes harassing and intimidating conduct' and not speech, even though speech (text messages and emails) was involved in the defendant's conduct."); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) ("Although restrictions based upon conduct may incidentally restrict speech, the courts have found that such a restriction poses only a minimal burden on speech."); *Golden v. Pac. Mar. Ass'n,* 786 F.2d 1425, 1427 (9th Cir. 1986) ("district court has power under § 1651(a) to enjoin litigants who are abusing court system by harassing their opponents").

The "harassing conduct need not be personally communicated to its intended target to constitute stalking—communications directed through third parties can amount to harassment and, thus, stalking." *Eggum v. Holbrook,* 2024 WL 4100238, at *1 (9th Cir. Sept. 6, 2024). As noted by the Seventh Circuit,

> [m]isconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court.

*Barnhill v. United States,* 11 F.3d 1360, 1368 (7th Cir. 1993) (noting in affirming a Rule 41(b) dismissal that "[a] trial court is entitled to say, under proper circumstances, that enough is enough ...").[4]

---

[4] Federal district courts regularly enjoin litigants from distorting the judicial process through harassment. *Test Masters*, 428 F.3d at 580 (noting that district courts "have the power to enjoin harassing communication" and "repeated invasions of privacy"); *United Artists Corp. v. United Artist Studios LLC*, 2019 WL 6917918, at *10-12 (C.D. Cal. Oct. 17, 2019) (finding "[c]onduct that might not be harassing under other circumstances becomes so ... because it is obvious that the [defendant] is improperly trying to intimidate anyone who dares oppose him" and enjoining continued harassment by the defendant); *Myart v. Taylor,* 2016 WL 5376227, at *4-5 (W.D. Tex. Sept. 26, 2016) (enjoining a party from further "harassment in connection with th[e] suit"

In *Stewart v. Mikkelsen,* 2024 WL 4252755, at \*1 (W.D. Wis. Sept. 20, 2024) the Western District of Wisconsin addressed a pro se litigant who created a YouTube video titled "Revern Eagle Community Activist. Forensic Peer Sup." containing sexually threatening language directed at opposing counsel Attorney Ryan Truesdale. The litigant stated in the video: "We finally understand that Atty. Ryan Truesdale is leading the saints. (Laughter). Stop rookie! Stop! I got to do it to ya. It's Revern Eagle here. He gone get in that ass like a piece of shit that won't come out your butt. A turd that won't fall out your ass, uh. He gonna get in ya good."

Significantly, the court held that "Whether Stewart meant to sexually threaten Attorney Truesdale or he meant his crude language as a metaphor is beside the point: his language was unnecessarily provocative and threatening, particularly in light of Stewart's previous threats to counsel." The *Stewart* court imposed comprehensive sanctions, including dismissal of all the litigant's current cases and a complete filing bar restricting him from filing any civil lawsuits except habeas corpus petitions.

Similar to *Stewart*, threats to counsel are particularly egregious and merit judicial intervention. The First Amendment does not allow harassment or threats in legal proceedings, and courts have the authority to enjoin such conduct to protect the judicial process.

## VI.    ALTERNATIVELY, THE COURT MAY ISSUE A TRO

A party seeking a preliminary injunction must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if preliminary relief is not granted, (3) the balance of equities is in their favor, and (4) an injunction is in the public interest. *Winter v. Natural*

---

through extrajudicial communications); *Teledyne Technologies, Inc. v. Shekar*, 2015 WL 5438648, at \*2-3 (N.D. Ill. June 17, 2015) (enjoining the defendant from: "(1) threatening opposing counsel, court staff, or witnesses ... (2) otherwise engaging in threatening, intimidating, or abusive communications with such individuals"); *Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1353-54 (D. Utah 2009) (enjoining plaintiff from further "harassing and abusive contacts, including repeated phone calls and abusive writings.").

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

*Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. *Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "Orderly and expeditious resolution of disputes is of great importance to the rule of law ... [and b]y the same token, delay in reaching the merits ... is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).

In *Myart*, like this case, the Western District of Texas issued a TRO enjoining a *pro se* from threatening or harassing the parties during the pendency of the litigation. *Id.*, 2016 WL 5376227, at *4-5. There, the *pro se* litigant posted videos of recorded telephone calls and opposing parties and their offices. The *Myart* court recognized that "[c]ourts have made a distinction between communication and harassment.... The difference is one between free speech and conduct that may be proscribed." *Id.*, 2016 WL 5376227, at *4. The *Myart* court recognized that the *pro se* litigant "crossed the line from civil communications with Defendants to harassment in connection with this suit." *Id.*

Similar to the Court's previous TROs, and based on the items outlined above, BOC has a likelihood of success in showing that Plaintiff has engaged in a coercive course of conduct that must be curtailed. The parties, witnesses, potential jurors, counsel, and the courts will be irreparably harmed if relief is not granted. The threats, intimidation, and harassment will continue, causing witnesses to step back from the litigation, counsel to withdraw, the public to lose faith in the judicial system, and mental or physical harm. The balance of the equities favors restraining threats, intimidation, and harassment of the parties, witnesses, potential jurors, counsel, and the courts to allow for the orderly administration of disputes. For these reasons, and

-21-

those stated above, sanctions and an order restraining Plaintiff's course of conduct are in the public interest.

## VII.     ANY ORDER SHOULD REQUIRE COMPLIANCE FROM THE SOCIAL MEDIA PLATFORMS

In addition to prohibiting Plaintiff from continuing his course of conduct and harassment of counsel, BOC further requests that it issue an order directed at the social media platforms requiring their compliance. The court has the power to issue orders to the social media platforms requiring that they prohibit any content that harasses, threatens, intimidates, or otherwise targets parties, witnesses, counsel, and the court in a litigation. *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1070 (9th Cir. 2000) ("A district court with subject-matter jurisdiction over a case has the power to issue orders relating to third parties.") As stated by *Bernard v. Air Line Pilots Ass'n, Int'l, AFL-CIO,* 873 F.2d 213, 215 (9th Cir. 1989), the court may enjoin a third-party if those matters are inextricably bound to the relief sought. *Id.*; 28 U.S.C. § 1292(a)(1).

Plaintiff's social media posts, including the YouTube videos, are the platforms Plaintiff is using to engage in his campaign of harassment and intimidation; thus, the social media platforms are inextricably bound to the relief sought. In short, the Court may issue an order demanding that the social media platforms remove the content and restrict any future posts by Plaintiff relating to this litigation or any of the people involved.

## VIII.     MONETARY CIVIL SANCTIONS ARE APPROPRIATE

Civil sanctions, such as those that are "strictly compensatory or remedial" the sanction may "go no further than to redress the wronged party for losses sustained and may not impose any additional consequence as punishment for the sanctioned party's misbehavior." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1089 (9th Cir. 2021) (internal quotations omitted). Federal court's apply a "but-for" causation standard to impose compensatory sanctions. *Id.,* 985 F.3d at

-22-

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1089–90 ("In other words, but for the sanctionable misconduct, would there be any harm warranting compensatory relief? If so, a sanction might be available but must be limited to compensating for the specific harm. If not, the sanction would appear to be punitive.").

But-for Plaintiff's course of conduct, this Motion would not be necessary. Further, Plaintiff is aware that his coercive conduct is disfavored by the Court due to two previous TROs restraining this precise behavior. Therefore, BOC respectfully requests that Plaintiff be ordered to pay its attorneys' fees related to the motion, with BOC submitting the appropriate fee motion to the Court within 14 days of the issuance of an order outlined herein.

## IX.    CONCLUSION

Litigation must be conducted in the courtroom, not through intimidation campaigns designed to harass opposing parties, counsel, witnesses, and the court. Allowing this conduct to continue unchecked would invite abuse of the judicial process and undermine public confidence in the rule of law, as well as chill participation in this litigation and prevent adjudication on the merits. For these reasons, BOC respectfully requests that the Court grant this motion in its entirety.

Dated: January 5, 2026

Respectfully submitted by:

GORDON REES SCULLY
MANSUKHANI, LLP

By: */s/ Rachel L. Wise*
CRAIG J. MARIAM, ESQ.
Nevada Bar No. 10926
RACHEL L. WISE, ESQ.
Nevada Bar No. 12303
PAULYNA T. GARCIA
Nevada Bar No. 17196
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

***Attorneys for Defendant Build Our
Center Inc.***

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that on this date, I deposited for mailing in the U.S. Postal Service, with postage fully prepaid, a true and correct copy of the foregoing document in an envelope addressed to the following:

DREW RIBAR
3480 PERSHING LANE
WASHOE VALLEY, NV 89704

I also certify that on this date, the foregoing was electronically filed with the United States District Court.  Electronic service of the foregoing document shall be made in accordance with the Master Service List.

Dated: January 5, 2026

/s/ Rachel L. Wise
Rachel L. Wise