CRAIG J. MARIAM
Nevada Bar No. 10926
RACHEL L. WISE
Nevada Bar No. 12303
PAULYNA T. GARCIA
Nevada Bar No. 17196
**GORDON REES SCULLY MANSUKHANI, LLP**
300 South Fourth Street, Suite 1550
Las Vegas, Nevada  89101
Telephone: (702) 577-9300
Facsimile: (702) 255-2858
Email: cmariam@grsm.com
        rwise@grsm.com
        ptgarcia@grsm.com

*Attorneys for Defendant Build Our Center Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DREW RIBAR,<br><br>    Plaintiff,<br><br>v.<br><br>WASHOE COUNTY, et al. ,<br><br>    Defendants. | Case No. 3:24-cv-00526-ART-CSD<br><br>**BUILD OR CENTER INC.'S REPLY IN SUPPORT OF *EMERGENCY* MOTION FOR SANCTIONS AND AN ORDER PROHIBITING PLAINTIFF'S ONGOING HARASSING AND THREATENING CONDUCT** |

Defendant Build Our Center Inc. ("BOC"), by and through its undersigned counsel, respectfully hereby files its Reply in Support of Build Our Center Inc.'s Emergency Motion [Doc. No. 251] (the "Motion") for Sanctions and an Order Prohibiting Plaintiff's Ongoing Harassment and Threatening Conduct (the "Reply"). This Reply is made and based on the pleadings and papers filed in this action, the attached Memorandum of Points and Authorities, and any oral argument the Honorable Court may require.

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

## Table of Contents

I.     INTRODUCTION ....................................................................................................... 1

II.    BOC'S FOLLOWING ARGUMENTS SHOULD BE DEEMED ADMITTED ................... 2

III.   CORRECTIONS REGARDING PLAINTIFF'S ARGUMENTS ..................................... 4

IV.    PLAINTIFF'S FIRST AMENDMENT ARGUMENT FAILS ......................................... 5

A.     Plaintiff's Characterization of his Statements as "Political Commentary" Does Not Protect Him From Consequences for His Harassing and Threatening Behavior ....................................... 5

B.     Plaintiff's Statements are Not Political Speech .................................................... 7

C.     Plaintiff's Argument that Criticism of Public Figures is Not Harassment Rests on a Fundamental Error: BOC's Counsel Are Not Public Figures ........................................... 10

V.     BOC'S COUNSEL EASILY MEETS THE STANDARD FOR INJUNCTIVE RELIEF... 12

VI.    PLAINTIFF'S REQUEST FOR AN EVIDENTIARY HEARING IS IMPROPER ........ 13

VII.   PLAINTIFF'S ANTI-SLAPP ARGUMENT IS INAPPLICABLE ............................... 14

VIII.  PLAINTIFF'S REMAINING ARGUMENTS ARE MERITLESS AND DO NOT UNDERMINE THE RELIEF SOUGHT .................................................................................. 16

B.     Plaintiff's "Paper Warfare" Argument is Unsupported and Irrelevant ............................ 19

IX.    PLAINTIFF'S SELF-SERVING DECLARATIONS REGARDING HIS INTENT ARE NOT ENOUGH ................................................................................................................ 20

X.     EVIDENTIARY OBJECTIONS ................................................................................. 21

B.     Plaintiff Cannot Make Legal Conclusions ........................................................... 22

XI.    CONCLUSION ........................................................................................................ 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

<u>**Table of Authorities**</u>

**Cases**

*Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 683, 106 S.Ct. 3159 (1986)........................ 8

*Bolger v. Youngs Drug Products Corp*., 463 U.S. 60 (1983) ........................................................ 6

*Borough of Duryea, Pa. v. Guarnieri,* 564 U.S. 379, 405, 131 S. Ct. 2488, 2505, 180 L. Ed. 2d
   408 (2011) ............................................................................................................................... 7

*Brown v. Hartlage,* 456 U.S. 45, 61, 102 S. Ct. 1523 (1982) ...................................................... 7

*Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 341, 130 S. Ct. 876, 899, 175 L. Ed. 2d
   753 (2010) ............................................................................................................................... 8

*Civil Service Comm'n v. Letter Carriers,* 413 U.S. 548, 557, 93 S.Ct. 2880 (1973)..................... 8

*Counterman v. Colorado*, 143 S. Ct. 2106 (2023) ...................................................................... 4

*Desrochers v. City of San Bernardino,* 572 F.3d 703, 710 (9th Cir. 2009) ................................. 7

*Diamond Resorts Int'l, Inc. v. Reed Hein & Associates, LLC*, 217CV03007APGVCF, 2021 WL
   2017294 (D. Nev. Mar. 1, 2021)............................................................................................. 14

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759, 105 S. Ct. 2939, 2945,
   86 L. Ed. 2d 593 (1985) ......................................................................................................... 7

*Earl v. Conejo Cap. Partners LLC*, No. CV-109317-GHKJCGX, 2011 WL 13217766  (C.D. Cal.
   Feb. 7, 2011) ......................................................................................................................... 14

*Early Warning Servs., LLC v. Brandon O'Loughlin, P.A.Z.E. LLC*, 24-7315, 2025 WL 1895313
   (9th Cir. July 9, 2025) ............................................................................................................ 21

*Eu v. San Francisco Cnty. Democratic Cent. Comm.,* 489 U.S. 214, 223, 109 S. Ct. 1013, 1020
   (1989) .................................................................................................................................... 7

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.,* 551 U.S. 449, 469–70, 127 S. Ct. 2652
   (2007) ................................................................................................................................. 5, 7

*Fed. Trade Comm'n v. Publishers Bus. Servs., Inc*., 208CV00620PMPPAL, 2009 WL 10692838
   (D. Nev. Oct. 30, 2009)..................................................................................................... 21, 22

*Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209 (1964) .................................................... 5

*Gertz v. Robert Welch, Inc.,* 94 S. Ct. 2997 (1974) ................................................................. 10

*Hafter v. Clark*, 992 F. Supp. 2d 1063 (D. Nev. 2014)............................................................... 5

*Hetter v. Eighth Judicial Dist. Court of State In & For Cnty. of Clark,* 110 Nev. 513, 517, 874

P.2d 762, 764 (1994) ........................................................................................................... 6

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ........................................................ 14

*Houston v. Downey*, 2:21-CV-01337-JAD-NJK, 2024 WL 3859645 (D. Nev. Aug. 19, 2024) .. 19

*Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547 (9th Cir. 1986)12

*Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129, 97 S.Ct. 2532 (1977) 8

*Katz v. Steyn*, 218CV00997JADGWF, 2019 WL 13211070 (D. Nev. Mar. 25, ......................... 22

*Levine v. U.S. Dist. Court for Cent. Dist. of California,* 764 F.2d 590 (9th Cir. 1985) ............... 8

*Madsen v. Women's Health Ctr., Inc.,* 512 U.S. 753 (1994) ....................................................... 11

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051 (9th Cir. 2008) ....................... 21

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1970) ............................................................... 11

*New York Times Co. v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710 (1964) ................................... 6

*Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284 (9th Cir. 2014) .................................................. 4

*Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 2002) ...................................................... 16

*Parker v. Levy,* 417 U.S. 733, 759, 94 S.Ct. 2547 (1974) ........................................................... 8

*Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 719, 57 P.3d 82, 91 (2002) ......................... 10

*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125 (9th Cir. 2022) ................... 4

*Prager Univ. v. Google LLC,* 951 F.3d 991, 995 (9th Cir. 2020) ................................................. 5

*Reges v. Cauce,* 162 F.4th 979, 998 (9th Cir. 2025) .................................................................... 7

*Schenck v. Pro-Choice Network of W. New York,* 519 U.S. 357 (1997) ...................................... 11

*Schweickert v. Nevada Sys. of Higher Educ.,* 3:06-CV-0531-RCJ-RAM, 2010 WL 11636499 (D.

Nev. Mar. 3, 2010) ............................................................................................................. 16

*Shattuck Denn Min. Corp., (Iron King Branch) v. N. L. R. B.,* 362 F.2d 466, 470 (9th Cir. 1966)

.......................................................................................................................................... 19

*Snyder v. Phelps*, 131 S. Ct. 1207 (2011) ................................................................................. 10

*Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) ............................. 9

**Rules**

Fed. R. Civ. P. 78(b) .............................................................................................................. 11

-iii-

Fed. R. Evid. 701 ................................................................................................................... 19

Local Rule 78-1 ................................................................................................................... 11

**Statutes**

NRS 41.660(7)(a) ................................................................................................................ 12

NRS 41.670(2) .................................................................................................................... 16

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is not a Motion about speech: It is a Motion that addresses Plaintiff's course of conduct. The Court has every right to stop Plaintiff's harassing, threatening, and illegal course of conduct—an issue that Plaintiff does not address in his opposition to BOC's Motion (the "Opposition"). Instead, Plaintiff reiterates arguments already before this Court, misstates settled law, and ignores the undisputed factual record. [Doc. No. 255]. Nothing in Plaintiff's Opposition explains why BOC's requested relief should not be granted.

Plaintiff's attempts to portray his conduct as protected speech under the First Amendment fail. Regardless of how Plaintiff characterizes his conduct, the First Amendment does not support Plaintiff's harassing, threatening, and intimidating behavior. Plaintiff's reliance on principles governing criticism of public figures is misplaced as BOC's counsel are not public figures.

Further, BOC easily satisfies the standard for injunctive relief. Especially when considering that Plaintiff fails to dispute multiple factors required for such relief and the undisputed record demonstrates a continuing risk of escalation absent court intervention.

Next, Plaintiff's request for an evidentiary hearing is improper as there are no disputes requiring further proof, and the record is sufficient to resolve all issues. Similarly, Plaintiff's anti-SLAPP argument is improper. Nevada's anti-SLAPP laws apply only to the dismissal of claims, not motions, and Plaintiff's repeated attempts to invoke anti-SLAPP laws are baseless.

Plaintiff's remaining arguments are meritless and do not undermine BOC's requested relief. The exhibits submitted by BOC in support of their Motion do not "exonerate" Plaintiff. On the contrary, they demonstrate the impact Plaintiff's conduct has had and render Plaintiff's allegations unfounded. Likewise, Plaintiff's claim of "paper warfare" is unsupported and

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

contradicted by the record, which shows that Plaintiff, not BOC, has filed the overwhelming

majority of motions.

Finally, Plaintiff's declaration is both disingenuous and improper. It is not limited to

factual assertions, but is full of misleading statements and impermissible legal conclusions.

Plaintiff's attempt to use his declaration for self-serving characterizations is improper. For these

reasons, BOC respectfully moves for the issuance of an emergency order regulating Plaintiff's

threatening, harassing, and coercive conduct in connection with this case.

## II.    BOC'S FOLLOWING ARGUMENTS SHOULD BE DEEMED ADMITTED

Under LR 7—29(d), "[t]he failure of an opposing party to file points and authorities in

response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees,

constitutes a consent to the granting of the motion." Plaintiff failed to respond to many issues

raised in BOC's Motion [Doc. No. 251], which constitutes consent to granting the Motion as to

the following items:

- Plaintiff fails to address sanction standards, Rule 11 sanctions, the Court's inherent

    sanction powers, LR 11-8, and 28 U.S.C. § 1927, which support imposing sanctions on a

    party who abuses the judicial process [Doc. No. 251, 9:13-10:26];

- Plaintiff did not meaningfully respond to BOC's assertions that Plaintiff's conduct will

    influence potential jurors, impugn the Court's integrity, and intimidate witnesses, in

    violation of 18 U.S.C. 2261A(2), 18 U.S.C. § 1512, NRS 199.240, NRS 199.230, NRS

    207.190, 18 U.S.C. § 1503, NRS 199.300, NRS 200.571 and NRS 200.575 Doc. No. 251,

    15:9-16:18];

- Plaintiff fails to address controlling and relevant authority such as:

    o   *Humphries v. Button,* 2025 WL 509254, at *3 (D. Nev. Feb. 14, 2025), wherein

        the court recommended case-terminating sanctions against a *pro se* litigant who

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

engaged in the online harassment of Plaintiffs, witness intimidation, impugned the court's integrity, burdened the court with frivolous motions, and filed bar complaints against opposing counsel [Doc. No. 251, 11:2-5; 14:10-15:8];

- o *Fredin v. Middlecamp,* 2020 WL 6867424 (D. Minn. Nov. 23, 2020), *aff'd, Fredin v. Middlecamp,* 855 Fed. Appx. 314 (8th Cir. 2021)*,* which the court relied on its inherent sanction authority to impose comprehensive sanctions on a *pro se* litigant following his online assault on the reputations of opposing counsel, judges, and court staff [Doc. No. 251, 11:26-14:2];

- o *Stewart v. Mikkelsen,* 2024 WL 4252755, at *1 (W.D. Wis. Sept. 20, 2024), wherein the court-imposed sanctions on a *pro se* litigant who created a YouTube video containing sexually threatening language directed at opposing counsel [Doc. No. 251, 20:1-19];

- o *Myart v. Taylor*, 2016 WL 5376227, at *4-5 (W.D. Tex. Sept. 26, 2016), where the court issued a TRO enjoining a *pro se* litigant from threatening or harassing parties during the pendency of the litigation after the *pro se* litigant posted videos of recorded telephone calls and opposing parties and their offices [Doc. No. 251, fn. 4; 21:9-21:2];

- Plaintiff does not challenge BOC's position that Plaintiff course of conduct is prejudicial as to anyone involved in the case (the parties, counsel, or witnesses) who could (and already do) fear retaliation as a result of Plaintiff's targeted coercion thereby discouraging their participation in this case [Doc. No. 251, 16:19-17:17];

- Plaintiff did not address BOC's request that this Court issue an order requiring Plaintiff's compliance from the social media platforms to ensure Plaintiff is prohibited from his course of conduct and harassment of counsel [Doc. No. 251, 27:3-22]; and

- Plaintiff did not meaningfully contest BOC's request for monetary civil sanctions related to the Motion since Plaintiff's course of conduct necessitated the filing of the Motion [Doc. No. 251, 22:23-23:9].

Plaintiff's failure to address the arguments above constitutes consent under the Local Rules. By failing to respond, Plaintiff has waived any opposition to them, and the Court may treat those issues as conceded. Accordingly, these concessions independently warrant granting BOC's Motion.

### III.   CORRECTIONS REGARDING PLAINTIFF'S ARGUMENTS

As mentioned above, Plaintiff's Opposition fails to address several of BOC's arguments and at times even mischaracterizes BOC's arguments. BOC's Motion was a Motion for ***sanctions*** based on Plaintiff's ***conduct***. Despite this, Plaintiff bases his Opposition on the standard for injunctive relief and focuses his arguments on an assumption that BOC is attempting to restrict his speech.

BOC's primary request in their Motion is for sanctions pursuant to relevant sanctions standards, the court's inherent powers, 28 U.S.C. § 1927, Rule 11, and LR 11-8. Yet, Plaintiff fails to address a single one of these requests and instead, bases his entire Opposition on the legal standard for injunctive relief. BOC requests a TRO, in the alternative, not as its primary form of relief – an argument which takes up approximately 1 page out of BOC's 29-page Motion. Plaintiff's failure to address BOC's primary request independently justifies granting BOC's Motion.

Further, although Plaintiff's Opposition is solely about speech, BOC's Motion was focused on regulating Plaintiff's conduct, not his speech. While it is likely that some of Plaintiff's speech is also not protected under the Constitution, BOC is focused on curtailing Plaintiff's harassing, intimidating, and threatening conduct, all of which are not protected under

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

-4-

the Constitution. Plaintiff's entire Opposition fails to meaningfully respond to any of the central concerns outlined in BOC's Motion.

## IV.    PLAINTIFF'S FIRST AMENDMENT ARGUMENT FAILS

**A.    Plaintiff's Characterization of his Statements as "Political Commentary" Does Not Protect Him From Consequences for His Harassing and Threatening Behavior**

Plaintiff's First Amendment argument fails because the Constitution does not protect harassment, doxxing, or targeted abuse of private individuals, regardless of how Plaintiff labels his conduct. BOC has already fully explained in separate filings why Plaintiff's First Amendment argument fails as a matter of law. [ECF No. 225 at 5:12-11:5 and ECF No. 232 at 14:1-15:25]. Because Plaintiff relies on this argument again, BOC briefly notes again the reasons why Plaintiff's position fails:

- NRS 200.591 allows anyone who reasonably believes they are being stalked, aggravatedly stalked, or harassed to seek a temporary or extended protective order from a court.

- "True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 143 S. Ct. 2106, 2113-14 (2023).

- Journalists do not have a "special license to break laws of general applicability in pursuit of a headline." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1134 (9th Cir. 2022) (journalist's decision to release videos on the internet was not protected by the First Amendment).

- Plaintiff cannot engage in defamatory acts simply because he claims to be a journalist (or simply wants to do so). *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1290 (9th Cir. 2014) ("[I]n the context of defamation law, the rights of the institutional media

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

are no greater and no less than those enjoyed by other individuals engaged in the same activities.").

- Plaintiff's purported political speech or alleged candidacy does not provide him *carte blanche* to intimidate litigants, their counsel, witnesses, influence the jury pool, or impugn the integrity of this Court. *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.,* 551 U.S. 449, 469–70, 127 S. Ct. 2652, 2667 (2007) (To constitute political speech "a court should find that an ad is the functional equivalent of express advocacy only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate.");[1] *Hafter v. Clark*, 992 F. Supp. 2d 1063, 1067 (D. Nev. 2014) (finding the defendant's statements "are not protected political speech, because knowingly false statements or statements made with reckless disregard for the truth do not enjoy constitutional protection" in rejecting the plaintiff's "political speech" argument) *citing Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209 (1964).

- *Prager Univ. v. Google LLC,* 951 F.3d 991, 995 (9th Cir. 2020) ("Despite YouTube's ubiquity and its role as a public-facing platform, it remains a private forum, not a public forum subject to judicial scrutiny under the First Amendment.").

- Plaintiff's commercial speech, such as using his YouTube channel to market and try to sell his towing business, receives less protection than "other constitutionally safeguarded forms of expression." *Bolger v. Youngs Drug Products Corp*., 463 U.S.

[1] *Fed. Election Comm'n* addressed whether Section 203 "of the Bipartisan Campaign Reform Act of 2002 (BCRA), 116 Stat. 91, 2 U.S.C. § 441b(b)(2) (2000 ed., Supp. IV), makes it a federal crime for any corporation to broadcast, shortly before an election, any communication that names a federal candidate for elected office and is targeted to the electorate." *Id*., 551 U.S. 449, 455–56. The United States Supreme Court considered whether § 203 was facially overbroad under the First Amendment because it applied to "express advocacy" and "issue advocacy."

60, 64–65 (1983) ("our decisions have recognized the 'commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.") (internal quotation marks omitted); [Doc. No. 203-32].

- Plaintiff cannot use BOC or its counsel's name and likeness for advertising or other commercial purpose without their consent. *Hetter v. Eighth Judicial Dist. Court of State In & For Cnty. of Clark,* 110 Nev. 513, 517, 874 P.2d 762, 764 (1994) (common law misappropriation tort prohibits use of the name or likeness of an ordinary person for a commercial purpose).

Even if the Motion was about speech, which it is not, from 1791 to present, the First Amendment has permitted restrictions on speech, with the historical restrictions applying to contempt, advocacy of unlawful acts, breach of the peace, solicitation of legal business, obscenity, defamation, fraud, incitement, and speech integral to criminal conduct: Which encompasses nearly each of Plaintiff's acts on his YouTube channel. *New York Times Co. v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710 (1964). While there are constitutional grounds to restrict Plaintiff's speech, BOC's Motion is not directed at Plaintiff's speech, but rather at his conduct. The record clearly reflects a course of harassing, doxxing, and targeted abuse of private individuals, conduct that falls outside of the scope of First Amendment protection. And Plaintiff cannot transform his course of misconduct into protected speech simply by relabeling it. Accordingly, Plaintiff's conduct falls outside of constitutional protection and remains subject to court intervention.

**B.    Plaintiff's Harassment is Not Political Speech**

Plaintiff has not engaged in political speech: He has engaged in vexatious and sanctionable conduct that requires this Court's intervention. To qualify as political speech,

Plaintiff must, among other things, address an issue of public concern. *Reges v. Cauce,* 162 F.4th 979, 998 (9th Cir. 2025); *Borough of Duryea, Pa. v. Guarnieri,* 564 U.S. 379, 405, 131 S. Ct. 2488, 2505, 180 L. Ed. 2d 408 (2011) (Scalia, concurrence in part, "the unique protection granted to political speech is grounded in the history of the Speech Clause. . ."). Further, political speech includes "debate on the qualifications of candidates [is] integral to the operation of the system of government established by our Constitution." *Eu v. San Francisco Cnty. Democratic Cent. Comm.,* 489 U.S. 214, 223, 109 S. Ct. 1013, 1020 (1989) (brackets in original). Another way to identify political speech is by who may respond politically. In *Brown v. Hartlage,* the United States Supreme Court found that the remedy for factually incorrect criticism of a political opponent is not a lawsuit, but competing speech. *Brown v. Hartlage,* 456 U.S. 45, 61, 102 S. Ct. 1523, 1533 (1982). A private individual, however, does not possess the same protections outlined under *Brown*.

Private disputes, such as this litigation and counsel's participation, do not constitute matters of "public concern" which is necessary to implicate the protections of political speech. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759, 105 S. Ct. 2939, 2945, 86 L. Ed. 2d 593 (1985) ("speech on matters of purely private concern is of less First Amendment concern."); *Desrochers v. City of San Bernardino,* 572 F.3d 703, 710 (9th Cir. 2009) ("speech that deals with individual personnel disputes and grievances' and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of 'public concern.") (internal citations and quotations omitted).

Plaintiff's grievance with private opposing counsel is a private dispute that does not touch of a matter of public concern. BOC's counsel is not a political candidate, has not entered any political race, has not consented nor participated in any discussion about political views (nor does counsel know what Plaintiff's political views are), and has not consented to engage in

-8-

political debate.[2] It is not possible for Plaintiff to appeal to the public's vote between BOC's counsel and Plaintiff because BOC's counsel is not participating in any political theater at all, nonetheless, one that involves Plaintiff. *See, e.g.*, [Doc No. 251, Exhibit J]. Thus, under *Brown*, BOC's counsel does not have the right or ability to supplement "competing speech" that remedies the incorrect factual statements Plaintiff renders, further supporting the fact that Plaintiff's speech is not political speech.

Even if Plaintiff's conduct somehow constituted political speech (which it does not), the United States Supreme Court has repeatedly applied restrictions that were based on "an interest in allowing governmental entities to perform their functions." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 341, 130 S. Ct. 876, 899, 175 L. Ed. 2d 753 (2010) referencing: *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 683, 106 S.Ct. 3159 (1986) (protecting the "function of public school education"); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129, 97 S.Ct. 2532 (1977) (furthering "the legitimate penological objectives of the corrections system" (internal quotation marks omitted)); *Parker v. Levy,* 417 U.S. 733, 759, 94 S.Ct. 2547 (1974) (ensuring "the capacity of the Government to discharge its [military] responsibilities" (internal quotation marks omitted)); *Civil Service Comm'n v. Letter Carriers,* 413 U.S. 548, 557, 93 S.Ct. 2880 (1973) ( "[F]ederal service should depend upon meritorious performance rather than political service"); *see e.g., Levine v. U.S. Dist. Court for Cent. Dist. of California,* 764 F.2d 590, 595 (9th Cir. 1985) (allowing the restraint of speech if: (1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest, (2) the order is narrowly drawn, and (3) less restrictive alternatives are not available). Such restrictions to political speech stand for the proposition that "there are certain

---

[2] This is especially true for Gordon Rees Scully Mansukhani, LLP, which is a private law firm.

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1    governmental functions that cannot operate without some restrictions on particular kinds of

2    speech." *Citizens United ,*558 U.S. at 341, 130 S. Ct. at 899.

3        As previously mentioned, and wholly ignored in Plaintiff's Response, Plaintiff's conduct

4    is the catalyst for the Motion, not his alleged "political speech." However, even if it were about

5    Plaintiff's speech, the Supreme Court has established that speech is not immune from restraint

6    when it falls within certain categories. Plaintiff's own actions, as documented in his YouTube

7    videos, fall within such categories.

8        Next, Plaintiff relies on *Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536 (2003) to claim

9    that true threats are not merely political hyperbole, but rather a serious expression of intent to

10   commit an act of unlawful violence. But Plaintiff's statements are not merely "political

11   hyperbole"—they are not political speech at all. BOC has extensively detailed all of Plaintiff's

12   inappropriate conduct including that of harassing, stalking, and doxing BOC and BOC's counsel.

13   Plaintiff's conduct goes beyond simple exaggeration or rhetorical commentary. It shows

14   Plaintiff's escalating conduct towards BOC and BOC's counsel. Further, nothing in *Virginia*

15   supports Plaintiff's attempt to characterize his conduct as protected speech. Rather, *Virginia*

16   recognizes that the government may regulate certain categories of expression consistent with the

17   Constitution. *Virginia*, 538 U.S. at 344, 123 S. Ct. at 1539. The relief sought is aimed at curbing

18   Plaintiff's ongoing pattern of harassing and threatening behavior and preventing further

19   escalation. Plaintiff's reliance on the First Amendment is misplaced and does not undermine

20   BOC's requested relief.

## C.    Plaintiff's Argument that Criticism of Public Figures is Not Harassment Rests on a Fundamental Error: BOC's Counsel Are Not Public Figures

BOC's counsel is not a public figure nor a public employee. Despite this, Plaintiff relies

on *Snyder v. Phelps*, 131 S. Ct. 1207 (2011), quoting language that does not appear in the

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

decision, which has been a repeated issue in Plaintiff's motion-practice. [Doc. No. 243 at 22:1-25:11 and ECF No. 227 at 11:24-14:9]. Plaintiff quotes *Snyder* to state that, "[t]o allow recovery for emotional distress caused by criticism of public officials would chill speech and undermine the central values of the First Amendment." [ECF No. 255 at 6:15-18]. A quote that is never mentioned in *Snyder*. Rather, in *Snyder*, the Supreme Court held that the First Amendment protected a church from tort liability for picketing because the church's speech addressed matters of public concern. *Snyder v. Phelps*, 131 S. Ct. 1207, 1219 (2011). In other words, this case offers no support for Plaintiff's argument because BOC's counsel are not public figures. Nothing in *Snyder* suggests that attorneys representing a party in litigation are public figures or that harassment of such individuals is entitled to heightened constitutional protection.

  To the contrary, courts consistently hold that attorneys do not become public figures merely by virtue of their professional role or their participation in litigation. *Gertz v. Robert Welch, Inc.,* 94 S. Ct. 2997, 3013 (1974) (holding that petitioner was not a public figure because he took no part in the criminal prosecution, never discussed the litigation with the press, and limited his participation in the civil litigation solely to his representation of a private client). It is well known that general public figures are those individuals "who achieve such pervasive fame or notoriety that [they] become[] a public figure for all purposes and in all contexts." *Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 719, 57 P.3d 82, 91 (2002). On the other hand, a limited-purpose public figure is a person who "voluntarily injects himself or is thrust into a particular public controversy or public concern and thereby becomes a public figure for a limited range of issues." *Id*. BOC's counsel is neither. Here, BOC's counsel did not voluntarily inject themselves into a public controversy and have no public role beyond their professional obligations to their private client. In short, Plaintiff cannot transform a campaign of harassment, doxxing, and

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

-11-

intimidation into protected speech by rebranding it as political commentary or by mischaracterizing private attorneys as public figures.

## V.    BOC'S COUNSEL EASILY MEETS THE STANDARD FOR TRO OR INJUNCTIVE RELIEF

In arguing that BOC's counsel does not meet the standard for injunctive relief, Plaintiff opposes only two of the four required factors, conceding, or at least failing to dispute, BOC's showing as to likelihood of success on the merits and the balance of equities. [See ECF No. 255 at 9:2-19]. Plaintiff argues that no irreparable harm exists because he has not made a physical threat, any harm is limited to "emotional discomfort," and there is allegedly no basis to conclude that future unlawful conduct is likely. BOC's counsel and multiple witnesses have submitted statements detailing the concrete and ongoing harm caused by Plaintiff's conduct, including intimidation, fear, and interference with counsel's ability to practice. Such harms are well recognized as irreparable, particularly where, as here, the conduct is ongoing and escalating. Plaintiff's disagreement with this testimony does not negate its existence or credibility, nor does it transform documented harm into speculation.

Plaintiff next attempts to assert that the public interest opposes prior restraint, while failing to explain how BOC's request is considered a prior restraint. To support his allegations, Plaintiff relies on *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1970). As has already been made clear in other filings, courts have repeatedly determined that the injunctive relief BOC seeks is not a "prior restraint." *Compare Schenck v. Pro-Choice Network of W. New York,* 519 U.S. 357, 372 (1997) (injunction is not a prior restraint); *Madsen v. Women's Health Ctr., Inc.,* 512 U.S. 753-54 (1994) (injunction is not viewpoint discrimination) *with Stuart*, 427 U.S. 539 (order restraining news media from publishing or broadcasting accounts of confessions or admissions made by the defendant in criminal matter improper). Further, Plaintiff is not on trial

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

for criminal activity and BOC is not a government actor, thus, the holdings under *Stuart* are inapplicable. Plaintiff's representation of the requested injunction mischaracterizes BOC's request. BOC seeks, in the alternative, injunctive relief due to Plaintiff's past and current conduct of harassment, intimidation and doxxing.

Because Plaintiff fails to meaningfully contest the factors for injunctive relief, and because the record clearly establishes irreparable harm that such relief is in the public interest, injunctive relief is plainly warranted.

## VI.    PLAINTIFF'S REQUEST FOR AN EVIDENTIARY HEARING IS IMPROPER

In support of Plaintiff's request for an evidentiary hearing to resolve an alleged factual discrepancy over the "Bobby Smith" email (which BOC refers to as the "Threatening Email"), Plaintiff cites to Fed. R. Civ. P. 78(b) and Local Rule LR 78-1. However, neither one of Plaintiff's cited rules concerns, much less supports, Plaintiff's request for an evidentiary hearing. Fed. R. Civ. P. 78(b) states "[b]y rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings." Meanwhile, Local Rule 78-1 states that any party making or opposing a motion may request oral argument, and sets forth the procedures for doing so. Neither rule addresses evidentiary hearings or creates any entitlement to one.

Moreover, case law does not require an evidentiary where, as here, the record is sufficient for the Court to resolve the issues presented. The Ninth Circuit established a test for when evidentiary hearings are required: "[w]here sharply disputed the facts are simple and little time would be required for an evidentiary hearing, proceeding on affidavits alone might be inappropriate. But an evidentiary hearing should not be held when the magnitude of the inquiry would make it impractical." *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986).Courts must consider "general concepts of fairness, the

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

underlying practice, the nature of the relief requested, and the circumstances of the particular cases." *Id.*

Here, Plaintiff seeks an evidentiary hearing to resolve alleged factual disputes surrounding the Threatening Email, whether any private information has been disclosed, and whether the defense is improperly characterizing protected speech as threatening. Plaintiff, however, fails to explain why an evidentiary hearing is required to resolve any of these issues or why the existing record is insufficient. As mentioned above, whether the Threatening Email is from Plaintiff or not, it was submitted primarily to show the effect that Plaintiff's conduct is having on BOC's counsel, whether indirectly or not, rendering any alleged inconsistency immaterial. Further, to the extent Plaintiff seeks an evidentiary hearing to address the authentication of the Threatening Email, that request fails. As is explained in Section VI.A., below, the Threatening Email has been authenticated, rendering an evidentiary hearing unnecessary. Similarly, the remaining two questions Plaintiff identifies – whether any private information has been disclosed, and whether the defense is improperly characterizing protected speech as threatening – can both be readily ascertainable from the record. More importantly, these questions improperly narrow the standard and do not reflect the core issues presented by BOC's Motion, thus deeming them immaterial.

To the extent the Court is inclined to grant a hearing on BOC's Motion, BOC asks this Court to issue a temporary restraining order prior to the hearing, and that BOC's counsel may appear remotely at such hearing, and any subsequent hearings.

## VII.    PLAINTIFF'S ANTI-SLAPP ARGUMENT IS INAPPLICABLE

Nevada's anti-SLAPP laws provide a limited vehicle to dismiss a *claim*, thus deeming it inapplicable to the instant *Motion*. Under NRS 41.660, anti-SLAPP applies only to pleadings, such as complaints, which are defined as an "action brought against a person" and include,

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

"without limitation, a counterclaim or cross-claim." NRS 41.660(7)(a). More, "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims."[3] *Diamond Resorts Int'l, Inc. v. Reed Hein & Associates, LLC*, 217CV03007APGVCF, 2021 WL 2017294, at *2 (D. Nev. Mar. 1, 2021) (quoting *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010)). State Anti-SLAPP laws do not and cannot restrict federal laws, federal rules of civil procedure, or federal court authority. *See Hilton,* 599 F.3d at 901; *Earl v. Conejo Cap. Partners LLC*, No. CV-109317-GHKJCGX, 2011 WL 13217766, at *3 (C.D. Cal. Feb. 7, 2011).

Despite being previously informed that Nevada's Anti-SLAPP statute applies only to the dismissal of claims and not motions [ECF Nos. 210 and 225], Plaintiff continues to invoke Nevada's anti-SLAPP law in an attempt to oppose BOC's Motion. [ECF No. 255 at 4:8-24]. Plaintiff fails to provide any legal authority explaining how or why Nevada's anti-SLAPP statute would apply to motions, nor does he cite any case recognizing such an application. Moreover, even assuming that Plaintiff believed anti-SLAPP laws could be applied to a claim in this case, it would have to be applied to Plaintiff's claims (which would also be a misapplication of Nevada's anti-SLAPP law) because BOC has not brought any claims against Plaintiff. Accordingly, Plaintiff's request to characterize his opposition to BOC's Motion (the "Opposition") as an anti-SLAPP motion is procedurally improper. As already established, Nevada's anti-SLAPP provisions do not apply to motions, and they cannot be asserted in the absence of an operative state-law claim.

///

///

---

[3] Anti-SLAPP suits, when properly brought, require a matter of public concern. Plaintiff's opposition does not address how his presumed right to threaten, harass, and dox counsel is a matter of public concern.

**VIII.    PLAINTIFF'S REMAINING ARGUMENTS ARE MERITLESS AND DO NOT UNDERMINE THE RELIEF SOUGHT**

**A.    Plaintiff's Contention That a Video "Exonerates" Him and That An Email is Inadmissible Do Not Support His Claims**

Plaintiff argues that a single video "exonerates" him and that the Threatening Email submitted by BOC in support of their Motion is inadmissible, but neither weaken BOC's arguments or the relief sought. Of the approximately seven videos BOC submitted in support of its Motion, Plaintiff challenges BOC's reliance on only one – the Silence Video. Plaintiff asserts that the Silence Video demonstrates that no threats were made, no unlawful conduct occurred, and that BOC's allegations are false. In support of this claim, Plaintiff merely states that the video was reviewed by YouTube's legal team who found that "the video was newsworthy, it involved public officials and litigation, and it did not violate privacy standards." [Doc. No. 255 at 7:9-13]. However, Plaintiff provides no evidence to substantiate this assertion. He does not attach an email, or any other communication showing that YouTube actually made such determinations. Plaintiff similarly fails to address this fact in his affidavit that he submitted in support of his Opposition. [*See* Doc. No. 255 at pp. 14-16]. However, even if such determinations have been made, they would be immaterial to BOC's purpose in submitting the Silence Video. BOC submitted the Silence Video to demonstrate Plaintiff's pattern of meritless and escalating accusations. Specifically, his statements accusing BOC's counsel of corruption and his admission that he contacted the Secretary of State regarding BOC's counsel. BOC's inclusion of the Silence Video was therefore necessary to show Plaintiff's conduct towards BOC and its counsel throughout this litigation. Plaintiff's conduct has already extended beyond this litigation when Plaintiff contacted the Secretary of State; emailed attorneys who are not involved in the instant case at Gordon Rees Scully Mansukhani, LLP; and threatened to file a bar

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1    complaint against BOC's counsel. And Plaintiff's conduct will continue to escalate absent

2    judicial intervention.

3         Plaintiff similarly argues that the Threatening Email received by BOC's counsel is not

4    attributable to him, asserting a lack of authentication and a supposed pattern of filing false

5    affidavits, but provides no evidence to support his argument.  Further, because the same

6    argument is currently pending before the Court in at least two different motions [ECF Nos. 220

7    and 222], BOC declines to burden the Court further by addressing items not before it for the

8    purposes of *this* Motion.

9         Turning to Plaintiff's remaining contention, first, courts have held that emails can be

10   authenticated when the party offering the email submits an affidavit authenticating such email.

11   *Schweickert v. Nevada Sys. of Higher Educ.,* 3:06-CV-0531-RCJ-RAM, 2010 WL 11636499, at

12   *5 (D. Nev. Mar. 3, 2010). A proper foundation for authentication of a document can be

13   established either by personal knowledge, or "any manner permitted by Federal Rule of Evidence

14   901(b) or 902." *Id.* (quoting *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002)).

15   "A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it,

16   used it, or saw others do so." *Id*. A document may also be authenticated under Rule 901(b)(4) by

17   its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken

18   in conjunction with circumstances." *Id*. In *Schweickert*, the court held that an email submitted in

19   support of a motion for summary judgement was authenticated by Schweickert in his Affidavit in

20   support of Plaintiff's Opposition to Summary Judgment. *Id*. The court further found that because

21   the exhibits appeared in the form of email correspondence with email addresses listing

22   individuals as the sender and recipient, the exhibits can be authenticated under Fed. R. Evid.

23   901(b)(4). *Id*.

Similarly, here, the Threatening Email was authenticated by BOC's counsel in the Declaration of Rachel Wise in Support of the Motion. [Doc. No. 251-2 ¶12]. Further, the Threatening Email appeared in the form of email correspondence which clearly displays the email address of the individual who sent it and lists the name of the person to whom it was sent. [*See* Doc. No. 251-6]. Therefore, the Threatening Email has clearly been authenticated.

Second, BOC explained that the email was either sent directly from Plaintiff or as a result of Plaintiff's conduct, including his public accusations and doxxing. The email was submitted to demonstrate the effects Plaintiff's conduct is having on BOC's counsel. The timing and context of the Silence Video and the Threatening Email further support BOC's argument. Plaintiff has repeatedly complained about receiving privacy complaints in his YouTube videos and has publicly identified BOC's counsel in that context. In the Silence Video, Plaintiff states, "So, this morning when I woke up, would you believe that I got a privacy complaint from YouTube? Now, I've gotten a couple of these before. It's from the same person. It's a gal named Rachel Wise and she works for this huge conglomerate, 50 state law firm…" [Motion, Exhibit F at 0:31-0:54]. The Silence Video was streamed live and posted to Plaintiff's YouTube channels on January 1, 2026. The following morning, January 2, 2026, at 7:05 a.m., BOC's counsel received the Threatening Email, which started off by saying, *inter alia*, "Why are you filing fictitious complaints to YouTube about privacy complaints?" [Doc. No. 251-6]. Plaintiff may attempt to characterize this sequence as coincidental or seek to distract from the connection between the Silence Video and the Threatening Email, but none of his arguments undermine the BOC's argument. The Silence Video and the Threatening Email collectively demonstrate the impact of Plaintiff's conduct, not his "exoneration," and Plaintiff's objections do nothing to negate it.

/ / /

/ / /

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

-18-

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    Plaintiff's "Paper Warfare" Argument is Unsupported and Irrelevant**

Plaintiff's assertion that BOC's Motion is "paper warfare" is unsupported, irrelevant, and does not address the merits of the relief sought. Plaintiff identifies no improper purpose, no violation of any rule, and no authority suggesting that the Court may deny BOC's requested relief based on speculation about litigation strategy. Nor could he since any "paper warfare" can only be attributed to Plaintiff. Plaintiff argues that since November 2025, the docket "has exploded from ECF 159 to ECF 254" [Doc. No. 235 at 9:23], yet what Plaintiff fails to mention is that in that time, he has filed approximately ***fourteen*** motions, while BOC has only filed approximately ***four*** motions.

Plaintiff then requests sanctions under NRS 41.670, which provides for sanctions upon granting a special motion to dismiss. As explained in Section V., above, anti-SLAPP motions cannot be used to oppose a motion, and as such does not apply to the instant case. However, since Plaintiff has stated that the Opposition serves as both "an Opposition and a Special Motion to Dismiss under NRS 41.660(2)" [Doc. No. 255 at 4:23-24], BOC points out NRS 41.670(2) which provides that "if the court denies a special motion to dismiss…and finds that the motion was frivolous or vexatious, the court shall award to the prevailing party reasonable costs and attorney's fees incurred in responding to the motion." NRS 41.670(2). Despite previously making an Anti-SLAPP argument and being informed that Nevada's Anti-SLAPP provisions do not apply to motions [Doc. Nos. 179, 180, 188, 210, 225], Plaintiff continues to advance the same arguments in successive motions, without legal support. This repeated assertion of the same meritless argument can only be described as frivolous and vexatious, thus warranting sanctions.

/ / /

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

IX.    **PLAINTIFF'S SELF-SERVING DECLARATIONS REGARDING HIS INTENT ARE NOT ENOUGH**

Plaintiff's self-serving declaration is not enough to prove his intent. While a plaintiff's declaration can create a genuine issue of fact, to do so with respect to motive or intent, that declaration must contain facts from which it can reasonably be inferred that such a motive or intent existed. *Houston v. Downey*, 2:21-CV-01337-JAD-NJK, 2024 WL 3859645, at *6 (D. Nev. Aug. 19, 2024). Further, courts frequently hold that the trier of fact may infer a motive from the total circumstances proved. *Shattuck Denn Min. Corp., (Iron King Branch) v. N. L. R. B.,* 362 F.2d 466, 470 (9th Cir. 1966). In *Shattuck*, a supervisor discharged an employee, stating that the employee was refusing to obey the supervisor and interfering with an order. *Shattuck Denn Min. Corp.,* 362 F.2d at 468. The employee denied the claims and testified that the supervisor picked on him, using obscenities, giving him an unpleasant duty, and threatening more. *Id*. Afterwards, the employer submitted a written report on the basis of which he acted. *Id*. The trial examiner reviewed the evidence and found that the employee was not subordinate and that the discharge was discriminatory. *Id*. In reviewing the case, the court stated that "the self-serving declaration is not conclusive; the trier of fact may infer motive from the total circumstances proved." *Id*., at 470. Ultimately, the court noted that "[i]f the finds that the stated motive for a discharge is false, he certainly can infer that there is another motive. More than that, he can infer that the motive is one that the employer desires to conceal- an unlawful motive- at least where, as in this case, the surrounding facts tend to reinforce that inference." *Id*.

Here, Plaintiff attempts to establish his subjective intent through a self-serving declaration, despite the fact that the objective record and surrounding circumstances demonstrate the opposite. Plaintiff states, "[m]y intent and purpose in posting commentary and video content related to this case is to educate the public, document my experience as a self-represented

litigant, and hold institutions accountable…" [Doc. No. 255 at 14:21-23]. Plaintiff further states, "I never intended, nor attempted to harm any party to this case." [Doc. No. 255 at 16:10]. Plaintiff's stated intent is inconsistent with the record. The facts, as detailed in BOC's Motion show a pattern of conduct that clearly supports an inference of an intent to intimidate counsel, an intent to influence counsel's litigation strategy, and even an intent to harass BOC and BOC's counsel. [Doc. No. 251 at 8:14-14:2]. These actions are not isolated, rather they are repeated and often escalating. Despite witnesses receiving threatening emails and voicemails months ago after Plaintiff put their information on his YouTube channel, Plaintiff continues to do so, and to no surprise, it has resulted in BOC's counsel receiving the Threatening Email. It is well established that the trier of fact is not required to accept a party's subjective characterization of intent where the surrounding circumstances and objective evidence support a contrary inference. Similar to *Shattuck*, here, the determination of Plaintiff's intent should be left to the trier of fact based on the full record, and not Plaintiff's self-serving assertions.

## X.    EVIDENTIARY OBJECTIONS TO PLAINTIFF'S DELCARATION

### A.    Plaintiff's Declaration is Disingenuous

Plaintiff's declaration mischaracterizes the record and includes blatant disingenuous statements. Specifically, Plaintiff states, "[a]t no time have I posted anyone's private, non-public information." [Doc.No. 255 at 14:16-17]. Further, Plaintiff states, "[a]ll the material I have used in commentary – including video clips, court filings, government documents, public meeting recordings, or attorney names – has been derived from public records, publicly available court proceedings, real-life interactions, or content that is freely accessible online." [Doc. No. 255 at 14:26-15:2]. When compared with the record in this case, every statement is clearly false. Plaintiff claims that he has not posted anyone's private, non-public information, yet in his Reno

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Bans Me video, he posted a BOC volunteer's Facebook page, navigated to her "About" section where he showed all his viewers her place of employment. [Doc. No. 207-4, at 24:38].

Further, Plaintiff states that all of the material used in his commentary has been derived from information that is publicly accessible. However, Plaintiff has shown an attorney-client privileged email on his YouTube channel on at least four separate occasions, despite it being marked as "confidential attorney-client privileged." [Doc. No. 207-37 at 20:32; ECF No. 207-38 at 6:05; ECF No. 207-39 at 59:40; and ECF No. 251, Exhibit K at 12:16]. Not only does this make Plaintiff's statement false, but Plaintiff's act is also prohibited by case law. *Early Warning Servs., LLC v. Brandon O'Loughlin, P.A.Z.E. LLC*, 24-7315, 2025 WL 1895313, at \*2 (9th Cir. July 9, 2025) (upholding the district court's decision to grant injunctive relief where defendants repeatedly posted privileged information in public court filings and online).

The objective record in this case shows that Plaintiff's declaration is not merely inconsistent with the evidence, but it is misleading. Plaintiff has shown a willingness to make materially false statements to the Court to advance his position, which reflects a disregard for the obligation of candor to the Court. This is precisely the type of circumstance that warrants court intervention as Plaintiff's statements could mislead the Court and risks prejudice to the opposing parties.

**B.    Plaintiff, a Lay Witness, Cannot Make Legal Conclusions**

Plaintiff's declaration improperly makes legal conclusions, which is not permitted. Fed. R. Evid. 701. It is well established that lay witness testimony should be helpful to clearly understanding the witness's testimony or to determining a fact in issue. Fed. R. Evid. 701; *see also Fed. Trade Comm'n v. Publishers Bus. Servs., Inc.*, 208CV00620PMPPAL, 2009 WL 10692838, at \*4 (D. Nev. Oct. 30, 2009) (declaration that made legal conclusions was not helpful to the trier of fact and stricken). And "testimony that simply tells the jury how to decide is not

**Gordon Rees Scully Mansukhani LLP**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

considered helpful as lay opinion. *Id*. (quoting *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059-60 (9th Cir. 2008)).

Here, Plaintiff's declaration also makes impermissible legal conclusions and should thus be excluded. In his declaration, Plaintiff states, "I categorically deny ever threatening, harassing, stalking, or doxxing any defendant, attorney, or party associated with this litigation… My communications and content do not contain threats, incitement, or any speech outside the bounds of constitutionally protected expression" [ECF No. 255 at 14:15-19]. Plaintiff further states, "[m]y commentary is focused on public conduct and legal advocacy by attorneys involved in this case, not on their private lives." [ECF No. 255 at 15:18-19]. Neither statement is a fact nor would they be helpful to a jury. Rather, like *Fed. Trade Comm'n*, both simply consist of conclusions and tell the jury how to decide. Therefore, Plaintiff's declaration should be excluded to the extent that it makes impermissible lay opinions.

## C. Plaintiff is Improperly Disseminating Information from the Court Proceedings

Plaintiff's admission that he posts court filings and other documents relevant to the instant case reflects conduct that is inconsistent with governing case law. In his declaration, Plaintiff states, "[a]ll the material I have used in commentary…has been derived from public records, publicly available court proceedings, real-life interactions, or content that is freely accessible online." [ECF No. 14:26-15:2]. In *Katz v. Steyn*, 218CV00997JADGWF, 2019 WL 13211070, at *2 (D. Nev. Mar. 25, 2019), which is analogous to this matter, the court enjoined the defendant from using audiovisual recording during discovery, including any case materials on his online blogs, and restricting the public dissemination "on the internet or otherwise" of the ongoing action, among other restrictions. *Id*. Unlike the current case, however, the *Katz* defendant was not involved in systematic harassment and threats of violence against the litigants and their counsel. Nonetheless, the court recognized that numerous courts prohibit the creation of

videos or online content regarding the court proceedings, applying the restriction to *pro se* litigant. *Id.* (collecting cases). The *Katz* court recognized that "[t]here is a stronger basis for the issuance of a protective order if a party or person seeks to use discovery materials for private commercial gain." *Id.*, 2019 WL 13211070, at *5. Similar to *Katz*, Plaintiff is using his platforms to harass and threaten litigants and their counsel for commercial gain, while posting content about the ongoing court proceedings. Despite prior attempts to curtail such conduct, Plaintiff continues his conduct, thereby necessitating court intervention to restrict Plaintiff's dissemination of private information.

## XI. CONCLUSION

Sanctions and an order from the Court are necessary for the protection of litigants, their counsel, and any potential witnesses from harassment and intimidation, the preservation of orderly adjudication of this matter, and deterrence of social-media-driven harassment used as a litigation tactic to circumvent the Court's powers and authority. For these reasons, BOC respectfully requests that the Court grant BOC's Motion in its entirety.

Dated: January 27, 2026

Respectfully submitted by:

GORDON REES SCULLY
MANSUKHANI, LLP

By: */s/ Rachel L. Wise*
CRAIG J. MARIAM, ESQ.
Nevada Bar No. 10926
RACHEL L. WISE, ESQ.
Nevada Bar No. 12303
PAULYNA T. GARCIA
Nevada Bar No. 17196
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

***Attorneys for Defendant Build Our Center Inc.***

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that on this date, I deposited for mailing in the U.S. Postal Service, with postage fully prepaid, a true and correct copy of the foregoing document in an envelope addressed to the following:

DREW RIBAR
3480 PERSHING LANE
WASHOE VALLEY, NV 89704

I also certify that on this date, the foregoing was electronically filed with the United States District Court.  Electronic service of the foregoing document shall be made in accordance with the Master Service List.

Dated: January 27, 2026

/s/ Rachel L. Wise
Rachel L. Wise

Gordon Rees Scully Mansukhani LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101